# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

VOLKSWAGEN GROUP OF AMERICA, INC.,

                              Plaintiff,

        v.

BRONSBERG & HUGHES PONTIAC, INC. d/b/a
WYOMING VALLEY AUDI,

                              Defendant.

Case No. 3:16-cv-02470-JEJ

Judge John E. Jones III

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NORTH AMERICAN AUTOMOTIVE SERVICES, INC. ET AL. MOTION TO INTERVENE AS A RIGHT, OR IN THE ALTERNATIVE, FOR PERMISSIVE INTERVENTION, MOTION TO QUASH THIRD-PARTY SUBPOENAS, AND MOTION TO DISSOLVE PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**Page**

FACTUAL BACKGROUND ....................................................................... 7

ARGUMENT ......................................................................................... 11

I.     The Court must Quash the Third-Party Subpoenas because They are Irrelevant to VW Group's Claims and were issued to Harass Napleton and its Business Partners ......................................... 11

II.    The Court must Quash the Third-Party Subpoenas because They are Irrelevant to VW Group's Claims and were issued to Harass Napleton and its Business Partners ......................................... 15

     a.    VW Group is no longer at risk of imminent harm, assuming it ever was at risk ....................................................... 15

     b.    The Preliminary Injunction Greatly Harms Napleton and Wyoming Valley ................................................................. 16

III.   NAPLETON IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT ........................................................................ 18

     a.    Federal Rules of Civil Procedure 24(a)(2) Permits Intervention as a Matter of Right in These Circumstances ..... 18

          1.   Napleton's Motion to Intervene is Timely ................... 18

          2.   Napleton Has Significantly Protectable, Legally Cognizable Interests Relating to the Property or Transaction Which is the Subject of This Proceeding ................................................................... 19

          3.   Disposition of the Suit Would Impair the Napleton Group's Significantly Protectable Interests ................. 20

          4.   The Napleton Group's Interests are not Adequately Represented by Existing Parties ..................................... 21

IV.   ALTERNATIVELY, NAPLETON SHOULD BE GRANTED LEAVE TO PERMISSIBLY INTERVENE ..................................... 22

CONCLUSION ....................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Am. Farm Bureau Fed'n v. United States EPA,
278 F.R.D. 98 (M.D. Pa. 2011)............................................................... 21

Boeynaems v. LA Fitness Int'l, LLC,
285 F.R.D. 331 (E.D. Pa. 2012)............................................................. 11

CedarCrestone Inc. v. Affiliated Computer Servs. LLC,
2014 WL 3055355 (M.D. Pa. July 3, 2014)........................................... 12

In re Cmty. Bank of N. Va.,
418 F.3d 277 (3d Cir. 2005)............................................................ 18, 22

DirectTV, Inc. v. Richards,
2005 WL 1514187 (D.N.J. June 27, 2005)........................................ 12, 13

Donaldson v. United States,
400 U.S. 517 (1971), superseded on other grounds, Tiffany Fine
Arts, Inc. v. United States, 469 U.S. 310 (1985) ................................... 19

Fassett v. Sears Holdings Corp.,
2017 WL 386646 (M.D. Pa. Jan. 27, 2017).......................................... 12

Glasco v. Hills,
558 F.2d 179 (3d Cir. 1977)................................................................... 15

Hanaway v. Parkesburg Grp., LP.,
132 A.3d 461 (Sup. Ct. 2015) ................................................................. 5

Hoots v. Pa.,
672 F.2d 1133 (3d Cir.1982).................................................................. 21

Maximum Human Performance, LLC v. Sigma-Tau HealthScience,
LLC,
2013 WL 4537790 (D.N.J. Aug. 27, 2013) ........................................... 12

Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.
72 F.3d 361 (3d Cir. 1995)............................................................... 18, 20

AFDOCS/14556087.2

Nat'l Collegiate Athletic Ass'n v. Corbett,
   296 F.R.D. 342 (M.D. Pa. 2013)............................................... 18, 21, 22

Schmulovich v. 1161 Rt. 9 LLC,
   2007 WL 2362598 (D.N.J. Aug. 15, 2007) ..................................... 13

Smoke v. Norton,
   252 F.3d 468 (D.C. Cir. 2001) ....................................................... 19

Township of Franklin Sewerage Auth. V. Middlesex Cnty. Utils.
   Auth.,
   787 F.2d 117 (3d Cir. 1986)........................................................... 15

Trbovich v. United Mine Workers of Am.,
   404 U.S. 528 (1972)....................................................................... 21

United States v. AT&T,
   642 F.2d 1285 (D.C. Cir. 1980) .................................................... 19

Westra Constr., Inc. v. United States Fid. & Guar. Co.,
   546 F.Supp.2d 194 (M.D. Pa. 2008) ............................................. 18

