# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AUDI OF AMERICA, INC.,<br>An Organizational Unit of Volkswagen Group<br>of America, Inc.,<br>A New Jersey Corporation,<br><br>Plaintiff,<br><br>v.<br><br>BRONSBERG & HUGHES PONTIAC, INC.<br>d/b/a WYOMING VALLEY AUDI,<br>A Pennsylvania Corporation,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)  Case No. 3:16-cv-02470-JEJ<br>)<br>)  Judge John E. Jones III<br>)<br>)<br>)<br>)<br>)<br>) |

## VOLKSWAGEN GROUP OF AMERICA, INC.'S RESPONSE BRIEF IN OPPPOSITION TO THE MOTION TO INTERVENE, TO QUASH THIRD-PARTY SUBPOENAS, AND TO DISSOLVE PRELIMINARY INJUNCTION

# **TABLE OF CONTENTS**

INTRODUCTION.................................................................................................. 1

BACKGROUND................................................................................................... 4

NAPLETON'S FALSE ASSERTIONS ............................................................. 9

ARGUMENT ...................................................................................................... 18

   I.   The Motion To Intervene Should Be Denied. ..................................... 18

      A.   The Motion To Intervene Is Procedurally Defective because Rule 24 Does Not Permit an Intervenor to Assert Affirmative Claims against the Plaintiff. ..... 19

      B.   Intervention as of Right Is Improper because the Napleton Entities Do Not Have Any Interest in the APA. ................................................................. 20

      C.   Permissive Intervention Is Improper because the Napleton Entities Attempt to Assert Aggressive Affirmative Claims. ................................................. 21

   II.   The Motion To Dissolve the Preliminary Injunction Should be Denied ......... 22

   III.   The Motion To Quash the Subpeonas Should Be Denied................................. 24

CONCLUSION ................................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Atlantic Refining Co. v. Wyoming National Bank of Wilkes-Barre,*
  51 A.2d 719 (Pa. 1947) ................................................................. 11

*Boyd & Mahoney v. Chevron U.S.A.,*
  614 A.2d 1191 (Pa. Super. Ct. 1992) .......................................... 11

*CedarCrestone Inc. v. Affiliated Computer Servs. LLC,*
  No. 1:14-MC-0298, 2014 WL 3055355 (M.D. Pa. July 3, 2014).............................. 26

*Conseco v. Wells Fargo Fin. Leasing, Inc.,*
  204 F. Supp. 2d 1186 (S.D. Iowa 2002) ...................................... 19

*Di Loreto v. Costigan,*
  351 F. App'x 747 (3d Cir. 2009) .................................................. 24

*DIRECTV, Inc. v. Richards,*
  No. CIV. 03-5606 (GEB), 2005 WL 1514187 (D.N.J. June 27, 2005) ................... 26

*E.R. Linde Const. Corp. v. Goodwin,*
  68 A.3d 346, 351 (Pa. Super. Ct. 2013) ...................................... 11

*Green v. Cosby,*
  314 F.R.D. 164 (E.D. Pa. 2016) ................................................... 25

*Hahalyak v. A. Frost, Inc.,*
  664 A.2d 545 (Pa. Super. Ct. 1995) ............................................ 11

*Hubner v. Schoonmaker,*
  CIV. A. 89-3400, 1990 WL 149207 (E.D. Pa. Oct. 2, 1990).............................. 19, 21

*Kitzmiller v. Dover Area Sch. Dist.,*
  229 F.R.D. 463 (M.D. Pa. 2005) (Jones, J.) ................................. 20

*L.E. Wallach, Inc. v. Toll,*
  113 A.2d 258 (Pa. 1955)................................................................ 11

*Leboon v. Alan Mcilvain Co.,*
  No. CV 12-2574, 2014 WL 11429343 (E.D. Pa. Mar. 14, 2014) ............................ 25

*Oce Bus. Sys., Inc. v. Slawter*,
   No. CIV. A. 88-8373, 1990 WL 180982 **(**E.D. Pa. Nov. 19, 1990)......................... 24

## STATUTES

63 P.S. § 818.12(b)(5) ....................................................................................................... 11

## OTHER AUTHORITIES

Rule 24 of the Federal Rules of Civil Procedure ..................................................18, 19, 21

# INTRODUCTION

Audi of America, Inc. ("AoA"), an unincorporated business unit of Volkswagen Group of America, Inc. ("VW Group"), initiated this action (the "Audi Action") in December 2016 against Defendant Bronsberg & Hughes Pontiac, Inc. d/b/a Wyoming Valley Audi ("Wyoming Valley"). AoA's claims against Wyoming Valley arise from, among other things, Wyoming Valley's breach of AoA's contractual right of first refusal under the parties' Audi Dealer Agreement and statutory right of first refusal under Pennsylvania law. AoA alleges that Wyoming Valley violated its right of first refusal by entering into an Asset and Real Estate Purchase Agreement ("APA") with certain entities affiliated with the Ed Napleton Automotive Group, and by taking additional steps to thwart AoA's contractual and statutory right to acquire Wyoming Valley's Audi dealership assets.

In a related, later-filed action, Volkswagen of America, Inc. ("VWoA"), which is a separate unincorporated business unit of VW Group, also asserted claims against Wyoming Valley (the "VW Action") arising from, among other things, Wyoming Valley's breach of VWoA's right of first refusal under the parties' Volkswagen Dealer Agreement. VWoA's claims arise from the same transaction at issue in this case and largely track AoA's claims.

