Kathryn L. Simpson, Esquire
Sup. Ct. I.D. No. 28960
Mette, Evans & Woodside
3401 North Front Street
P. O. Box 5950
Harrisburg, Pa  17110-0950
(717) 232-5000 - Phone
(717) 236-1816 - Fax
*klsimpson@mette.com*

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VOLKSWAGEN GROUP OF AMERICA, INC., | |
| Plaintiff, | |
| v. | Case No. 3:16-cv-02470-JEJ |
| BRONSBERG & HUGHES PONTIAC, INC. d/b/a WYOMING VALLEY AUDI, | Judge John E. Jones III |
| Defendant. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
NORTH AMERICAN AUTOMOTIVE SERVICES, INC.'S MOTION
TO INTERVENE AS A RIGHT, OR IN THE ALTERNATIVE, FOR PERMISSIVE
INTERVENTION, MOTION TO QUASH THIRD-PARTY SUBPOENAS,
AND MOTION TO DISSOLVE PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

ARGUMENT ......................................................................................................5

    I.    Audi no longer has a right of first refusal and lacks legal standing to block consummation of the APA ......................................5

        a.    The First Addendum nullified Audi's ROFR ..........................5

        b.    Audi's statutory time to ROFR has expired..............................6

        c.    The closing of the APA would not affect Audi's theoretical ROFR ......................................................................8

        d.    Audi's Contempt Motion will fail ...........................................9

    II.    Napleton is still a party to the APA prior to closing, has a "significantly protectable" interest, and can intervene as of right .....12

    III.    One manufacturer awaits the outcome of this motion to quash; meanwhile, Audi's abuse of process continues ................................14

CONCLUSION ................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bowser Cadillac, LLC v. Gen. Mot. Corp.*,
  No. 07-1149, 2008 WL 189557 (W.D. Pa. Jan. 18, 2008) ..................................7

*Collins v. Am. Red Cross*,
  724 F. Supp. 353 (E.D. Pa. 1989) ........................................................................7

*Derrickheim Co. v. Brown*,
  305 Pa. Super. 173 (1982) ...................................................................................8

*In re Grand Jury*,
  619 F.2d 1022 (3d Cir. 1980) .............................................................................15

*In re Hart*,
  530 B.R. 293 (Bankr. E.D. Pa. 2015) .................................................................11

*I.R.S. v. Norton*,
  717 F.2d 767 (3d Cir. 1983) ...............................................................................11

*Missett v. Hub Int'l Penn. LLC*,
  6 A.3d 530 (Super. Ct. Pa. 2010)........................................................................10

*In re Rubin*,
  378 F.2d 104 (3d Cir. 1967) ...............................................................................11

*In re Scarborough-St. James Corp.*,
  554 B.R. 714 (D. Del. 2016)................................................................................7

*Seneca Ins. Co. v. Lexington & Concord Search & Abstract, LLC*,
  484 F. Supp. 2d 374 (E.D. Pa. 2007).................................................................12

**Statutes**

63 P.S. § 818.12(b)(5) ............................................................................................1, 6

63 P.S. § 818.16(1).....................................................................................................1

63 P.S. §§ 818.16(1), 818.12(b)(5) ...........................................................................6

63 P.S. § 818.16(2) ........................................................................................8

15 Pa.C.S.A. § 8818(a) ................................................................................10

15 Pa. C.S.A. § 8923 ...................................................................................10

Pennsylvania Dealer Act .........................................................................1, 6

**Other Authorities**

Fed. R. Civ. P.. 11(b) ..................................................................................14

Fed. R. Civ. P. 24(a)(2) ..............................................................................13

Fed. R. Civ. P. 24(b)(1)(B) .........................................................................13

## INTRODUCTION

Audi has no legal basis to continue to stand in the way of the closing of the APA,[1] and the Preliminary Injunction should be dissolved. First, Wyoming Valley's Audi franchise has been removed from the APA as a result of the First Addendum, so closing on the APA will not affect Audi's legal rights.

