# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AUDI OF AMERICA, INC.,** | : | Civil No. 3:16-CV-2470 |
| | : | |
| Plaintiff | : | (Judge Jones) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| **BRONSBERG & HUGHES PONTIAC, INC. d/b/a WYOMING VALLEY AUDI,** | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM ORDER

### I. Factual Background

On December 13, 2016, Audi of America, Inc., ("Audi") brought a breach of contract action, alleging that defendant Bronsberg & Hughes Pontiac, Inc., d/b/a Wyoming Valley Audi ("Wyoming Valley") breached certain terms of an Audi Dealer Agreement into which the parties entered on January 1, 1997, when it entered into an Asset and Real Estate Purchase Agreement (the "Purchase Agreement") with the Napleton Group. Audi alleged that this Purchase Agreement between Wyoming Valley and the Napleton Group, which was signed on July 11, 2016, included the sale of Wyoming Valley's Audi assets in violation of Audi's own right of first refusal and its right to refuse to consent to the transaction on

reasonable grounds. (Doc. 1.) In January of 2017, Audi sought, and obtained, a preliminary injunction from the district court temporarily enjoining Wyoming Valley and Napleton from consummating the Purchase Agreement while this litigation was pending. (Doc. 30.) That order currently remains in effect, but is now the subject of an array of competing motions filed by the parties.

These motions include: a motion to dismiss this action, and preliminary injunction, filed by the defendants, (Doc. 42.); a motion to intervene, filed Napleton, the other participant in this asset purchase agreement, (Doc. 52.); a motion filed by Audi for rule to show cause why various parties and non-parties should not be held in contempt for allegedly violating the terms of the district court's preliminary injunction, (Doc. 65.); and a motion by Audi to extend its preliminary injunction, (Doc. 119.). The proliferation of these motions, in turn, has inspired even further motions practice, as Audi issued subpoenas to a number of non-party witnesses, seeking to compel their appearance and attendance at the contempt proceedings which Audi has initiated before this court. Some of these subpoenaed witnesses have moved to quash the outstanding subpoenas served upon them. (Docs. 101, 108, and 136.)

This on-going flurry of motions practice has compelled a division of labor within the court in order to address these various pleadings. Thus, the district court is addressing the defendants' motion to dismiss, and Audi's motion to extend the

preliminary injunction. (Docs. 42 and 119.) Indeed, a hearing is scheduled by the district court on June 28, 2017, to determine whether, and to what extent, the preliminary injunction should remain in effect.

Napleton's motion to intervene, Audi's motion to show cause why various parties and non-parties should be held in contempt, and attendant motions to quash subpoenas relating to this show-cause hearing, have been referred to the undersigned. (Docs. 52, 65, 108, 136.) In an effort to create a more orderly process out of this proliferation of motions, we are addressing six of these pending motions, as described below.

### I. Discussion

#### A. Napleton's Motion to Intervene is Granted

At the outset, Napleton has moved to intervene in this litigation both as a matter of right under Rule 24(a)(2) and permissively under Rule 24(b) of the Federal Rules of Civil Procedure. Under Rule 24 it is well settled that even:

> If a party fails to meet the requirements of Rule 24(a) to intervene as a matter of a right, that party nonetheless may be granted permission to intervene under Rule 24(b). Rule 24(b) provides, in pertinent part: "On timely motion, the court *may* permit anyone to intervene who: ... has a claim or defense that shares with the main action a common question of law or fact...." Fed.R.Civ.P. 24(b)(1) (emphasis added). Rule 24(b) further provides that, when a court exercises its discretion, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed.R.Civ.P.24(b)(3). In exercising its discretion, the court should consider various factors, including whether the proposed intervenors will add anything to the litigation and whether the proposed

intervenors' interests are already adequately represented in the litigation. Hoots, 672 F.2d at 1136.

Benjamin v. Dep't of Pub. Welfare of Cmwlth., 267 F.R.D. 456, 464–65 (M.D. Pa. 2010), aff'd sub nom. Benjamin v. Dep't of Pub. Welfare of Pennsylvania, 432 F. App'x 94 (3d Cir. 2011).

As the text of Rule 24(b) implies, decisions regarding requests for permissive joinder rest in the sound discretion of the court and will not be disturbed absent an abuse of that discretion. Hoots v. Com. of Pa., 672 F.2d 1133, 1135 (3d Cir. 1982). By its terms Rule 24(b) provides that**:** "On timely motion, the court may permit anyone to intervene who: . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P., Rule 24(b)(1)(B). Thus, Rule 24(b), "lists three requirements for permissive intervention: (1) 'timely application'; (2) 'a question of law or fact in common' between the 'applicant's claim or defense and the main action'; (3) a determination that the intervention will not 'unduly delay or prejudice the adjudication of the rights of the original parties.' " United States v. Columbia Pictures Indus., Inc., 88 F.R.D. 186, 189 (S.D.N.Y. 1980).

Judged by these benchmarks, we conclude that Napleton's request for permissive intervention should be granted. This request was made early in the litigation and is thus timely. Moreover, Napleton undeniably has a direct interest

in this lawsuit, in the form of claims and defense that share with the main action a common question of law or fact. Indeed, Napleton is a party to the Purchase Agreement which lies at the heart of this lawsuit, a transaction that Audi seeks to defeat, and enjoin. In such instances, where an injunction entered between parties may adversely affect the prospective contractual rights of a non-party, courts have in the exercise of their discretion permitted intervention. United States v. Columbia Pictures Indus., Inc., 88 F.R.D. 186, 188 (S.D.N.Y. 1980); Usery v. Brandel, 87 F.R.D. 670, 681 (W.D. Mich. 1980). Finally, we conclude that allowing Napleton to intervene will not delay these proceedings. Quite the contrary, it may streamline the proceedings by avoiding the current curious posture of this litigation where Napleton has a vital interest in the outcome of the lawsuit, and is subject to numerous discovery demands, but has no seat at the litigation table.

