# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AUDI OF AMERICA, INC.,<br>An Organizational Unit of Volkswagen Group<br>of America, Inc.,<br>A New Jersey Corporation, | ) <br> ) <br> ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | Case No. 3:16-cv-02470-JEJ<br>Judge John E. Jones III |
| v. | ) <br> ) | |
| BRONSBERG & HUGHES PONTIAC, INC.<br>d/b/a WYOMING VALLEY AUDI,<br>A Pennsylvania Corporation, | ) <br> ) <br> ) <br> ) | |
| Defendant. | ) | |

**BRIEF IN SUPPORT OF AUDI OF AMERICA, INC.'S
MOTION TO DISMISS NORTH AMERICAN
<u>AUTOMOTIVE SERVICES, INC'S COUNTERCLAIMS</u>**

# Table of Contents

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 2

    A. Wyoming Valley and Napleton's Transactions ........................................ 2

    B. Napleton and Wyoming Valley Thwarted AoA's ROFR ......................... 3

    C. AoA Filed This Lawsuit To Enforce Its Rights ....................................... 4

    D. Napleton's Counterclaims ...................................................................... 5

ARGUMENT ...................................................................................................... 5

  I.    The *Noerr-Pennington* Doctrine Bars Napleton's Counterclaims in Their
       Entirety ..................................................................................................... 6

  II.   The First Cause of Action for "Violation of Section 12(b)(3) of the Act"
       Should be Dismissed for Additional Reasons ................................................ 9

  III.  The Second Cause of Action for "Violation of Section 16 of the Act"
       Should be Dismissed for Additional Reasons .............................................. 10

  IV.  Napleton's Tortious Interference Counterclaims Should Be Dismissed for
       Additional Reasons ..................................................................................... 11

    A. All of Napleton's Tortious Interference Causes of Action Should be
       Dismissed Because AoA Was Privileged to Interfere .............................. 11

    B. The Third Cause of Action for "Tortious Interference with Contract as
       to Napleton" Should Be Dismissed Because Napleton Fails to Allege
       Any Interference or Legal Damages ........................................................ 13

    C. The Fourth Cause of Action for "Tortious Interference with Prospective
       Contractual Relations as to Napleton" Should Be Dismissed Because
       Napleton Fails to Allege Any Interference With Closing or the Loss of
       Any Future Customer ............................................................................. 14

    D. The Fifth Cause of Action for "Tortious Interference with Contract as
       to the MIPA and the Transfer of the Relocation Property" Should Be
       Dismissed Because It is Brought by Non-Parties and There Is No
       Allegation of Any Interference or Legal Damages ................................... 16

    E. The Sixth Cause of Action for "Tortious Interference with Contract as
       to the Relocation Property Owners" Should Be Dismissed Because It is
       Brought by Non-Parties and There Is No Allegation of Any Interference
       or Legal Damages .................................................................................. 17

V.   The Seventh Cause of Action for "Violation of Section 12(b)(5) of the Act" Should be Dismissed for Additional Reason ..................................................... 18

VI.   The Eighth Cause of Action for "Abuse of Process" Should Be Dismissed for Additional Reasons ....................................................................................... 18

CONCLUSION ............................................................................................................. 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*A.D. Bedell Wholesale Co., Inc. v. Philip Morris Inc.,*
  263 F.3d 239 (3d Cir. 2001) ......................................................................... 7

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ...................................................................................... 6

*Barlow v. Brunswick Corp.,*
  311 F. Supp. 209 (E.D. Pa. 1970) ............................................................... 12

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ...................................................................................... 5

*Brownsville Golden Age Nursing Home, Inc. v. Wells,*
  839 F.2d 155 (3d Cir. 1988) ......................................................................... 6

*Buck v. Hampton Twp. Sch. Dist.,*
  452 F.3d 256 (3d Cir. 2006) ......................................................................... 6

*California Motor Trans. Co. v. Trucking Unlimited,*
  404 U.S. 508 (1972) ...................................................................................... 7

*Cheminor Drugs, Ltd. v. Ethyl Corp.,*
  168 F.3d 119 (3d Cir. 1999) ......................................................................... 7

*Credico v. Hubiak,*
  2017 WL 1505246 (Pa. Super. Ct. Apr. 21, 2017) ..................................... 19

*Crivelli v. General Motors Corp.,*
  215 F.3d 386 (3d Cir. 2000) .................................................................. 11, 12

*Freeman v. Lasky, Haas & Cohler,*
  410 F.3d 1180 (9th Cir. 2005) ...................................................................... 7

*Habe v. Fort Cherry Sch. Dist.,*
  786 F. Supp. 1216 (W.D. Pa. 1992) ........................................................... 15

*Lance Int'l Ltd. v. Menominee Paper Co.,*
  1999 WL 482317 (E.D. Pa. July 9, 1999) .................................................. 15

*Leveto v. Lapina,*
258 F.3d 156 (3d Cir. 2001) ................................................................................ 6

*Magnetar Techs. Corp. v. Six Flags Theme Parks, Inc.,*
2011 WL 678707 (D. Del. Feb. 18, 2011) ......................................................... 7

*McGee v. Feege,*
535 A.2d 1020 (Pa. 1987) ................................................................................. 19

*Peoples Mortg. Co. v. Fed. Nat. Mortg. Ass'n,*
856 F. Supp. 910 (E.D. Pa. 1994) ................................................................... 12

*QVC, Inc. v. Resultly, LLC,*
159 F. Supp. 3d 576, 599 (E.D. Pa. 2016) ..................................................... 15

*Rosen v. Am. Bank of Rolla,*
627 A.2d 190 (Pa. Super. Ct. 1993) ............................................................... 19

*Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.,*
401 F.3d 123 (3d Cir. 2005) ............................................................................ 15

*Schulman v. J.P. Morgan Inv. Mgmt., Inc.,*
35 F.3d 799 (3d Cir. 1994) .............................................................................. 12

*Singh v. NYCTL 2009-A Trust,*
683 F. App'x 76 (2d Cir. 2017) ......................................................................... 7

*Sixth Angel Shepherd Rescue Inc. v. West,*
790 F. Supp. 2d 339 (E.D. Pa. May 3, 2011) ................................................ 19

*Sosa v. DIRECTV, Inc.,*
437 F.3d 923 (9th Cir. 2006) ............................................................................. 7

*Sudarkasa v. Glanton,*
57 Pa. D. & C. 4th 472 (Pa. Ct. Com. Pl. 2002) ............................................. 7

*Thornton v. UL Enterprises,*
2010 WL 1005021 (W.D. Pa. Mar. 16, 2010) ......................................... 14, 17

*Trs. of Univ. of Pennsylvania v. St. Jude Children's Research Hosp.,*
940 F. Supp. 2d 233 (E.D. Pa. 2013) ........................................................... 7, 8

*Volvo Group N.A., LLC v. Truck Enters., Inc.,*
2017 WL 1483431 (W.D. Va. Mar. 31, 2017) ............................................... 10

## STATUTES

63 P.S. § 12(b)(3) ........................................................................................ 7, 9

63 P.S. § 12(b)(5) ...................................................................................8, 10, 18

63 P.S. § 16 ............................................................................................8, 10, 11

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6) ................................................................................ 20

Restatement (Second) of Torts § 773......................................................11, 12

Restatement (Second) of Torts § 682.............................................................. 19

## **INTRODUCTION**

As the Court is well aware, Audi of America, Inc. ("AoA") initiated this lawsuit in December 2016 to protect its right of first refusal ("ROFR") over the proposed transfer of an Audi dealership from Bronsberg & Hughes Pontiac, Inc. d/b/a Wyoming Valley Audi ("Wyoming Valley") to Intervenor North American Automotive Services, Inc. d/b/a the Ed Napleton Automotive Group ("NAAS" and, collectively with all relevant NAAS-affiliated entities, "Napleton").

In July 2017, after NAAS intervened in this action, NAAS and several other Napleton entities (which have not intervened and are not proper parties) filed a scattershot pleading asserting eight counterclaims against AoA.   All of these counterclaims are premised on alleged events and conduct that occurred *after* Wyoming Valley and Napleton disclosed their proposed transaction:   AoA's pre-litigation efforts to ascertain the terms of its ROFR; AoA's conduct in the context of the litigation; and ultimately the Court's rulings in the litigation based upon facts and law that all parties, including NAAS, have had an opportunity to present.   None of Napleton's causes of action state a claim for relief.

First and foremost, because each of Napleton's counterclaims is premised on AoA's pre-litigation and litigation conduct, the *Noerr-Pennington* Doctrine presents an absolute bar to the claims.   Indeed, *Noerr-Pennington* bars any claim based upon conduct in litigation or "incidental" to litigation, including pre-litigation demands and discovery.   The only exception to this rule is when the litigation or related conduct is a

1

"sham," *i.e.*, lacking in any probable cause or reasonable basis. Napleton's conclusory accusations aside, there can be no showing that AoA's conduct was a "sham." To the contrary, the Court has already issued multiple injunctions against Wyoming Valley and Napleton, and has ordered Napleton to forever quit its interest in Wyoming Valley's Audi dealership.

Napleton's counterclaims must also be dismissed for additional reasons. As to each counterclaim, the facts alleged negate the necessary elements. For example, the allegations underpinning Napleton's four separate "tortious interference" claims establish that no interference occurred and that no legal damages resulted. Likewise, at least two of the counterclaims are asserted on behalf of non-parties that never intervened, but which Napleton improperly has attempted to join as so-called "Intervenor-Defendants."

Napleton's counterclaims should be dismissed with prejudice.

## BACKGROUND

### A.    Wyoming Valley and Napleton's Transactions.

This case involves Wyoming Valley's proposed transfer of its Audi dealership assets as part of a larger package transaction (*i.e.*, the Asset and Real Estate Purchase Agreement (the "APA")) to Napleton-affiliated entities. (Doc. 219 (Napleton's Answer ¶ 17; Doc. 52-1 ¶¶ 1–2.) In the APA, Wyoming Valley agreed to sell real estate, hard assets, and intangible assets (including "blue sky") of its dealerships to

Napleton.  The intangible asset price set forth in the APA is $17 million.  (Answer ¶ 17.)

Wyoming Valley also agreed to transfer certain real estate to Napleton, including property where it sought to relocate its Audi dealership along with three other brands (the "Relocation Property").  (Counterclaim ¶¶ 55–58.)  In December 2016, Wyoming Valley transferred the Relocation Property to Napleton through a Membership Interest Purchase Agreement (the "MIPA").  (*See* Counterclaim ¶¶ 62–63.)

### B.   Napleton and Wyoming Valley Thwarted AoA's ROFR.

AoA has a contractual and statutory ROFR over the proposed sale of the Wyoming Valley Audi dealership. (Counterclaim ¶¶ 71–72; *see also* Doc. 35-1 ¶ 2, Doc. 35-2, Art. 12.)   AoA was unable to exercise its contractual and statutory ROFRs, however, because the APA did not identify what terms were applicable to the Audi dealership transfer, including an apportionment of the $17 million purchase price. (Doc. 35-3; Counterclaim ¶¶ 22–26.)  So AoA, by letter dated September 28, 2016, asked Wyoming Valley for this information.   (Doc. 35-4.)   After months of correspondence, Wyoming Valley asserted that $8 million of the $17 million price was attributable to the Audi dealership.  (Doc. 35-6; Counterclaim ¶ 26.)

Wyoming Valley and Napleton later admitted that the $8 million was not an apportionment of the APA price, but rather the purported standalone value of Audi. (Doc. 35-8 at 3; Answer ¶ 33; Doc. 52-2 ¶ 28.)

3

### C.   AoA Filed This Lawsuit To Enforce Its Rights.

Because Napleton and Wyoming Valley refused to provide a breakdown of the APA price, AoA filed suit on December 13, 2016 (Doc. 1), along with a Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction. (Doc. 3.)

Less than a week later, on December 19, 2016, Wyoming Valley informed AoA that "the parties to the APA had decided to remove the Audi assets from the transaction through an amendment thereto." (Counterclaim ¶ 84.)  Two days later, on December 21, 2016, just before the Court held a telephonic hearing on AoA's motion for TRO, Wyoming Valley sent AoA the "First Addendum," which purported to remove the "Audi Business" from the transaction. (*See* Doc. 9; Answer ¶ 37.)

The Court issued the TRO on December 22, 2016, and later converted it to a preliminary injunction. (Docs. 16, 22, 30, 28.)  Then, on AoA's motion to extend the preliminary injunction, the Court scheduled a hearing for June 28, 2017. (Doc. 147.) Just before the June 28 hearing, Napleton informed the Court that Napleton and Wyoming Valley had agreed to close the sale of the remaining dealerships by a date certain:  August 28, 2017. (Doc. 199.)

At the June 28 hearing, the district court met with the parties to discuss a potential resolution.   As a result of stipulations entered by the parties and memorialized on the record, the district court entered its June 29, 2017 Order. (Doc. 213.)   In that Order, the Court lifted the injunction prohibiting the closing of the broader transaction, subject only to Wyoming Valley's negotiations with BMW. (*Id.* at

¶¶ 1–3.) On July 6, Napleton and Wyoming Valley notified the Court that they had resolved their dispute with BMW and would close the BMW sale and the four other non-Audi and Volkswagen brands.  (Doc. 214.)

### D.   Napleton's Counterclaims.

On March 2, 2017, certain Napleton-affiliated entities sought leave to intervene in this action: (1) NAAS; (2) Napleton Orlando Imports, LLC; (3) Napleton Sanford Imports, LLC; and (4) Napleton Automotive of Urbana, LLC.  (Doc. 52.)  The Court granted that motion on May 16, 2017.  (Doc. 167.)

On July 19, 2017, Napleton filed its Answer and Counterclaims.  (Doc. 219.) In its pleading, Napleton purports to assert claims on behalf of NAAS and four Napleton entities that have never sought, nor been granted, leave to intervene: Napleton Wyoming Valley Imports, LLC, Napleton Investment Partnership, LP ("NIP"), EFN Wyoming Valley Properties, LLC ("EFN Wyoming Valley"), and Millennium Holdings IV, LLC ("MH4").  Napleton's pleading asserts four separate tortious interference claims; three separate statutory claims; and one "abuse of process" claim.  Each of these claims should be dismissed with prejudice.

### ARGUMENT

A claimant's "obligation to provide the 'grounds' of his entitlement to relief" in a complaint "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do[.]"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  Instead, a complaint survives a motion to dismiss

only if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible if the claimant "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

Moreover, a claimant can plead himself out of court when the allegations, taken as true, require judgment in the defendant's favor as a matter of law. *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001). In making this determination, the Court is not limited to the four corners of the complaint, but may consider matters referenced in the complaint, in the case record already, in the public record, or which are otherwise undisputed. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

I.   **The *Noerr-Pennington* Doctrine Bars Napleton's Counterclaims in Their Entirety.**

Each of Napleton's counterclaims is based upon AoA's alleged conduct in this lawsuit or incidental to it. The *Noerr-Pennington* Doctrine holds that such conduct is not actionable under any theory: "liability cannot be imposed for damage caused by inducing legislative, administrative, or judicial action[.]" *Brownsville Golden Age Nursing Home, Inc. v. Wells*, 839 F.2d 155, 160 (3d Cir. 1988). Rather, such conduct is constitutionally protected as the exercise of one's right to petition the government under the First Amendment of the United States Constitution and Article I, Section 20 of the Pennsylvania Constitution.

*Noerr-Pennington* thus bars any cause of action based upon another party's conduct in filing or pursuing litigation. *See, e.g., California Motor Trans. Co. v. Trucking Unlimited*, 404 U.S. 508, 510–11 (1972); *Trs. of Univ. of Pennsylvania v. St. Jude Children's Research Hosp.*, 940 F. Supp. 2d 233, 243-44 (E.D. Pa. 2013) (applying *Noerr-Pennington* to bar tortious interference claim); *Sudarkasa v. Glanton*, 57 Pa. D. & C. 4th 472, 498–501 (Pa. Ct. Com. Pl. 2002) (same); *see also Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 128–29 (3d Cir. 1999) (applying *Noerr-Pennington* to bar state law claims for malicious prosecution, tortious interference with contractual relations, tortious interference with prospective economic advantage, and unfair competition).

In addition, *Noerr-Pennington* generally bars claims based upon conduct "incidental" to litigation, such as pre-litigation threat and demand letters, settlement talks, and discovery activity. *A.D. Bedell Wholesale Co., Inc. v. Philip Morris Inc.*, 263 F.3d 239, 253 (3d Cir. 2001); *Singh v. NYCTL 2009-A Trust*, 683 F. App'x 76, 77–78 (2d Cir. 2017); *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1185 (9th Cir. 2005); *see also Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 935 n.7 (9th Cir. 2006); *Magnetar Techs. Corp. v. Six Flags Theme Parks, Inc.*, 2011 WL 678707, at *2 (D. Del. Feb. 18, 2011).

Here, Napleton's counterclaims (all of which seek damages) are based entirely upon AoA's alleged actions in this litigation or incidental to it:

- Count I alleges a violation of 63 P.S. § 12(b)(3) "[b]y way of Audi's measures to deny Napleton's application to become a successor Audi dealer"—*i.e.*, AoA's conduct of this litigation. (Counterclaim ¶ 111.)

- Count II alleges a violation of 63 P.S. § 16 based on AoA's "unreasonable demands, the filing of the present action, and unnecessary third-party discovery." (*Id.* ¶ 119.)

- Count III alleges tortious interference with contract (as to NAAS) based on AoA serving purportedly "frivolous and abusive subpoenas to the non-Audi manufacturers involved in the transaction." (*Id.* ¶ 126.)

- Count IV alleges tortious interference with prospective contractual relations (as to NAAS) based on AoA's "efforts to unwind the deal and its abuse of process within this action." (*Id.* ¶ 141.)

- Counts V and VI allege tortious interference with contract (as to the MIPA and the Relocation Property and to the Relocation Property Owners, respectively) based on AoA's rescission of the Relocation Agreement and litigation efforts to prevent Wyoming Valley from relocating the Audi dealership to the Napleton-owned Relocation Property. (*Id.* ¶¶ 151–52; 165.)

- Count VII alleges a violation of 63 P.S. § 12(b)(5) based on AoA's pre-litigation and litigation conduct, including the timing of its decision to initiate this lawsuit. (Counterclaim ¶¶ 181-186.)

- Count VIII alleges abuse of process based on AoA's issuance of "subpoenas to non-party manufacturers … and certain lenders," and its request for an "injunction of the entire transaction." (*Id.* ¶¶ 188–189.)

Recognizing that *Noerr-Pennington* is fatal to its claims, Napleton may try to argue the doctrine does not apply because AoA's litigation is a "sham." This argument is baseless. "In order for a suit to be a 'sham,' it 'must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*.'" *St. Jude*, 940 F.

8

Supp. 2d at 244 (quoting *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.,* 508 U.S. 49, 60 (1993)).

No such showing would be possible here: the Court has already issued multiple injunctions against Wyoming Valley and Napleton, and has ordered Napleton to forever quit its interest in Wyoming Valley's Audi dealership. Moreover, Napleton's allegations regarding AoA's purposes are nothing more than conclusory, *ad hominem* accusations—AoA's "dark motives," its "desire to penalize Napleton," its "thuggish tactics"—devoid of factual matter. (Counterclaim ¶¶ 33, 30, 49.) Indeed, Napleton's hyperbole aside, it has not and cannot demonstrate that this litigation and AoA's conduct in connection with it is a "sham." Accordingly, pursuant to *Noerr-Pennington*, Napleton's counterclaims should be dismissed in their entirety.

## II.   The First Cause of Action for "Violation of Section 12(b)(3) of the Act" Should be Dismissed for Additional Reasons.

In its First Cause of Action, Napleton alleges that AoA violated 63 P.S. § 12(b)(3) "by unreasonably withholding consent to the sale of the Audi franchise to Napleton." (Counterclaim ¶ 110.) AoA allegedly did this by failing to exercise its ROFR or reject the APA, by either December 19 or December 29, 2016. This claim fails for at least two reasons.

First, based on Napleton's own allegations, no statutory deadline ever arrived. Napleton alleges that on December 19, 2016, before any statutory deadline expired, Wyoming Valley informed AoA of its agreement with Napleton to remove the Audi

dealership from the APA.  (Counterclaim ¶ 84.)  Taken as true, there was no proposed transaction for AoA to consent to by any statutory deadline.[1]  Napleton cannot have it both ways:  it cannot allege that it agreed to remove Audi from the transaction *before* the deadline, but also claim that AoA failed to exercise its rights *by* the deadline.

Second, Wyoming Valley and Napleton negated the deadlines in Section 12(b)(5) by failing to identify the terms of AoA's ROFR.  *See Volvo Group N.A., LLC v. Truck Enterps., Inc.*, 2017 WL 1483431, at *13 (W.D. Va. Mar. 31, 2017).

## III.   The Second Cause of Action for "Violation of Section 16 of the Act" Should be Dismissed for Additional Reasons.

In its Second Cause of Action, Napleton alleges that AoA violated Section 16 of the Pennsylvania Board of Vehicles Act (the "Act")—which provides a statutory ROFR—through its "attempt to delay the exercise [of] its right of first refusal by and through their frivolous allegations and vexatious conduct—including Audi's unreasonable demands, the filing of the present action, and unnecessary third-party discovery."  (Counterclaim ¶ 119.)  Under Section 16, the time limit for exercising the ROFR is set forth in Section 12(b)(5), and is therefore the same 75-day deadline identified in Napleton's First Cause of Action.  *See* 63 P.S. § 16(1).  Thus, Napleton's

---

[1] In any event, Napleton's allegation that December 19 was the statutory deadline—despite the parties' agreement to the contrary—is both duplicitous and incorrect.  Napleton alleges that its agreement to extend the statutory deadline to December 29, 2016 is void because "such extensions [are] not authorized under the statute."  (Counterclaim ¶ 182.)  But the deadline was not extended.  Napleton expressly agreed that the 75-day clock *did not start* until October 14, which made the deadline fall on December 29, 2016.  (Doc. No. 4-11 at 2.)  Moreover, nothing in the statute prohibits waiver of the deadline, and Wyoming Valley and Napleton certainly can waive a deadline that exists for their benefit.

claim that AoA violated Section 16 fails for the same reasons as its First Cause of Action.  AoA refers the Court to Section II above.

## IV.  Napleton's Tortious Interference Counterclaims Should Be Dismissed for Additional Reasons.

In its Third through Sixth Causes of Action, Napleton alleges various claims for tortious interference.  The elements of tortious interference with a contractual relationship or prospective contractual relations are:

1) the existence of a contractual, or prospective contractual, relationship between the complainant and a third party;

2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring;

3) the absence of privilege or justification on the part of the defendant; and

4) the occasioning of actual legal damage as a result of defendant's conduct.

*Crivelli v. General Motors Corp.*, 215 F.3d 386, 394 (3d Cir. 2000).

Each of Napleton's tortious interference claims should be dismissed because Napleton has failed to plead the necessary elements of such claims and, with respect to the Fifth and Sixth Causes of Action, because the claims are brought by non-parties.

### A.    All of Napleton's Tortious Interference Causes of Action Should be Dismissed Because AoA Was Privileged to Interfere.

"Pennsylvania has expressly adopted the Restatement (Second) of Torts, which states that a necessary element of [tortious interference] is improper conduct by the

alleged tortfeasor." *Id.* Accordingly, the plaintiff bears the burden of pleading and proving lack of privilege or justification. *Barlow v. Brunswick Corp.*, 311 F. Supp. 209, 212 (E.D. Pa. 1970).

Section 773 of the Restatement (Second) of Torts provides a privilege to interfere where the defendant believes that its legally protected interest may be impaired by the performance of the contract. Indeed, the Third Circuit previously has applied Section 773 to hold that a motor vehicle manufacturer's exercise of its right of first refusal did not tortiously interfere with a dealer's proposed sale of its dealership because the manufacturer's conduct was privileged. *See Crivelli*, 215 F.3d at 394–96 (reversing jury verdict); *see also Schulman v. J.P. Morgan Inv. Mgmt., Inc.*, 35 F.3d 799, 810–11 (3d Cir. 1994) (lender's exercise of contract right to reject proposed tenant was privileged under Section 773 because lender's mortgage gave it the right to approve all proposed tenants); *Barlow,* 311 F. Supp. at 213 (defendant's refusal to allow billiards player with whom it had contracted for promotional appearances to participate in proposed television show was privileged under Section 773); *Peoples Mortg. Co. v. Fed. Nat. Mortg. Ass'n*, 856 F. Supp. 910, 934 (E.D. Pa. 1994) (Fannie Mae's decision to exercise right to terminate mortgage agreement with plaintiff was privileged).

Here, as in *Crivelli*, all of Napleton's tortious interference claims are based on AoA's efforts to enforce its contractual ROFR. Indeed, all of Napleton's allegations address AoA's conduct *after* Wyoming Valley and Napleton disclosed the APA and

refused to provide good faith responses to AoA's requests for information. Most involve conduct occurring within the context of this litigation, in which AoA is seeking to enforce its legally protected interests. Section 773 therefore applies and AoA's alleged conduct is privileged. The Court should dismiss Napleton's Third through Sixth Causes of Action.

### B. The Third Cause of Action for "Tortious Interference with Contract as to Napleton" Should Be Dismissed Because Napleton Fails to Allege Any Interference or Legal Damages.

Napleton alleges in its Third Cause of Action that AoA interfered with the closing of the APA as to the non-Audi dealerships (Counterclaim ¶¶ 123–134) by: (1) serving "frivolous and abusive subpoenas on the non-Audi manufacturers involved in the transaction" (*id.* ¶¶ 126–27); and (2) "[u]pon information and belief . . . seeking out and communicating with potential alternate buyers for not just the Audi and Volkswagen franchises, but for all seven franchises that are part of the Proposed Transaction." (*Id.* at ¶ 128.)

This claim fails because Napleton has not been prevented from closing its purchases of the remaining dealerships. Napleton has not alleged that the APA was set to close as to the other brands at any point in time before the June 28, 2017 hearing, much less that AoA's third-party subpoenas and "on information and belief" communications with potential buyers prevented any closing.

Then on June 26 and 27, 2017, Napleton's counsel wrote to the Court stating that Napleton and Wyoming Valley had agreed to close on the remaining dealerships

on August 28, 2017.  (Docs. 199 & 202.)  Only two days later, the Court's June 29, 2017 Order lifted the injunction prohibiting the sale of the remaining dealerships, clearing the way for Napleton and Wyoming Valley to close on their agreed schedule. Thus, there could have been no interference and no damage.  *See Thornton v. UL Enterprises*, 2010 WL 1005021, at *2 (W.D. Pa. Mar. 16, 2010) (dismissing tortious interference with contract claim based on a finding of no actual damages, when the claimant admitted that "no party has yet to breach any contract with [the claimant]"). The Third Cause of Action must be dismissed.

### C.     The Fourth Cause of Action for "Tortious Interference with Prospective Contractual Relations as to Napleton" Should Be Dismissed Because Napleton Fails to Allege Any Interference With Closing or the Loss of Any Future Customer.

Napleton alleges in its Fourth Cause of Action that AoA interfered with its prospective relations with future customers by interfering with the closing of the APA, and Napleton seeks damages for lost profits from operating the non-Audi dealerships.  This cause of action fails for at least two reasons.

First, the Fourth Cause of Action is wholly derivative of the Third:  Napleton allegedly lost prospective future customers as a result of AoA's litigation efforts to prevent the closing of the APA.  Accordingly, the Fourth Cause of Action, like the Third, must be dismissed—Napleton does not allege that AoA prevented the APA from closing as to the other brands, and under the June 29, 2017 Order, AoA could not prevent the APA from closing.

Second, Napleton has failed to allege the identity of a single future customer that it has lost as a result of AoA's alleged conduct. "A prospective contractual relation 'is something less than a contractual right, something more than a mere hope.'" *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 140 (3d Cir. 2005) (citing *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466, 471 (1979)). Thus, it is necessary to plead "that but for the wrongful acts of the defendants it is reasonably probable that a contract would have been entered." *Habe v. Fort Cherry Sch. Dist.*, 786 F. Supp. 1216, 1222 (W.D. Pa. 1992); *see also QVC, Inc. v. Resultly, LLC*, 159 F. Supp. 3d 576, 599 (E.D. Pa. 2016) (dismissing claim for tortious interference with prospective contract where plaintiff could not identify a single customer prevented from purchasing on plaintiff's website while defendant's activities overloaded plaintiff's servers); *Lance Int'l Ltd. v. Menominee Paper Co.*, 1999 WL 482317, at *4 (E.D. Pa. July 9, 1999) (where customer had independently decided to no longer deal with plaintiff, plaintiff could not establish any prospective contractual relation and therefore tortious interference claim failed).

Because Napleton has not and cannot identify a customer with which it had a prospective contractual relationship, Napleton's Fourth Cause of Action must fail.

**D.    The Fifth Cause of Action for "Tortious Interference with Contract as to the MIPA and the Transfer of the Relocation Property" Should Be Dismissed Because It is Brought by Non-Parties and There Is No Allegation of Any Interference or Legal Damages.**

The Fifth Cause of Action alleges that AoA tortiously interfered with two transactions related to certain real estate.  (Counterclaim ¶¶ 146–59.)  One of the transactions was the MIPA, through which NIP acquired 100% of the membership interests in MH4, which owns the Relocation Property (the "MH4 Transaction"). The second transaction is the anticipated transfer of the Relocation Property from MH4 to EFN Wyoming Valley.  This claim fails for at least two reasons.

First, the cause of action purports to assert a claim on behalf of NIP, MH4, and/or EFN Wyoming Valley, none of which is a party to this lawsuit.  NAAS has no standing to assert this claim, as it is not a party to the MIPA, to the MH4 Transaction, or to the anticipated subsequent transfer of the Relocation Property to EFN Wyoming Valley.  (*Id.* ¶¶ 62–63.)

Second, Napleton fails to allege that AoA has interfered with either real estate transaction or that it has suffered any legal damages as a result.  The MH4 Transaction already has closed; it closed in December 2016, before AoA even knew of it.  (*See id.*) Although Napleton also alleges that AoA interfered with the MIPA after closing—*i.e.*, when AoA indicated, in its May 22, 2017 letter, that it would consider permitting the Audi dealership to relocate if the parties unwound the transaction—Napleton does not and cannot allege that the MIPA transaction was ever unwound.  Thus, even if

AoA intended to interfere with the MIPA (which it did not), AoA did not succeed. Accordingly, there was no interference and no resulting legal damage. *See Thornton*, 2010 WL 1005021, at *2.

Likewise, Napleton still intends to complete the MH4-to-EFN Wyoming Valley transaction when the APA closes. (*Id.* ¶ 63.) As explained in Section IV.B. above, because the Court's June 29 Order expressly permits this transaction, AoA's conduct has not interfered with it.

### E. The Sixth Cause of Action for "Tortious Interference with Contract as to the Relocation Property Owners" Should Be Dismissed Because It is Brought by Non-Parties and There Is No Allegation of Any Interference or Legal Damages.

The Sixth Cause of Action alleges that AoA tortiously interfered with existing and future leases between "Relocation Property Owner" – MH4 and EFN Wyoming Valley – and "certain dealerships." (*See* Answer at 2 (defining "Relocation Property Owner"); Counterclaim ¶ 164.) This claim fails for at least three reasons.

First, as explained in Section IV.D. above, neither "Relocation Property Owner" is a party to this action, and NAAS has no standing to assert this claim, as it is not alleged to be a party to any of the purported leases.

Second, as with the Fifth Cause of Action, this claim is based upon AoA's May 22, 2017 letter, which indicated that AoA would consider permitting the Audi dealership to relocate if the parties unwound the "dealings and transactions" related to the Relocation Property. (Counterclaim ¶ 165.) According to Napleton, if all of the

"dealings and transactions" were unwound, the leases would be invalidated. (*Id.* at ¶ 166.) But Napleton fails to allege that any "dealings and transactions" were unwound. Such an allegation is a necessary predicate to any claim that AoA interfered with a lease or that any Napleton-affiliated entity suffered legal damages.

## V.     The Seventh Cause of Action for "Violation of Section 12(b)(5) of the Act" Should be Dismissed for Additional Reasons.

In its Seventh Cause of Action, Napleton alleges that AoA violated the Act by failing to exercise its right of first refusal within Section 12(b)(5) of the Act's 75-day limit.   (Counterclaim ¶¶ 174–184).   This claim fails for the reasons discussed in Section II, above.   First, Napleton cannot claim that the Section 12(b)(5) deadline expired because it claims that it withdrew the Audi dealership from the transaction before the deadline.   Second, Wyoming Valley and Napleton negated the deadline by failing to provide AoA with the terms of its ROFR.

## VI.    The Eighth Cause of Action for "Abuse of Process" Should Be Dismissed for Additional Reasons.

In its Eighth Cause of Action, Napleton alleges that AoA has misused subpoenas to non-party manufacturers "to coerce [them] to reject or revoke their approval of Napleton as the purchaser of the respective non-party manufacturer franchises owned by Wyoming Valley" and to third-party lenders "to dissuade those lenders from financing the transactions in the APA[.]" (Counterclaim ¶¶ 195–196; *see also id.* ¶ 193.)

But Napleton cannot bring a third-party abuse of process claim against AoA. *See, e.g.*, *Credico v. Hubiak*, 2017 WL 1505246, at \*3 (Pa. Super. Ct. Apr. 21, 2017) ("Pennsylvania does not recognize [a] cause of action for third-party abuse of process") (quoting the trial court opinion); *Sixth Angel Shepherd Rescue Inc. v. West*, 790 F. Supp. 2d 339, 359 (E.D. Pa. May 3, 2011) ("[The plaintiff's] allegations grounded in legal processes commenced against third parties [ ] fail to satisfy an element of Pennsylvania-law abuse of process claims, as such actions were not initiated against [the plaintiff].").

The Restatement (Second) of Torts § 682 governs abuse of process claims. *See, e.g.*, *McGee v. Feege*, 535 A.2d 1020, 1024 (Pa. 1987); *Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. Ct. 1993). Section 682 defines "abuse of process" as:

> One who uses a legal process, whether criminal or civil, *against another* primarily to accomplish a purpose for which it is not designed, is *subject to liability to the other* for harm caused by the abuse of process.

(emphasis added). Under Section 682's plain language, a party that commits an abuse of process is liable only to the party against whom the legal process is initiated.

Section 682 applies to subpoenas, including an illustration demonstrating that only the subpoenaed party may claim abuse of process. *See* Restatement (Second) of Torts § 682, Illustration 3; *see also Rosen*, 627 A.2d at 194 ("To permit a cause of action for abuse of process for service of a subpoena upon a witness to obtain relevant information possessed by the witness would wreak havoc with the judicial system.").

19

## CONCLUSION

For the foregoing reasons, the Court should dismiss Napleton's Counterclaims pursuant to Fed. R. Civ. P. 12(b)(6).

Dated:  September 20, 2017                    Respectfully submitted,

**AUDI OF AMERICA, INC**.
An Organizational Unit of
Volkswagen Group of America, Inc.


By:   */s/ Owen Smith*
            One of Its Attorneys

Thomas B. Schmidt, III (PA 19196)
Justin G. Weber (PA 89266)
PEPPER HAMILTON LLP
100 Market Street, Ste. 200
Harrisburg, Pennsylvania 17108
Ph:  717.255.1155
Email:  schmidtt@pepperlaw.com
Email:  weberjg@pepperlaw.com

Randall L. Oyler (IL 6209675)
Owen H. Smith (IL 6307554 / NY 693627)
Brandon C. Prosansky (IL 6293582)
BARACK FERRAZZANO KIRSCHBAUM &
NAGELBERG LLP
200 West Madison, Ste. 3900
Chicago, Illinois 60606
Ph: 312.984.3100
Email:  randall.oyler@bfkn.com
Email:  owen.smith@bfkn.com
Email:  brandon.prosansky@bfkn.com
*Admitted Pro Hac Vice*

*Attorneys for Audi of America, Inc.,*
*An Organizational Unit of Volkswagen Group of*
*America, Inc.*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8

Pursuant to Rule LR 7.8(b), the undersigned hereby certifies that Plaintiff Audi of America, Inc.'s Brief in Support of its Motion to Dismiss North American Automotive Services, Inc.'s Counterclaims was prepared in Microsoft Word 2010 using 14-point font.  The undersigned further certifies that the above referenced Memorandum contains 4,943 words according to Microsoft Word 2010's word count, including headings, footnotes and quotations.

Date: September 20, 2017                    Respectfully submitted,


                                        By: /s/ Owen H. Smith

21

## <u>CERTIFICATE OF SERVICE</u>

      I, Owen H. Smith, certify that on the 20th day of September, 2017, a true and correct copy of the foregoing was served via the Court's Electronic Case Filing (ECF) system upon all counsel of record.

<u>/s/ Owen Smith</u>
Owen H. Smith

22