## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AUDI OF AMERICA, INC.,<br>An Organizational Unit of Volkswagen Group<br>of America, Inc.,<br>A New Jersey Corporation, | ) <br> ) <br> ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | Case No. 3:16-cv-02470<br>Judge John E. Jones III |
| v. | ) <br> ) | |
| BRONSBERG & HUGHES PONTIAC, INC.<br>d/b/a WYOMING VALLEY AUDI,<br>A Pennsylvania Corporation, | ) <br> ) <br> ) <br> ) | |
| Defendant. | ) | |

## REPLY BRIEF
## IN SUPPORT OF AUDI OF AMERICA, INC.'S
## MOTION TO DISMISS NAPLETON'S COUNTERCLAIMS

# **TABLE OF CONTENTS**

INTRODUCTION.................................................................................................... 1

ARGUMENT .......................................................................................................... 2

I.   *Noerr-Pennington* Requires Dismissal of Napleton's Counterclaims........................... 2

   A.   AoA's Pre-Litigation Threat and Demand Letters Are Protected by *Noerr-Pennington*. .......................................................................... 3

   B.   AoA's Pursuit of Its Lawsuit Is Protected by *Noerr-Pennington*. ........................... 5

   C.   AoA's May 22, 2017 Letter Is Protected by *Noerr-Pennington*................................ 6

   D.   Napleton Cites No Authority Supporting Its Argument. .................................... 7

II.  Napleton's Counterclaims Should Be Dismissed for Additional Reasons. ............... 8

   A.   Napleton's Opposition Is Based on the Wrong Legal Standard......................... 9

   B.   Napleton Has Failed to State Its Claims Under the Act................................... 10

     1.   Napleton's Allegations Preclude Its Claims for Violations of Sections 12(b)(5) (Count VII) and 16 (Count II) of the Act....................................... 10

     2.   Napleton's Allegations Preclude Its Claim for Violation of Section 12(b)(3) of the Act (Count I). ............................................................. 13

   C.   Napleton Has Failed to State Its Tortious Interference Claims........................ 15

     1.   Napleton Has Failed to Allege Facts Supporting a Reasonable Inference of Actual Interference. ...................................................... 15

     2.   Napleton Has Failed to Allege Facts Supporting a Reasonable Inference that AoA Lacked Privilege or Justification..................................... 18

   D.   Napleton Has Failed To State a Claim for Abuse of Process. ........................... 20

CONCLUSION ................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A.D. Bedell Wholesale Co., Inc. v. Philip Morris Inc.*,
   263 F.3d 239 (3d Cir. 2001) ............................................................................. 4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................... 9, 17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................... 9, 17

*Buck v. Hampton Twp. Sch. Dist.*,
   452 F.3d 256 (3d Cir. 2006) ............................................................................. 6

*Conley v. Gibson*,
   355 U.S. 41 (1957) ............................................................................................ 9

*Crivelli v. Gen. Motors Corp.*,
   215 F.3d 386 (3d Cir. 2000) ........................................................................... 19

*DeLuca v. CitiMortgage*,
   543 F. App'x 194 (3d Cir. 2013) ..................................................................... 6

*Freeman v. Lasky, Haas & Cohler*,
   410 F.3d 1180 (9th Cir. 2005) .......................................................................... 5

*Hankin Family P'ship v. Upper Merion Twp.*,
   2012 WL 43599 (E.D. Pa. Jan. 6, 2012) ......................................................... 7

*Indus. Models, Inc. v. SNF, Inc.*,
   __ F. App'x __, 2017 WL 5152159 (Fed. Cir. Nov. 7, 2017) ......................... 7

*Kelly-Springfield Tire Co. v. D'Ambro*,
   596 A.2d 867 (Pa. Super. Ct. 1991) .............................................................. 17

*Leister v. Miller*,
   103 A.2d 656 (Pa. 1954) ................................................................................ 12

*S3 Graphics Co., Ltd. v. ATI Techs., ULC*, 2015 WL 7307241 (D. Del. Oct. 21,
   2015) ............................................................................................................ 7, 8

*Simon Prop. Grp., Inc. v. Palombaro,*
   682 F. Supp. 2d 508 (W.D. Pa. 2010)........................................................... 19

*Singh v. NYCTL 2009-A Trust,*
   683 F. App'x 76 (2d Cir. 2017)..................................................................... 7

*Sosa v. DIRECTV, Inc.,*
   437 F.3d 923 (9th Cir. 2006) ........................................................................ 4

*U.S. Futures Exch., LLC v. Bd. of Trade,* 2005 WL 2035652 (N.D. Ill. Aug. 22,
   2005)............................................................................................................ 8

*Williams v. Wenger,*
   179 A. 242 (Pa. 1935) ................................................................................ 12

## STATUTES

63 P.S. § 16(1) .................................................................................................. 10

## **INTRODUCTION**

Napleton provides only a barebones response to AoA's argument that *Noerr-Pennington* bars its counterclaims. Napleton implausibly contends that its counterclaims are based on AoA's "private commercial activity," not on this litigation and conduct incidental to it. But Napleton does not cite any examples from its own pleadings or identify any relevant cases in support. Napleton's own allegations demonstrate, rather, that its entire counterclaim narrative is based on AoA's pursuit of this lawsuit. *Noerr-Pennington* bars such claims.

Napleton has failed to state its counterclaims for additional reasons. Significantly, Napleton's entire opposition to AoA's Motion to Dismiss is premised on the wrong standard of review: the obsolete pre-*Twombly* standard. When measured against the correct standard of review, Napleton's counterclaims fall short.

Regarding its three claims asserting violations of the Pennsylvania Board of Vehicles Act (the "Act") (Counts I-II, VII), Napleton has pled itself out of court, by alleging that: (i) Napleton and AoA agreed in writing that AoA's statutory deadline to respond to the proposed Audi transfer was December 29, 2016; and (ii) the First Addendum removed the Audi transfer from the APA by or before December 22, 2016—*before* the agreed-upon deadline. Napleton argues that its agreement to the statutory deadline is (conveniently) invalid and unenforceable, purportedly because it was unable to waive a statutory limitation that exists for its own benefit. The argument fails.

1

Regarding its four tortious interference claims (Counts III-VI), Napleton has not alleged that AoA interfered with any business opportunities or any agreement's closing. And even if Napleton had sufficiently alleged interference, these claims still fail, because Napleton does not sufficiently allege that AoA lacked privilege or justification to interfere—*i.e.*, to enforce its contractual and statutory rights.

Finally, regarding Napleton's abuse of process claim (Count VIII), Napleton cites no authority to rebut AoA's argument that it lacks standing.

Accordingly, AoA's motion should be granted.

## ARGUMENT

### I.   *Noerr-Pennington* Requires Dismissal of Napleton's Counterclaims.

Napleton's counterclaims must be dismissed under *Noerr-Pennington* because they are based upon AoA's pursuit of this litigation and conduct incidental to it, including pre-litigation threat and demand letters, settlement discussions, and discovery activity. (AoA's Brief ("Br.") at 6–8.)

Napleton concedes in its opposition ("Opp.") that "[g]overnment petitioning includes seeking relief through the courts," but argues that *Noerr-Pennington* "is not even relevant to this case" because AoA's conduct was not "directed toward obtaining governmental action." (*See* Opp. at 25–26.) Instead, Napleton argues that AoA's alleged conduct was merely "private commercial activity," and that "it is not Audi's litigation that gives rise to Napleton's claims." (*Id.* at 26, 28.) Napleton's own allegations refute this argument.

Napleton's allegations precisely track AoA's conduct in pursuit of this lawsuit, from September 2016 (AoA's initial pre-litigation threat and demand letter regarding the APA) through June 28, 2017 (AoA's appearance before the Court on its motion to extend the preliminary injunction). For each of its individual causes of action, Napleton relies upon its entire counterclaim narrative—*i.e.*, all of its allegations regarding AoA's conduct. (Counterclaims ¶¶ 106, 118, 123, 135, 146, 163, 173, 187.) Taking Napleton's allegations as true, AoA's conduct constitutes petitioning activity protected under *Noerr-Pennington*.

## A.   AoA's Pre-Litigation Threat and Demand Letters Are Protected by *Noerr-Pennington*.

The starting point for Napleton's counterclaim narrative is its allegation that AoA "immediately raised objections" to the APA "[f]rom the very first time that it received notice" of the proposed transaction. (*Id.* at ¶¶ 24.) AoA first raised objections in a letter to Wyoming Valley dated September 28, 2016 (Doc. 1-4). Napleton alleges that, through this September 28 letter, AoA "falsely accused Wyoming Valley of breaching the Franchise Agreement," "further alleg[ed] that it was entitled to, and thus demanded, a 'good faith' breakdown of the [APA]," and "offered … the alternative of 'withdrawing the APA.'" (Counterclaims ¶¶ 69, 71, 73.) Napleton also targets AoA's correspondence from October through December 2016, which further

addressed the issues identified in AoA's September 28 letter and the statutory deadline for AoA to enforce its rights. (*See id.* at 32–33, 52–53.)[1]

Crucially, the Court *has already ruled* (per Magistrate Judge Carlson) that AoA's September 28 letter constituted a pre-litigation threat and demand that "put [Wyoming Valley and Napleton] on notice regarding potential legal challenges to the transaction," and gave them a reasonable basis to anticipate litigation. (*See* Doc. 183 at 6–9.) And Napleton has argued that, based on subsequent correspondence with AoA from October through December 2016, "it became increasingly clear that litigation with Audi was likely." (Doc. 171 at 2.)

Napleton's First, Second, Fourth, and Seventh Causes of Action rely in particular on AoA's pre-litigation threat and demand letters through December 2016. Under *Noerr-Pennington*, such conduct is incidental to this lawsuit and cannot create liability. *E.g.*, *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 942 (9th Cir. 2006) (lawsuit based on presuit settlement demands was properly dismissed under *Noerr-Pennington*); *see also A.D. Bedell Wholesale Co., Inc. v. Philip Morris Inc.*, 263 F.3d 239, 252–53 (3d Cir. 2001) (favorably citing case law holding that "prelitigation threat letters" were protected "efforts to influence government action incidental to litigation"). (*See also* Br. at 7.)

---

[1] AoA cites to page numbers here to avoid confusion that may arise from a paragraph numbering error on page 32 of Napleton's Counterclaims.

### B.   **AoA's Pursuit of Its Lawsuit Is Protected by *Noerr-Pennington*.**

Napleton's counterclaim narrative then shifts to AoA's filing and prosecution of the lawsuit itself. Napleton alleges that AoA "failed and refused to engage in any good faith meaningful discussion toward a resolution" and "instead … sued Wyoming Valley for the improper purpose of enjoining the APA in its entirety." (Counterclaims ¶¶ 78–79; *see also id.* at ¶¶ 33, 80.)

Napleton alleges that AoA then "continued to stand in the way and otherwise obstruct the Proposed Transaction until June 28, 2017," namely, by continuing with this litigation. (Counterclaims ¶¶ 30, 83–88.)[2] In particular, Napleton alleges that AoA "continued to interfere by seeking discovery from certain of the other manufacturers[.]" (*Id.* at ¶ 89; *see also id.* at ¶¶ 12–13.)

Napleton's Second, Third, Fourth, and Eighth Causes of Action rely in particular on AoA's alleged conduct in this litigation and incidental to it. Such conduct is immune from liability under *Noerr-Pennington*. (*See* Br. at 6–9.) *See also, e.g.*, *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1183, 1185 (9th Cir. 2005) (claims based on "stretching out the litigation" and "discovery misconduct" were properly dismissed under *Noerr-Pennington* when the "sham litigation" exception did not apply).

---

[2] The Court held proceedings on June 28 regarding AoA's motion to extend the preliminary injunction, at which time Napleton "forever quit its interest … in the ownership of the Wyoming Valley Audi and Volkswagen Dealerships." (Doc. 213 ¶ 5.)

### C. **AoA's May 22, 2017 Letter Is Protected by *Noerr-Pennington*.**

Napleton's counterclaim narrative also incorporates AoA's May 22, 2017 letter to Wyoming Valley rescinding its conditional approval of "Wyoming Valley's plan to relocate [the] Audi dealership[,]" which Napleton alleges was part of AoA's "actions … to upend the entire deal[.]" (Counterclaims ¶ 90.)

The rescission letter is inseparable from AoA's lawsuit, and the letter itself reflects that relationship. (*See* Doc. 226-1, Ex. 6 ("May 22 Letter").)[3] The letter was a predicate to AoA's fraudulent inducement and tortious interference claims, among others, in its proposed Second Amended Complaint. (*Compare* 2d Am. Compl., Doc. 226-1 ¶¶ 123, 130, 139, 146–52, 154–57, 159–63, *with* May 22 Letter.) And, as the Court has explained, litigation over the letter's effect will require AoA "to present evidence on … its [ROFR], its operation and existence, and the entire timeline of facts of the dealings between AoA and Wyoming Valley." (Doc. 239 at 6.) Indeed, Napleton's own allegations confirm the letter's foundation in this litigation, asserting that AoA interfered with the MIPA by sending the letter after "discover[ing] *through discovery in this litigation* … that NIP acquired an ownership interest in … the owner of the Relocation Property." (Counterclaims ¶¶ 150–51 (emphasis added).)

---

[3] The Court may consider documents that (i) are already in the record; (ii) parties rely on for their claims; and (iii) directly contradict factual allegations in pleadings. *E.g.*, *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006); *DeLuca v. CitiMortgage*, 543 F. App'x 194, 197 (3d Cir. 2013).

Napleton's Fifth and Sixth Causes of Action rely in particular on the May 22 Letter. The letter was conduct incidental to this lawsuit (including as pre-litigation conduct leading to AoA's proposed Second Amended Complaint). *Noerr-Pennington* therefore bars claims based on the letter. *E.g.*, *Indus. Models, Inc. v. SNF, Inc.*, __ F. App'x __, 2017 WL 5152159, at *5 (Fed. Cir. Nov. 7, 2017) (claims based partially on alleged collusion occurring during the underlying action were properly dismissed under *Noerr-Pennington*); *Singh v. NYCTL 2009-A Trust*, 683 F. App'x 76, 77–78 (2d Cir. 2017) (claims based on "demand letters, default letters, and settlement communications" were properly dismissed under *Noerr-Pennington*); *see also Hankin Family P'ship v. Upper Merion Twp.*, 2012 WL 43599, at *8, *18 n.24 (E.D. Pa. Jan. 6, 2012) (letter from counsel sent during recipient's ongoing lawsuit was likely protected under *Noerr-Pennington*). (*See also* Br. at 7.)

## D.   <u>Napleton Cites No Authority Supporting Its Argument</u>.

Napleton does not even attempt to address the vast majority of cases that AoA cited supporting application of *Noerr-Pennington* to the counterclaims. (*See* Br. at 7.) And, neither of the two cases that Napleton cites in support of its "private commercial activity" theory is on point. (*See* Opp. at 26–27.) In *S3 Graphics Co., Ltd. v. ATI Techs., ULC*, the Delaware district court explained that various pre-litigation conduct, including pre-litigation letters, is protected under *Noerr-Pennington*. 2015 WL 7307241, at *15, n.14 (D. Del. Oct. 21, 2015). The case otherwise addresses only a single document—an acknowledgment sent to the U.S. Patent & Trademark Office

("PTO") memorializing the transfer of patent rights—that was deemed to not be a petition for governmental action. *Id.* at *5, *15. This was unsurprising, because the acknowledgment did not seek or predict any action by the PTO, and occurred before the signing parties intervened in the underlying litigation. *Id.* at *15. Here, by contrast, AoA's alleged conduct, including the letters it sent, necessarily led to and were an inseparable part of this litigation.

In the other case Napleton cited, *U.S. Futures Exch., LLC v. Bd. of Trade*, the plaintiff's allegations were unrelated to litigation: it alleged that the defendants had engaged in anticompetitive behavior subject to the Sherman Act and in conduct falling within the sham and intentional misrepresentation exceptions to *Noerr-Pennington*. 2005 WL 2035652, at *1–2 (N.D. Ill. Aug. 22, 2005). Not only is the case distinguishable as a bread-and-butter antitrust dispute, but Napleton does not argue (and cannot argue) that either of the *Noerr-Pennington* exceptions that applied in *Futures Exchange* apply to AoA's alleged conduct in this case.[4] *Futures Exchange* thus does not support Napleton's arguments.

## II.   Napleton's Counterclaims Should Be Dismissed for Additional Reasons.

AoA argued that, apart from *Noerr-Pennington* immunity, each of Napleton's counterclaims should be dismissed because Napleton's own allegations negate its

---

[4] Napleton conspicuously does not argue that AoA's litigation conduct falls under the "sham litigation" exception, despite its overall theory that AoA has pursued this action in bad faith. (*See* Opp. at 25–29.) This Court's prior rulings in this case demonstrate that AoA's litigation conduct is not a sham. (*See* Br. at 8–9.)

claims, and because Napleton has failed to allege facts stating a plausible claim that AoA engaged in wrongdoing. Napleton's opposition brief does not persuade otherwise.

### A.    Napleton's Opposition Is Based on the Wrong Legal Standard.

Napleton's opposition to AoA's motion is premised on the wrong standard of review. Napleton argues that the Court must determine whether the counterclaims satisfy Rule 8 based on the pre-*Twombly* standard of "whether the plaintiff can prove any set of facts" entitling it to relief. (Opp. at 9.) But that legal standard has been obsolete for over ten years. The correct legal standard requires Napleton to plead "*sufficient* factual matter … 'to state a claim that is *plausible* on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[5]

Napleton's reliance on the more liberal pre-*Twombly* standard is telling. While repeatedly asserting that AoA is simply "arguing facts," Napleton ignores AoA's actual argument—*i.e.*, that Napleton has not established plausibility with its "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Iqbal*, 556 U.S. at 678. As explained below, even taking Napleton's allegations as true for Rule 12(b)(6) purposes (as AoA has in its arguments), Napleton has failed to plead "factual content

---

[5] Napleton's proposed framework is from *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). As this Court knows, *Twombly* held that *Conley*'s framework "is best forgotten as an incomplete, negative gloss[.]" *Twombly*, 550 U.S. at 563.

that allows the court to draw the reasonable inference that [AoA] is liable for the misconduct alleged." *Id.* Its counterclaims, therefore, should be dismissed.

**B.     Napleton Has Failed to State Its Claims Under the Act.**

Napleton asserts three counterclaims under three related provisions of the Act—Sections 12(b)(3), 12(b)(5), and 16—claiming that AoA failed to properly and timely respond to the proposed Audi transfer. AoA moved to dismiss all three claims because, *as alleged by Napleton*, the First Addendum withdrew the Audi dealership before AoA was required to either consent to/reject the transaction or exercise its ROFR.

**1.     Napleton's Allegations Preclude Its Claims for Violations of Sections 12(b)(5) (Count VII) and 16 (Count II) of the Act.**

Napleton alleges that AoA violated Sections 12(b)(5) and 16, respectively, by not rejecting the APA and not exercising its ROFR before the applicable statutory deadline. (Opp. at 11, 14.) Napleton argues that Section 12(b)(5) established the same statutory deadline for both of these claims. (*Id.*)

Under Section 12(b)(5), a manufacturer must "respond in writing to any request to consent to the sale of a franchise" no later than "75 days from the date of the receipt of the initial forms." (*See id.* at 11 (emphasis added).) Under Section 16, this same timing applies to a manufacturer's exercise of its ROFR. 63 P.S. § 16(1).

Based on these statutory provisions, AoA argued that Napleton has pled itself out of court on its Section 12(b)(5) and 16 claims. Napleton makes two allegations, in

particular, which establish the Audi dealership was removed from the APA *before* expiration of the statutory deadline. (Br. at 9–10.) *First*, Napleton alleges that it agreed in writing that AoA's statutory deadline to respond to the proposed transaction was December 29, 2016. (Counterclaims ¶ 182.) *Second*, Napleton alleges that pursuant to the First Addendum, it cancelled the proposed Audi transfer by either December 19 or 22, 2016—*before* the agreed-upon statutory deadline. (*See id.* at ¶¶ 84, 181; Opp. at 12, n.3.) These two allegations establish as a matter of law that AoA's statutory deadline to "respond in writing to [the] request to consent to the sale" under Section 12(b)(5), and to "exercise its right of first refusal" under Section 16, never accrued.

Attempting to circumvent this basic logic, Napleton argues that its written agreement on the applicable statutory deadline is invalid and unenforceable, because Section 12(b)(5) states that "in no event shall the total time period for approval exceed 75 days from the date of the receipt of the initial forms." (*See* Opp. at 11.) Napleton contends that this "in no event" language prohibits any waiver of the 75-day limit in furtherance of an agreement to extend the deadline.

This argument fails. It rests on the false premise that the parties agreed to "extend" the deadline beyond the 75-day statutory period. The agreement says otherwise: the parties agreed that October 14, 2016 was "the date of the receipt of the initial forms," not October 4 as Napleton contends, and that the statutory deadline

expired exactly 75 days later.[6] (*See* Docs. 4-10–4-12.)[7] There was no agreement to waive or extend the 75-day period.

Napleton's argument is also cynical and wrong. It is cynical in that Napleton suggests it entered into an agreement with AoA that it knew at the time to be invalid and unenforceable. And it is wrong because even if the parties did agree to "extend" the statutory deadline as Napleton contends, Napleton's waiver of the 75-day limitation was effective. After all, the statutory provision establishing the deadline is for the benefit of dealership buyers and sellers. Napleton, as the dealership buyer, was therefore free to waive that benefit under Pennsylvania law. *See, e.g.*, *Williams v. Wenger*, 179 A. 242, 244 (Pa. 1935) (statutes passed for the protection of individuals or classes of individuals may be suspended by the voluntary act of the individual to be benefitted); *Leister v. Miller*, 103 A.2d 656, 658 (Pa. 1954) (the holder of right that a statute is designed to protect may waive the benefit of the statute). Napleton's argument that it could not voluntarily waive the 75-day period under the statute is baseless.

Separately, Napleton asserts that, because AoA "argues that this claim fails because the Audi component of the sale was removed from the APA," AoA therefore

---

[6] The Court may consider this agreement on AoA's motion. (*See supra* at n.3.)

[7] Napleton's allegation that the deadline was to expire on December 29 is an apparent scrivener's error. (*Compare* Counterclaims ¶ 182 *with* Docs. 4-10–4-12.) The parties' agreement was December 28. AoA assumes for this reply that the deadline expired on December 29, as the difference is immaterial.

"has no more ROFR to exercise and its litigation should have ceased." (*See* Opp. at 12.) This argument not only turns the Rule 12(b)(6) standard on its head (whereby the Court must take Napleton's allegations as true), but it is also completely self-serving. With the First Addendum, Wyoming Valley and Napleton represented to AoA that they had withdrawn the Audi transfer, one week before the agreed-upon statutory deadline expired. Napleton cannot rely on the First Addendum to hold AoA to a deadline that by Napleton's own reckoning no longer existed.

### 2.    Napleton's Allegations Preclude Its Claim for Violation of Section 12(b)(3) of the Act (Count I).

Napleton asserts that AoA violated Section 12(b)(3) of the Act by "improperly and untimely respond[ing] to Napleton's request for approval to be a successor Audi dealer" to Wyoming Valley. (*Id.* at 10.) Napleton argues that "Section 12(b)(3) of the Dealer Act makes it unlawful for any manufacturer or distributor to *unreasonably* withhold consent to the sale of a franchise to a qualified buyer who meets the manufacturer or distributor's reasonable requirements." (*Id.* at 9 (emphasis added).) But Napleton ignores the essential question: by *when* might a manufacturer's withholding of consent become unreasonable?

As explained above, Section 12(b)(5) of the Act supplies the answer: no later than "75 days from the date of the receipt of the initial forms." Section 12(b)(5) thus provides manufacturers with a grace period to evaluate a proposed sale, including whether the proposed buyer is "a qualified buyer who meets the manufacturer's …

reasonable requirements." 63 P.S. § 818.12(b)(3). Until that grace period expires, a manufacturer's withholding of consent cannot be unreasonable under Section 12(b)(3).[8]

Because, as explained above, Napleton itself has alleged facts establishing that the Audi dealership was withdrawn from the APA *before* expiration of the deadline, AoA cannot have acted unreasonably under Section 12(b)(3). Napleton has therefore pled itself out of court on its Section 12(b)(3) claim as well. (Br. at 9–10.)

In response, Napleton asserts that AoA "advances a factual argument in support of dismissal." (Opp. at 10.) Not so. AoA's argument is based on Napleton's own allegations, which must be taken as true for purposes of Rule 12(b)(6).

Napleton also argues nonsensically that it can maintain its Section 12(b)(3) claim, despite the facts alleged, because that provision "has no statutory deadline." Just a few sentences before this assertion, however, Napleton argues that it has stated its Section 12(b)(3) claim by pleading that AoA "improperly and *untimely* responded to Napleton's request for approval." (*Id.* (emphasis added).) If there were no statutory deadline, then AoA's response could not be untimely. As explained above, Napleton's argument that Section 12(b)(3) lacks a statutory deadline is wrong.

---

[8] This is the only sensible interpretation of the statute. Otherwise, a dealer could claim that a manufacturer's withholding of consent is "unreasonable," and therefore violates Section 12(b)(3), immediately after providing notice of the proposed sale.

Finally, Napleton argues that it has stated a 12(b)(3) claim because AoA "openly stated it would not do business with Napleton." (*Id.*) Putting aside this mischaracterization of AoA's allegations (*see* 1st Am. Compl., Doc. 35 ¶ 53), the point is irrelevant. The issue to be decided under Section 12(b)(3) is whether AoA unreasonably withheld consent when its time to consent to or reject the transaction had not expired. Napleton's own allegations preclude such a finding.

**C.     Napleton Has Failed to State Its Tortious Interference Claims.**

In its Third through Sixth Causes of Action, Napleton asserts various tortious interference claims, but all four counts fail to state claims as a matter of law. The claims have two central flaws: (i) the allegations do not plausibly suggest actual interference with any contract or business relationship; and (ii) even if Napleton had alleged such interference, AoA was privileged and justified to so interfere. (Br. at 11–14.)

**1.     Napleton Has Failed to Allege Facts Supporting a Reasonable Inference of Actual Interference.**

**a.     *No Interference with the APA (Count III).***

AoA argued that the Third Cause of Action should be dismissed because Napleton does not plausibly allege that AoA prevented the closing of the non-Audi and Volkswagen dealerships. (*Id.* at 13–14.) Napleton once again argues that "[t]his position is factual." (Opp. at 19.) But again, the Court is charged with evaluating the sufficiency of Napleton's factual allegations on this motion.

15

In the next breath, Napleton relies upon facts not contained in the Counterclaims. It relies on statements in a letter it purportedly received from Mazda North America Operations ("Mazda"), a copy of which it attached to its Opposition Brief, to attempt to create a reasonable inference that AoA interfered. (*See id.* at 19.) Contrary to Napleton's assertions, the letter shows that Wyoming Valley, not AoA, was responsible for the APA not closing. As Mazda explains:

> As you know, Mazda sent a letter to Wyoming Valley … rejecting the buy-sell proposal for insufficient information on September 13, 2017. Mazda has not yet received anything from [Wyoming Valley] indicating that the package should be reopened.

(Doc. 299, Ex. A.) Rather than supporting Napleton's tortious interference claim, Mazda's letter confirms that Napleton has not plausibly alleged interference by AoA.

From the very outset of this litigation, the Court invited Wyoming Valley and Napleton to set a closing date for the remainder of their transaction and strongly indicated it would permit such a closing to proceed. (*See, e.g.*, Doc. 16 ¶ 4; Doc. 22 ¶ 5; Doc. 30 at 8.) Furthermore, the Court's June 29 Order expressly allows them to proceed to such a closing. (Doc. 213 at 1–2; *see also* Doc. 215.) They still have not.

### b. *No Interference with Napleton's Business Opportunities (Count IV).*

Napleton's opposition confirms that its Fourth Cause of Action is completely derivative of the Third. Napleton concedes that it is not basing the Fourth Cause of Action directly on the loss of prospective customers, but rather on "prospective

contracts with the five non-Audi franchises[.]" (Opp. at 21.) The Fourth Cause of Action thus rests on the same alleged conduct as the Third, and fails for the same reason: Napleton has not pled facts creating a reasonable inference that AoA interfered with the APA's closing.

Napleton nevertheless argues that "the fact that the APA may close is not fatal to the claim," citing *Kelly-Springfield Tire Co. v. D'Ambro*, 596 A.2d 867, 871 (Pa. Super. Ct. 1991)). (Opp. at 20.) Its reliance on *Kelly-Springfield* is misplaced. The state court found that, although the seller of a warehouse ultimately sold the property to a third party, the complaint contained "sufficient averments that a resale was unnecessarily delayed by" the interference. *Kelly-Springfield*, 596 A.2d at 871. But that case was not decided under Rule 12(b)(6) and pre-dates *Twombly* and *Iqbal*. Unlike *Kelly-Springfield*, Napleton has not alleged facts giving rise to a reasonable inference that AoA caused any "unnecessary" delay.

### c.   No Interference with Napleton's Actual and Prospective Relocation Property Transfers (Count V).[9]

AoA argued that the Fifth Cause of Action should be dismissed because Napleton does not plausibly allege that AoA interfered with, or that Napleton suffered any damages relating to, either the closing of the MIPA or the anticipated closing of the APA with respect to the Relocation Property transfer from MH4 to

---

[9] Napleton has separately moved for leave to amend its intervenor complaint. (*See* Doc. 300.) AoA consents to that motion.

EFN Wyoming Valley. Napleton does not deny that the MIPA actually closed before AoA even knew of it, or that it still intends to complete the Relocation Property transfer.

Nevertheless, Napleton argues in opposition that "AoA's efforts to unwind these agreements resulted in delays." (Opp. at 22.) But, again, Napleton identifies no allegations suggesting that AoA was the cause of any unnecessary delay in closing either agreement, or that any such delay actually harmed Napleton.

### d. *No Interference with Napleton's Existing and Future Leases (Count VI).*

AoA argued that the Sixth Cause of Action, in which Napleton alleges that AoA interfered with existing and future leases by asking that the agreements referenced in the Fifth Cause of Action be unwound, fails because Napleton does not allege that those agreements were actually unwound. (Br. at 17–18.)

In response, Napleton argues that it nonetheless has stated a claim by merely alleging that AoA asked for the underlying real estate agreements to be unwound. But that is insufficient. Napleton has made no allegations that it was harmed.

### 2. Napleton Has Failed to Allege Facts Supporting a Reasonable Inference that AoA Lacked Privilege or Justification.

AoA argued in its opening brief that, based on Pennsylvania law and controlling Third Circuit precedent, Napleton's four tortious interference claims

should be dismissed because Napleton failed to plead facts supporting a reasonable inference that AoA lacked privilege or justification to interfere. (*Id.* at 11–12.)

In response, Napleton mischaracterizes AoA's argument as disputing the truth of its factual allegations. (Opp. at 16.) Instead, AoA argued that, accepting all of Napleton's factual allegations as true, Napleton has failed to plead sufficient facts. Indeed, Napleton's allegations only offer the "blanket, conclusory statement" that AoA's supposed "interference with [Napleton's] existing and prospective contracts was not privileged[.]" *Simon Prop. Grp., Inc. v. Palombaro*, 682 F. Supp. 2d 508, 512 (W.D. Pa. 2010) (dismissing tortious interference claims).

But a party's actions, when based upon its contractual and statutory rights, are privileged. *See, e.g.*, *Crivelli v. Gen. Motors Corp.*, 215 F.3d 386, 395–96 (3d Cir. 2000). And Napleton's allegations all involve AoA's conduct in pursuing its ROFR and its contractual rights regarding the location of Wyoming Valley's dealership. (*See* Br. at 11–12.) Napleton alleges no facts to support an inference that AoA engaged in any conduct was not in pursuit of these legally protected interests. Under the correct standard of review, therefore, Napleton has failed to state a claim.

Cognizant of this deficiency, Napleton argues that AoA's conduct cannot be privileged as a matter of law because AoA did not actually exercise its ROFR. (Opp. at 17.) Napleton appears to be arguing that because AoA had not yet exercised its ROFR, its contractual and statutory rights are not "legally protected interests" supporting a privilege to interfere. Napleton cites no authority supporting this novel

theory, nor does the theory make sense. If it were correct, a party holding an irrevocable option to purchase an asset during a defined option period could not attempt to prevent the sale of that asset to a different party while the option period remained open, unless the party holding the option first forfeited the remainder of the option period and exercised its option early.[10] This should not be and is not the law.

### D.   **Napleton Has Failed To State a Claim for Abuse of Process**.

In its Eighth Cause of Action, Napleton alleges that AoA abused process by serving subpoenas on third parties requesting the production of documents. AoA argued that Napleton lacks standing to assert this claim. (*See* Br. at 18–19.)

Napleton ignores its lack of standing. It instead insists that its claim survives, because AoA used the information obtained from third parties against it, allegedly to "cast Napleton as a pariah" to other manufacturers. (Opp. at 24–25.) Napleton cites no authority in support, nor any facts in its pleadings creating any reasonable inference of harm.[11]

At bottom, Napleton is trying to convert routine litigation discovery into a basis for liability. Napleton has not alleged—nor could it allege—that AoA lacked a

---

[10] As the Court knows, AoA's legal position is that its ROFR has matured into an irrevocable option to purchase the Audi dealership assets.

[11] The only "fact" Napleton cites is the Mazda Letter (Opp. at 25), which states that Mazda rejected the deal because Wyoming Valley submitted insufficient information. There was no revocation of approval connected to AoA.

good faith basis for issuing the subpoenas. The discovery requests sought and led to the production of highly relevant information. Napleton's claim is frivolous.

## **CONCLUSION**

For the reasons set forth in AoA's Brief in Support of its Motion to Dismiss Napleton's Counterclaims and the reasons set forth in this reply brief, the Court should dismiss Napleton's Counterclaims pursuant to Rule 12(b)(6).

Dated: November 15, 2017             Respectfully submitted,

**AUDI OF AMERICA, INC**.
An Organizational Unit of
Volkswagen Group of America, Inc.

By:     _/s/ Owen Smith_____
        One of Its Attorneys

Thomas B. Schmidt, III (PA 19196)
Justin G. Weber (PA 89266)
PEPPER HAMILTON LLP
100 Market Street, Ste. 200
Harrisburg, Pennsylvania 17108
Ph: 717.255.1155
Email: schmidtt@pepperlaw.com
Email: weberjg@pepperlaw.com

Randall L. Oyler (IL 6209675)
Owen H. Smith (IL 6307554 / NY 693627)
Brandon C. Prosansky (IL 6293582)
BARACK FERRAZZANO KIRSCHBAUM &
   NAGELBERG LLP
200 West Madison, Ste. 3900
Chicago, Illinois 60606
Ph: 312.984.3100
Email: randall.oyler@bfkn.com

Email: owen.smith@bfkn.com
Email: brandon.prosansky@bfkn.com

*Admitted Pro Hac Vice*

*Attorneys for Audi of America, Inc.,*
*An Organizational Unit of Volkswagen Group of*
*America, Inc.*

## CERTIFICATE OF SERVICE

I, Owen Smith, an attorney, certify that on November 15, 2017, a true and correct copy of the foregoing was filed and served through the Court's Electronic Case Filing (ECF) system upon all counsel of record.

_/s/ Owen Smith_

## CERTIFICATION PURSUANT TO LOCAL RULE 7.8

Pursuant to Rule LR 7.8(b), the undersigned hereby certifies that Plaintiff Audi of America, Inc.'s Reply Brief in Support of its Motion to Dismiss Napleton's Counterclaims was prepared in Microsoft Word 2010 using 14-point font. The undersigned further certifies that the above referenced Reply Brief contains 4,940 words according to Microsoft Word 2010's word count, including headings, footnotes, and quotations.

_/s/ Owen Smith_