## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AUDI OF AMERICA, INC., | : | 3:16-cv-2470 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| BRONSBERG & HUGHES PONTIAC, INC. d/b/a WYOMING VALLEY AUDI, | : | |
| | : | |
| Defendant. | : | |
| v. | : | |
| | : | |
| NORTH AMERICAN AUTOMOTIVE SERVICES, INC., NAPLETON ORLANDO IMPORTS, LLC, NAPLETON SANFORD IMPORTS, LLC, NAPLETON AUTOMOTIVE of URBANA, LLC, | : | |
| | : | |
| Intervenors. | : | |

## <u>ORDER</u>

### November 20, 2017

Presently pending before the Court is Plaintiff Audi of America, Inc.'s

("AoA") motion to dismiss Intervenor-Defendants' (collectively, "Napleton")

counterclaims. (the "Motion") (Doc. 256). The Motion has been fully briefed and

is therefore ripe for our review. (Docs. 285, 298, 316). For the reasons that follow,

the Motion shall be granted in part and denied in part.

## I.    BACKGROUND

In conformity with the applicable standard of review on a motion to dismiss, the following facts are derived from Napleton's counterclaims and are viewed in a light most favorable to Napleton. (Doc. 219, pp. 18-57).

On or about July 11, 2016, Napleton entered into an Asset and Real Estate Purchase Agreement (the "APA") to purchase Wyoming Valley's seven automotive dealerships and a property located at 1492 Highway 315, Plains Township, Luzerne County, Pennsylvania. (the "Relocation Property"). (*Id.*, at ¶¶54-55).  The Relocation Property is currently owned by MH4, a limited liability company organized and existing for the sole purpose of owning the Relocation Property until the closing of the APA, at which time it would be transferred to a Napleton affiliate. (*Id.*, at ¶¶ 55-57).

The Relocation Property was to be the site of a new exclusive Audi facility to house the Wyoming Valley Audi dealership. (*Id.*, at ¶ 58). The construction of the new facility is funded by NIP, a Napleton affiliate, in exchange for the membership interests of MH4 pending the closing of the APA. (*Id.*, at ¶ 62). NIP and the members of MH4 entered into a Membership Purchase Agreement (the "MIPA") around December 2016 to memorialize this exchange. (*Id.*, at ¶ 63). Napleton intended to operate all seven dealerships that were part of the APA at the Relocation Property. (*Id.* at ¶ 64).

Closing of the APA was conditioned on the approval of the manufacturers for each Wyoming Valley dealership, pursuant to the terms of the respective franchise agreements. (*Id.*, at ¶ 65). Wyoming Valley submitted an executed copy of the APA to Volkswagen Group, the parent company of Audi of America, Inc. and Volkswagen of America, Inc., on September 14, 2016. (*Id.*, at ¶ 66). AoA asserted that Wyoming Valley had breached its franchise agreement by packaging the transaction for multiple dealerships and demanded a "good faith" breakdown of the purchase price attributable to the Audi dealerships so AoA could determine whether to exercise its right of first refusal. (*Id.*, at ¶ 71). As an alternative to providing a price breakdown, AoA offered that Wyoming Valley and Napleton could withdraw the APA. (*Id.*, at ¶ 73).

On or about November 17, 2016, Wyoming Valley and Napleton provided a breakdown of the APA bundled price that attributed eight million dollars to the transfer of Audi as a standalone franchise. (*Id.*, at ¶ 74). By letter dated December 2, 2016, counsel for AoA indicated its disagreement with the price allocation for the Audi dealership and offered to accept Wyoming Valley's withdrawal of the Audi dealership from the APA. (*Id.*, at ¶ 77).

On December 13, 2016, AoA sued Wyoming Valley to enjoin the APA in its entirety. (*Id.*, at ¶ 79). In its amended complaint, AoA concedes that "[t]he Napleton Auto Group is not among the organizations that AoA would choose to

3

succeed Wyoming Valley as an Audi dealer." (Doc. 35, ¶ 53). Napleton alleges that AoA's animus towards Napleton as an Audi successor is due to prior litigation history with the company whereby Napleton elected out of a settlement offered by the Volkswagen Group. (Doc. 219, ¶ 82).

On December 19, 2016, Wyoming Valley informed AoA that it and Napleton had agreed to remove the Audi assets from the APA and entered into a First Addendum to the APA to that effect. (*Id.*, at ¶¶ 83-84). Wyoming Valley again informed AoA of its intent to withdraw Audi from the APA and requested that AoA withdraw its motion for a temporary restraining order and preliminary injunction, but AoA refused. (*Id.*, at ¶ 35). This Court thereafter entered a temporary restraining order enjoining the closing of the APA. (*Id.*, at ¶¶ 87-88).

On May 22, 2017, AoA notified Wyoming Valley that it was revoking its initial approval of Wyoming Valley's plan to relocate its Audi facility to the Relocation Property. (*Id.*, at ¶ 90). AoA indicated that it would be willing to accept a new request to relocate the facility to the Relocation Property if the "improper dealings and transactions between Wyoming Valley and Napleton be unwound." (*Id.*, at ¶ 91).

Magistrate Judge Carlson granted Napleton's motion to intervene in this matter on May 16, 2017. (Doc. 167). Napleton filed its answer to AoA's amended complaint on July 19, 2017, bringing eight counterclaims. (Doc. 219). Wyoming

Valley and Napleton are not enjoined at this time from proceeding to close the sale for any of Wyoming Valley's non-Audi and non-Volkswagen dealerships. (Doc. 213). Further, Napleton has stipulated to forever quit its interest in the ownership of the Wyoming Valley Audi and Volkswagen dealerships. (*Id*). Trial is scheduled to commence with jury selection on March 13, 2018.

## II.      STANDARD OF REVIEW

Courts use the same standard in ruling on a motion to dismiss a counterclaim as they do when considering a motion to dismiss a complaint pursuant to Rule 12(b)(6). In these instances, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings*, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). To resolve the motion, a court generally should consider only the allegations in the complaint, as well as "any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist*., 452 F.3d 256, 260 (3d Cir. 2006) (citation and internal quotation marks omitted).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain

a short and plain statement of the claim showing that the pleader is entitled to

relief, "in order to 'give Defendant fair notice of what the claim is and the grounds

upon which it rests.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (alteration omitted)). While a

complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed

factual allegations, it must contain "sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). To survive a motion to

dismiss, "a civil plaintiff must allege facts that 'raise a right to relief above the

speculative level ....' " *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007)

(quoting *Twombly*, 550 U.S. at 555). Accordingly, to satisfy the plausibility

standard, the complaint must indicate that a defendant's liability is more than "a

sheer possibility." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are

'merely consistent with' a defendant's liability, it 'stops short of the line between

possibility and plausibility of entitlement to relief.' " *Id*. (quoting *Twombly*, 550

U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later

formalized in *Iqbal*, a district court must first identify all factual allegations that

constitute nothing more than "legal conclusions" or "naked assertion[s]." *Twombly*,

550 U.S. at 564, 557. Such allegations are "not entitled to the assumption of truth"

and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 679. Next, the district court must identify "the 'nub' of the ... complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.* at 680. Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

However, "a [counterclaim] may not be dismissed merely because it appears unlikely that Plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 556-57). Rule 8 "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Id.* at 234 (quoting *Twombly*, 550 U.S. at 556).

## III.   DISCUSSION

Napleton brings eight counterclaims against AoA. Counterclaim Count I alleges a violation of Section 12(b)(3) of the Pennsylvania Board of Vehicles Act, 63 P.S. § 818.2, *et. seq.* (the "Act"). Counterclaim Count II alleges a violation of Section 16 of the Act. Counterclaim Count III alleges a common law claim of tortious interference with a contract with respect to the APA. Counterclaim Count IV alleges a common law claim of tortious interference with prospective contractual relations. Counterclaim Count V alleges a common law claim of

tortious interference with a contract with respect to the MIPA and the transfer of the Audi dealership to the Relocation Property. Count VI alleges a common law claim of tortious interference with a contract, on behalf of the owners of the Relocation Property and with respect to leases for dealerships to occupy the facility. Count VII alleges a violation of Section 12(b)(5) of the Act. Finally, Count VIII alleges a common law claim of abuse of process.

AoA moves for the dismissal of each counterclaim for various reasons.[1] First, AoA argues that all counterclaims must be dismissed pursuant to the *Noerr-Pennington* doctrine. Next, AoA offers arguments in support of dismissal of each individual claim. We will begin with the universal argument that *Noerr-Pennington* requires dismissal of each claim, and then proceed to analyze any remaining claim individually.

## A. The *Noerr-Pennington* Doctrine

AoA argues that each counterclaim must be dismissed pursuant to the *Noerr-Pennington* doctrine. The *Noerr-Pennington* doctrine dates back to the 1960s where the Supreme Court held in two cases "that an individual is immune from liability for exercising his or her First Amendment right to petition the government." *Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 159 (3d Cir.

---

[1] In its brief in support, AoA moves for dismissal of counterclaim Counts V and VI because they were brought on behalf of parties not yet approved as Intervenor-Defendants. (Doc. 285, pp. 16-17). Napleton thereafter filed a motion to amend its intervenor complaint to add these parties. (Doc. 300). AoA reasonably consented to this motion and we granted it on November 16, 2017. (Doc. 318). These arguments are thus rendered moot.

2001) (*citing Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961) ("Noerr") and *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965) ("Pennington")). "Under <u>Noerr</u>, <u>Pennington</u>, and their progeny, individuals who seek redress from the government are generally immune from liability for their petitioning conduct." *Malibu Media, LLC v. Doe*, 238 F. Supp. 3d 638, 643 (M.D. Pa. 2017) (Conner, C.J.). "This immunity extends to persons who petition all types of government entities—legislatures, administrative agencies, and courts." *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 122 (3d Cir. 1999). As noted by the Eastern District of Pennsylvania, "it remains black letter law that lawsuits constitute a form of protected petitioning under *Noerr–Pennington*." *Trustees of Univ. of Pennsylvania v. St. Jude Children's Research Hosp.*, 940 F. Supp. 2d 233, 241 (E.D. Pa. 2013).

Immunity under *Noerr-Pennington* is inapplicable where the litigation is a "sham." *Cheminor*, 168 F.3d at 130. The sham exception applies "where the claim is (1) 'objectively baseless,' meaning 'no reasonable litigant could realistically expect success on the merits,' and (2) 'subjectively motivated by an unlawful purpose.'" *Romero v. Allstate Ins. Co.*, 2017 WL 3881219, at *4 (E.D. Pa. Sept. 5, 2017) (*quoting BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516 (2002)). Napleton did not raise the sham exception to *Noerr-Pennington* immunity in its brief in opposition. We note for the record that the sham exception is inapplicable in any

event because the extensive litigation in this matter demonstrates that AoA's claims are not "objectively baseless." *Id.*

AoA argues that each of Napleton's counterclaims seek liability for AoA's actions arising out of the litigation of this lawsuit, and therefore seek to abridge AoA's First Amendment right to petition the government for redress. (Doc. 285, pp. 6-9). Napleton argues that *Noerr-Pennington* is inapplicable because the actions alleged constitute "private, commercial conduct directed towards Napleton as a private actor" rather than "Audi's 'petitioning' of the government for redress." (Doc. 298, p. 27). To analyze AoA's *Noerr-Pennington* defense, we must examine what alleged actions give rise to each counterclaim.

Counterclaim Count I alleges that AoA unreasonably withheld its consent to the APA, in violation of Section 12(b)(3) of the Act. (Doc. 219, ¶¶ 106-117). We easily find that this alleged conduct does not include AoA's actions in this litigation and therefore deny dismissal of counterclaim Count I on this basis.

Counterclaim Count II alleges that AoA violated Section 16 of the Act through their "attempt to delay the exercise of its right of first refusal by and through their frivolous allegations and vexatious conduct – including Audi's unreasonable demands, the filing of the present action, and unnecessary third-party discovery." (Doc. 219, ¶ 119). To the extent that counterclaim Count II seeks to hold AoA liable for its filing of the lawsuit and third-party discovery, we find that

*Noerr-Pennington* immunity clearly applies because that constitutes conduct undertaken within this litigation. However, a reading of the whole counter complaint makes clear that counterclaim Count II is also largely based on AoA's demand that Wyoming Valley and Napleton provide a price breakdown of the APA as a condition precedent to its decision on its right of first refusal. (Doc. 219, ¶¶ 71-72).  Napleton alleges that this was an unreasonable delay of the exercise of its right of first refusal and a violation of Section 16 of the Act. (*Id*.). In this regard, AoA is not shielded by *Noerr-Pennington* from liability on counterclaim Count II.

Counterclaim Count III alleges that AoA has tortiously interfered with the APA, as amended to not include the Audi and Volkswagen dealerships. (Doc. 219, ¶¶ 124-125). Napleton alleges that AoA "has and continues to intentionally and lawfully interfere" by "serving frivolous and abusive subpoenas on the non-Audi manufacturers involved in the transaction" and by "seeking out and communicating with potential alternate buyers" for all the dealerships. (*Id*., at ¶¶ 126-128). Count III also alleges that Volkswagen Group has interfered with this contract "by filing the Duplicate Action and by unreasonably rejecting Napleton as a proposed purchaser of Wyoming Valley Volkswagen." (*Id*., at ¶ 129). Once again, to the extent that counterclaim Count III is premised on AoA's issued subpoenas in the instant litigation or the filing of this lawsuit or its companion lawsuit, *Volkswagen of America v. Bronsberg & Hughes Pontiac, Inc, et. al.*, Civil

Action 1:17:CV:10, AoA is clearly shielded from liability by the *Noerr-Pennington* doctrine. However, AoA is not afforded immunity from counterclaim Count III to the extent that it is premised on alleged communication between AoA and the other parties to the amended APA or AoA's efforts to seek out alternate buyers.

Counterclaim Count IV alleges that AoA tortiously interfered with prospective contractual relations. Count IV is premised on AoA's alleged interference with Napleton's contractual relationship with the non-Audi and non-Volkswagen dealerships under the amended APA. (*Id.*, at ¶¶138, 143). Napleton's allegations within Count IV are somewhat unclear – the claim alleges that AoA tortiously interfered through "its efforts to unwind the deal and its abuse of process within this action" as well as its "wrongful interference and efforts to thwart those transactions." (*Id.*, at ¶¶141, 143). To the extent that counterclaim Count IV is premised upon AoA's instant lawsuit and attempt to enjoin the APA or AoA's actions undertaken pursuant to this lawsuit, Count IV is dismissed pursuant to *Noerr-Pennington*. To the extent that counterclaim Count IV claims interference premised upon AoA's alleged wrongful withholding of consent to the APA or alleged delay of exercising its right of first refusal, AoA is not shielded by *Noerr-Pennington*.

Counterclaims V and VI are premised on AoA's May 22, 2017 letter revoking its approval of the Wyoming Valley's plan to relocate its Audi dealership to the Relocation Property. (*Id.*, at ¶¶ 151, 165). AoA argues that this letter constitutes "conduct incidental to this lawsuit" and therefore receives *Noerr-Pennington* protection. (Doc. 316, pp. 6-7). Indeed, Napleton admits in its counterclaims that AoA's revocation of consent was predicated on information uncovered through discovery in this litigation. (Doc. 219, ¶ 151). However, simply because this letter was predicated upon information obtained during discovery does not mean that it is part and parcel to AoA's right to petition the courts for redress. We agree with Napleton that the May 22, 2017 letter is properly considered as "private, commercial conduct directed towards Napleton" and we therefore deny AoA's motion to dismiss these counts on the basis of immunity. (Doc . 298, p. 27).

Counterclaim Count VII alleges a violation of Section 12(b)(5) of the Act, which requires manufacturers to respond to a request for consent to the sale of a franchise within 60 days. (Doc. 219, ¶ 174). This claim does not concern any actions of AoA petitioning the government, and we deny AoA's motion to dismiss counterclaim VI in this regard without further discussion.

Finally, counterclaim Count VIII alleges that AoA engaged in an abuse of process by issuing subpoenas to non-party manufacturers of other brands involved in the APA and certain lenders of the parties, and by seeking "the injunction of the

entire transaction, not just the Audi portion." (Doc. 219, ¶¶ 188-189). Napleton

offers no specific argument relating to this claim, and as previously discussed, did

not argue that the sham exception applies. As counterclaim Count VIII explicitly

bases alleged liability on AoA's actions undertaken pursuant to this litigation, we

will dismiss counterclaim Count VIII pursuant to the *Noerr-Pennington* doctrine.

*See VIM, Inc. v. Somerset Hotel Ass'n*, 19 F. Supp. 2d 422, 430 (W.D. Pa. 1998),

aff'd, 187 F.3d 627 (3d Cir. 1999) (dismissing an abuse of process claim pursuant

to the *Noerr-Pennington* doctrine).

Accordingly, AoA cannot avail itself of *Noerr- Pennington* immunity for

counterclaims V, VI, and VII, and the Motion is denied in those regards. The

Motion is granted in part with respect to counterclaims II, III, and IV, as those

claims are limited in scope, but not entirely dismissed. The Motion is granted with

regard to counterclaim Count VIII.

### B. Count I – Section 12(b)(3)

Counterclaim Count I alleges that AoA violated Section 12(b)(3) of the Act

by unreasonably withholding consent to the sale of the Audi franchise to Napleton.

(Doc. 219, ¶ 110). AoA argues that this claim must fail because AoA did not

exceed the statutory deadline for exercising its right of first refusal and because

Wyoming Valley and Napleton negated any deadline by failing to identify the

terms of the right of first refusal. (Doc. 285, pp. 9-10). These are both factual

arguments inappropriate at the motion to dismiss stage. The Motion to dismiss counterclaim Count I is therefore denied.

### C. Count II – Section 16

Counterclaim Count II alleges that AoA improperly delayed the exercise of its right of first refusal in violation of Section 16 of the Act. (Doc. 219, ¶¶119-120). AoA relies on the same factual arguments to dismiss Count II as it did for Count I. (Doc. 285, pp. 10-11). The Motion to dismiss counterclaim Count II is therefore denied.

### D. Count III – Tortious Interference with Contract

Count III, as limited by our holding regarding *Noerr-Pennington* immunity, alleges that AoA tortiously interfered with the APA, as amended to not include the Audi dealership, by communicating with the other dealerships involved in the APA and by seeking out and communicating with potential alternate buyers for all seven franchises that were part of the APA. (Doc. 219, ¶¶ 126-128). Under Pennsylvania law, the elements for tortious interference with a contract are:

> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct.

*Crivelli v. Gen. Motors Corp.*, 215 F.3d 386, 394 (3d Cir. 2000) (*citing Strickland v. University of Scranton*, 700 A.2d 979, 985 (Pa.Super.1997)). AoA argues that counterclaim Count III must fail for two reasons: (1) AoA was privileged to interfere, defeating the third element; and (2) Napleton fails to allege any interference or legal damages. (Doc. 285, pp. 11-14).

"[T]o recover on a tortious intentional interference with existing or prospective contractual relationships claim in Pennsylvania, a plaintiff must prove that the defendant was not privileged or justified in interfering with its contracts." *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 214 (3d Cir. 2009). "The scope of the privilege is not precisely defined; instead, courts typically query whether the defendant's actions 'are sanctioned by the 'rules of the game'' adopted by society and fall within the 'area of socially acceptable conduct which the law regards as privileged.'" *Advanced Fluid Sys., Inc. v. Huber*, 28 F. Supp. 3d 306, 338 (M.D. Pa. 2014) (Conner, C.J) (*quoting Empire Trucking Co. v. Reading Anthracite Coal Co.*, 71 A.3d 923, 935–36 (Pa.Super.Ct.2013)).

"In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation is improper or not, consideration is given to the following factors: (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in

protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties." *In re 400 Walnut Assocs., L.P.*, 454 B.R. 60, 78 (Bankr. E.D. Pa. 2011).

The gravamen of Napleton's entire counter complaint is that AoA engaged in a course of conduct to interfere with its business relationship with Wyoming Valley due to animus against Napleton for refusing to take part in a previous settlement. (*See* Doc. 219, ¶ 102). Each claim is underpinned by the theory of Napleton's entire counter complaint that AoA acted to thwart all business relationships with Napleton due to an improper motivation. Because of these allegations, we cannot hold that Napleton has failed to plead the absence of privilege in its tortious interference claims because doing so would rule on the merits that AoA's interference was proper. AoA is free to advance its factual arguments surrounding its alleged privilege in subsequent motions or to the jury, but as this is a motion to dismiss, we hold that Napleton has adequately pled the absence of privilege.

AoA next argues that Napleton has failed to allege any interference or legal damages with regard to Count III. In support, AoA points to our June 29, 2017 Order wherein we lifted the injunction to the sale of the non-Audi and non-Volkswagen dealerships. (Doc. 285, p. 14). Napleton responds by pointing out that

Mazda did, in fact, reject the proposed sale because of the situation with AoA. (Doc. 298, p. 19).  These are, again, factual arguments that are inappropriate on a motion to dismiss. Napleton has adequately pled in Count III that it suffered legal damages through lost contractual relationships due to AoA's interference with the APA. The Motion is therefore denied with respect to Count III.

### E.  Count IV – Tortious Interference with Prospective Contractual Relations

Counterclaim Count IV alleges that AoA tortiously interfered with prospective contractual relations by preventing or delaying the closing of the APA. Napleton alleges that this interfered with prospective dealer agreements with the five non-Audi and non-Volkswagen franchises that were part of the original APA. (Doc. 298, p. 20). AoA argues that this claim must fail because: (1) AoA was privileged to interfere; (2) the APA is not enjoined from closing with regard to the other brands; and (3) Napleton has not alleged any future customer that it has lost. (Doc. 285, pp. 14-15).

We reject AoA's argument regarding privilege for the same reasons as Count III – it is a factual argument that is inappropriate at this stage. AoA's next two arguments fail as well. Napleton has adequately alleged that AoA's actions caused the delay or demise of the prospective dealership agreements with the other APA franchises. These allegations identify prospective contractual relationships as well as resulting harm. That the APA is not currently enjoined with regard to the

non-Audi and non-Volkswagen dealerships is a factual issue concerning whether there has been actual interference and damages, but Napleton has adequately alleged that the delay resulting from AoA's lack of consent to the APA has tortiously interfered with prospective contractual relationships. The Motion is therefore denied with respect to Count IV.

### F. Counts V and VI – Tortious Interference with Contract

Counts V and VI both allege tortious interference with a contract with regard AoA's revocation of consent for Wyoming Valley to relocate its Audi franchise to the Relocation Property. These claims concern multiple contracts: (1) the APA, to the extent that it contemplates that the Relocation Property will transfer to EFN Wyoming Valley upon closing; (2) the MIPA, which transferred the ownership interests of MH4 to NIP; and (3) the current and prospective leases for dealerships to occupy the Relocation Property. The alleged tortious interference with these contracts is AoA's revocation of consent for Wyoming Valley to relocate its Audi franchise to the Relocation Property unless the dealings between Wyoming Valley and Napleton were unwound. (Doc. 219, ¶¶ 151, 165).

To start, we reject AoA's argument that it was privileged to interfere for the same reasons as the previous tortious interference claims. AoA next argues that each claim must fail because Napleton fails to allege that it suffered legal damages. (Doc. 285, pp. 16-17). In support, AoA simply points out that none of these

contracts were actually unwound. (*Id.*). AoA's arguments are unavailing. Counts V and VI allege damages in the form of delayed construction at the Relocation Property, lost profits from relocating the Wyoming Valley Audi dealership, and lost or delayed profits from leaseholds between other dealerships and the owners of the Relocation Property. (Doc. 219, ¶¶ 155, 167). Napleton has pled plausible claims for relief for Counts V and VI.

### G. Count VII – Section 12(b)(5)

Counterclaim Count VII alleges that AoA violated Section 12(b)(5) of the Act by failing to respond to Wyoming Valley and Napleton's request for consent to the APA within 75 days. (Doc. 219, ¶¶ 174-184). AoA relies on the same factual arguments set forth in support of dismissal of counterclaims Counts I and II, and we shall deny the Motion to dismiss counterclaim Count VII for the same reasons as Counts I and II.

### H. Count VIII – Abuse of Process

Counterclaim Count VIII claims an abuse of process premised on AoA's issuance of subpoenas to third parties and its initiation of a lawsuit to enjoin the APA. (Doc. 219, ¶¶ 188-189). As discussed *supra*, counterclaim Count VIII fails pursuant to the *Noerr-Pennington* doctrine because it seeks to impose liability for actions undertaken pursuant to this litigation. The Court briefly notes that Count VIII would fail irrespective of the *Noerr-Pennington* doctrine to the extent that it is

premised on the issuance of subpoenas because Pennsylvania law does not recognize a cause of action for third-party abuse of process. *Credico v. Hubiak*, 2017 WL 1505246, at *5 (Pa. Super. Ct. Apr. 21, 2017) *Sixth Angel Shepherd Rescue Inc. v. West*, 790 F. Supp. 2d 339, 359 (E.D. Pa. 2011), aff'd, 477 F. App'x 903 (3d Cir. 2012).

## IV.    Conclusion

Much of AoA's arguments in support of dismissal were premised on factual issues and are therefore inappropriate at the motion to dismiss stage. At this point in the litigation, we are concerned only with whether Napleton has adequately alleged plausible claims of relief and must take all factual allegations as true and viewed in their favor. The Court realizes that this Motion comes at a unique time in the litigation; vast discovery has been completed in this matter, unlike most cases at the motion to dismiss stage. However, AoA must reserve its factual arguments arising out of that discovery for future substantive motions or for the jury in March 2018. While we believe that some of Napleton's claims are scarce in allegations, particularly those concerning tortious interference with contracts, we find that Napleton has adequately met the liberal pleading standards we must consider. Accordingly, we shall grant the Motion only to the extent that pursuant to *Noerr-Pennington*, Counts I, III, and IV are limited in scope and Count VIII is dismissed.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Plaintiff's motion to dismiss Intervenor-Defendants' counterclaims (Doc. 256) is **GRANTED, in part,** and **DENIED, in part**.

   a. The motion is **GRANTED** to the extent that counterclaim VIII is **DISMISSED**. Counterclaim Counts I, III, and IV are limited in scope consistent with this memorandum.

   b. The motion is **DENIED** in all other respects.

<u>s/ John E. Jones III</u>
John E. Jones III
U.S. District Judge