**Statutes**

Clean Air Act.............................................................................. 10

Pennsylvania Board of Vehicles Act, 63 P.S. § 818.2, *et seq*.................................... 1

Vehicles Act ...................................................................... 5, 15, 16

**Other Authorities**

Available at https://www.justice.gov/opa/press-
   release/file/924436/download ........................................................ 10

Fed. R. Civ. P. 45(d)(3)(A)(iv)................................................... 12

Federal Rules of Civil Procedure Rule 24(a)(2) ..................... 18, 20

Federal Rules of Civil Procedure Rule 24(b)(l)(B)..................... 22

Federal Rules of Civil Procedure Rule 26................................... 11

- iii -

Federal Rules of Civil Procedure Rule 45.................................................................. 12

Rule 45(c)(3) ................................................................................................................ 12

AFDOCS/14556087.2

Intervenor-Plaintiffs North American Automotive Services, Inc. d/b/a Napleton Automotive Group ("Napleton"), Napleton Orlando Imports, LLC d/b/a Napleton's Volkswagen of Orlando ("Orlando VW"), Napleton Sanford Imports, LLC d/b/a Napleton's Volkswagen of Sanford ("Sanford VW"), and Napleton Automotive of Urbana, LLC d/b/a Napleton Volkswagen of Urbana ("Urbana VW") (the VW entities collectively the "Napleton VW Dealers") seek to file their Intervenor Complaint[1] against Volkswagen Group of America, Inc.("VW Group") because of VW Group's willful, unlawful, and improper attempt to thwart Napleton's proposed acquisition of seven retail automotive dealerships, in violation of the Pennsylvania Board of Vehicles Act, 63 P.S. § 818.2, *et seq* ("the Act").  VW Group has both (i) unreasonably withheld consent to the sale of authorized Audi and Volkswagen dealerships, Wyoming Valley Audi and Wyoming Valley Volkswagen, respectively, and (ii) tortiously interfered with the asset purchase agreement between Defendant Bronsberg & Hughes Pontiac, Inc. and its affiliated entities (collectively, "Wyoming Valley") and Napleton, as well as the prospective economic advantage to be obtained by Napleton upon consummation of the proposed sale. Through misuse of the discovery process, VW Group is attempting

---

[1] The proposed Intervenor Complaint is attached as Exhibit A to the Declaration of Bruce Etheridge, submitted simultaneously herewith.

- 1 -

to sour Napleton's relationship with the other manufacturers and sink the deal. Napleton seeks compensatory and punitive damages resulting from VW Group's unlawful actions.

VW Group acts illegally in order to punish Napleton for Napleton's assertion of its legal rights in the unrelated diesel defeat device scandal (the "TDI Scandal"). Napleton owned multiple Volkswagen dealerships when news broke of VW Group's years-long campaign to defraud the federal government, dealers, and consumers. After the subsequent fallout, and investigations by the DOJ, the EPA, and numerous state Attorneys General, VW Group's corporate parent, Volkswagen AG ("VW AG") recently pled guilty on behalf of itself and VW Group to multiple federal crimes (VW AG and VW Group collectively "VW"). Those charges relate to VW's coordinated strategy to fool emissions regulators into believing that VW's "clean diesel" vehicles, including some Audi vehicles sold, were within regulations—when in fact such vehicles polluted the atmosphere at many times over the legal limit.

At VW Group's urging, Napleton agreed to be the class action plaintiff for the TDI Scandal claims held by Volkswagen dealers against VW Group. Recently, a federal MDL judge in California approved a class settlement of those claims (the "MDL Settlement"). Napleton opted-out of the MDL Settlement, however, and its case against VW Group proceeds. Irritated by Napleton's exercise of its legal

- 2 -

rights, VW Group sought an opportunity to extract both leverage and revenge. The proposed sale of Wyoming Valley's franchises to Napleton provided that opportunity.

Back in July 2016, Napleton came to an agreement with Wyoming Valley to purchase all of Wyoming Valley's franchises and franchise-related assets in and around Luzerne County, Pennsylvania, including dealerships for Mazda, Porsche, BMW, Subaru, Kia, Volkswagen and Audi, as well as purchasing the real estate and committing to the construction of new buildings, for a total investment of $51.5 million (the "Initial Proposed Transaction"). Several of the manufacturers have approved of the Initial Proposed Transaction.

VW Group took a decidedly different approach. VW Group objected from the outset, argued that the package deal violated its franchise contracts and Pennsylvania law, and ultimately demanded that Audi's franchise value be apportioned from the rest of the franchises. Even though Napleton and Wyoming Valley complied with VW Group's request by apportioning Audi's value, VW Group still objected, and further recommended that Napleton and Wyoming Valley drop the Audi dealership sale. Looking to move forward, Napleton and Wyoming Valley dropped Audi from the Initial Proposed Transaction and amended the APA to complete the sale for the remainder of the franchises (the "Proposed Transaction"). Yet for reasons it has been unwilling to articulate, VW Group still

- 3 -

acts to block the consummation of the Proposed Transaction.

Despite VW Group's opacity, Napleton knows why VW Group continues to stand in the way. VW Group's bad faith conduct is motivated by its desire to penalize Napleton for bringing the TDI Scandal class action and for opting out of the MDL Settlement.  VW Group has, in effect, weaponized its right of first refusal in an attempt to effectuate a total separation of the parties. Far from looking to protect VW Group's right to choose its dealer partners, VW Group has abused, and continues to abuse, the processes of this Court in order to kill the Proposed Transaction and punish Napleton for helping to bring to light VW Group's own illegal conduct.

Aside from obtaining a continuing injunction that blocks the sale of the non-VW Group dealerships, VW Group has also subpoenaed the _other_ manufacturers, while mysteriously failing to subpoena Napleton. If VW Group was truly interested in discovery on the value of the Audi deal, it would have started with Napleton. Instead, VW Group is abusing the discovery process to paint Napleton in a bad light and to encourage the other manufacturers to reject the deal. Indeed, as a result of VW Group's conduct, so far at least one manufacturer so far has expressed concerns about the consummation of the Proposed Transaction.

Critically, VW Group's objections are moot.  The Proposed Transaction no longer includes Audi. Any further action by VW Group in this Court serves only to

- 4 -

further undermine Napleton's rights and to compound its damages.

The failure to subpoena Napleton demonstrates that VW Group is not at all interested in a breakdown of the purchase price for the Wyoming Valley dealerships. Accordingly, the Court should quash the third-party subpoenas because VW Group issued those subpoenas for an improper purpose: to punish Napleton.

The Court should also dissolve the preliminary injunction prohibiting Napleton from acquiring Wyoming Valley's non-VW Group assets. Audi is no longer part of the deal, per VW Group's request. VW Group no longer has a valid claim against Wyoming Valley. VW Group plainly admits that it has no contractual rights to acquire the remaining dealerships nor would it be inclined to do so if such rights existed. (Am. Compl. ¶ 48.) Napleton's acquisition of non-VW Group franchises has no bearing on VW Group's ability to exercise its purported right of first refusal.[2] VW Group's feigned concern is pretextual, since its efforts to disrupt the Proposed Transaction persisted even after the parties complied with VW Group's request to remove Audi from the Initial Proposed Transaction. VW

---

[2] In addition to the limits set forth in the Board of Vehicles Act regarding rights of first refusal, Pennsylvania law also limits Audi's discretion in exercising its purported right of first refusal based on the covenant of good faith and fair dealing implicit in every contract in Pennsylvania. *See* Hanaway v. Parkesburg Grp, LP., 132 A.3d 461, 475 (Sup. Ct. 2015). VW Group is not exercising good faith here.

- 5 -

Group's ultimate goal is to foil Napleton's acquisition as punishment for Napleton's assertion of its legal rights.

And VW Group's tactics are working. One manufacturer (BMW) now appears hesitant to approve Napleton's acquisition of Wyoming Valley's BMW franchise because of VW Group's litigation and subpoenas. If the Court does not quash the subpoenas and dissolve the preliminary injunction, the Proposed Transaction is likely to collapse.

Because Napleton is being unfairly targeted, and because VW Group has brought this action only because Napleton is the buyer, this Court should grant Napleton's motion to intervene. Napleton and the Napleton VW Dealers have rights, including claims against VW Group for VW Group's abuse of process in this action, that are not adequately represented or defended by Wyoming Valley. It is very early in the litigation, and the other parties will not be prejudiced by Napleton's intervention, but Napleton will be severely prejudiced if it is not allowed to intervene.

Napleton respectfully requests that, for the reasons below, this Court grant its motion to intervene, grant its motion to quash the outstanding third-party subpoenas, and grant its motion to dissolve the preliminary injunction and permit Napleton to proceed with the acquisition of the non-VW Group franchises and franchise-related assets in which VW Group has no valid interest.

- 6 -

## FACTUAL BACKGROUND

A full recitation of relevant facts can be found in the proposed Intervenor Complaint accompanying this motion. The relevant facts in brief are as follows:

In July 2016, Napleton entered into an Asset and Real Estate Purchase Agreement ("APA") Wyoming Valley for the Initial Proposed Transaction. Napleton, a seasoned automobile dealer group that owns 35 dealerships spread throughout the United States, expected this transaction to close smoothly, like many other transactions had before it. Little did it know that VW Group planned to use this opportunity to exact payback for the Napleton VW Dealers asserting their legal rights nearly a year ago.

While VW Group's cover-up of the TDI Scandal is well-known and admitted by VW Group, a brief discussion of its relevance here is needed.   In the fall of 2015, VW Group announced that it violated state and federal law by equipping its vehicles with defeat devices designed to alter the emissions of TDI-equipped vehicles while they were being tested by regulators.   Thus, the vehicles would perform within limits while being tested, but well above limits on the road.   The concealment of these defeat devices spanned several years, and was only discovered through independent research.   Civil and criminal proceedings commenced against VW Group and its sales collapsed.

Volkswagen dealers like the Napleton VW Dealers suffered immensely. Sales collapsed and profits suffered, while some dealers saw their investments evaporate. On behalf of all Volkswagen franchised dealers, at VW Group's urging, the Napleton VW Dealers commenced class action litigation against VW Group over the TDI Scandal, its cover-up, and other unlawful practices it engaged in against its dealers. While VW Group eventually settled with the class members for over $1.2 billion dollars, the Napleton VW Dealers opted-out because VW Group sought to include completely unrelated claims. As later revealed in VW Group's own correspondence, Napleton's exercise of its legal rights—first, by filing, and later, by opting out—put it on VW Group's blacklist.

VW Group made its animosity known when it accused Napleton and Wyoming Valley of conspiring to rob VW Group of its purported right of first refusal. While Napleton and Wyoming Valley diligently complied with VW Group's requests, VW Group nonetheless filed a complaint on December 13, 2016 seeking, inter alia, injunctive relief enjoining Napleton and Wyoming Valley from consummating the Initial Proposed Transaction (the "Complaint").

In its Complaint, VW Group alleges, among other things, that the sale of multiple dealerships in a single transaction violates the terms of VW Group's agreements with Wyoming Valley, its purported right of first refusal and applicable law. Despite the fact that there was nothing unusual about a "package" deal,

- 8 -

Napleton and Wyoming Valley wanted to move forward with the rest of the deal and took VW Group's offer to remove Audi from the Initial Proposed Transaction. While the suggestion was unusual, the parties acceded, and removed Audi to form the Proposed Transaction at issue today.

Incredibly, VW Group did not back off.  It has continued to maintain that the Court must keep the Preliminary Injunction in place, and has dove head-first into a witch hunt thinly guised as due diligence to decide if it wishes to exercise its purported contractual rights.  VW Group's true motives were revealed in a letter following the filing of the Complaint.

In its Jan 4 Letter, VW Group rejected Napleton's purchase of Wyoming Valley's Volkswagen franchise.  VW Group claimed the reason for the rejection is that Napleton has "engaged in bad faith conduct" toward VW Group and "has had a history of litigation" against VW Group.  The Jan 4 letter went on to lengthily describe the class action suit brought by Napleton against VW Group for the TDI Scandal[3], including spurious descriptions of confidential settlement discussions of that suit.  VW Group is obviously irritated that, though the suit originally brought

---

[3] The Jan 4 Letter fails to acknowledge the irony of the fact that VW Group actually encouraged Napleton to become the Class Plaintiff (since *someone* had to be class plaintiff), so that VW Group could deal with a known entity and a reasonable party in the litigation.

AFDOCS/14556087.2

by Napleton resulted in a $1.2 billion nationwide settlement, Napleton exercised its legal right to opt out and continue pursuit of its legal rights against VW Group.

On January 11, 2017, VW AG, on behalf of itself and its wholly-owned subsidiary VW Group, pled guilty to multiple federal crimes related to the TDI Scandal, including conspiracy to commit wire fraud, conspiracy to violate the Clean Air Act, and obstruction of justice. As part of the plea agreement, VW is foreclosed from disputing the fact of the guilty plea or the predicate facts in any court or proceeding. *See* Plea Agreement[4] at 1.E, 14, & Ex. 2 ¶¶ 3-4. But because the Napleton VW Dealers have and continue to assert their legal rights related to VW's federal crimes, in its letter, VW Group has deemed *Napleton* not to be "a desirable or good faith business partner." This from the company that spent years defrauding the federal government and the public. In other words, VW Group, an admitted criminal enterprise, is openly rejecting Napleton on the ground that Napleton had the temerity to sue and keep suing VW Group for its criminal conduct.

From this it is clear that VW Group will do whatever it takes to make sure Napleton never acquires another VW Group franchise. Indeed, Napleton and the

---

[4] Available at https://www.justice.gov/opa/press-release/file/924436/download.

Napleton VW Dealers have reason to believe that VW Group has been acting solely to gain leverage to force the Napleton VW Dealers to discontinue their TDI Scandal litigation and divest themselves of their Volkswagen franchises.

Without the Court's intervention, VW Group will continue to abuse the discovery process to harass and intimidate the Napleton Group and any manufacturers that chose to do business with them, and keep Napleton and Wyoming Valley from purchasing and selling, respectively, Wyoming Valley's non-VW Group assets.  No parties presently involved in this suit adequately represent the interests of the Napleton Group, and the Napleton Group stands to suffer substantial damage if it cannot obtain the relief sought.  The motions to intervene, to quash VW Group's abusive subpoenas, and to dissolve the Preliminary Injunction should be granted in their entirety.

## ARGUMENT

**I.    The Court must Quash the Third-Party Subpoenas because They are Irrelevant to VW Group's Claims and were issued to Harass Napleton and its Business Partners**

According to Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."  Fed R. Civ. P. 26.  "Discovery need not be perfect, but discovery must be fair."  Boeynaems v. LA Fitness Int'l, LLC, 285 F.R.D. 331, 333 (E.D. Pa. 2012).  When ascertaining the discoverability of material, the Court

- 11 -

"must further distinguish between requests that 'appear reasonably calculated to lead to the discovery of admissible evidence'" and "demands that are 'overly broad and unduly burdensome.'" Fassett v. Sears Holdings Corp., 2017 WL 386646, at *3 (M.D. Pa. Jan. 27, 2017) (citations omitted). The "sole purpose of discovery is to add flesh for trial on the parties' respective claims and defenses in the given action. Discovery is not a fishing expedition." Maximum Human Performance, LLC v. Sigma-Tau HealthScience, LLC, 2013 WL 4537790, at *2 (D.N.J. Aug. 27, 2013). Rule 45 requires the court to quash a subpoena under several circumstances, including when the subpoena "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv).[5] Pursuant to these standards, and as discussed more fully below, VW Group's subpoenas serve no legitimate purpose and should be quashed.

VW Group claims that it needs the third-party subpoenas so that it can accurately assess the appropriate breakdown in blue-sky value for each of the

---

[5] Napleton has standing to file a motion to quash the third-party subpoena under Rule 45(c)(3) because it has a substantial interest in the documents in question. See CedarCrestone Inc. v. Affiliated Computer Servs. LLC, 2014 WL 3055355, at *3-4 (M.D. Pa. July 3, 2014) (finding standing when Plaintiff asserted a personal privilege in trade secrets and business records); DirectTV, Inc. v. Richards, 2005 WL 1514187, at *1 (D.N.J. June 27, 2005) (finding standing when Defendant asserted a personal privilege with respect to bank account records). Here, Napleton has a personal right or privilege in the information VW Group seeks through the third-party subpoenas, and therefore has standing to move to quash.

- 12 -

seven dealerships in the original transaction, priced in total at $17 million. This purported claim is belied by the fact that, to date, VW Group has not subpoenaed Napleton for a single document, which would better evidence the value Napleton, the actual buyer, would assign for each franchise. VW Group has not subpoenaed Napleton because VW Group is uninterested in Napleton's documents, or the actual answer the blue sky breakdown question. Moreover, VW Group no longer has a right to learn the answer to the blue sky breakdown question, as the Audi franchise is no longer part of the transaction. VW Group's claims and questions are moot.

Accordingly, the Court must quash the third-party subpoenas because VW Group instead issued them to harass the non-VW Group manufacturers from the Proposed Transaction and to punish Napleton, and as such, are irrelevant and unduly burdensome.  A subpoena is unduly burdensome when it is "unreasonable or oppressive." DirectTV, Inc., 2005 WL 1514187, at *2.  The court determines what is unduly burdensome on a case-by-case basis.  Schmulovich v. 1161 Rt. 9 LLC, 2007 WL 2362598, at *4 (D.N.J. Aug. 15, 2007). Factors used to determine whether a subpoena is unduly burdensome include: 1) the party's need for the production; 2) the nature and importance of the litigation; 3) relevance; 4) the breadth of the request for the production; 5) the time period covered by the request;

- 13 -

6) the particularity with which the documents are described; and 7) the burden imposed on the subpoenaed entity. Id. (citations omitted).

The lack of relevance is reason alone to quash the third-party subpoenas. Not content with torpedoing the Audi transaction, VW Group now wants to sink the entire deal by enjoining the sale of the non-VW Group dealerships and interfering in Napleton's dealings with the other manufacturers. VW Group admits in its Amended Complaint that its purported contractual rights of first refusal do not extend to non-VW Group franchises and it further admits it has no interest in acquiring them.  Moreover, VW Group flatly recommended that the parties withdraw Audi from the Initial Proposed Transaction. Yet VW Group refused to back down after Napleton and Wyoming Valley acceded.  Now that Napleton is no longer acquiring the Audi assets, the information covered by the subpoenas is irrelevant. The third-party subpoenas directed to the other manufacturers are mere pretext for VW Group's true goals, as discussed above, of harassing Napleton, derailing the remaining transactions, and, upon information and belief, attempting to gain leverage to force Napleton's VW dealerships to cease its TDI Scandal litigation and to divest themselves of their VW franchises.

VW Group's animus towards Napleton is clear.  VW Group seeks revenge against Napleton "by any means necessary."  VW Group's actions have taken their toll.   Besides unduly delaying the closing of the Proposed Transaction, VW

- 14 -

Group's actions in this litigation have caused at least one manufacturer (BMW) to review whether Napleton can, or should, acquire its franchise from Wyoming Valley. The Court should not allow VW Group to further harass Napleton and jeopardize its business relationships with other manufacturers through abusive discovery. The Court should quash the subpoenas because they seek irrelevant information and are unduly burdensome and abusive.

## II. The Court must Quash the Third-Party Subpoenas because They are Irrelevant to VW Group's Claims and were issued to Harass Napleton and its Business Partners

Changed circumstances from the granting of the preliminary injunction to the filing of this instant action require the Court to dissolve the preliminary injunction. Trial courts have discretion to dissolve preliminary injunctions. Glasco v. Hills, 558 F.2d 179, 180 (3d Cir. 1977). Dissolving a preliminary injunction is warranted when "changed circumstances warrant the discontinuation of the order." Township of Franklin Sewerage Auth. V. Middlesex Cnty. Utils. Auth., 787 F.2d 117, 121 (3d Cir. 1986) (citation omitted). At least two changed circumstances here warrant dissolving the preliminary injunction.

### a. VW Group is no longer at risk of imminent harm, assuming it ever was at risk

When VW Group sought the preliminary injunction, it purportedly did so because it could not determine the price Napleton was paying for Wyoming

AFDOCS/14556087.2

Valley's Audi assets (Mov. Brf. at 2, Dkt. No. 7).  VW Group claimed that it could not exercise its purported right of first refusal in accordance with the Board of Vehicles Act without this information.   Notwithstanding that Napleton and Wyoming Valley provided ample information to VW Group sufficient to determine whether it would exercise its purported contractual rights, VW Group no longer faces any risk of being deemed to have approved Napleton's acquisition under the Board of Vehicles Act.

On December 28, 2016, the parties agreed to remove Audi from the transaction.  Notably it was VW Group itself that made this proposal as a way to resolve this dispute.   Notwithstanding the unreasonableness of VW Group's demand to remove Audi from the proposed transaction, the parties did so, and with it diffused any purported imminent harm.

### b.   The Preliminary Injunction Greatly Harms Napleton and Wyoming Valley

In requesting injunctive relief, VW Group argued that no harm would come to Wyoming Valley if the Court granted the preliminary injunction because the "closing of the APA is not imminent" and that "Napleton has been approved as the buyer by only two of the seven franchisors." (Mov. Brf. at 33-34).  Both Wyoming Valley and Napleton would suffer great harm if the Court does not dissolve the preliminary injunction.

- 16 -

Several of the manufacturers have approved Napleton, including VW Group's affiliate Porsche. However, with each passing day that the injunction is in place, the likelihood that the parties will not be able to consummate the transaction for the non-VW Group assets grows. Already one manufacturer has begun to waiver in the face of VW Group's two-pronged attack of an injunction and abuse of process. Because of the injunction, Napleton will not be able to acquire the non-VW Group Assets even after it obtains consent from the remaining manufacturers. The preliminary injunction serves no purpose other than as VW Group's victory lap in denying Napleton the opportunity to acquire any of Wyoming Valley's seven dealerships. It also furthers the means by which VW Group can act on its vendetta against Napleton.

In sum, the preliminary injunction should be dissolved because: 1) Wyoming Valley is no longer selling its Audi assets to Napleton, thus mooting the need for the preliminary injunction; and 2) the parties failure to close on the non-Audi assets risks scuttling the deal altogether. Besides the unease caused by VW Group's actions, there are deadlines attached to each manufacturer's conditional approval of the APA. Further delay risks complete rescission. The rescission of the entire agreement would damage Napleton in an amount measured in tens of millions of dollars, and would forever deprive Napleton of the business opportunity the closing of the Proposed Transaction represents.

- 17 -

Respectfully, the change in circumstances warrants the dissolution of this Court's preliminary injunction. Napleton and Wyoming Valley should be allowed to consummate the purchase and sale of the non-VW Group assets.

## III. NAPLETON IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT

### a. Federal Rules of Civil Procedure 24(a)(2) Permits Intervention as a Matter of Right in These Circumstances

In order to intervene as a matter of right under Rule 24(a)(2), a proposed intervenor must demonstrate that: (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation. Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc. 72 F.3d 361, 365-66 (3d Cir. 1995) (citation omitted). "Each of these requirements must be met to intervene as of right." Id. at 366.

### 1. Napleton's Motion to Intervene is Timely

The timeliness of a motion to intervene "is determined by the totality of the circumstances." In re Cmty. Bank of N. Va., 418 F.3d 277, 314 (3d Cir. 2005) (citation omitted). In weighing the timeliness of a motion, the court must consider: "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." Id. (citation omitted); see also Westra Constr.,

Inc. v. United States Fid. & Guar. Co., 546 F.Supp.2d 194, 200–01 (M.D. Pa. 2008). Generally, the intervention of a non-party will not prejudice the current parties when discovery has yet to commence and dispositive motions have not been filed. Nat'l Collegiate Athletic Ass'n v. Corbett, 296 F.R.D. 342, 347 (M.D. Pa. 2013) (citing Mountain Top Condo. Ass'n, 72 F.3d at 370). A district court "has much latitude in assessing the timeliness of a motion [to intervene]." Smoke v. Norton, 252 F.3d 468, 471 (D.C. Cir. 2001). "A court should be more reluctant to deny an intervention motion on grounds of timeliness if it is intervention as of right than if it is permissive intervention." United States v. AT&T, 642 F.2d 1285, 1295 (D.C. Cir. 1980) (reversing denial of motion to intervene).

The Complaint was filed on December 13, 2016, immediately followed by VW Group's Motions for Temporary Restraining Order and Preliminary Injunction on December 14, 2016. Wyoming Valley filed the only dispositive motion, its motion to dismiss, on January 23, 2017. The parties have not commenced discovery in earnest, and discovery disputes remain that need to be resolved. The Napleton Group's Motion to Intervene is being filed during the earliest stages of this proceeding and will not disrupt the case, or cause undue delay, hardship, or prejudice to the adjudication of the parties' claims. As such, Napleton's Motion to Intervene is timely.

AFDOCS/14556087.2

### 2. Napleton Has Significantly Protectable, Legally Cognizable Interests Relating to the Property or Transaction Which is the Subject of This Proceeding

An intervenor must establish an interest "relating to the property or transaction which is the subject of the action" that is "significantly protectable." Donaldson v. United States, 400 U.S. 517, 531 (1971), superseded on other grounds, Tiffany Fine Arts, Inc. v. United States, 469 U.S. 310 (1985). In other words, the intervenor must demonstrate that "there is a tangible threat to a legally cognizable interest to have the right to intervene." Mountain Top Condo. Ass'n, 72 F.3d at 366 (quoting Harris, 820 F.2d at 601). This interest must be direct and "distinguished from interests of a general and indefinite character." Id. "[A] mere economic interest in the outcome of the litigation is insufficient to support a motion to intervene." Id.

As a party to the APA and Proposed Transaction, as purchaser of the property that is the subject of this action, and as franchised VW Group dealers, the Napleton Group has a significantly protectable, legally cognizable interest relating to the rights, the transaction and the property that are the subject of this lawsuit.

### 3. Disposition of the Suit Would Impair the Napleton Group's Significantly Protectable Interests

An intervenor must also demonstrate that its legally protectable interest may be affected or impaired as a practical matter by the disposition of the action in its

- 20 -

absence. <u>Mountain Top Condo. Ass'n</u>, 72 F.3d at 368. Rule 24(a)(2) requires only impairment "as a practical matter." Fed. R. Civ. P. 24(a)(2). Thus, the court is not limited to the consequences of resolving narrowly tailored legal issues and may consider the realistic and practical consequences of its ruling. <u>See Harris</u>, 820 F.2d at 601 ("Rule 24(a)(2) directs the courts to consider the practical consequences of the litigation in passing on an application to intervene as of right."); <u>Am. Farm Bureau Fed'n v. United States EPA</u>, 278 F.R.D. 98, 108 (M.D. Pa. 2011). An intervenor's burden to satisfy this standard is minimal; the intervenor need only show that, without intervention, impairment of a significant legal interest is possible. <u>Id.</u> (citations omitted).

The Napleton's legally protectable interests have already been impaired by this action. If Napleton is not permitted to intervene, its interests relating to the APA and Transaction may be further impaired.

### 4. The Napleton Group's Interests are not Adequately Represented by Existing Parties

Lastly, an intervenor must establish that its interests are not adequately represented by the existing parties. <u>See Nat'l Collegiate Athletic Ass'n</u>, 296 F.R.D. at 349 (citing <u>Hoots v. Pa.</u>, 672 F.2d 1133, 1135 (3d Cir.1982)). An applicant bears a minimal burden to show that representation *may* be inadequate, not that such representation is inadequate. *See* <u>Trbovich v. United Mine Workers of Am.</u>, 404

- 21 -

U.S. 528, 538 n. 10, (1972) (citation omitted); *Hoots,* 672 F.2d at 1135 (burden met when applicant demonstrates that its interests, "though similar to an existing party, are nevertheless sufficiently different" such that existing parties cannot provide "proper attention" to the applicant's interests). "When the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented." In re Cmty. Bank of N. Va., 418 F.3d at 315 (citation omitted). To overcome the presumption of adequate representation, the applicant must generally demonstrate "(1) that although the applicant's interests are similar to those of a party, they diverge sufficiently that the existing party cannot devote proper attention to the applicant's interests; (2) that there is collusion between the representative party and the opposing party; or (3) that the representative party is not diligently prosecuting the suit." Nat'l Collegiate Athletic Ass'n, 296 F.R.D. at 349 (quoting Brody v. Spang, 957 F.2d 1108, 1122-23 (3d Cir.1992)); *see also* In re Cmty. Bank of N. Va., 418 F.3d at 315.

Despite Napleton and Wyoming Valley removing the Audi assets from the Initial Proposed Transaction per VW Group's request, VW Group has managed to enjoin the closing of the APA and continues to interfere with the APA by seeking discovery from and regarding the other manufacturers, impairing Napleton's rights under the APA. Napleton should be permitted to intervene in this action as its interests are not being adequately represented by Wyoming Valley.

- 22 -

## IV.  ALTERNATIVELY, NAPLETON SHOULD BE GRANTED LEAVE TO PERMISSIBLY INTERVENE

Under Rule 24(b)(l)(B) of the Federal Rules of Civil Procedure, the court may permit anyone to intervene who has a claim or defense that it shares with the main action a common question of law or fact. Many of the claims raised by the Intervenor Plaintiffs in their Intervenor Complaint share common questions of law and/or fact with the current action. Indeed, some of them arise out of VW Group's acts within this action.

### CONCLUSION

For the foregoing reasons, the Intervenor Plaintiffs respectfully request that the Court grant their motion to intervene, quash the third-party subpoenas, and dissolve the preliminary injunction in its entirety.

AFDOCS/14556087.2

Dated: March 2, 2017             Respectfully submitted,


By: */s/ Kathryn L. Simpson*
    Kathryn L. Simpson, Esq.
    **METTE, EVANS & WOODSIDE**
    3401 North Front Street
    Harrisburg, PA 17110-0950
    Phone: 717.232.5000
    Fax: 717.236.1816
    Email: ksimpson@mette.com


    Russell P. McRory (*pro hac vice forthcoming*)
    Michael P. McMahan (*pro hac vice forthcoming*)
    **ARENT FOX LLP**
    1675 Broadway
    New York, NY 10019-5874
    Phone: 212.484.3900
    Fax: 212.484.3990
    Email: Russell.McRory@arentfox.com
    Email: Michael.McMahan@arentfox.com


    **Attorneys for Intervenor-Plaintiffs**

- 24 -

## INTERVENOR-PLAINITFFS' CERTIFICATION OF WORD COUNT

Intervenor-Plaintiffs, by their counsel, Mette, Evans & Woodside, hereby certify that the word count of this Memorandum as determined by the Microsoft Word software with which it was produced, is 4,930 words.

Respectfully submitted,

METTE, EVANS & WOODSIDE

*s/Kathryn L. Simpson*
KATHRYN L. SIMPSON, ESQUIRE
Sup. Ct. I.D. No. 28960

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the clerk by using the CM/ECF system constituting service on the following attorneys who have filed electronically through the Court's ECF system.

Thomas B. Schmidt, III, Esq.
*schmidtt@pepperlaw.com*

Attorneys for Plaintiff
AUDI OF AMERICA, INC.

Randall L. Oyler, Esq.
*randall.oyler@bfkn.com*
Owen H. Smith, Esq.
*owen.smith@bfkn.com*
Brandon C. Prosansky, Esq.
*brandon.prosansky@bfkn.com*

Attorneys for Plaintiff
AUDI OF AMERICA, INC.

Nicholas D. George, Esq.
*ngeorge@swartz-legal.com*
Dennis George, Esq.
*dgeorge@swartz-legal.com*

Attorneys for Defendant
BRONSBERG & HUGES PONTIAC INC. d/b/a WYOMING VALLEY AUDI

/s/ Kathryn L. Simpson
Kathryn L. Simpson, Esquire
**METTE, EVANS & WOODSIDE**
3401 North Front Street
Harrisburg, PA 17110-0950
Phone: 717.232.5000
Fax: 717.236.1816
Email: *ksimpson@mette.com*

**Attorneys for Intervenor-Plaintiffs**