On March 2, 2017, four non-parties affiliated with the Ed Napleton Automotive Group filed an omnibus motion in the Audi Action (the "Motion"). One entity, North American Automotive Services, Inc. ("NAAS"), was the original buyer

under the APA.  That entity, however, has since assigned its interest in the APA to another entity that is not seeking to intervene.  The other three entities are affiliated LLCs that each own and operate an authorized Volkswagen dealership in either Florida or Illinois (the "Napleton VW Dealers," and together with NAAS, "Napleton").  None of the proposed intervenors currently is a party to the APA.

Napleton seeks three distinct types of relief.  *First*, the Napleton entities seek to intervene as third-party plaintiffs to assert affirmative claims against VW Group alleged in their proposed "Intervenor Complaint."  Notably, the Motion and proposed Intervenor Complaint make no distinction between AoA and VWoA or the separate matters raised in the Audi Action and the VW Action.  Instead, the allegations are directed to "VW Group" generally.  *Second*, Napleton seeks to dissolve the Court's preliminary injunction in the Audi Action, which prohibits Wyoming Valley from, among other things, closing the APA.  *Third*, Napleton seeks to quash third-party subpoenas that AoA issued to other manufacturers involved in the APA.

As an initial matter, the Motion should be denied because it is premised upon a series of false and misleading assertions—so many, in fact, that the Court should, on this basis alone, disallow Napleton's request to intervene and summarily deny the remainder of the Motion.  Indeed, Napleton makes at least seven false assertions that form the backbone of its arguments and putative claims against VW Group.  Without these false assertions, Napleton's house-of-cards Motion and putative claims collapses.

In addition, Napleton's requests for relief should be denied because the Motion is procedurally and legally defective.  In seeking to intervene, the Napleton entities propose to join the litigation as third-party plaintiffs asserting claims against VW Group generally.  This is not allowable.  The Napleton entities may seek to intervene as plaintiffs only by asserting claims against the current defendant, Wyoming Valley; they cannot assert claims as plaintiffs against the current plaintiff.  In any event, the Napleton entities should not be permitted to intervene as of right because neither NAAS nor any of the Napleton VW Dealers has any interest in the subject matter of this lawsuit (*i.e.*, the APA).  Permissive intervention likewise should not be allowed, as Napleton is improperly attempting to assert aggressive, affirmative claims against AoA and VWoA.

In seeking to dissolve the preliminary injunction, Napleton relies on two alleged changed circumstances:  the existence of the "First Addendum" to the APA (which purports to withdraw the Audi dealership assets from the APA), and the possibility that Wyoming Valley and Napleton may be able to close the non-Audi portions of the APA at some indeterminate time in the future.  These are not changed circumstances at all.  The Court was fully apprised of these matters before it entered a temporary restraining order in December 2016, and later extended the preliminary injunction in January and February 2017.  What has *not* changed is that Wyoming Valley—after more than three months—has not completed the discovery that the Court ordered as a precondition of any consideration whether to lift the injunction.

Finally, as set forth in AoA's separately filed Motion for Order to Show Cause, one condition *has* changed.  Wyoming Valley and Napleton—in blatant violation of the TRO—closed part of the APA.  This changed circumstance warrants the *extension* of the injunction, not its dissolution.

Finally, in seeking to quash AoA's subpoenas to three other manufacturers for their communications with Wyoming Valley and certain Napleton entities concerning the APA, Napleton ignores the Court's orders that require Wyoming Valley to produce its communications with those manufacturers.  The Napleton entities' communications with the other manufacturers are no less relevant to and probative of AoA's claims.  Further, as non-parties, the Napleton entities do not have standing to move to quash or claim undue burden on behalf of the manufacturers, none of whom has objected to the subpoenas, and two of whom already have responded.  Thus, no legitimate reason exists to quash the subpoenas.

The Court should therefore deny the Motion in its entirety.

## BACKGROUND

AoA filed this suit on December 13, 2016, and, the next day, filed a motion for a TRO and preliminary injunction seeking to enjoin Wyoming Valley from closing the APA or otherwise transferring its Audi dealership assets under the APA.  (Dkt. No. 1.)  AoA sought this preliminary relief to prevent irreparable harm from Wyoming Valley's violation of AoA's right of first refusal to purchase the Audi dealership assets in the APA.

On December 21, hours before the Court held a conference with the parties on AoA's motion, Wyoming Valley provided AoA with a copy of a "First Addendum" to the APA that purports to "withdraw" the Audi dealership from the APA, and eliminates the overall "blue sky" price term from the APA.   During argument, Wyoming Valley contended that the First Addendum moots AoA's motion.   AoA disagreed.   After hearing argument from both sides, the Court observed that AoA was entitled to take "due diligence" discovery and "wants to be sure that [the First Addendum] is not a mechanism to avoid or in some way evade the dictates of the right of first refusal that is within the dealership agreement." (*See* Dkt. No. 44-1, Dec. 21 Tr., 4:16-20.)   On December 22, 2016, the Court entered a TRO enjoining the entire APA from closing, which subsequently was extended through January 19, 2017.

On December 28, 2016, AoA served discovery on Wyoming Valley.   By mid-January, Wyoming Valley had not provided a single discovery response.   As the January 19 expiration of the TRO neared, AoA requested that the Court issue a preliminary injunction.   (Dkt. No. 28.)

During argument on January 17, 2017, Wyoming Valley again asserted that the First Addendum mooted AoA's case.   AoA explained, however, that it was entitled to injunctive relief because: (i) Wyoming Valley's purported attempt to remove the Audi dealership from the APA appeared to be an effort to defeat AoA's right to purchase the Audi dealership assets at the appropriate price, (ii) that the First Addendum could have been designed to "lock in" the unfair $8 million price for the Audi dealership via

a subsequent deal and, (iii) in any event, AoA had an absolute right to purchase the Audi brand assets at a price equal to a good faith, proportionate breakdown of the APA's overall price term. (Dkt. No. 44-1.) With respect to AoA's position, the Court observed: "I think that there is . . . some valid concern that [AoA] has. … It is an interesting argument that the right of first refusal came into being at a certain point in time and it wasn't exercised and that there may be rights sort of in relation back to it, rights preserved." (Dkt. No. 44-1, Jan. 17 Tr., 23:2-15.)

The Court then entered a preliminary injunction on December 22, prohibiting Wyoming Valley from closing the transaction set forth in the APA for 30 days. In its Order, the Court noted that AoA "cogently articulated its fears" that absent a preliminary injunction, Wyoming Valley would enter a "sweetheart" deal in which it would sell its other dealerships to Napleton at a discounted price, and then separately sell its Audi dealership to Napleton at an inflated price "that would effectually prevent Audi from the chance to fairly exercise its right of first refusal." (Dkt. No. 30, at 8.) Specifically, the Court observed: "Audi's concerns are two-fold. First, it fears that it was already deprived of its right of first refusal due to the evasive nature of Wyoming Valley's correspondence with Audi prior to the filing of the above-captioned suit. Second, Audi fears that this harm could be ongoing, and relate back to the initial actions that caused the filing of this suit, if the 'sweetheart' transaction described above were to in fact take place." (*Id.* at 6.) Finally, the Court recognized that AoA had made "valid assertions that if the parties are not enjoined from transferring over

Wyoming Valley's assets in accordance with the already-executed [APA], [AoA] could be irreparably harmed by its continued inability to exercise its right of first refusal…." (*Id.* at 8.)  AoA echoed these concerns in its First Amended Complaint, filed January 30, 2017, in which AoA assumed the existence of the First Addendum, and, therefore, eliminated any argument that the First Addendum moots them.

In its January 18 Order, the Court also instructed the parties to engage in "cooperative and efficient discovery while the Injunction is in effect."  (Dkt. No. 30, at 8.)  Wyoming Valley, however, produced only one document to AoA and failed to appropriately respond to AoA's interrogatories.  In addition, Wyoing Valley refused to produce its communications with other manufacturers concerning the APA.  AoA, therefore, issued subpoenas to three manufacturers involved in the APA seeking their communications with both Wyoming Valley and Napleton about the APA.  AoA also sought the Court's assistance in obtaining relevant documents from Wyoming Valley.  On February 21, 2017, the Court entered an Order requiring Wyoming Valley to provide full and complete responses to AoA's document requests, including producing its communications with Napleton and with the other manufacturers concerning the APA and the First Addendum.  (Dkt. 46.)

Meanwhile, despite Wyoming Valley's statement in its verified interrogatory answers that denied the existence of "side deals" with any affiliates of Napleton, AoA discovered that a "side deal" did in fact exist—five days *after* entry of the TRO, Wyoming Valley's principals transferred to Napleton the most significant and

7

expensive real estate property in the APA.  Upon discovering this misconduct, AoA promptly filed its Motion for Order to Show Cause why Wyoming Valley and its principals and affiliates, and NAAS and its principals and affiliates, should not be held in contempt of the Court's TRO.  (Dkt. No. 65, filed March 10, 2017.)

Now, four Napleton entities have filed a motion seeking to intervene, to dissolve the preliminary injunction, and to quash AoA's subpoenas to other manufacturers.  One proposed intervenor, NAAS, seeks to assert claims for tortious interference, statutory violations, and abuse of process concerning AoA's and VWoA's actions with respect to the APA.  However, NAAS no longer is the "Buyer" under the APA, having assigned its interest on September 20, 2016 to another Napleton entity called Wyoming Valley Imports, LLC.  That entity, however, has not sought to intervene.

The other three proposed intervenors are three LLCs that each own and operate a Volkswagen dealership in either Florida or Illinois.  Having no direct interest in the APA, they seek to assert claims for breach of their own Dealer Agreements and violation of federal law asserting that VW Group is using this and the VW Action to "exert leverage" against them regarding other disputes concerning recent diesel emissions matters.

## NAPLETON'S FALSE ASSERTIONS

Napleton's Motion, the supporting Declaration of Bruce Etheridge, and the Intervenor Complaint are based on numerous false assertions. They include, among others, the following:

➢   **FALSE ASSERTION**:   "[A]t VW Group's urging, the Napleton VW Dealers commenced class action litigation against VW Group over the TDI Scandal. . . .." (Mem. at 8). "VW Group actually encouraged Napleton to act as the class representative" in the class action litigation. (Dkt. No. 52-1, Etheridge Decl., ¶ 23.)

On April 4, 2016, only two days before the Napleton VW Dealers filed its class action lawsuit against VW Group and others relating to the "TDI Scandal," Ed Napleton sent an email to VWoA's Chief Operating Officer, Mark McNabb, stating: "I'm coming and bringing Hell with me." (Declaration of Brandon Prosansky ("Prosansky Dec."), Ex. 1). Until that time, the parties had engaged in settlement negotiations over the Napleton VW Dealers' threatened lawsuit. They filed their class action lawsuit less than 48 hours later. Thereafter, Ed Napleton issued a press release, explaining: "What … led me to file this lawsuit . . . is that Volkswagen has wholly failed to respond to dealer concerns in a substantive manner." (*Id.*, Ex. 2.)

On May 6, 2016, the Napleton VW Dealers' attorney sent a letter to all U.S. Volkswagen dealers explaining again the reasons filing suit:

> For many months since the disclosure of the Dieselgate fraud, our client, Ed Napleton, sought to obtain a reasonable resolution from VW[.] . . . But after weeks of discussions, VW could not bring itself to make any offer of resolution.

> On April 6, 2016, Ed decided he had been beyond reasonable and patient and had given VW every reasonable opportunity to resolve this issue short of litigation. Ed authorized us to file a lawsuit against VW….

(*Id.*, Ex. 3.) The Napleton VW Dealers filed their class action because VWoA would not accede to their settlement demands, not because VWoA encouraged them to lead a dealer class action.

➢   **FALSE ASSERTION**:   "[T]he parties agreed to remove Audi from the transaction. Notably it was VW Group itself that made this proposal as a way to resolve this dispute." (Dkt. No. 54, Mem., p. 16.) "VW Group offered Wyoming Valley and Napleton the alternative of withdrawing Wyoming Valley Audi from the APA. . . ." (Dkt. No. 52-1, Etheridge Decl., ¶ 16.)

This assertion is also false. AoA repeatedly told Wyoming Valley that it must either (i) provide a good faith breakdown of the Audi assets so AoA could exercise its right of first refusal, or (ii) *withdraw the APA in its entirety*.[1]

---

[1] For example, in its first letter dated September 28, 2016, AoA stated:

> AoA requests that Wyoming Valley provide (i) a good faith break-down of the purchase price payable under the APA that is attributable to the Audi Transfer, and (ii) a good faith breakdown of the other terms of the APA that are attributable to the Audi Transfer. Alternatively, in the event that Wyoming Valley is either unable or unwilling to provide such information in compliance with the Audi Dealer Agreement and Pennsylvania law, AoA requests that Wyoming Valley **withdraw the APA**.

(Dkt. No. 5-4, emphasis added.) AoA repeated this same request in a letter dated December 2, 2016:

> AoA has asked Wyoming Valley to either (i) provide a good faith break-down of the purchase price <u>and</u> the other terms of the APA attributable to the Audi Transfer so that [AoA] may evaluate and, if desired, exercise its ROFR, or alternatively, (ii) **withdraw the APA**.

10

AoA's requests were consistent with its well-established rights under Pennsylvania law.[2]

> **FALSE ASSERTION:** "VW Group did not reject the proposed APA or exercise its right of first refusal by December 19, 2016[,]" and, accordingly, failed to comply with the 75-day deadline set forth in 63 P.S. § 818.12(b)(5). (Dkt. 52-2, Proposed Intervenor Complaint, ¶¶ 85-87.)

In a series of emails in November 2016, both Napleton and Wyoming Valley confirmed that the statutory time period for AoA to exercise its rights (as set forth in 63 P.S. § 818.12(b)(5)) "began to run on October 14, 2016, and will expire on December 28, 2016, which is the outer limit of 75 days provided under the statute." (Dkt. 4-11; 4-12.)  In separate emails, both Napleton and Wyoming Valley confirmed that the statutory time period for VWoA to exercise its rights "began to run on October 21, 2016, and will expire on January 4, 2017, which is the outer limit of 75

---

(Dkt. No. 4-13, emphasis added.)

[2] As explained in AoA's Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. No. 7), under Pennsylvania law, a selling party cannot avoid another party's right of first refusal by placing the encumbered assets together with other, unencumbered assets in a package sale.  *See, e.g., L.E. Wallach, Inc. v. Toll*, 113 A.2d 258, 260 (Pa. 1955) (lessor violated lessee's contractual ROFR by packaging sale of leased property with two other properties); *Atlantic Refining Co. v. Wyoming National Bank of Wilkes-Barre*, 51 A.2d 719, 722–23 (Pa. 1947) (property owner's offer to sell entire property, which included smaller portion over which lessee had ROFR, "did not operate to impair or destroy" lessee's ROFR, which applied only to the smaller portion); *E.R. Linde Const. Corp. v. Goodwin*, 68 A.3d 346, 351 (Pa. Super. Ct. 2013) (lessor could not nullify lessee's ROFR over leased property by including the leased property as part of a "package" transaction with other assets); *Hahalyak v. A. Frost, Inc.*, 664 A.2d 545, 549 (Pa. Super. Ct. 1995) (same); *Boyd & Mahoney v. Chevron U.S.A.*, 614 A.2d 1191, 1194 (Pa. Super. Ct. 1992) ("[A] right of first refusal as to the conveyance of a property cannot be defeated by including that property in a multi-property or multi-asset transaction.").

days provided under the statute." (Related Case No. 17-cv-10, Dkt. No. 12-6, Exs. 9-11.)

Thus, Napleton's claim that AoA and VWoA were required to exercise their respective rights by December 19, 2016 is false.[3]

➤ **FALSE ASSERTION**:   "[F]or reasons it has been unwilling to articulate, VW Group still acts to block the consummation" of the APA following Wyoming Valley's and Napleton's execution of the First Addendum. (Mem., pp. 3-4.)

On multiple occasions, including its First Amended Complaint, its February 1, 2017 and February 21, 2017 letters to the Court, and during oral argument on regarding the preliminary injunction, AoA has explained why the preliminary injunction is necessary despite the First Addendum. (Dkt. Nos. 35, 36, 45, 32.) Specifically, AoA has explained that the First Addendum is not enforceable, but rather that it is a make-shift document executed as part of a broader scheme to frustrate AoA's right of first refusal. (Dkt. No. 35.)

Thus, in its First Amended Complaint, AoA has alleged that (i) the First Addendum is not a valid and enforceable amendment to the APA and did not remove the Audi dealership from the APA; (ii) the First Addendum is a collusive attempt to

---

[3] Ultimately, Wyoming Valley asserted in a December 27, 2016 letter that, in light of the First Addendum, AoA no longer had any statutory or contractual deadline to exercise its rights:   "Being that there is no pending purchase agreement for the purchase of the Audi franchise, I cannot see how there could be any applicable statutory and/or contractual deadlines for the exercise by Audi of such rights." (Dkt. No. 28-2.)   And, on January 4, 2017, VWoA timely exercised its right of first refusal, or, alternatively, rejected Napleton as the proposed purchaser, expressly subject to its rights, claims, and arguments in the pending VW Action.

thwart AoA's right of first refusal; (iii) AoA's right of first refusal to purchase Wyoming Valley's Audi dealership at a good faith "blue sky" price proportionate to the total "blue sky" price of the APA has ripened into an irrevocable option that the First Addendum cannot eliminate; and (iv) an injunction of the entire APA is necessary to prevent Wyoming Valley from indirectly accomplishing what it cannot accomplish directly: closing on the remainder of the APA for a reduced price, which could lock in the bad faith $8 million price for the Audi dealership and thereby allow Wyoming Valley to complete the entire APA transaction while defeating AoA's right of first refusal.  (Dkt. No. 35, FAC ¶¶ 40–51.)[4]

Napleton's assertion that AoA has been unwilling to articulate its reasons for continuing to pursue its claims and seek continuation of the preliminary injunction is therefore demonstrably false.

➢   **FALSE ASSERTION**:   "[T]he parties withdrew Audi from the [APA, and] Napleton is no longer acquiring the Audi assets[.]" (Mem., p. 14.)

Wyoming Valley has claimed in sworn interrogatory responses that its "Audi business" subject to AoA's right of first refusal includes certain real estate referred to in the APA as the "Relocation Property."   (Dkt. Nos. 66-5 & 66-6.)   The First Addendum, however, does not exclude the Relocation Property from the APA. (Dkt. No. 35-9.)   Moreover, as explained in AoA's recently-filed Motion for Order to Show

---

[4]   As AoA explained in detail in its Response to Motion to Dismiss filed contemporaneously with this brief, AoA's ROFR ripened into an irrevocable option, and AOA is allowed to enjoin the entire APA to protect that right.

Cause, Napleton *already has acquired* the Relocation Property in violation of the TRO. (Dkt. No. 65, 67-1.)   In light of Wyoming Valley's position that the Relocation Property is part of its Audi business, Napleton's assertion is false.

➢ **FALSE ASSERTION**:   AoA issued the subpoenas as a "pretext" to "harass the non-VW Group manufacturers . . . , to punish Napleton, . . . to derail[] the remaining transactions, and . . . to attempt[] to gain leverage to force Napleton's VW dealerships to cease its TDI Scandal litigation and to divest themselves of their VW franchises." (Mem., pp. 13-14.)

AoA served subpoenas to the other non-party manufacturers only after (i) the Court instructed Wyoming Valley to provide discovery regarding the APA and the First Addendum; and (ii) Wyoming Valley refused to produce any of its communications with other manufacturers regarding the APA and the First Addendum.

On multiple occasions, including during the December 21, 2016 hearing on AoA's motion for a TRO, during the January 17 hearing on AoA's motion to enter the preliminary injunction, and in its January 18 Order entering the preliminary injunction, the Court instructed Wyoming Valley to provide discovery to AoA regarding the APA and the First Addendum.  AoA served document requests on December 28, 2016 asking for Wyoming Valley's communications regarding the APA and the First Addendum.   On January 24, 2017, Wyoming Valley objected to producing its communications with other manufacturers, despite the Court's instructions.  It was only then that AoA issued the subpoenas.  AoA's decision to do

so was motivated solely by its desire to promptly obtain relevant documents that Wyoming Valley had refused to produce.[5]

In issuing the subpoenas, AoA sought evidence as to whether, among other things, Wyoming Valley and/or Napleton (i) had provided a purported breakdown of the APA to any other manufacturer and the amount of such breakdowns; (ii) had informed any other manufacturer about the First Addendum, which eliminated the primary price term (the "blue sky" price) from the APA, leaving in its place only an "agreement to agree"; or (iii) had provided inconsistent or contradictory information to other manufacturers.

Notably, the subpoena responses demonstrate that AoA was correct to seek such information.   For example, BMW produced documents demonstrating that Wyoming Valley and Napleton were attempting to force three manufacturers—Audi, Volkswagen, and BMW—to pay more for the "blue sky" of those *three* dealerships alone ███████████  than Napleton had agreed to pay for *all seven* dealerships ($17 million).[6]   Likewise, based on the documents that Subaru produced, it appears

---

[5] AoA's decision not to subpoena Napleton was based on practical considerations. The Court's injunction was set to expire shortly.   In light of Wyoming Valley's positions regarding AoA's discovery requests, including claims of common interest privilege covering all of its negotiations with Napleton, AoA had no reason to believe that Napleton would agree to produce any documents.   AoA therefore sought what documents it could from sources that it anticipated would agree to produce them.

[6] As AoA set forth in its First Amended Complaint, Wyoming Valley had apportioned a "blue sky" price to the Audi dealership of $8.0 million, and a "blue sky" price to the Volkswagen dealership of $2.5 million.   (FAC ¶ 25.)   The documents that BMW

that neither Wyoming Valley nor Napleton ever informed Subaru about the First Addendum.

Also, Napleton points to no evidence that the subpoenas "harassed" any manufacturer. To the contrary, none of the manufacturers has objected to producing documents or moved to quash, and two already have produced responsive documents.[7] Napleton's assertion that AoA issued the subpoenas with ulterior motives is therefore demonstrably false.

> **False Assertion**:  "VW Group's actions in this litigation have caused at least one manufacturer (BMW) to review whether Napleton can, or should, acquire its franchise from Wyoming Valley[,]" and "[a]lready one manufacturer [BMW] has begun to waiver [*sic*] in the face of VW Group's two-pronged attack of an injunction and abuse of process." (Mem., pp. 14-15, 17.)

Well before AoA filed this lawsuit (let alone served a subpoena), ██████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

produced reveal that Wyoming Valley claimed that the "blue sky" purchase price for its BMW dealership assets was ████████. (Prosansky Dec., Ex. 11, BMWNA 00417–418.)  Thus, Wyoming Valley's separate communications claimed that the purchase price for its Volkswagen, Audi, and BMW dealership assets, taken together, was ████████, despite the fact that the total "blue sky" purchase price for all seven dealerships in the APA was only $17 million (or $15 million after accounting for a $2 million "structuring fee").

[7] The Court already has determined that the responsive communications are relevant, as reflected in its February 21 Order directing Wyoming Valley to produce its communications with the other manufacturers.  Napleton cannot contend that *its* communications with the other manufacturers are not relevant.

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████  Thus, even before AoA filed its lawsuit on

December 13, 2016, ██████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████

In addition, more than three weeks before AoA served its subpoenas, ████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

Notably, most of these communications took place before AoA filed its lawsuit on December 13, 2016, and _all_ of them took place before AoA served its subpoena on BMW on January 27, 2017.   Thus, Napleton's assertion that AoA's subpoena "caused" BMW to waver in its consideration of the APA is false.

## ARGUMENT

## I.    THE MOTION TO INTERVENE SHOULD BE DENIED.

The Court should deny the Napleton entities' request to intervene for three reasons.  _First_, they seek to intervene in a procedurally improper manner.  Rule 24 of the Federal Rules of Civil Procedure does not allow them to intervene as "plaintiffs" to assert claims against the existing plaintiff, AoA, or against VW Group generally. _Second_, intervention as of right is improper because they have not demonstrated any "significantly protectable" interest in the APA, which is the subject of this case.  _Third_, permissive intervention is improper because Napleton is attempting to enter the case solely to assert aggressive, affirmative claims against VW Group.

18

### A.   The Motion To Intervene Is Procedurally Defective because Rule 24 Does Not Permit an Intervenor to Assert Affirmative Claims against the Plaintiff.

Napleton' Motion to intervene is procedurally defective.   A stranger to a lawsuit may not join solely to assert its own claims against an existing plaintiff.   *Conseco v. Wells Fargo Fin. Leasing, Inc.*, 204 F. Supp. 2d 1186, 1193 (S.D. Iowa 2002) (only party aligned with plaintiffs could intervene with solely affirmative claims).   Rule 24 of the Federal Rules of Civil Procedure "was not designed to allow a party to interject its affirmative interests into a lawsuit through use of a counterclaim." *Hubner v. Schoonmaker*, CIV. A. 89-3400, 1990 WL 149207, at *7 (E.D. Pa. Oct. 2, 1990). Instead, the only proper manner in which a potential intervenor may assert affirmative claims in its initial pleading is to align itself with the existing plaintiff and assert claims against an existing defendant.   *See Conseco*, 204 F. Supp. 2d at 1193.   Therefore, a pleading asserting claims against a plaintiff (instead of a defendant) does not satisfy Rule 24's requirements for intervention.   *Hubner*, 1990 WL 149207, at *7; *Conseco*, 204 F. Supp. 2d at 1193.

Here, the Napleton entities seek to intervene as plaintiffs, and assert claims against VW Group.   But the applicable rules do not allow them to do so. Accordingly, their request to intervene is procedurally improper and should be denied.

**B.    Intervention as of Right Is Improper because the Napleton Entities Do Not Have Any Interest in the APA.**

The Court should deny intervention as of right because NAAS and the Napleton VW Dealerships have no "significantly protectable" interest in the APA. Unless a party seeking to intervene can demonstrate that it has a "significantly protectable" interest in the transaction which is the subject of the lawsuit, a request for intervention should be denied. *Kitzmiller v. Dover Area Sch. Dist.*, 229 F.R.D. 463, 467 (M.D. Pa. 2005) (Jones, J.) (denying intervention where intervenor lacked a "significantly protectable" interest).

The Napleton entities seeking to intervene have no interest in the APA at all. As to NAAS, though it was the original buyer under the APA, it assigned all of its "obligations, rights, title and interest" as the buyer to a different Napleton entity— Wyoming Valley Imports, LLC—on September 20, 2016, long before AoA even initiated this litigation.   (See Dkt. No. 66-3, "Assignment of Asset Purchase Agreement".)  NAAS therefore has no interest in the subject matter of the APA, let alone a "significantly protectable" interest.   NAAS's assignee, Wyoming Valley Imports, LLC, has not sought leave to intervene.

As to the Napleton VW Dealerships, which own and operate Volkswagen dealerships in Florida and Illinois, they do not and cannot allege they have any interest in the APA, let alone a "significantly protectable" one.  They are entities that operate separate Volkswagen dealerships in Florida and Illinois.  Accordingly, the Napleton

entities have no interest in the APA, and thus no basis for intervention as of right in this case.

**C.    Permissive Intervention Is Improper because the Napleton Entities Attempt to Assert Aggressive Affirmative Claims.**

The Court also should deny Napleton's request for permissive intervention under Rule 24(b)(2).  Permissive intervention is improper unless the intervenor's proposed claims have a question of law or fact in common with the claims in the main action.  Fed. R. Civ. P. 24(b)(2).  But even then, an attempt by an intervenor to enter an action solely for the purpose of asserting claims for affirmative relief is grounds for denial of permissive intervention.  *Hubner*, 1990 WL 149207, at *6 (declining to allow permissive intervention).  Indeed, the fact that the petitioner's position is "essentially aggressive" is a reason to deny intervention.  *Id.* (quoting 3A *Moore's Federal Practice,* ¶ 24.17).  The *Hubner* decision is instructive.  There, the court denied permissive intervention where the intervenor sought to assert "completely new" claims against the plaintiffs and "significantly broaden the scope of the original action by requiring the presentation of claims that involve a myriad of additional factual and legal issues that bear only a remote relationship to the dispute between the original plaintiffs and defendants." *Id.*

As in *Hubner*, NAAS and the Napleton VW Dealerships seek only to assert affirmative claims against VW Group.  That their proposed claims are essentially aggressive—as evidenced by the assertions on which they rely, and the significantly

expanded scope that Napleton's claims would entail—cannot be disputed. *See id.* Accordingly, the Court should reject permissive intervention.

## II.   THE MOTION TO DISSOLVE THE PRELIMINARY INJUNCTION SHOULD BE DENIED.

Napleton's request to dissolve the preliminary injunction should be denied. Napleton claims that dissolution is warranted in light of two "changed circumstances"—because (i) the First Addendum exists and purportedly removes any and all Audi dealership assets from the APA; and (ii) Wyoming Valley and Napleton cannot close the remainder of the transaction.  These arguments should be rejected.

*First*, the First Addendum is not a changed circumstance.  When the Court entered the TRO, and when it later converted the TRO into a preliminary injunction, it was already aware that the First Addendum existed.  The Court also was aware of Wyoming Valley's assertion that the First Addendum removed all Audi dealership assets from the APA.  (Dkt. Nos. 16, 22, 30,38, 44-1, 44-2.)  AoA has argued to the Court, and has alleged in its Amended Complaint, that the First Addendum is merely a further attempt by Wyoming Valley and Napleton to thwart AoA's right of first refusal.  (Dkt. Nos. 32 & 35.)  The Court agreed that the First Addendum, standing alone, did not resolve AoA's claims and issued the injunction.  The existence of the First Addendum, therefore, is not a changed circumstance at all and does not warrant dissolution of the preliminary injunction.

22

*Second*, the possibility that the remainder of the APA—*i.e.*, the non-Audi dealership assets—could close at some time in the future also is not a changed circumstance.  Napleton's argument is premised on the assertion that it has obtained approvals from a subset of the manufacturers necessary for the transaction to close.  But the Court was aware of this circumstance *before* the injunction was entered.  In the January 17, 2017 hearing, the Court asked Wyoming Valley: "[A]re you on the brink of trying to close this dealer for the remaining dealerships?"  In response, Wyoming Valley stated that:

- Four manufacturers (Porsche, Kia, Subaru, and Mazda) had indicated they would approve the transaction;

- VWoA had already invoked its right of first refusal; and

- Wyoming Valley was waiting to hear back from BMW.

(Dkt. No. 44-2, Jan. 17 Tr., 22:1-13.)  Nothing has changed since then.[8]  Napleton's motion fails to present any facts to suggest that closing of the remainder of the APA is even likely, let alone imminent.

*Third*, the concern espoused by Napleton -- that the injunction will prevent the APA parties from closing other parts of the transaction not subject to AoA's right of first refusal -- has no merit.  On numerous occasions, the Court has instructed Wyoming Valley that, should a closing on any portion of the APA become imminent,

---

[8] Although Napleton contends that the Court's preliminary injunction and AoA's subpoena somehow has caused BMW to waver in its consideration of the APA, as discussed above, this contention is false.  *See supra* at 16–17.

Wyoming Valley may "alert the Court to the development of a closing date certain for the transaction … by filing a letter to the docket."  (Dkt. No. 30, p. 8.)

*Finally*, the circumstances that *have changed* since entry of the injunction require not only leaving the injunction in place, but extending it.   As explained in AoA's separate Motion for Order to Show Cause (Dkt. Nos. 65, 67-1), despite the Court's issuance of the TRO, and despite Wyoming Valley's repeated representations that no "side deal" with Napleton occurred, Wyoming Valley and Napleton transferred the most significant real property in the APA *after* the TRO was in effect, and then attempted to hide the transaction from AoA and the Court.   (*Id.*).   For the reasons explained in AoA's separate motion, this conduct justifies, among other things, an extension to the preliminary injunction.   *See Oce Bus. Sys., Inc. v. Slawter*, No. CIV. A. 88-8373, 1990 WL 180982, at *9 (E.D. Pa. Nov. 19, 1990) (extending injunction following violation).

## III.   THE MOTION TO QUASH THE SUBPOENAS SHOULD BE DENIED.

Napleton's motion to quash AoA's subpoenas to three manufacturers should be denied because the subpoenas seek relevant documents, they are not unduly burdensome, and, as non-parties, the Napleton entities have no standing to quash them.

As an initial matter, the Court already has determined that the subpoenas seek relevant documents that AoA is entitled to obtain.   In its Order of February 21, 2017,

the Court required Wyoming Valley to produce its communications with other manufacturers. Napleton's communications with other manufacturers are just as relevant.[9] In addition, Napleton's claim that the subpoenas are unduly burdensome plainly has no merit. None of the manufacturers has filed a motion seeking to quash the subpoenas for any reason, let alone for undue burden, and two manufacturers (BMW and Subaru) already have produced responsive documents.

In any event, as non-parties, the Napleton entities have no standing to quash the subpoenas. As a general matter, *parties* to a lawsuit do not have standing to quash subpoenas to third parties. *Leboon v. Alan Mcilvain Co.*, No. CV 12-2574, 2014 WL 11429343, at *1 (E.D. Pa. Mar. 14, 2014). Although an exception to this general rule exists where a party to the lawsuit can demonstrate "some personal right or privilege with respect to the subject matter sought in the subpoena directed to a nonparty[,]" (*see Green v. Cosby*, 314 F.R.D. 164, 173 (E.D. Pa. 2016)), this exception applies only to *parties* to the lawsuit. And even then, a party "still lacks standing to challenge a third-party subpoena based on undue burden because it is the third-party that faces the burden of production"—not the party seeking to quash. *Id.*

---

[9] Because the subpoenas seek relevant documents, Napleton's claim that AoA's service of the subpoenas is an abuse of process has no merit. *See Di Loreto v. Costigan*, 351 F. App'x 747, 755 n. 9 (3d Cir. 2009) ("use of process for a legitimate reason . . . does not constitute abuse of process") (*citing Rosen v. Am. Bank of Rolla*, 426 Pa. Super. 376, 627 A.2d 190, 193–94 (Pa. Super. Ct. 1993) (bank's subpoena of plaintiff during discovery did not constitute abuse of process because plaintiff had information relevant to bank's attempt to execute)).

Here, the Napleton entities are not parties to this lawsuit. Thus, the exception to the general rule does not apply to them, even if they could demonstrate some personal right or privilege with respect to the communications AoA sought in the subpoenas. The cases on which Napleton relies provide no help; they involve attempts by *parties* to quash third party subpoenas, not non-parties like the Napleton entities. *See CedarCrestone Inc. v. Affiliated Computer Servs. LLC*, No. 1:14-MC-0298, 2014 WL 3055355, at *7 (M.D. Pa. July 3, 2014) (denying *plaintiff's* motion to quash a subpoena to a third party); *DIRECTV, Inc. v. Richards*, No. CIV. 03-5606 (GEB), 2005 WL 1514187, at *4 (D.N.J. June 27, 2005) (denying *defendant's* motion to quash a subpoena to a third party in part because "[t]he Court finds that Defendant has not proven the existence of a threatened privilege.").

For all of the foregoing reasons, Napleton's motion to quash subpoenas should be denied. Indeed, Napleton's late effort to quash the subpoenas (filed well after the response deadlines expired) is a desperate attempt to prevent the facts from coming to light. Indeed, the only reason for Napleton to believe that AoA's subpoenas would somehow "interfere" with the APA, as it asserts in its Motion, is that Napleton knows the communications it is attempting to shield from view contain information that would further compromise Wyoming Valley's defense of this case, or implicate Napleton in misconduct. The documents BMW has produced—which prove AoA's allegation that Napleton and Wyoming Valley conspired to defeat AoA's right of first

refusal by providing a bad faith apportionment of the APA—confirm that this is precisely the case.

## CONCLUSION

For each of these reasons, the Court should deny Napleton's requests for intervention, to dissolve the preliminary injunction, and to quash AoA's subpoenas to the other manufacturers.

Dated:  March 24, 2017         Respectfully submitted,

                        **AUDI OF AMERICA, INC**.
                        An Organizational Unit of
                        Volkswagen Group of America, Inc.

                By:  / Brandon C. Prosansky
                        One of Its Attorneys

Thomas B. Schmidt, III (PA 19196)
Tucker R. Hull (PA 306426)
PEPPER HAMILTON LLP
100 Market Street, Ste. 200
Harrisburg, Pennsylvania 17108
Ph:  717.255.1155
Email:  schmidtt@pepperlaw.com
Email:  hullt@pepperlaw.com

Randall L. Oyler (IL 6209675)
Owen H. Smith (IL 6307554 / NY 693627)
Brandon C. Prosansky (IL 6293582)
BARACK FERRAZZANO KIRSCHBAUM & NAGELBERG LLP
200 West Madison, Ste. 3900
Chicago, Illinois 60606
Ph: 312.984.3100
Email:  randall.oyler@bfkn.com
Email:  owen.smith@bfkn.com
Email:  brandon.prosansky@bfkn.com

*Admitted Pro Hac Vice*

*Attorneys for Audi of America, Inc.,*
*An Organizational Unit of Volkswagen Group of America, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Brandon C. Prosansky, an attorney, certify that on the 24th day of March, 2017, a true and correct copy of the foregoing was filed through the Court's Electronic Case Filing (ECF) system on all counsel of record.


_____/s/Brandon C. Prosansky_____