Second, Audi no longer has any legal right to exercise a right of first refusal ("ROFR"). Even if the First Addendum did not nullify Audi's ROFR, Audi's exercise of the ROFR still has to comply with Pennsylvania law. As Audi has acknowledged and repeatedly admitted (again most recently in its opposition brief), Audi had until December 28, 2016 at the latest under the Pennsylvania Dealer Act to reject Napleton as a buyer or to exercise its ROFR. *See* 63 P.S. § 818.16(1); 63 P.S. § 818.12(b)(5). Audi did not do so. Audi was well aware of this deadline, as it asked this Court to extend the deadline as part of Audi's application for a Temporary Restraining Order (the "TRO"). (*See* ECF No. 3-1 at ¶¶ 3 & 4.) This Court did not do so. As a result, Audi's failure to exercise its ROFR means its ROFR is forfeit. *See* 63 P.S. § 818.12(b)(5) ("In no event shall the total time period for approval exceed 75 days from the date of the receipt of the initial forms."). Accordingly, Audi no longer has any grounds to maintain this case, let alone to request that the injunction continue.

---

[1] Capitalized terms have the same meaning as in Napleton's moving brief.

Third, even if Audi's ROFR has somehow survived both the removal of the Audi franchise from the pending deal <u>and</u> Audi's failure to comply with the Pennsylvania statute, closing on the remainder of the APA would still have no effect on Audi's ROFR. Should Audi eventually prove that it has the right to exercise its ROFR and purchase Wyoming Valley Audi for some price, it will still be able to do so. Closing on the remainder of the APA would not affect Audi one iota. Audi's rights, if any, to purchase Wyoming Valley Audi's dealership facilities under Pennsylvania law would also be unaffected. In the unlikely scenario that Audi still has a ROFR to exercise, if and when Audi wishes to cut a check to Wyoming Valley, it will be able to irrespective of the closing under the amended APA.

Moreover, while Audi's meritless motion for contempt will be addressed in full in other papers (the "Contempt Motion"), Audi will find no aid from the Contempt Motion here. Audi has brought its Contempt Motion against 11 persons and entities on the basis of zero proof that any of those 11 persons or entities: (1) had actual knowledge of the TRO, (2) are legally identified with Wyoming Valley (other than Wyoming Valley itself), and (3) that they acted contumaciously in violation of the TRO. While Audi's lack of evidence for the Contempt Motion will ultimately doom it, we need not engage in such an exercise here. A simple review of Pennsylvania case law proves fatal to Audi. A membership interest in an

- 2 -

LLC is not an "asset," but rather considered akin to stock. Further, under the clear statute in effect at the time of the transfer, members of an LLC have no ownership interest in real property owned by the LLC. Thus, when Millennium Holdings IV ("MH4") transferred its membership interests to qualified intermediary Accruit as part of a 1031 like-kind-exchange transaction for the purpose of funding the construction projects at the Relocation Property, it transferred no "assets" under Pennsylvania law. The Relocation Property did not change hands. Before and after the transaction, MH4 owned the Relocation Property, and MH4 is still bound under the APA to transfer the Relocation Property to the purchaser in the APA, whether that buyer is Napleton or a bona fide party exercising its right of first refusal. Audi's hurried and facile attempt to muddy the waters has only dirtied Audi's own hands.

Next, Napleton has a "significantly protectable" interest in the APA as it is a party to it, and thus has a right to intervene in this action.[2] Napleton's assignment of its rights under the APA to another entity (the "Assignment"), is only effective once the seller, Wyoming Valley, and all other signatories to the APA have consented. Those consents have not been procured, and so the Assignment presently has no legal effect. Thus, Napleton's rights and interests in the APA

---

[2] The Napleton VW Dealers are withdrawing their proposed intervention motion and claims, and will seek relief against Audi through a standalone action.

continue. Audi's misdeeds in this case and otherwise continue to interfere with Napleton's rights under the APA. Audi's argument that someone else should be asserting Napleton's rights is mere misdirection. Of course, the proposed assignee can simply be added as an intervening party if there is any doubt.

And whether Napleton should be a defendant rather than a plaintiff is a question of form, not substance. Napleton can easily file whichever type of pleading the Court directs. Napleton has legally protectable interests in the merits of this litigation, and thus has a right to join it, or at least should be permitted to join.

Finally, Mazda North American Operations ("Mazda") has communicated to Napleton that it is awaiting the outcome of this motion to determine whether it must comply with the third-party subpoena. Audi's flawed reasoning for subpoenaing a number of third-parties before subpoenaing Napleton is that Audi believes Napleton would not respond to discovery in good faith. This excuse is untrue and absurd. In the meantime, Audi's abuse of process only grows, having served some 17 subpoenas in connection with its meritless motion for contempt. Audi will leave no party un-harassed and no witness unmolested in its quest to deny Napleton the fruits of it contracts. Audi's subpoena to Mazda is just one more example in Audi's pattern of malicious abuse of process, and that subpoena should be quashed, as Audi no longer has any legal rights regarding the APA.

For these reasons, the Court should grant Napleton's motions in their entirety.

## ARGUMENT

**I.     Audi no longer has a right of first refusal and lacks legal standing to block consummation of the APA.**

### a.     The First Addendum nullified Audi's ROFR.

Napleton is no longer purchasing the Audi franchise. This is a direct result of Audi's suggestion that Napleton and Wyoming Valley withdraw the APA. (Opp. Br. at 10-11.) With respect to Audi, through the First Addendum, Napleton and Wyoming Valley did withdraw the APA, as Audi requested. Audi tries to make much out of its invented fantasy that by _not_ withdrawing the _entire_ APA, but simply modifying it to remove Audi, Napleton and Wyoming Valley could enter a "sweetheart" deal for the remaining franchises and then create a separate transaction at an exorbitant price to defeat Audi's ROFR. But Audi's original suggested course of action would have offered no different result. Napleton and Wyoming Valley could have withdrawn the entire APA and then entered into separate transactions, one for six franchises and another one for Audi, in the same manner with which Audi seems so concerned. Thus, it is unclear what protection Audi thinks that it would have received by a full withdrawal of the APA, instead of

just the removal of the Audi franchise through the First Addendum. This is all just smoke and mirrors.

In fact, Audi's invented scenario ignores one important point: in that situation there would be a <u>second</u> transaction that would have to be submitted to Audi for approval. At that time, given the history of this litigation, if the price of the <u>Audi franchise transaction</u> were deemed by Audi to be too high, then and <u>only then</u> would Audi be entitled to the sweeping discovery and injunction that it has sought and until now enjoyed. Right now, however, Audi only has an unripe concern about what the parties <u>might</u> do, with no proof that there is any such plan to do so.

Contrary to Audi's contentions, Wyoming Valley has now fully responded to Audi's discovery demands, producing some 18,000 pages of documents. None of those documents demonstrates a secret plot to defeat Audi's ROFR with two transactions. Because no such plot exists. Audi lacks any evidence to support its conspiracy theories.

As a result, Audi no longer can exercise its right to step into a transaction to buy Wyoming Valley Audi, because no transaction to buy Wyoming Valley Audi exists. The preliminary injunction should be dissolved.

### b.      Audi's statutory time to ROFR has expired.

Even if somehow Audi's right of first refusal survived the First Addendum, it has not survived Pennsylvania law. Under the Pennsylvania Dealer Act, Audi had no more than 75 days from the submission of the initial application to reject Napleton or exercise its ROFR. 63 P.S. §§ 818.16(1), 818.12(b)(5). Importantly, "**in no event**" can that time be extended beyond 75 days. 63 P.S. § 818.12(b)(5) ("In no event shall the total time period for approval exceed 75 days from the date of the receipt of the initial forms.")

And it was not. Audi admits even now that it's time to exercise its ROFR would have expired, at the latest, on December 28, 2016. (Opp. Br. at 11.) Audi was well aware of this deadline, because Audi asked this Court to extend its statutory time to reject or exercise its ROFR in its application for a TRO. (ECF #3-1 at ¶¶ 3 & 4.) But this Court declined to do so. (ECF No. 16.) By statute, Audi's time to ROFR has expired.

Even had the Court extended Audi's time, it would have been ineffective under the statute. This statute clearly states that "in no event" shall Audi's time be extended. "No event" means just that: no event. No circumstance. No situation. The time cannot be extended. Just like a statute of limitations or other time limit provided by statute, the Court lacks the power to modify it. *See Bowser Cadillac, LLC v. Gen. Mot. Corp.*, No. 07-1149, 2008 WL 189557, at *3 n.2 (W.D. Pa. Jan.

18, 2008) (construing 818.12(b)(5): "In other words, the time period for response shall not exceed 75 days with extensions."); *cf. Collins v. Am. Red Cross*, 724 F. Supp. 353, 359 (E.D. Pa. 1989) (construing statutory time limit to remove: "The thirty-day limitation is mandatory and the court is without discretion to expand it.") (citations omitted); *In re Scarborough-St. James Corp.*, 554 B.R. 714, 722 (D. Del. 2016) ("The Bankruptcy Court correctly concluded that it cannot retroactively extend the deadline to assume or reject a lease under the statute.").

Fortunately for Audi, however, the Wyoming Valley Audi franchise is <u>not</u> being purchased, and thus Audi can wait to use its ROFR anew if and when some other purchaser seeks to buy it. But as for any rights Audi has under this APA, Audi has waived those rights by inaction. *See Derrickheim Co. v. Brown*, 305 Pa. Super. 173, 178-79 (1982) (holding that an option unexercised during the term of the option had expired). The preliminary injunction should be dissolved.

### c. The closing of the APA would not affect Audi's theoretical ROFR.

Even if Audi's ROFR survives both of the otherwise fatal blows described above, Audi's ROFR would be unaffected by the closing of the APA. Audi's ROFR entitles it to buy the Audi franchise at the same or greater price as a bona fide purchaser in an arms-length transaction. 63 P.S. § 818.16(2). It also obligates Audi

- 8 -

to purchase the lease or the real estate on which the franchise is conducted, on the same terms as those offered the proposed new owner. *Id*. at § 818.16(2)(i).

Under the APA, the buyer of the Wyoming Valley Audi franchise was not buying the real estate. As is often done with dealerships (as Audi is well aware), the real estate is held separately from the franchises. A separate LLC owns the Relocation Property now, and a separate LLC will own the property after the APA is closed. Thus, Audi's ROFR has only ever encompassed the Wyoming Valley Audi franchise itself and any lease arrangement between Wyoming Valley Audi and the owner of the franchise real estate.

Closing on the other franchises and the real estate will therefore not alter Audi's rights under the ROFR in the slightest. The subject of Audi's ROFR has and will remain in Wyoming Valley's hands after the close of the APA. The preliminary injunction, again, should be dissolved.

### d.    Audi's Contempt Motion will fail.

Audi has filed a meritless Contempt Motion based on the Membership Interest Purchase Agreement dated December 27, 2016 (the "Membership Agreement"), whereby the holders of the membership interests in MH4 transferred their interests to Accruit Exchange Accommodation Services, LLC ("Accruit") as qualified intermediary for Napleton Investment Partnership, LP ("NIP") through a 1031 like-kind exchange. This was done in return for a multi-million dollar

investment by NIP, which was administered through Accruit, to complete the construction projects at the real estate where several of Wyoming Valley's franchises were set to relocate (the Relocation Property). Without NIP's investment, construction at the Relocation Property would have come to a screeching halt. Audi contends that the transfer of the membership interests in MH4 violated this Court's TRO of December 22, 2016, which prohibited the transfer of any "assets" held by Wyoming Valley in connection with its dealerships. (ECF No. 16.)

Audi's vacuous Contempt Motion will fail for a number of reasons to be fully addressed in later papers. In brief, Audi has not proven (and cannot prove) that the Respondents associated with Napleton (the "Napleton Respondents"): (1) are "legally identified with" the restrained party, Wyoming Valley, (2) had actual knowledge of the TRO prior to closing the Membership Agreement, or (3) actually violated the TRO by closing the Membership Agreement. In fact, it will be clear from the eventual hearing that Audi's kneejerk motion will fail on all of the prongs Audi must prove to win its Contempt Motion.

But those factual issues need not be addressed here, as Audi's Contempt Motion also fails as a matter of law. Under Pennsylvania law, membership interests in an LLC are not the same as "assets" owned by the LLC. *Missett v. Hub Int'l Penn. LLC*, 6 A.3d 530, 537-38 (Super. Ct. Pa. 2010) ("we find the structure of the

sale of equity membership interests… to be akin to a sale of stock rather than an asset sale…. [W]e conclude that the sale… of the outstanding membership interests in [the LLC] and the subsequent name change was not a sale of assets…."). Members in an LLC have no interest in the real estate owned by the LLC. 15 Pa. C.S.A. § 8923[3] ("Property transferred to or otherwise acquired by a limited liability company becomes property of the company. A member has no interest in the specific property of a company."); *In re Hart*, 530 B.R. 293, 301 (Bankr. E.D. Pa. 2015) (denying motion for contempt of bankruptcy stay because, under Pennsylvania law, "it must be recognized that members of a limited liability company do not have *any* interest in the specific assets owned by the LLC.").

When considering a motion for contempt, the language of the order allegedly violated must be clear and concrete. *In re Rubin*, 378 F.2d 104, 108 (3d Cir. 1967) ("the order which is said to have been violated must be specific and definite."). Any ambiguity is resolved in favor of the party allegedly in violation. *I.R.S. v. Norton*, 717 F.2d 767, 774 (3d Cir. 1983) ("A party should not be held in contempt unless a court first gives fair warning that certain acts are forbidden; any ambiguity in the law should be resolved in favor of the party charged with

---

[3] While this provision was later repealed as of February 21, 2017, it was still in effect at the time of the Membership Agreement. And indeed, its replacement continues to hold that a "limited liability company is an entity distinct from its member or members." 15 Pa.C.S.A. § 8818(a).

contempt.") (citations omitted). Accordingly, as a matter of law, the TRO was not violated because Wyoming Valley did not transfer any of its "assets." To the extent Audi attempts to argue that the TRO should be read "broadly" to encompass the "spirit of" the TRO, Audi's argument must fail. The TRO must be read narrowly, and any ambiguity resolved in the Napleton Respondents' favor.

Further, the TRO was not violated. The transfer of the membership interests in MH4 did not constitute a transfer of the real estate owned by MH4. Both before and after the Membership Agreement, MH4 owned and still owns the Relocation Property. Both before and after the closing of the Membership Agreement, MH4 was and is still bound under the APA to transfer that property to either Napleton or a bona fide exerciser of a right of first refusal. The Membership Agreement was simply the mechanism used to provide needed capital to allow the construction of the Relocation Premises to be completed. The APA has not closed, partially or otherwise.

As Audi's Contempt Motion will fail and Audi has no legal standing left to seek a preliminary injunction, the preliminary injunction should be dissolved.

## II.   Napleton is still a party to the APA prior to closing, has a "significantly protectable" interest, and can intervene as of right.

Napleton is still the party in interest under the APA, and will be until the closing the APA. Under Pennsylvania law, unilateral assignments of contract

rights are void if the contract at issue requires that all parties consent to the assignment. *See Seneca Ins. Co. v. Lexington & Concord Search & Abstract, LLC*, 484 F. Supp. 2d 374, 378 (E.D. Pa. 2007) (holding assignee did not receive written consent to assignment of contractual rights, and therefore lacked standing under Pennsylvania law). There is such a written consent requirement in the APA.[4] (APA at § 17.2.) The other parties to the APA have not yet consented to the assignment referenced by Audi (Opp. Br. at 20), and there is no plan for them to do so until the APA is ready to close. Accordingly, Napleton is still the real party in interest under the APA and has a "significantly protectable" interest in the subject matter of this litigation.

There is no dispute that the APA is the main subject of this case, and there can be no dispute that Napleton is a party to the APA. As a result, Napleton has a right to intervene in this matter. Fed. R. Civ. P. 24(a)(2). Moreover, if there is any doubt, the proposed assignee can simply be added as a party to whichever form of pleading that this Court approves for filing.

Audi's other concerns regarding Napleton's intervention are ones of form, not substance. Napleton can just as easily assert its claims against Audi as

---

[4] While there is an exception to this consent requirement for entities that Napleton has an interest in, Napleton has no interest in the entity to which it unilaterally assigned its interests in the APA. Therefore, the assignment is ineffective until written consent is obtained from all parties to the APA.

counterclaims to an Intervention Answer, and will do so if the Court so directs. The proposed form of the pleading does not change the fact that Napleton has legal rights at stake in the outcome of this action, and thus has a right to intervene.

In the alternative, Napleton should be permitted to intervene, as the case was commenced in December and Napleton has claims against Audi and legal interests that will be affected by the outcome of this litigation. Fed. R. Civ. P. 24(b)(1)(B).

Napleton's motion for intervention should be granted.

## III. One manufacturer awaits the outcome of this motion to quash; meanwhile, Audi's abuse of process continues.

The fact that Audi has already managed to receive documents from two of the five non-party manufacturers in this litigation does not mean that Audi's abuse of process should continue unchecked. In fact, Mazda has informed Napleton that it is awaiting the outcome of our objection to comply with Audi's subpoena.

Moreover, Audi's pattern and practice of scattershot subpoenas is troubling. Audi served some seventeen subpoenas in connection with its Contempt Motion, many defective, for which Audi should have already had the requisite proof prior to filing. *See* Fed. R. Civ. P.. 11(b). This is in addition to the third-party subpoenas served already in this case, all before serving a subpoena on Napleton for the main action, the Buyer under the APA. Audi's irresponsible use of subpoenas evidences a pattern of harassment, not a quest to actually uncover information that might be

useful to Audi. In fact, as discussed above, Audi has no more legal rights in this case, and any further abuse of the discovery process is only designed to harass and intimidate witnesses and delay the closing of the APA.

Audi should be foreclosed from serving any further non-party subpoenas until it has exhausted the discovery from the parties in this litigation, namely Wyoming Valley and Napleton. A live deal is waiting to be closed, and Audi's antics threaten its termination. Audi's witch hunt should not be allowed to continue, and its third party subpoenas should be quashed. *See In re Grand Jury*, 619 F.2d 1022, 1026 n.3 (3d Cir. 1980) ("We have no reason to doubt that [the interested party] could bring a motion to quash on grounds of harassment, even if the subpoenaed [witness]… did not.").

## CONCLUSION

For the foregoing reasons, the Intervenor Plaintiffs respectfully request that the Court grant their motion to intervene, quash the third-party subpoenas, and dissolve the preliminary injunction in its entirety.

Respectfully submitted,

By: */s/ Kathryn L. Simpson*
Kathryn L. Simpson, Esq.
**METTE, EVANS & WOODSIDE**
3401 North Front Street
Harrisburg, PA 17110-0950
Phone: 717.232.5000
Fax: 717.236.1816
Email: klsimpson@mette.com

Russell P. McRory (*pro hac vice*)
Michael P. McMahan (*pro hac vice*)
**ARENT FOX LLP**
1675 Broadway
New York, NY 10019-5874
Phone: 212.484.3900
Fax: 212.484.3990
Email: Russell.McRory@arentfox.com
Email: Michael.McMahan@arentfox.com

**Attorneys for Intervenor-Plaintiff**
**North American Automotive Services, Inc.**

Dated:  April 6, 2017

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2017 I electronically filed the foregoing with the clerk by using the CM/ECF system constituting service on the following attorneys who have filed electronically through the Court's ECF system.

Thomas B. Schmidt, III, Esq.
*schmidtt@pepperlaw.com*
Tucker R. Hull, Esq.
*hullt@pepperlaw.com*

Attorneys for Plaintiff
VOLKSWAGEN GROUP OF
AMERICA, INC.


Nicholas D. George, Esq.
*ngeorge@swartz-legal.com*
Dennis George, Esq.
*dgeorge@arangiogeorge.com*
Jeffrey M. Scarfaria, Esq.
*jeff@scarfarialaw.com*

Attorneys for Defendant
BRONSBERG & HUGHES PONTIAC
INC. d/b/a WYOMING VALLEY
AUDI

Randall L. Oyler, Esq.
*randall.oyler@bfkn.com*
Owen H. Smith, Esq.
*owen.smith@bfkn.com*
Brandon C. Prosansky, Esq.
*brandon.prosansky@bfkn.com*

Attorneys for Plaintiff
VOLKSWAGEN GROUP OF
AMERICA, INC.

David C. Gustman, Esq.
*dgustman@freeborn.com*
Jill C. Anderson, Esq.
*janderson@freeborn.com*
Dylan Smith, Esq.
*dsmith@freeborn.com*
Charles O. Beckley, II, Esq.
*cbeckley@pa.net*
John G. Milakovic, Esq.
*johngm@pa.net*

Attorneys for Defendant
BRONSBERG & HUGHES
PONTIAC INC. d/b/a WYOMING
VALLEY AUDI


*/s/ Kathryn L. Simpson*
Kathryn L. Simpson, Esquire
**METTE, EVANS & WOODSIDE**
3401 North Front Street
Harrisburg, PA 17110-0950
Phone: 717.232.5000
Fax: 717.236.1816
Email: *klsimpson@mette.com*

**Attorneys for Intervenor-Plaintiff North
American Automotive Services, Inc.**