Finding that the discretionary prerequisites for intervention under Rule 24(b) are fully satisfied in this case, the motion to intervene is (Doc. 52.) is GRANTED.

### B. **A Number of Remaining Motions Referred to the Undersigned Should Be Denied, Dismissed or Deferred Pending Resolution of the Motion for Preliminary Injunction Scheduled for a June 28, 2017 Hearing Before the District Court**

In our view, several immediate consequences flow both from this decision granting Napleton's motion to intervene, and from the leading and active role

being taken by the district court in addressing the pending motion to dismiss and motion to extend the preliminary injunction.

At the outset, we note that the district court's decision to schedule further hearings relating to whether, and to what extent, Audi's preliminary injunction should remain in place in our view cautions against any immediate or premature action concerning the contempt show cause motion referred to us for our consideration. (Doc. 65.) We reach this conclusion mindful of the fact that the role of United States Magistrate Judges in civil contempt proceedings is narrowly defined by statute. Title 28, United States Code, Section 636(e), describes our role in this process in the following fashion: "[I]n any other case or proceeding. . . , where– the act constitutes a civil contempt, the magistrate judge shall forthwith certify the facts to a district judge . . . . The district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge." 28 U.S.C. § 636 (e)(6)(B)(iii). "To prove civil contempt the court must find that (1) a valid court order existed, (2) the defendant had knowledge of the order, and (3) the defendant disobeyed the order." John T. ex rel. Paul T. v. Delaware Cty. Intermediate Unit, 318 F.3d 545, 552 (3d Cir. 2003). Each of these "must be proven by 'clear and convincing' evidence, and ambiguities must be resolved in favor of the party charged with contempt." Id.

Questions regarding the scope, reach and continuing vitality of any court order enjoining parties thus lie at the heart of any civil contempt proceeding. These are precisely the issues which we anticipate the district court will assess and address when it considers whether to continue, modify or terminate this preliminary injunction on June 28, 2017. While the district court is undertaking this important task for the parties it would be both premature and improvident for us to attempt to certify, or decline to certify, any alleged contempt. Instead, we believe that the question of contempt litigation should await resolution of the threshold question of whether this preliminary injunction has any continuing force or vitality. Accordingly, for these reasons, we DECLINE to certify this contempt motion, (Doc. 65.), at this time, but do so without prejudice to the parties renewing this collateral litigation once the district court has addressed the question of the continuing vitality, scope and reach of this preliminary injunction.

Likewise we note that in their motion to intervene, the Napleton Group also sought to dissolve this preliminary injunction. (Doc. 52.) Since the time that Napleton filed this motion to intervene, the district court has both: (1) extended that preliminary injunction; and (2) scheduled a full hearing regarding the continuation of the injunction. In light of these subsequent actions by the district court, we deem the request to dissolve the preliminary injunction set forth in the motion to intervene (Doc. 52.) to be MOOT, and direct the parties to make any

claims that they wish to advance on this issue in the context of the scheduled preliminary injunction hearing before Judge Jones.

Our decision to decline to certify this contempt motion at present, in turn, affects the continuing vitality of a series of other motions, including motions to quash subpoenas issued in connection with, and in anticipation of, this contempt hearing. (Docs. 101 and 108.) Those motions will also be DISMISSED without prejudice to renewal in the event that Audi renews its contempt show cause motion once the district court rules upon the motion to continue the preliminary injunction.

Finally, having concluded that these show cause proceedings are premature and improvident at this time, we will DENY the motions for extension of time in which to indulge in further briefing of this show cause motion, without prejudice to further briefing if the show cause motion is renewed following the district court's decision concerning Audi's request to further extend this preliminary injunction. (Docs. 160 and 161.)

An appropriate order follows:

## II.  Order

AND NOW, this 16th day of May, 2017, IT IS ORDERED as follows:

1. Napleton's Motion to Permissively Intervene (Doc. 52.) is GRANTED.

2. Napleton's request to dissolve the preliminary injunction (Doc. 52.) is DEEMED MOOT, subject to examination of this issue by the district court in the course of the hearing scheduled on Audi's motion to extend the preliminary injunction.

3. With respect to Audi's contempt show-cause motion, (Doc. 65.), we DECLINE to certify a contempt at this time, but do so without prejudice to the parties renewing this collateral litigation once the district court has addressed the question of the continuing vitality, scope and reach of this preliminary injunction.

4. The motions to quash the subpoenas issued in connection with this show-cause motion, (Doc. 101 and 108.), are DISMISSED without prejudice to renewal in the event that Audi renews its contempt show-cause motion once the district court rules upon the motion to continue the preliminary injunction.

5. The motions for extension of time in which to indulge in further briefing of this show-cause motion, are DENIED without prejudice to further briefing if the show-cause motion is renewed following the district court's decision concerning Audi's request to further extend the preliminary injunction. (Docs. 160 and 161.)

So ordered this 16th day of May, 2017.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge