### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AUDI OF AMERICA, INC.,<br>An Organizational Unit of Volkswagen Group<br>of America, Inc.,<br>A New Jersey Corporation, | |
| Plaintiff/Counter-Defendant, | Case No.  3:16-cv-02470 |
| v. | Hon. John E. Jones III |
| BRONSBERG & HUGHES PONTIAC, INC.,<br>d/b/a WYOMING VALLEY AUDI,<br>A Pennsylvania Corporation, | |
| Defendant/Counter-Plaintiff, | |
| -and-<br>NORTH AMERICAN AUTOMOTIVE<br>SERVICES, INC., an Illinois Corporation; *et al.,* | |
| Defendants/Counter-Plaintiffs. | |

## AUDI OF AMERICA, INC.'S ANSWER TO INTERVENORS' COUNTERCLAIMS

Plaintiff Audi of America, Inc., an operating unit of Volkswagen Group of America, Inc. ("AoA"), hereby answers the Counterclaims of Intervenor-Defendants/Counterclaim-Plaintiffs North American Automotive Services, Inc., Napleton Wyoming Valley Imports, LLC, (collectively "Napleton"), EFN Wyoming Valley Properties, LLC, and  Millennium Holdings IV, LLC (collectively, along with Napleton, the "Napleton Entitles") as follows:

**Parties**

1.     Intervenor-Defendant/Counterclaim-Plaintiff     North     American Automotive Services, Inc. is a corporation organized under the laws of the State of Illinois and with its principal place of business in Illinois.

**ANSWER:**  AoA admits the allegations in Paragraph 1.

2.     Intervenor-Defendant/Counterclaim-Plaintiff     Napleton     Wyoming Valley Imports, LLC is an Illinois limited liability company with its principal place of business in Illinois.

**ANSWER:**  AoA admits the allegations in Paragraph 2.

3.     Intervenor-Defendant/Counterclaim-Plaintiff     Napleton     Investment Partnership, LP is an Illinois limited partnership with its principal place of business in Illinois.

**ANSWER:**  AoA admits the allegations in Paragraph 3.

4.     Intervenor-Defendant/Counterclaim-Plaintiff     EFN     Wyoming     Valley Properties, LLC is an Illinois limited liability company with its principal place of business in Illinois.

**ANSWER:**  AoA admits the allegations in Paragraph 4.

5.     Millennium Holdings, IV, LLC is a Pennsylvania Limited Liability Company with its principal place of business in Pennsylvania.

**ANSWER:**  AoA admits the allegations in Paragraph 5.

6.     Bronsberg & Hughes Pontiac, Inc., d/b/a Wyoming Valley Audi is a corporation organized under the laws of the Commonwealth of Pennsylvania and with its principal place of business in Larksville, Pennsylvania.

**ANSWER:**  AoA admits the allegations in Paragraph 6.

7.     Plaintiff/Counterclaim-Defendant Audi of America, Inc. is an organizational unit of Volkswagen Group of America, Inc. Volkswagen Group of America, Inc. is a corporation organized under the laws of the State of New Jersey and with its principal place of business in Herndon, Virginia. Audi of America, Inc. shares its citizenship with Volkswagen Group of America, Inc.

**ANSWER:**  AoA admits the allegations in Paragraph 7.

## Jurisdiction and Venue

8.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a) as the Intervenors/Counterclaim-Plaintiffs are diverse from Plaintiff/Counterclaim-Defendant Audi. Additionally, the amount in controversy exceeds $75,000, exclusive of interest and costs.

**ANSWER:**  The allegations of Paragraph 8 state a legal conclusion to which

no answer is required.  To the extent an answer is required, AoA admits jurisdiction is

proper.

9.     This Court has personal jurisdiction over the Audi by virtue of it commencing this action and thus submitting itself to personal jurisdiction in the Middle District of Pennsylvania.

**ANSWER:**  The allegations of Paragraph 9 state a legal conclusion to which

no answer is required.  To the extent an answer is required, AoA admits this Court

has personal jurisdiction over AoA.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Intervenor's claims occurred in the Middle District of Pennsylvania, and a substantial part of property that is the subject of this action is situated in this judicial district.

**ANSWER:**  The allegations of Paragraph 10 state a legal conclusion to which

no answer is required.  To the extent an answer is required, AoA admits the venue is

proper.

## Introduction

11.     Intervenors bring these Intervenor Counterclaims against Audi based upon Audi's willful, unlawful, and improper attempt to thwart Napleton's proposed acquisition of seven retail automotive dealerships in violation of the Pennsylvania Board of Vehicles Act, 63 P.S. § 818.2, *et seq.* ("the Act"). Audi has not only

unreasonably withheld consent to the sale of an authorized Audi dealership, Wyoming Valley Audi, but it has also tortiously interfered with the entire Asset Purchase Agreement between Napleton and Defendant Bronsberg & Hughes Pontiac, Inc. d/b/a Wyoming Valley Audi and its affiliated entities (collectively, "Wyoming Valley").

**ANSWER:**  AoA denies the allegations in Paragraph 11.

12.    Audi has, through its actions, sought to deprive Napleton of the prospective economic advantage that was to be obtained by Napleton upon consummation of the proposed sale.

**ANSWER:**  AoA denies the allegations in Paragraph 12.

13.    Such actions include, but are not limited to, the misuse of the discovery process in this action for the improper purpose of souring Napleton's relationships with the other manufacturers who have already approved the sale, in order to result in the sale's rejection and termination. Napleton seeks compensatory and punitive damages resulting from Audi's unlawful actions.

**ANSWER:**  AoA denies the allegations in Paragraph 13.

14.    Audi has engaged in this unlawful behavior in order to punish Napleton for, among other things, its affiliates' efforts to protect their legal rights in the unrelated diesel defeat device scandal (the "TDI Scandal").

**ANSWER:**  AoA denies the allegations in Paragraph 14.

15.    Affiliates of Napleton owned multiple Volkswagen dealerships when news broke of the years-long campaign of Volkswagen AG ("VW AG") and its subsidiaries and affiliates, Audi AG, and Volkswagen Group of America ("VW Group," which includes its unincorporated business divisions, Audi of America, Inc. and Volkswagen of America, Inc.) to defraud the federal government (VW AG, Audi AG, and VW Group collectively referred to herein as "VW").

**ANSWER:**  AoA denies the allegations in Paragraph 15 except AoA admits (i)

Napleton-affiliated entities owned three Volkswagen dealerships as of September 3,

2015; and (ii) AoA admits that Volkswagen AG pleaded guilty to three federal felony

counts and agreed to pay a $2.8 billion penalty as part of a Rule 11 Plea Agreement

with the U.S. Department of Justice, and respectfully refers the Court to that agreement and its accompanying statement of facts for a fair, accurate, and complete description of its contents.

16.    VW's fraud is well documented, including being the subject of a popular new book.[1]

**ANSWER**:  AoA denies the allegations in Paragraph 16 except AoA admits that Volkswagen AG pleaded guilty to three federal felony counts and agreed to pay a $2.8 billion penalty as part of a Rule 11 Plea Agreement with the U.S. Department of Justice, and respectfully refers the Court to that agreement and its accompanying statement of facts for a fair, accurate, and complete description of its contents.

17.    After subsequent fallout from a tarnished brand and investigations by the DOJ, the EPA, and numerous state Attorneys General, VW Group's corporate parent, VW AG, recently pled guilty on behalf of itself, Audi AG, and VW Group to multiple federal crimes.

**ANSWER**:  AoA denies the allegations in Paragraph 17 except AoA admits that Volkswagen AG pleaded guilty to three federal felony counts and agreed to pay a $2.8 billion penalty as part of a Rule 11 Plea Agreement with the U.S. Department of Justice, and respectfully refers the Court to that agreement and its accompanying statement of facts for a fair, accurate, and complete description of its contents.

18.    Those charges relate to VW's coordinated strategy to fool emissions regulators into believing that VW's "clean diesel" vehicles, including vehicles sold under the Audi brand, were within regulations—when in fact such vehicles polluted the atmosphere at many times over the legal limit.

---

[1]    Bethany McLean, *Driven Off Course:  How Volkswagen Got On The Road To Scandal*, N.Y. Times, June 5, 2017, *available at*:   https://www.nytimes.com/2017/06/05/books/review/volkswagen-scandal-faster-higher-farther-jack-ewing.html?_r=0 (last visited June 9, 2017).

**ANSWER:** AoA denies the allegations in Paragraph 18 except AoA admits that Volkswagen AG pleaded guilty to three federal felony counts and agreed to pay a $2.8 billion penalty as part of a Rule 11 Plea Agreement with the U.S. Department of Justice, and respectfully refers the Court to that agreement and its accompanying statement of facts for a fair, accurate, and complete description of its contents.

19.   A federal MDL judge in California recently approved a class action settlement of all potential claims held by Volkswagen dealers against VW Group related to the TDI Scandal (the "MDL Settlement").

**ANSWER:** AoA denies the allegations in Paragraph 19 except AoA admits that on January 23, 2017, the U.S. District Court for the Northern District of California (Breyer, J.) granted final approval of a class action settlement in the case styled *In Re: Volkswagen 'Clean Diesel' Marketing, Sales Practices, And Products Liability Litigation*, MDL No. 02672-CRB (JSC).   AoA respectfully refers the Court to that order for a fair, accurate, and complete description of its contents.

20.   The Napleton affiliates agreed to act as the class representatives when the action was filed, ironically, at the urging of VW Group itself. However, on November 18, 2016, the Napleton affiliates ultimately elected to opt-out of the MDL Settlement, and their case against VW Group proceeds (the "Napleton Opt Out").

**ANSWER:** AoA denies the allegations in Paragraph 20 except AoA admits that (i) certain Napleton-affiliated entities initiated a putative class action against VW Group, among others, as lead plaintiffs, (ii) that these Napleton-affiliated entities elected to opt-out of the class settlement of that action; and (iii) that these Napleton-affiliated entities have a separate action styled *Napleton Orlando Imports LLC, et al. v.*

*Volkswagen Group of America Inc., et al.*, case number 3:16-cv-02086, in the U.S. District

Court for the Northern District of California.

21.     Perceiving Napleton as a persistent thorn in the side of VW Group due to the Napleton affiliates' exercise of their legal rights, Audi seized upon the proposed sale of Wyoming Valley's franchises as the perfect opportunity to exact revenge.

**ANSWER:**  AoA denies the allegations in Paragraph 21.

22.     Napleton came to an agreement with Wyoming Valley to purchase all of Wyoming Valley's franchises and franchise-related assets in Luzerne County, Pennsylvania, including dealerships for Mazda, Porsche, BMW, Subaru, Kia, Volkswagen and Audi, as well as purchasing the real estate and committing to the construction of new buildings, for a total investment of approximately $51.5 million (the "Initial Proposed Transaction").

**ANSWER:**  Upon information and belief, AoA denies the allegations in

Paragraph 22.

23.     As described more fully below, all of the manufacturers have conditionally approved the Initial Proposed Transaction except for VW Group's two brands, Audi and Volkswagen.

**ANSWER:**  Upon information and belief, AoA denies the allegations in

Paragraph 23.

24.     From the very first time that it received notice of the Initial Proposed Transaction, Audi immediately raised objections to the transaction and insisted upon an apportionment of the price of the Audi assets from the rest of the franchises under the APA.

**ANSWER:**  AoA denies the allegations in Paragraph 24 except AoA admits

that, upon receiving the Asset and Real Estate Purchase Agreement ("APA"), AoA

promptly contacted Defendant Bronsberg & Hughes Pontiac, Inc. d/b/a Wyoming

Valley Audi ("Wyoming Valley") in writing, by letter dated September 28, 2016, which

letter speaks for itself.

25.     Napleton and Wyoming Valley complied with Audi's request. Nevertheless, Audi refused, despite Wyoming Valley's demands, to advise Wyoming Valley whether it would honor its prior conditional approval for Wyoming Valley to relocate the Audi franchise, only with a new operator.

**ANSWER:** AoA denies the allegations in Paragraph 25 except AoA admits it

never advised Wyoming Valley that it would approve the proposed relocation.

26.     Under the circumstances, Napleton and Wyoming Valley complied with Audi's request in the only way that they could: by providing Audi with a valuation for the Audi franchise without the relocation factored in. (The parties' approach would prove prescient. As described below, on May 22, 2017, Audi relied on information obtained in this case under a protective order to form the basis of its decision to revoke its prior approval to relocate the franchise.)

**ANSWER:** AoA denies the allegations in Paragraph 26 except AoA admits it

obtained information during this litigation that led it to send a letter to Wyoming

Valley, dated May 22, 2017, which letter speaks for itself.

27.     Audi objected to this approach and suggested that, if the allocation could not be revised, Napleton and Wyoming Valley remove the Audi dealership from the deal.

**ANSWER:** AoA denies the allegations in Paragraph 27 except AoA admits

that, by letter dated December 2, 2016, AoA responded to Wyoming Valley and

Napleton's purported "breakdown" of the APA, which letter speaks for itself.

28.     Looking to move forward with the remainder of the transaction, Napleton and Wyoming Valley removed Audi from the Initial Proposed Transaction through a First Addendum to the APA in an effort to complete the sale for the remainder of the franchises (the "Proposed Transaction").

**ANSWER:** AoA denies the allegations in Paragraph 28.

29.     Yet for reasons that it has so far been unwilling to articulate to Wyoming Valley or this Court, Audi still acted to block the consummation of the Proposed Transaction.

**ANSWER:** The Court has dismissed Napleton's allegations that relate to litigation conduct. (Doc. 321.) Therefore, no response is required to the allegations in Paragraph 29. To the extent that a response is required, AoA denies the allegations in Paragraph 29 except AoA admits that on December 13, 2016, AoA filed this action, and on December 14, 2016, AoA filed a Motion for Temporary Restraining Order and Preliminary Injunction in this action.

30.     Audi continued to stand in the way and otherwise obstruct the Proposed Transaction until June 28, 2017. Audi's bad faith conduct was motivated by its desire to penalize Napleton for having availed itself of its legal rights.

**ANSWER:** The Court has dismissed Napleton's allegations that relate to litigation conduct. (Doc. 321.) Therefore, no response is required to the allegations in Paragraph 30. To the extent that a response is required, AoA denies the allegations in Paragraph 30.

31.     It is apparent from the timing of its actions and other indicators that Audi, either independently or in concert with VW Group, has taken particular umbrage over the Napleton affiliates' TDI Scandal class action lawsuit and for opting out of the MDL Settlement.

**ANSWER:** The Court has dismissed Napleton's allegations that relate to litigation conduct. (Doc. 321.) Therefore, no response is required to the allegations in Paragraph 31. To the extent that a response is required, AoA denies the allegations in Paragraph 31.

32.     Audi has, in effect, weaponized its right of first refusal in an attempt to effectuate a total separation of the parties and to chill any future acquisitions that Napleton may endeavor to consummate involving VW Group franchises, including Audi.

**ANSWER:** The Court has dismissed Napleton's allegations that relate to litigation conduct.  (Doc. 321.)  Therefore, no response is required to the allegations in Paragraph 32.  To the extent that a response is required, AoA denies the allegations in Paragraph 32.

33.     Far from looking to protect Audi's right to choose its dealer partners, Audi has perverted its right of first refusal to advance its dark motives. It abused the processes of this Court in an attempt to kill the Proposed Transaction and punish Napleton.

**ANSWER:** The Court has dismissed Napleton's allegations that relate to litigation conduct.  (Doc. 321.)  Therefore, no response is required to the allegations in Paragraph 33.  To the extent that a response is required, AoA denies the allegations in Paragraph 33.

34.     Aside from obtaining an injunction that blocks the sale of the non-Audi dealerships while refusing to pay for them, Audi has also issued numerous subpoenas to the <u>other</u> manufacturers in the Proposed Transaction, while failing, until several weeks after Napleton moved to intervene, to issue subpoenas to Napleton.

**ANSWER:** The Court has dismissed Napleton's allegations that relate to litigation conduct.  (Doc. 321.)  Therefore, no response is required to the allegations in Paragraph 34.  To the extent that a response is required, AoA denies the allegations in Paragraph 34.

35.     If Audi was truly interested in discovery narrowly tailored to confirming the value of the Audi deal, Audi surely would have started with Napleton long ago.

**ANSWER**: The Court has dismissed Napleton's allegations that relate to litigation conduct. (Doc. 321.) Therefore, no response is required to the allegations in Paragraph 35. To the extent that a response is required, AoA denies the allegations in Paragraph 35.

36.    Instead, Audi has abused the discovery process in an effort to improperly coerce the other manufacturers into rejecting the deal.

**ANSWER**: The Court has dismissed Napleton's allegations that relate to litigation conduct. (Doc. 321.) Therefore, no response is required to the allegations in Paragraph 36. To the extent that a response is required, AoA denies the allegations in Paragraph 36.

37.    Indeed, the institution of these proceedings and the issuance of third-party subpoenas resulted in at least one manufacturer expressing concerns about the consummation of the Proposed Transaction. The other approvals were put at risk, given their conditional nature and their deadlines for closing.

**ANSWER**: The Court has dismissed Napleton's allegations that relate to litigation conduct. (Doc. 321.) Therefore, no response is required to the allegations in Paragraph 37. To the extent that a response is required, AoA lacks information sufficient to form a belief about the truth or falsity of the allegations of Paragraph 37. Answering further, AoA states that information obtained through such third party subpoenas revealed that other manufacturers had asked Wyoming Valley to apportion the APA.

38.    Fully aware of the tenuous nature of any transaction before it is closed, Audi has sought and obtained an injunction for the entire Proposed Transaction,

knowingly putting Napleton in peril of losing its existing conditional manufacturer approvals and jeopardizing the entire deal.

**ANSWER:** The Court has dismissed Napleton's allegations that relate to litigation conduct.  (Doc. 321.)  Therefore, no response is required to the allegations in Paragraph 38.  To the extent that a response is required, AoA denies the allegations in Paragraph 38 except AoA admits that on December 14, 2016, AoA filed a Motion for Temporary Restraining Order and Preliminary Injunction in this action, and the Court subsequently issued both a TRO and a preliminary injunction motion.

39.     Moreover, Audi's objections are moot as the Proposed Transaction no longer includes the Audi dealership. Any action by Audi in this Court after the First Addendum served no purpose other than to punish Napleton and undermine its contractual and prospective business rights. Audi's actions compounded the damages that Napleton is entitled to recover in this Intervenor Complaint.

**ANSWER:** The Court has dismissed Napleton's allegations that relate to litigation conduct.  (Doc. 321.)  Therefore, no response is required to the allegations in Paragraph 39.  To the extent that a response is required, AoA denies the allegations in Paragraph 39.

40.     Further, VW Group has instituted a separate, duplicative lawsuit regarding its exercise of the right of first refusal for the Volkswagen franchise in the Proposed Transaction. *Volkswagen Group of America, Inc. v. Bronsberg & Hughes Pontiac, Inc. d/b/a Wyoming Valley Volkswagen*, 17-cv-00010-JEJ (the "Duplicate Action").

**ANSWER:** The Court has dismissed Napleton's allegations that relate to litigation conduct.  (Doc. 321.)  Therefore, no response is required to the allegations in Paragraph 40.  To the extent that a response is required, AoA denies the allegations in Paragraph 40 except AoA admits Volkswagen of America, Inc. filed a lawsuit

regarding the APA and its right of first refusal, styled as *Volkswagen Group of America, Inc. v. Bronsberg & Hughes Pontiac, Inc. d/b/a Wyoming Valley Volkswagen*, case no. 17-cv-00010-JEJ.

41.     The true motive behind Audi and VW Group's actions have been betrayed by its own writings. In its January 4, 2017 letter to the principals of Wyoming Valley, VW Group made it clear that it wishes to dissociate itself from Napleton as a result of, *inter alia*, Napleton's prior lawsuits against the VW Group to protect Napleton's rights as a result of VW Group's illegal conduct.

**ANSWER:**  The Court has dismissed Napleton's allegations that relate to litigation conduct.  (Doc. 321.)  Therefore, no response is required to the allegations in Paragraph 41.  To the extent that a response is required, AoA denies the allegations in Paragraph 41.

42.     VW Group unreasonably rejected Napleton's purchase of Wyoming Valley's Volkswagen franchise due to Napleton's purported "bad faith conduct and history of litigation" against VW Group, including initiating the class action lawsuit that recently led to a $1.2 billion settlement in favor of all Volkswagen dealers across the country.

**ANSWER:**  AoA denies the allegations in Paragraph 42.

43.     Upon information and belief, Napleton and its dealership entities have been blacklisted by Audi and VW Group. Indeed, Audi's entire strategy in this action appears to have been in furtherance of VW Group's larger goal of punishing Napleton for asserting its lawful claims.

**ANSWER:**  AoA denies the allegations in the first sentence of Paragraph 43. As to the second sentence, the Court has dismissed Napleton's allegations that relate to litigation conduct.   (Doc. 321.)   Therefore, no response is required to the

allegations in the second sentence of Paragraph 43. To the extent that a response is required, AoA denies the allegations in the second sentence of Paragraph 43.

44. Moreover, VW Group's January 4, 2017 letter is nothing short of a tacit admission on its part that it does not wish to have any further business relationships with Napleton, and that it will not rest until Napleton has ceased all of its litigation efforts against VW Group and is no longer a Volkswagen dealer.

**ANSWER:** AoA denies the allegations in Paragraph 44. Answering further, AoA states that the January 4, 2017 letter from Volkswagen of America, Inc., a separate business unit from AoA, speaks for itself.

45. As an organizational unit of VW Group, and through its own actions, it is clear that Audi does not want to have any further business relationships with Napleton, and that it will not rest until Napleton relinquishes its Volkswagen franchises and ceases its litigation against VW Group that resulted from the VW Group's illegal and intentionally deceptive conduct.

**ANSWER:** AoA denies the allegations in Paragraph 45. Answering further, AoA states that the Ed Napleton Automotive Group is not among the organizations that AoA would choose to succeed Wyoming Valley as an Audi dealer.

46. Upon information and belief, Audi's actions are an attempt to make an example of Napleton to create a chilling effect in the dealership community. Audi is aware that large groups like Napleton grow through acquisitions, and through its wrongful conduct in this instance, it has attempted to harm the reputation of Napleton and cause would-be sellers to avoid deals with Napleton that include VW Group brands.

**ANSWER:** The Court has dismissed Napleton's allegations that relate to litigation conduct. (Doc. 321.) Therefore, no response is required to the allegations in Paragraph 46. To the extent that a response is required, AoA denies the allegations in Paragraph 46.

47.    Audi has exerted unlawful leverage through abuse of process in this action to not only deprive Napleton of an Audi dealership, but to put the entire transaction at risk and to harm [sic] Napleton's reputation and jeopardize Napleton's standing in the dealer community.

**ANSWER:** The Court has dismissed Napleton's allegations that relate to litigation conduct. (Doc. 321.) Therefore, no response is required to the allegations in Paragraph 47. To the extent that a response is required, AoA denies the remaining allegations in Paragraph 47.

48.    That VW Group and Audi would use their respective approvals of the Proposed Transaction to punish Napleton, which has affiliated dealerships that were victims of VW Group's federal crimes, for asserting their rights, demonstrates the very corrupt nature that VW has acknowledged permeates all levels of its organization in its plea agreement with the federal government.

**ANSWER:** AoA denies the allegations in Paragraph 48.

49.    Audi and VW Group are self-admitted criminal enterprises, and their thuggish tactics in this litigation should be rejected.

**ANSWER:** The Court has dismissed Napleton's allegations that relate to litigation conduct. (Doc. 321.) Therefore, no response is required to the allegations in Paragraph 49. To the extent that a response is required, AoA denies the allegations in Paragraph 49.

## Factual Background

50.    In April 2016, Rob Lee, a broker with the Tim Lamb Group auto dealership brokerage firm, contacted Napleton regarding Napleton's interest in purchasing substantially all of the assets of Wyoming Valley's seven retail automotive dealerships, including Mazda, Porsche, Volkswagen, BMW, Subaru, Kia, and Audi franchises.

**ANSWER**:  AoA lacks information sufficient to form a belief about the truth

or falsity of the allegations in Paragraph 50.

51.    The Audi dealership, located at 126 Narrows Road, Route 11, Larksville, Pennsylvania 18651 ("Wyoming Valley Audi"), is owned and operated at the same location with Mazda, Porsche, and Volkswagen. The BMW, Subaru, and Kia franchises operate at nearby locations in Kingston, Pennsylvania.

**ANSWER**:  AoA denies the allegations in Paragraph 51.

52.    Wyoming Valley was and is in the process of a major relocation and construction plan for certain of its dealerships, including Wyoming Valley Audi, at a cost well exceeding $27,000,000.

**ANSWER**:  AoA denies the allegations in Paragraph 52.

53.    The discussions and negotiations between Napleton and Wyoming Valley were complex, as the relocation and construction project was already underway. Despite this hurdle, Wyoming Valley and Napleton were able to agree on an overall purchase price for the seven dealerships, the properties, and the assumption of all liabilities, including the construction of new facilities.

**ANSWER**:  AoA denies the allegations in Paragraph 53.

54.    On or about July 11, 2016, Napleton, through its affiliated entities, entered into an Asset and Real Estate Purchase Agreement (the "APA") with Wyoming Valley for the Initial Proposed Transaction.

**ANSWER**:  AoA denies the allegations in Paragraph 54 except AoA admits

that Napleton and Wyoming Valley are parties to the APA, which is dated July 11,

2016.

55.    Pursuant to the APA, in addition to Napleton's purchasing through its affiliated entities the seven automotive dealerships contemplated in the Initial Proposed Transaction, EFN Wyoming Valley (a Napleton affiliate), is to purchase the parcel of real property located at 1492 Highway 315, Plains Township, Luzerne County, Pennsylvania (the "Relocation Property").

**ANSWER:** AoA denies the allegations in Paragraph 55 except AoA admits that the text of the APA states that Millennium IV Holdings, LLC ("MH4"), as defined in the APA, is to transfer certain assets to EFN Wyoming Valley, LLC.

56.    The Relocation Property was, and still is at the time of this filing, owned by MH4, a limited liability company organized and existing for the sole purpose of owning the Relocation Property.

**ANSWER:** AoA lacks information sufficient to form a belief about the truth or falsity of the allegations in Paragraph 56.

57.    Upon the closing of the APA, MH4 will transfer the Relocation Property to EFN Wyoming Valley, as per the APA's terms.

**ANSWER:** AoA lacks information sufficient to form a belief about the truth or falsity of the allegations in Paragraph 57 except AoA admits that the text of the APA states that MH4, as defined in the APA, is to transfer certain assets to EFN Wyoming Valley, LLC.

58.    The Relocation Property was and is the site of a construction project to build new dealership facilities, including a brand-new, state of the art exclusive Audi facility meeting all of Audi's design standards.

**ANSWER:** AoA denies the allegations in Paragraph 58 except AoA admits that certain dealership facilities have been constructed at the Relocation Property.

59.    The Wyoming Valley Audi dealership is supposed to relocate to the Relocation Property once construction there is complete. In a letter to Wyoming Valley dated August 12, 2016, Audi conditionally approved this planned relocation. The parties documented Audi's conditional approval in a Relocation Agreement having the same date.

**ANSWER:** AoA denies the allegations in Paragraph 59 except AoA admits that it sent a letter to Wyoming Valley responding to Wyoming Valley's request for approval to relocate its Audi dealership, which letter speaks for itself.

60. The Relocation Property site is currently under construction, and construction is scheduled to be completed within weeks.

**ANSWER:** AoA lacks information sufficient to form a belief about the truth or falsity of the allegations in Paragraph 60.

61. However, the completion of the construction project was once not so certain: in or about October 2016, the construction project was in danger of losing its funding, and the Napleton-Wyoming Valley deal was in danger of falling apart as a result.

**ANSWER:** AoA lacks information sufficient to form a belief about the truth or falsity of the allegations in Paragraph 61.

62. To preserve the deal, Napleton stepped in to provide the funding necessary to resuscitate the floundering construction project: NIP, a Napleton affiliate, agreed to fund the construction project in exchange for the membership interests of MH4, pending the closing of the APA.

**ANSWER:** AoA lacks information sufficient to form a belief about the truth or falsity of the allegations in Paragraph 62, except AoA admits that Napleton Investment Partnership, LP ("NIP") is a Napleton-affiliated entity.

63. NIP and the members of MH4 entered into a Membership Purchase Agreement (the "MIPA") in or about December, 2016 to memorialize this exchange. As a result of the MIPA, NIP owns the membership interests in MH4, while MH4 still owns the Relocation Property itself. Upon the closing of the APA, MH4 will still transfer the Relocation Property to EFN Wyoming Valley, per its terms.

**ANSWER:** Upon information and belief, AoA admits that NIP and the members of MH4 entered into a Membership Interest Purchase Agreement (the

"MIPA"); that Napleton and its affiliates, through NIP and MH4, owns and controls the Relocation Property; and that, if the APA were to close according to its terms, upon such closing Napleton would cause the transfer of the Relocation Property from MH4 to EFN Wyoming Valley.  AoA denies all remaining allegations.

64.    Upon closing of the Initial Proposed Transaction, it was Napleton's intent to operate all seven dealerships contemplated therein.

**ANSWER:**  AoA lacks information sufficient to form a belief about the truth or falsity of the allegations in Paragraph 64.

65.    Closing on the APA was conditioned upon, *inter alia*, the approval of the manufacturers pursuant to the terms of Wyoming Valley's respective franchise agreements.

**ANSWER:**  AoA lacks information sufficient to form a belief about the truth or falsity of the allegations in Paragraph 65, except AoA admits the text of the APA, in Section 11.1.5, states that approval from each manufacturer listed in the APA is a condition precedent to closing the APA.

66.    On September 14, 2016, in accordance with the terms of the APA and Wyoming Valleys' franchise dealer agreement with VW Group (the "Franchise Agreement"), Wyoming Valley submitted an executed copy of the APA to VW Group for approval.

**ANSWER:**  AoA denies the allegations in Paragraph 66.

67.    During the time period from September 14, 2016 to Audi's initiation of this action, Wyoming Valley communicated with VW Group on several occasions to discuss and request assistance in compiling, preparing, and submitting a formal application to obtain Audi's approval of Napleton's proposed acquisition of Wyoming Valley Audi pursuant to the terms of the APA (the "Application Process").

**ANSWER:** AoA denies the allegations in Paragraph 67 except AoA admits that Wyoming Valley communicated with AoA and VWoA personnel regarding the APA.

68.     Audi was uncooperative throughout the entire Application Process.

**ANSWER:** AoA denies the allegations in Paragraph 68.

69.     First, Audi falsely accused Wyoming Valley of breaching the Franchise Agreement by virtue of packaging the transaction for the multiple dealerships (colloquially known as a "bundled" or "packaged" transaction).

**ANSWER:** AoA denies the allegations in Paragraph 69.

70.     Audi's accusations came despite this being a common practice in the industry, and despite Audi's past approval of Wyoming Valley selling its Audi franchise as part of a "packaged deal" with other franchises.

**ANSWER:** AoA denies the allegations in Paragraph 70.

71.     Audi piled on by further alleging that it was entitled to, and thus demanded, a "good faith" breakdown of the purchase price and the other terms attributable to the Audi transfer so that Audi could "evaluate" the Audi transfer in regards to exercising its contractual right of first refusal. Upon information and belief, Audi never intended to engage in any such "evaluation" as same would have been completely superfluous given that Audi's position—asserted just two weeks after the Napleton affiliates' Opt-Out—was that Wyoming Valley was in breach of its Franchise Agreement by the mere packaging of the transaction.

**ANSWER:** AoA denies the allegations in Paragraph 71 except AoA admits (i) Wyoming Valley's submission of the APA as a "package" transaction that failed to identify the terms applicable to Wyoming Valley's Audi dealership assets breached the Audi Dealer Agreement; and (ii) AoA requested that Wyoming Valley either withdraw the APA or provide an apportionment of the Audi dealership assets from the rest of the APA, including an apportionment of the price of such assets.

72.     Audi made this demand despite it having no such right under either the Dealer Agreement or provisions of the Act that govern a manufacturer's right of first refusal, Pennsylvania Board of Vehicles Act, 63 P.S. § 818.16.

**ANSWER:** AoA denies the allegations in Paragraph 72.

73.     Understanding that Napleton would be under significant pressure to try to save the deal, Audi offered Wyoming Valley and Napleton the alternative of "withdrawing the APA," thus achieving through coercion that which Audi could not otherwise accomplish through legal means.

**ANSWER:** AoA denies the allegations in Paragraph 73 except AoA admits it

requested that Wyoming Valley either withdraw the APA or provide an

apportionment of the Audi dealership assets from the rest of the APA, including an

apportionment of the price of such assets.

74.     Eager to obtain Audi's approval of the APA, Wyoming Valley and Napleton used good faith efforts to satisfy the requests of Audi as it related to the Audi transfer.

**ANSWER:** AoA denies the allegations in Paragraph 74.

75.     Audi assured Napleton and Wyoming Valley that it "intends to perform a focused review with respect to, among other matters, the buyer's proposed facility and capitalization." But from Napleton's due diligence and the state of Wyoming Valley's financial statements, it is clear that Audi had never taken any steps to apprise itself of Wyoming Valley's financial condition up until the point that Napleton became a candidate to purchase the same. Napleton is unaware of any facts which might give Audi legitimate cause for concern had the Initial Proposed Transaction been approved.

**ANSWER:** AoA denies the allegations in Paragraph 75 except AoA admits

that its counsel sent a letter to Wyoming Valley's counsel, Robert Arangio, on

October 6, 2016, which states, in part, that "AoA intends to perform a focused review

with respect to, among other matters, the buyer's proposed facility and capitalization."

76.    On or about November 17, 2016, Wyoming Valley and Napleton provided a good faith breakdown of the blue sky purchase price ($8 million) for the Audi transfer as a stand-alone franchise.

**ANSWER:**  AoA denies the allegations in Paragraph 76.  Answering further, AoA states that (i) in a letter dated November 17, 2016, Wyoming Valley informed AoA that it was providing "the good faith breakdown agreed to by Buyer and Seller requested by Audi," and (ii) the $8 million amount set forth in the November 17 letter was not an apportionment of the total blue sky purchase price in the APA.

77.    In its November 17, 2016 letter to Audi, Wyoming Valley explained the complexities and difficulties in accommodating Audi's request, since the parties to the APA priced it as a bundled transaction, not on a franchise-by-franchise basis.

**ANSWER:**  AoA denies the allegations in Paragraph 77 except AoA admits (i) that Wyoming Valley sent a letter to AoA on November 17, 2016, and (ii) the APA was a "bundled" or "package" transaction that failed to identify the terms applicable to Wyoming Valley's Audi dealership assets.

78.    Napleton's Opt-Out occurred the following day.

**ANSWER:**  AoA denies the allegations in Paragraph 78 except AoA admits that three Napleton-controlled dealerships elected to opt-out of the class action settlement in the case styled *In Re: Volkswagen 'Clean Diesel' Marketing, Sales Practices, And Products Liability Litigation*, MDL No. 02672-CRB (JSC), on or about November 18, 2016.

79.    Just two weeks later, by letter dated December 2, 2016, counsel for Audi responded by indicating its disagreement with the blue sky allocation, accusing

Wyoming Valley of breaching the Franchise Agreement and **again** offering to accept Wyoming Valley's withdrawal of Audi from the Transaction.

**ANSWER:** AoA denies the allegations in Paragraph 79 except AoA admits it sent a letter to Wyoming Valley on December 2, 2016, which letter speaks for itself.

80.    Indeed, Audi had failed and refused to engage in any good faith meaningful discussion toward a resolution of parsing out the terms of the Audi transfer.

**ANSWER:** AoA denies the allegations in Paragraph 80.

81.    Instead, on December 13, 2016, Audi sued Wyoming Valley for the improper purpose of enjoining the APA in its entirety. Audi concurrently filed a motion for a temporary restraining order and preliminary injunction.

**ANSWER:** The Court has dismissed Napleton's allegations that relate to litigation conduct. (Doc. 321.) Therefore, no response is required to the allegations in Paragraph 81. To the extent that a response is required, AoA denies the allegations in Paragraph 81 except AoA admits that on December 13, 2016, AoA filed this action, and on December 14, 2016, AoA filed a Motion for Temporary Restraining Order and Preliminary Injunction in this action.

82.    Audi purposefully did not name Napleton in its action in an effort to further obstruct Napleton's abilities to protect its rights under the APA. Audi has made no secret of its motivations and ill-will toward Napleton, having alleged in its Amended Complaint, without explanation, that Napleton is simply not "among the organizations that ... (Audi) would choose to succeed Wyoming Valley as an Audi dealer." *See* Amended Compl. ¶ 53.

**ANSWER:** The Court has dismissed Napleton's allegations that relate to litigation conduct. (Doc. 321.) Therefore, no response is required to the allegations

in Paragraph 82.  To the extent that a response is required, AoA denies the allegations in Paragraph 82.

83.   Upon information and belief, Audi's allegations in ¶ 53 of its Amended Complaint are facetious, as Audi has on numerous prior occasions "chosen" convicted felons and other individuals with criminal records to acquire Audi dealerships. *See* Edward A. Robinson, *The Fall Of A Mega Dealer Rick Hendrick's Legal Woes — And A Big Headache For Honda*, Fortune, Apr. 28, 1997;[2] Will Anderson, *Charlotte's Hendrick Automotive Snags Another Luxury Car Dealership*, Charlotte Business Journal, Dec. 29, 2015.[3]

**ANSWER:**  The Court has dismissed Napleton's allegations that relate to litigation conduct.  (Doc. 321.)  Therefore, no response is required to the allegations in Paragraph 83.  To the extent that a response is required, AoA denies the allegations in Paragraph 83.

84.   Upon information and belief, Audi's position is in fact based upon the TDI Scandal lawsuit and the Napleton affiliates' Opt-Out, discussed *supra*.

**ANSWER:**  The Court has dismissed Napleton's allegations that relate to litigation conduct.  (Doc. 321.)  Therefore, no response is required to the allegations in Paragraph 84.  To the extent that a response is required, AoA denies the allegations in Paragraph 84.

85.   Recognizing that Audi's consent to the transaction was not forthcoming even though the parties had cooperated fully with Audi's unreasonable demands, Napleton and Wyoming Valley accepted Audi's offer and agreed to remove Audi from the Initial Proposed Transaction.

---

[2]   *Available at*:  http://archive.fortune.com/magazines/fortune/fortune_archive/1997/04/28/225534/index.htm (last visited June 9, 2017).

[3]   *Available at*:   http://www.bizjournals.com/charlotte/news/2015/12/28/charlottes-hendrick-automotive-snags-another.html) (last visited June 9, 2017).

**ANSWER:** The Court has dismissed Napleton's allegations that relate to litigation conduct. (Doc. 321.) Therefore, no response is required to the allegations in Paragraph 85. To the extent that a response is required, AoA denies the allegations in Paragraph 85.

86.   Counsel for Wyoming Valley promptly informed counsel for Audi on December 19, 2016 that the parties to the APA had decided to remove the Audi assets from the transaction through an amendment thereto. Wyoming Valley and Napleton entered into the First Addendum to the APA, which served to carve Audi entirely out of the Initial Proposed Transaction.

**ANSWER:** AoA denies the allegations in Paragraph 86 except AoA admits that, on December 19, 2016, Wyoming Valley informed AoA that the parties to the APA had agreed to remove Wyoming Valley's Audi dealership assets from the APA.

87.   The following day, counsel for Wyoming Valley *again* confirmed the intent to withdraw the Audi franchise from the Initial Proposed Transaction and requested that Audi withdraw the Motion for Temporary Restraining Order and Preliminary Injunction and dismiss the case. Incredibly, Audi refused.

**ANSWER:** The Court has dismissed Napleton's allegations that relate to litigation conduct. (Doc. 321.) Therefore, no response is required to the allegations in Paragraph 87. To the extent that a response is required, AoA denies the allegations in Paragraph 87 except AoA admits it received a letter from Wyoming Valley on December 20, 2016, which letter speaks for itself.

88.   This Honorable Court held a telephonic conference on December 21, 2016, at which time the Court heard argument from the parties regarding Audi's request for a temporary restraining order.

**ANSWER**: The Court has dismissed Napleton's allegations that relate to litigation conduct. (Doc. 321.) Therefore, no response is required to the allegations in Paragraph 88. To the extent that a response is required, AoA admits the allegations in Paragraph 88.

89.     Audi requested that the entire transaction as to all the assets be temporarily enjoined, which included Napleton's acquisition of Wyoming Valley's non-Audi assets. This Honorable Court entered an order temporarily restraining Wyoming Valley from closing the APA and from otherwise transferring not only the Audi franchise assets, but also any of Wyoming Valley's other franchise assets, including its Subaru, Kia, Mazda, Volkswagen, BMW and Porsche dealerships.

**ANSWER**: The Court has dismissed Napleton's allegations that relate to litigation conduct. (Doc. 321.) Therefore, no response is required to the allegations in Paragraph 89. To the extent that a response is required, AoA denies the allegations in Paragraph 89 except AoA admits that it filed a Motion for Temporary Restraining Order and Preliminary Injunction in this action, along with supporting papers, which speak for themselves. Answering further, the Court issued an order dated December 22, 2016, and AoA respectfully refers the Court to that order for a fair, accurate, and complete description of its contents.

90.     Subsequent thereto, Audi moved to extend the temporary restraining order preventing closing of the Transaction even though it no longer included the sale of Wyoming Valley Audi.

**ANSWER**: The Court has dismissed Napleton's allegations that relate to litigation conduct. (Doc. 321.) Therefore, no response is required to the allegations in Paragraph 90. To the extent that a response is required, AoA denies the allegations

in Paragraph 90 except AoA admits that it moved to extend the Court's December 22, 2016 Order on January 3, 2017.

91.    Despite all this, Audi has continued to interfere by seeking discovery from certain of the other manufacturers, all of which at this point, except Audi and Volkswagen, have already conditionally approved Napleton's acquisition of their respective franchises from Wyoming Valley.

**ANSWER:** The Court has dismissed Napleton's allegations that relate to litigation conduct.  (Doc. 321.)  Therefore, no response is required to the allegations in Paragraph 91.  To the extent that a response is required, AoA denies the allegations in Paragraph 91.

92.    Audi's actions were an obvious attempt to upend the entire deal, which would have inflicted the greatest possible harm upon Napleton. Such intent is clearly evidenced by Audi's May 22, 2017 letter to Wyoming Valley revoking its approval of Wyoming Valley's plan to relocate Wyoming Valley Audi dealership to the new Audi facility at the Relocation Property.

**ANSWER:** The Court has dismissed Napleton's allegations that relate to litigation conduct.  (Doc. 321.)  Therefore, no response is required to the allegations in Paragraph 92.  To the extent that a response is required, AoA denies the allegations in Paragraph 92.

93.    In that May 22, 2017 letter, Audi states that it is "not absolutely withholding its consent to a relocation by Wyoming Valley of its Audi dealership," and that it is "willing to accept and consider a new request from Wyoming Valley to relocate its Audi dealership, including to the Relocation Property." Audi also states that such willingness is conditioned on the requirement that "the improper dealings and transactions between Wyoming Valley and Napleton be unwound."

**ANSWER:**  AoA states that it sent a letter to Wyoming Valley, dated May 22, 2017, which speaks for itself, and AoA denies all allegations in Paragraph 93 that are inconsistent with it.

94.    The "improper dealings" Audi references include both the APA itself, under which MH4 will transfer the Relocation Property to EFN Wyoming Valley, as well as the MIPA, in which NIP purchased of the membership interests of MH4, both described *supra*.

**ANSWER:**  AoA denies the allegations in Paragraph 94.

95.    The contents of Audi's letter reveal that Audi's issue here is not the overall transaction itself, but rather that ***Napleton*** is a part of it.

**ANSWER:**  AoA denies the allegations in Paragraph 95.  Answering further, AoA states that the Ed Napleton Automotive Group is not among the organizations that AoA would choose to succeed Wyoming Valley as an Audi dealer.

96.    Audi has crossed the line into abusive, frivolous conduct in order to advance a false narrative that the parties conspired to thwart Audi's contractual right of first refusal.

**ANSWER:**  The Court has dismissed Napleton's allegations that relate to litigation conduct.  (Doc. 321.)  Therefore, no response is required to the allegations in Paragraph 96.  To the extent that a response is required, AoA denies the allegations in Paragraph 96.

97.    When Wyoming Valley attempted to accede to Audi's demands, Audi then proceeded to twist and mischaracterize this information and used its claims to a contractual right of first refusal to justify its rejection of Napleton, one of the largest and most successful privately-owned dealership groups in the country, which currently controls more than three dozen successful dealerships located throughout the United States and is an objectively qualified dealer principal for the Audi franchise under Pennsylvania law (and any other reasonable metric).

**ANSWER:**  AoA denies the allegations in Paragraph 97.

98.   Audi's actions put in jeopardy a multimillion dollar acquisition that the parties have spent considerable time and resources trying to bring to fruition.

**ANSWER:** The Court has dismissed Napleton's allegations that relate to litigation conduct.  (Doc. 321.)  Therefore, no response is required to the allegations in Paragraph 98.  To the extent that a response is required, AoA denies the allegations in Paragraph 98.

99.   Audi's actions are clearly revenge for the Napleton affiliates' assertion of their legal rights in connection with the TDI Scandal. VW Group admitted as much in its January 4, 2017 letter rejecting Napleton's purchase of Wyoming Valley Volkswagen.

**ANSWER:** The Court has dismissed Napleton's allegations that relate to litigation conduct.  (Doc. 321.)  Therefore, no response is required to the allegations in Paragraph 99.  To the extent that a response is required, AoA denies the allegations in Paragraph 99.

100.   VW Group claimed in its January 4, 2017 letter that Napleton has "engaged in bad faith conduct" toward VW Group and "has had a history of litigation" against VW Group. The letter described at length the class action suit brought by the Napleton affiliates against VW Group for the TDI Scandal, including spurious descriptions of confidential settlement discussions of that suit.

**ANSWER:** AoA denies the allegations in Paragraph 100 except AoA admits that VWoA sent a letter to Wyoming Valley dated January 4, 2017, regarding Wyoming Valley's proposal to transfer its Volkswagen dealership assets to Napleton (the "VW Letter"), which letter speaks for itself.

101.   The letter then notes that, though the suit originally brought by the Napleton affiliates resulted in a $1.2 billion settlement with almost every Volkswagen dealer in the country, the Napleton affiliates exercised their legal right to opt out of the settlement and continue pursuit of their legal claims against VW Group.

**ANSWER:**  AoA denies the allegations in Paragraph 101 except AoA states

that the VW Letter speaks for itself.

102.   On January 11, 2017, VW AG, on behalf of itself and its wholly-owned subsidiary, VW Group, pled guilty to multiple federal crimes related to the TDI Scandal, including conspiracy to commit wire fraud, conspiracy to violate the Clean Air Act, and obstruction of justice.

**ANSWER:**  AoA denies the allegations in Paragraph 102 except AoA admits

that Volkswagen AG pleaded guilty to three federal felony counts and agreed to pay a

$2.8 billion penalty as part of a Rule 11 Plea Agreement with the U.S. Department of

Justice, and respectfully refers the Court to that agreement and its accompanying

statement of facts for a fair, accurate, and complete description of its contents.

103.   As part of the plea agreement, VW is foreclosed from disputing the fact of the guilty plea or the predicate facts in any court or proceeding. *See* Plea Agreement, at 1.E, 14, & Ex. 2 TT 3-4.[4]

**ANSWER:**  AoA denies the allegations in Paragraph 103 except AoA admits

that Volkswagen AG pleaded guilty to three federal felony counts and agreed to pay a

$2.8 billion penalty as part of a Rule 11 Plea Agreement with the U.S. Department of

Justice, and respectfully refers the Court to that agreement and its accompanying

statement of facts for a fair, accurate, and complete description of its contents.

---

*Available at*:  https://www.justice.gov/opa/press-release/file/924436/download (last visited June 9, 2017).

104.    But because the Napleton Volkswagen dealerships continue to assert their legal rights related to the federal crimes committed by VW, in its letter, VW Group has ironically deemed ***Napleton*** not to be "a desirable or good faith business partner." This from the company that spent years defrauding the federal government and the public.

**ANSWER:**  AoA denies the allegations in Paragraph 104.

105.    Upon information and belief, Audi has sought to kill the entire APA transaction.

**ANSWER:**  AoA denies the allegations in Paragraph 105.

106.    Upon information and belief, Audi has been secretly shopping the entire seven-franchise deal to other dealers, even though Audi only has rights related to the Wyoming Valley Audi franchise.

**ANSWER:**  AoA denies the allegations in Paragraph 106.

107.    Audi's unseemly tactics should not be sanctioned by this Court. Napleton has rights under the Act and the common law, and by this Intervenors' Complaint, the Napleton seeks to enforce those rights.

**ANSWER:**  AoA denies the allegations in Paragraph 107.

### FIRST CAUSE OF ACTION AGAINST AUDI

(Violation of Section 12(b)(3) of the Act)

108.    Napleton repeats and realleges the preceding allegations as if fully set forth herein.

**ANSWER:**  AoA incorporates and re-alleges its responses to the referenced

paragraphs.

109.    Section 12(b)(3) of the Act makes it unlawful for any manufacturer or distributor to unreasonably withhold consent to the sale of a franchise to a qualified buyer capable of being licensed in the Commonwealth of Pennsylvania, who meets the reasonable requirements of the manufacturer or distributor. *See* 63 P.S. § 818.12(b)(3).

**ANSWER**:  AoA states that 63 P.S. § 818.12(b)(3) speaks for itself and AoA denies all allegations in Paragraph 109 that are inconsistent with it.

110.  At all times relevant to the instant Counterclaims, Napleton was a qualified buyer capable of being licensed as a new Volkswagen or Audi dealer in the Commonwealth of Pennsylvania.

**ANSWER**:  AoA denies the allegations in Paragraph 110.

111.  Napleton met all of Audi's reasonable requirements for owning and operating the Audi franchise at issue.

**ANSWER**:  AoA denies the allegations in Paragraph 111.

112.  By reason of Audi's improper and untimely response to Napleton's request for approval to be a successor Audi dealer, Audi has acted in violation of Section 12(b)(3) by unreasonably withholding consent to the sale of the Audi franchise to Napleton.

**ANSWER**:  AoA denies the allegations in Paragraph 112.

113.  By way of Audi's measures to deny Napleton's application to become a successor Audi dealer, premised, in part, on the fact that Napleton had validly exercised its legal rights, Audi has acted in violation of Section 12(b)(3) by unreasonably withholding consent to the sale of the Audi franchise to Napleton.

**ANSWER**:  AoA denies the allegations in Paragraph 113.

114.  Audi's unreasonableness is further demonstrated by the fact that, upon information and belief, Audi has failed to verify or otherwise conduct any due diligence as to whether Wyoming Valley even had the financial means to complete the very substantial, on-going construction and relocation project that Audi had approved.

**ANSWER**:  AoA denies the allegations in Paragraph 114.

115.  A purchaser willing to finance such a project is rare and generally difficult to locate. Napleton was one of the few, if not the only, groups willing to step into Wyoming Valley's shoes and fund the completion of the construction and relocation projects.

**ANSWER:**  AoA denies the allegations in Paragraph 115.

116.   Upon information and belief, another prospective buyer (prior to Napleton's being offered the Initial Proposed Transaction) elected not to proceed specifically because of the daunting nature of the pending construction and relocation projects.

**ANSWER:**  AoA lacks information sufficient to form a belief about the truth or falsity of the allegations in Paragraph 116.

117.   Section 29 of the Act (63 P.S. § 818.29) provides that any person who is injured by a violation of any provision of the Act may bring an action for damages and equitable relief in any court of competent jurisdiction.

**ANSWER:**  AoA states that 63 P.S. § 818.29 speaks for itself and AoA denies all allegations in Paragraph 117 that are inconsistent with it.

118.   Napleton has suffered monetary damages in excess of $75,000, exclusive of interest and costs, as a result of Audi's unlawful acts and omissions.

**ANSWER:**  AoA denies the allegations in Paragraph 118.

119.   Accordingly, Napleton is entitled to recover damages from Audi in an amount to be proven and determined at trial.

**ANSWER:**  AoA denies the allegations in Paragraph 119.

## SECOND CAUSE OF ACTION AGAINST AUDI

(Violation of Section 16 of the Act)

120.   Napleton repeats and realleges the preceding allegations as if fully set forth herein.

**ANSWER:**  AoA incorporates and re-alleges its responses to the referenced paragraphs.

121.   Audi's attempt to delay the exercise its right of first refusal by and through their frivolous allegations and vexatious conduct—including Audi's

unreasonable demands, the filing of the present action, and unnecessary third-party discovery—violates the procedures set forth in Section 16 of the Act. (63 P.S. § 818.16.)

**ANSWER:** The Court has dismissed Napleton's allegations that relate to litigation conduct. (Doc. 321.) Therefore, no response is required to certain allegations in Paragraph 121. To the extent that a response is required, AoA denies the allegations in Paragraph 121.

122. By failing to actually issue a right of first refusal for Audi or otherwise reject Napleton in accordance with the Act, Audi has compounded and substantially increased the amount of reasonable attorneys' fees that Napleton has incurred "prior to the manufacturer's or distributors exercise of its right of first refusal." Accordingly, Napleton is entitled to recover from Audi all such attorneys' fees, including those incurred in this action, pursuant to 63 P.S. § 818.16(4).

**ANSWER:** The Court has dismissed Napleton's allegations that relate to litigation conduct. (Doc. 321.) Therefore, no response is required to certain allegations in Paragraph 122. To the extent that a response is required, AoA denies the allegations in Paragraph 122.

123. Due to Audi's frivolous tactics and delays, and as a consequence of Audi's violation of Section 16 of the Act, Napleton has suffered monetary damages in excess of $75,000, exclusive of interest and costs.

**ANSWER:** The Court has dismissed Napleton's allegations that relate to litigation conduct. (Doc. 321.) Therefore, no response is required to certain allegations in Paragraph 123. To the extent that a response is required, AoA denies the allegations in Paragraph 123.

124. Accordingly, and pursuant to Section 29 of the Act, Napleton is entitled to recover damages from Audi in an amount to be proven and determined at trial.

**ANSWER:** AoA denies the allegations in Paragraph 124.

## THIRD CAUSE OF ACTION AGAINST AUDI

### (Tortious Interference With Contract as to Napleton)

125. Napleton repeats and realleges the preceding allegations as if fully set forth herein.

**ANSWER:** AoA incorporates and re-alleges its responses to the referenced

paragraphs.

126. The APA, as amended by the First Addendum thereto, between Napleton and Wyoming Valley is a viable and legally enforceable agreement for the sale of substantially all of the assets of Wyoming Valley's six dealerships (with Audi excluded).

**ANSWER:** AoA states that the allegations of Paragraph 126 state a legal

conclusion to which no answer is required. To the extent a response is required, AoA

denies the allegations in Paragraph 126.

127. Audi has and continues to intentionally and unlawfully interfere with Napleton's APA, as amended, for the Proposed Transaction even after the subject Audi franchise was withdrawn from the APA.

**ANSWER:** The Court has dismissed Napleton's allegations that relate to

litigation conduct. (Doc. 321.) Therefore, no response is required to certain

allegations in Paragraph 127. To the extent that a response is required, AoA denies

the allegations in Paragraph 127.

128. Audi has and continues to intentionally and unlawfully interfere with the Proposed Transaction by, among other things, serving frivolous and abusive subpoenas on the non-Audi manufacturers involved in the transaction, purportedly in the name of discovery but in actuality for improper purposes, while serving no discovery subpoenas on Napleton until Napleton intervened in this action (which intervention Audi unsuccessfully opposed).

**ANSWER:** The Court has dismissed Napleton's allegations that relate to litigation conduct. (Doc. 321.) Therefore, no response is required to the allegations in Paragraph 128. To the extent that a response is required, AoA denies the allegations in Paragraph 128.

129.   Upon information and belief, Audi served those subpoenas with the sole goal of disrupting Napleton's relationship with the other manufacturers involved in the transaction in order to persuade those manufacturers to withhold or rescind their approval of the Proposed Transaction.

**ANSWER:** The Court has dismissed Napleton's allegations that relate to litigation conduct. (Doc. 321.) Therefore, no response is required to the allegations in Paragraph 129. To the extent that a response is required, AoA denies the allegations in Paragraph 129.

130.   Upon information and belief, Audi has intentionally and unlawfully interfered with the Proposed Transaction by seeking out and communicating with potential alternate buyers for not just the Audi and Volkswagen franchises, but for all seven franchises that are part of the Proposed Transaction.

**ANSWER:** AoA denies the allegations in Paragraph 130.

131.   VW Group has similarly wrongfully and unlawfully interfered with the Proposed Transaction by filing the Duplicate Action and by unreasonably rejecting Napleton as a proposed purchaser of Wyoming Valley Volkswagen.

**ANSWER:** The Court has dismissed Napleton's allegations that relate to litigation conduct. (Doc. 321.) Therefore, no response is required to certain allegations in Paragraph 131. To the extent that a response is required, AoA denies the remaining allegations in Paragraph 131.

132.   Audi's acts and omissions were willful, malicious, and undertaken with reckless indifference to the rights of Napleton.

**ANSWER:** The Court has dismissed Napleton's allegations that relate to litigation conduct.  (Doc. 321.)  Therefore, no response is required to the allegations in Paragraph 132.  To the extent that a response is required, AoA denies the allegations in Paragraph 132.

133.   Audi lacks any privilege or other justification for its conduct toward Napleton and Wyoming Valley. Any purported right of first refusal that Audi may have had would not under any circumstances justify Audi's efforts to prevent the closing of the APA in its entirety even after the subject Audi franchise was withdrawn from the APA.

**ANSWER:** The Court has dismissed Napleton's allegations that relate to litigation conduct.   (Doc. 321.)   Therefore, no response is required to certain allegations in Paragraph 133.  To the extent that a response is required, AoA denies the allegations in Paragraph 133.

134.   Napleton has suffered monetary damages in excess of $75,000, exclusive of interest and costs, as a consequence of Audi's improper interference with the APA, as amended. These damages include, without limitation, lost revenue and profits from the six non-Audi franchises under the APA, as amended, since Audi's wrongful conduct has prevented these transactions from closing. These damages also include, without limitation, lost opportunities that Napleton could have pursued and benefitted from but for its extended investment of time, money and resources in the transactions under the APA by virtue of Audi's wrongful interference and efforts to thwart those transactions, without legal justification.

**ANSWER:**  AoA denies the allegations in Paragraph 134.

135.   In addition, Audi's acts and omissions are sufficient to warrant (indeed, scream for) the imposition of exemplary and punitive damages.

**ANSWER:**  AoA denies the allegations in Paragraph 135.

136.   Accordingly, Napleton is entitled to recover both compensatory and punitive damages from Audi in an amount to be proven and determined at trial.

**ANSWER:**  AoA denies the allegations in Paragraph 136.

## FOURTH CAUSE OF ACTION AGAINST AUDI

(Tortious Interference With Prospective Contractual Relations as to Napleton)

137.   Napleton repeats and realleges the preceding allegations as if fully set forth herein.

**ANSWER:**  AoA incorporates and re-alleges its responses to the referenced

paragraphs.

138.   Pursuant to the terms of the APA, and upon the closing therein, Napleton intended to own and operate all seven retail automotive dealerships.

**ANSWER:**  AoA lacks information sufficient to form a belief about the truth

or falsity of the allegations in Paragraph 138.

139.   Pursuant to the terms of the First Addendum, and upon the closing therein, Napleton intended to own and operate six of the retail automotive dealerships, with the Audi dealership excluded.

**ANSWER:**  AoA denies the allegations in Paragraph 139.

140.   Upon the closing of the APA as amended, Napleton intended to enter into dealer agreements with the six non-Audi manufacturers whose automotive dealerships Napleton intended to own and operate. Such dealer agreements are viable and legally enforceable agreements.

**ANSWER:**  AoA lacks information sufficient to form a belief about the truth

or falsity of the allegations in the first sentence of Paragraph 140.  AoA states that the

allegations in the second sentence of Paragraph 140 state a legal conclusion to which

no answer is required. To the extent a response is required, AoA denies the allegations in the second sentence of Paragraph 140.

141. It was Napleton's further intent to sell and service automobiles and related products from the dealerships to the consuming public in the Luzerne County area.

**ANSWER:** AoA lacks information sufficient to form a belief about the truth or falsity of the allegations of Paragraph 141.

142. Napleton estimated that offering sales and service to consumers in the Luzerne County area was reasonably probable to result in profits exceeding $6 million in the first year alone. Audi accepted, and has never challenged, Napleton's *pro forma* projections reflecting those reasonably estimated profits.

**ANSWER:** AoA denies the allegations in Paragraph 142.

143. Audi's actions, as more particularly described herein, including but not limited to its efforts to unwind the deal and its abuse of process within this action, were undertaken with the willful intent to harm Napleton. Audi's statements in its January 4, 2017 letter are tantamount to an admission to such wrongful conduct.

**ANSWER:** The Court has dismissed Napleton's allegations that relate to litigation conduct. (Doc. 321.) Therefore, no response is required to certain allegations in Paragraph 143. To the extent that a response is required, AoA denies the allegations in Paragraph 143.

144. Audi lacks any privilege or other legal justification for its improper conduct toward Napleton.

**ANSWER:** The Court has dismissed Napleton's allegations that relate to litigation conduct. (Doc. 321.) Therefore, no response is required to certain allegations in Paragraph 144. To the extent that a response is required, AoA denies the allegations in Paragraph 144.

145.   As a consequence of Audi's wrongful acts and omissions, Napleton has suffered substantial monetary damages in excess of $75,000, exclusive of interest and costs. These damages include, without limitation, lost revenue and profits from the six non-Audi franchises under the APA, as amended, as Audi's wrongful conduct has prevented these transactions from closing and thus has prevented Napleton from both entering into dealer agreements with the six non-Audi manufacturers and reaping the economic benefits of those agreements. These damages also include, without limitation, lost opportunities that Napleton could have pursued and benefitted from but for its extended investment of time, money and resources in the transactions under the APA by virtue of Audi's wrongful interference and efforts to thwart those transactions.

**ANSWER:** The Court has dismissed Napleton's allegations that relate to litigation conduct.   (Doc. 321.)   Therefore, no response is required to certain allegations in Paragraph 145.  To the extent that a response is required, AoA denies the allegations in Paragraph 145.

146. Thus, Audi has tortiously interfered with Napleton's prospective contractual relations.

**ANSWER:**  AoA denies the allegations in Paragraph 146.

147.   Accordingly, Napleton is entitled to recover damages from Audi in an amount to be proven and determined at trial.

**ANSWER:**  AoA denies the allegations in Paragraph 147.

## FIFTH CAUSE OF ACTION AGAINST AUDI

(Tortious Interference With Contract as to the MIPA and the transfer of the Relocation Property)

148.   Intervenors repeat and reallege the preceding allegations as if fully set forth herein.

**ANSWER:**  AoA incorporates and re-alleges its responses to the referenced paragraphs.

149.   The APA, as amended by the First Addendum thereto, between Napleton and Wyoming Valley is a viable and legally enforceable agreement for the sale of substantially all of the assets of Wyoming Valley's six dealerships (with Audi excluded), including for the transfer of the Relocation Property from MH4 to EFN Wyoming Valley.

**ANSWER:**  AoA states that the allegations of Paragraph 149 state a legal conclusion to which no answer is required.  To the extent a response is required, AoA denies the allegations in Paragraph 149.

150.   Audi has and continues to intentionally and unlawfully interfere with the APA, as amended, for the sale of the Relocation Property from MH4 to EFN Wyoming Valley even after the subject Audi franchise was withdrawn from the APA.

**ANSWER:**   AoA denies the allegations in Paragraph 150.

151.   The MIPA between NIP and the former members of MH4 is a viable and legally enforceable agreement for the sale of the membership interests in MH4.

**ANSWER:**  AoA states that the allegations of Paragraph 151 state a legal conclusion to which no answer is required.  To the extent a response is required, AoA denies the allegations in Paragraph 151.

152.   Audi has intentionally and unlawfully interfered with the MIPA, even after the Wyoming Valley Audi franchise was removed from the overall transaction.

**ANSWER:**  AoA denies the allegations in Paragraph 152.

153.   Audi notified Wyoming Valley on May 22, 2017 that Audi has revoked its approval of Wyoming Valley's plan to relocate its Audi dealership to the brand-new, state of the art exclusive facility meeting all of Audi's design standards, currently under construction and scheduled to be completed within weeks, because Audi discovered through discovery in this litigation (under a protective order) that NIP acquired an ownership interest in Millennium Holdings IV, LLC, the owner of the Relocation Property. Audi stated that it is willing to reconsider the relocation request if the "dealings and transactions between Wyoming Valley and Napleton [are] unwound."

**ANSWER:**  AoA denies the allegations in Paragraph 153 except AoA admits that on May 22, 2017, counsel for AoA sent a letter to counsel for Wyoming Valley (the "May 22 Letter"), which speaks for itself.

154.   One of the "dealings and transactions" contemplated in Audi's letter is the APA, including the provision thereof by which MH4 would transfer the Relocation Property to EFN Wyoming Valley.

**ANSWER:**  AoA denies the allegations in Paragraph 154.

155.   Another of the "dealings and transactions" contemplated in Audi's letter is the acquisition of the MH4 ownership interests by NIP, as memorialized by the MIPA.

**ANSWER:**  AoA denies the allegations in Paragraph 155.

156.   Audi's revocation of relocation approval is not a hollow threat. With that decision comes the revocation of valuable Exclusive Standards Bonus monies paid to Wyoming Valley Audi, as a percentage of every new car sold. Audi is using its substantial leverage over Wyoming Valley Audi to attempt to scuttle the valid contracts between Wyoming Valley and its principals and affiliates, and Napleton and its principals and affiliates.

**ANSWER:**  AoA denies the allegations in Paragraph 156.

157.   In essence, Audi has admitted that it is intentionally interfering with the APA and the MIPA, and as a result is threatening the viability of on-going, multi-million dollar construction project by withholding approval unless those dealings are "unwound."

**ANSWER:**  AoA denies the allegations in Paragraph 157.

158.   Audi's acts and omissions were willful, malicious, and undertaken with the intent to harm Napleton.

**ANSWER:**  AoA denies the allegations in Paragraph 158.

159.   Audi lacks any privilege or other justification for its conduct. Audi has approved the relocation location and the design of the building (which costs millions of dollars and is compliant with all Audi image standards). Audi only takes issue with

the landlord, for improper reasons. Under Pennsylvania law, Audi can make no objection to the landlord of a relocation property, only the location and building itself.

**ANSWER:**  AoA denies the allegations in Paragraph 159.

160.    Moreover, any time Audi had to reject the relocation has expired. Audi is acting unlawfully.

**ANSWER:**  AoA denies the allegations in Paragraph 160.

161.    Any purported right of first refusal that Audi may have had would not under any circumstances justify Audi's efforts to prevent the transfer of the Relocation property or unwind the MIPA.

**ANSWER:**  AoA denies the allegations in Paragraph 161.

162.    Napleton has suffered monetary damages in excess of $75,000, exclusive of interest and costs, as a consequence of Audi's improper interference with the APA and the MIPA.

**ANSWER:**  AoA denies the allegations in Paragraph 162.

163.    In addition, Audi's acts and omissions are sufficient to warrant (indeed, scream for) the imposition of exemplary and punitive damages.

**ANSWER:**  AoA denies the allegations in Paragraph 163.

164.    Accordingly, Napleton is entitled to recover both compensatory and punitive damages from Audi in an amount to be proven and determined at trial.

**ANSWER:**  AoA denies the allegations in Paragraph 164.

## SIXTH CAUSE OF ACTION AGAINST AUDI

(Tortious Interference with Contract as to the Relocation Property Owners)

165.    Intervenors repeat and reallege the preceding allegations as if fully set forth herein.

**ANSWER:**  AoA incorporates and re-alleges its responses to the referenced

paragraphs.

166.   The Relocation Property Owner has entered into leases, and will enter into further leases, with certain dealerships subject to the APA whose facilities will occupy the Relocation Property. Extant leases are, and prospective leases will be, viable and legally enforceable agreements.

**ANSWER:**  AoA lacks information sufficient to form a belief about the truth or falsity of the allegations in the first sentence of Paragraph 166.  AoA states that the allegations in the second sentence of Paragraph 166 state a legal conclusion to which no answer is required.  To the extent that a response is required, AoA denies the allegations in Paragraph 166.

167.   As described above, Audi notified Wyoming Valley on May 22, 2017 that Audi has revoked its approval of Wyoming Valley's plan to relocate its Audi dealership to the Relocation Property, but further noted that Audi is willing to reconsider the relocation request if the "dealings and transactions between Wyoming Valley and Napleton [are] unwound."

**ANSWER:**  AoA denies the allegations in Paragraph 167.  Answering further, AoA states that the May 22 Letter speaks for itself.

168.   To unwind the "dealings and transactions between Wyoming Valley and Napleton" would be to invalidate the extant leases to which the Relocation Property Owner is a party and to extinguish the Relocation Property Owner's expectation to enter into prospective leases.

**ANSWER:**  AoA denies the allegations in Paragraph 168.

169.   In essence, Audi has admitted that it is intentionally interfering with existing and prospective leases between the Relocation Property Owner and certain dealerships.

**ANSWER:**  AoA denies the allegations in Paragraph 169.

170.   Audi's acts and omissions are willful, malicious, and undertaken with the intent to harm Napleton.

**ANSWER:**  AoA denies the allegations in Paragraph 170.

171.   Audi lacks any privilege or other justification for its conduct. Any purported right of first refusal that Audi may have had would not under any circumstances justify Audi's efforts to upend valid leases entered into by the Relocation Property Owner.

**ANSWER:**  AoA denies the allegations in Paragraph 171.

172.   The Relocation Property Owner has suffered monetary damages in excess of $75,000, exclusive of interest and costs, as a consequence of Audi's improper interference with its leases.

**ANSWER:**  AoA denies the allegations in Paragraph 172.

173.   In addition, Audi's acts and omissions are sufficient to warrant (indeed, scream for) the imposition of exemplary and punitive damages.

**ANSWER:**  AoA denies the allegations in Paragraph 173.

174.   Accordingly, the Relocation Property Owner is entitled to recover both compensatory and punitive damages from Audi in an amount to be proven and determined at trial.

**ANSWER:**  AoA denies the allegations in Paragraph 174.

## SEVENTH CAUSE OF ACTION AGAINST AUDI

(Violation of Section 12(b)(5) of the Act)

175.   Napleton repeats and realleges the preceding allegations as if fully set forth herein.

**ANSWER:**  AoA incorporates and re-alleges its responses to the referenced

paragraphs.

176.   Section 12(b)(5) of the Act (63 P.S. § 818.12(b)(5)) makes it unlawful for any manufacturer or distributor to fail to respond in writing to any request for consent to the sale of a franchise within 60 days of receipt of a written request, on the forms, if any, generally utilized by the manufacturer or distributor for such purposes and containing the information required. *See* 63 P.S. § 818.12(b)(5).

**ANSWER:**  AoA states that 63 P.S. § 818.12(b)(5) speaks for itself and AoA denies all allegations in Paragraph 176 that are inconsistent with it.

177.    Although Section 12(b)(5) of the Act provides that this time period may be extended by an additional 15 days if supplemental information is requested in a timely manner, Section 12(b)(5) expressly states that the 60-day time period for approval shall run from receipt of any supplemental requested information. *See* 63 P.S. § 818.12(b)(5).

**ANSWER:**  AoA states that 63 P.S. § 818.12(b)(5) speaks for itself and AoA denies all allegations in Paragraph 177 that are inconsistent with it.

178.    Here, Napleton electronically submitted, and Audi received, the initial application for the approval of the proposed sale on October 4, 2016.

**ANSWER:**  AoA denies the allegations in Paragraph 178.

179.    Napleton electronically submitted, and Audi received, the requested supplemental information on November 2, 2016.

**ANSWER:**  AoA denies the allegations in Paragraph 179.

180.    Section 12(b)(5) of the Act expressly states:  "**In no event** shall the total time period for approval exceed 75 days from the date of the receipt of the initial forms." [Emphasis added]

**ANSWER:**  AoA states that 63 P.S. § 818.12(b)(5) speaks for itself and AoA denies all allegations in Paragraph 180 that are inconsistent with it.

181.    In this regard, Section 16 of the Act (63 P.S. § 818.16), which provides a manufacturer or distributor with the right to elect to exercise a right of first refusal, specifically provides that the manufacturer or distributor must provide timely notice in accordance with the requirements of Section 12(b)(5). *See* 63 P.S. § 818.16(1).

**ANSWER:**  AoA states that 63 P.S. § 818.16 speaks for itself and AoA denies all allegations in Paragraph 181 that are inconsistent with it.

182.    Accordingly, Audi had no more than 75 days from October 4, 2016 to reject the proposed APA or exercise any existing right of first refusal.

**ANSWER:**  AoA denies the allegations in Paragraph 182.

183.    Thus, Audi had until December 19, 2016 to reject the proposed APA or exercise its right of first refusal.

**ANSWER:**  AoA denies the allegations in Paragraph 183.

184.    Through letters to and from counsel, the parties agreed that such deadline would be extended to December 29, 2016, even though such extensions were not authorized under the statute.

**ANSWER:**  AoA denies the allegations in Paragraph 184.  Answering further, AoA states that Wyoming Valley and Napleton agreed in writing that the time period under 63 P.S. §§ 818.16, 818.12(b)(5), and 818.12(b)(6), within which AoA was required to (i) respond to Wyoming Valley's request for consent to the proposed sale of its Audi dealership assets to the Napleton organization, or (ii) exercise its right of first refusal in connection with such sale, began to accrue on October 14, 2016, and did not expire until 75 days later, on December 28, 2016.

185.    Audi did not reject the proposed APA or exercise its right of first refusal by December 29, 2016.

**ANSWER:**  AoA admits the allegations in Paragraph 185.  Answering further, AoA states that, on or about December 13, 2016, it filed this action against Wyoming Valley seeking to protect and enforce its ROFR.

186.    The actions of the parties cannot extend the time to reject or exercise a right of first refusal under the Act, as such time "in no event" shall exceed 75 days. Thus, if Audi had a right of first refusal, such right has long since expired.

**ANSWER:**  AoA denies the allegations in Paragraph 186.

187.   Audi's failure to act in a timely, statutory fashion has damaged Napleton.

**ANSWER:**  AoA denies the allegations in Paragraph 187.

188.   Accordingly, and pursuant to Section 29 of the Act (63 P.S. § 818.29), Napleton is entitled to recover damages from Audi in amount to be proven and determined at trial.

**ANSWER:**  AoA denies the allegations in Paragraph 188.

## EIGHTH CAUSE OF ACTION AGAINST AUDI

(Abuse of Process)

189.   Napleton repeats and realleges the preceding allegations as if fully set forth herein.

**ANSWER:**  The Court has dismissed Napleton's eighth cause of action.  (Doc.

321.)  Therefore, no response is required.  To the extent that a response is required,

AoA repeats and realleges each and every one of its responses to Paragraphs 1

through 188 as if fully set forth herein.

190.   In this action, Audi has issued subpoenas to non-party manufacturers of the other brands involved in the Proposed Transaction, and certain lenders of the parties.

**ANSWER:**  The Court has dismissed Napleton's eighth cause of action.  (Doc.

321.)  Therefore, no response is required.  To the extent that a response is required,

AoA denies the allegations set forth in Paragraph 190.

191.   Audi has also sought the injunction of the entire transaction, not just the Audi portion.

48

**ANSWER:**  The Court has dismissed Napleton's eighth cause of action.  (Doc. 321.)  Therefore, no response is required.  To the extent that a response is required, AoA denies the allegations set forth in Paragraph 191.

192.   Upon information and belief, Audi's goal with this continued litigation, injunction, and the discovery processes used within it is to effectively terminate the Proposed Transaction.

**ANSWER:**  The Court has dismissed Napleton's eighth cause of action.  (Doc. 321.)  Therefore, no response is required.  To the extent that a response is required, AoA denies the allegations set forth in Paragraph 192.

193.   Upon information and belief, Audi has taken these measures with the goal of attempting to coerce those other non-party manufacturers subject to its subpoenas into rejecting or revoking their approval of Napleton as the purchaser of the respective non-party manufacturer franchises owned by Wyoming Valley.

**ANSWER:**  The Court has dismissed Napleton's eighth cause of action.  (Doc. 321.)  Therefore, no response is required.  To the extent that a response is required, AoA denies the allegations set forth in Paragraph 193.

194.   Upon information and belief, Audi served subpoenas on certain actual or potential lenders of the parties to the APA in an effort to dissuade them from providing financing for any of the transactions under the APA.

**ANSWER:**  The Court has dismissed Napleton's eighth cause of action.  (Doc. 321.)  Therefore, no response is required.  To the extent that a response is required, AoA denies the allegations set forth in Paragraph 194.

195.   Upon information and belief, after issuing its subpoenas, Audi used documents and information provided by those other non-party manufacturers in response to those subpoenas to coerce those other non-party manufacturers to reject

or revoke their approval of Napleton as the purchaser of the respective non-party manufacturer franchises owned by Wyoming Valley.

**ANSWER:**  The Court has dismissed Napleton's eighth cause of action.  (Doc. 321.)  Therefore, no response is required.  To the extent that a response is required, AoA denies the allegations set forth in Paragraph 195.

196.   Upon information and belief, after issuing its subpoenas, Audi also used documents and information provided by those other non-party manufacturers in response to those subpoenas to shop not just the Audi and Volkswagen franchises— but rather all seven of the franchises in the Proposed Transaction—to prospective purchasers other than Napleton in an effort to replace Napleton as the Buyer under the APA with respect to the non-Audi franchises that are the subject of the APA.

**ANSWER:**  The Court has dismissed Napleton's eighth cause of action.  (Doc. 321.)  Therefore, no response is required.  To the extent that a response is required, AoA denies the allegations set forth in Paragraph 196.

197.   Upon information and belief, after issuing its subpoenas, Audi also used documents and information provided by certain lenders that Audi subpoenaed in this action to try to dissuade those lenders from financing the transactions in the APA in whole or in part.

**ANSWER:**  The Court has dismissed Napleton's eighth cause of action.  (Doc. 321.)  Therefore, no response is required.  To the extent that a response is required, AoA denies the allegations set forth in Paragraph 197.

198.   Upon information and belief, after issuing its subpoenas, Audi also used documents and information provided by certain lenders that Audi subpoenaed in this action to try to coerce other non-party manufacturers to reject or revoke their approval of Napleton as the purchaser of the respective non-party manufacturer franchises owned by Wyoming Valley.

**ANSWER:**  The Court has dismissed Napleton's eighth cause of action.  (Doc. 321.)  Therefore, no response is required.  To the extent that a response is required, AoA denies the allegations set forth in Paragraph 198.

199.    Discovery subpoenas were not designed to serve such improper ends.

**ANSWER:**  The Court has dismissed Napleton's eighth cause of action.  (Doc. 321.)  Therefore, no response is required.  To the extent that a response is required, AoA denies the allegations set forth in Paragraph 199.

200.    Audi's attempt to terminate the Proposed Transaction as to the non-VW Group franchises is not a legitimate purpose of a discovery subpoena.

**ANSWER:**  The Court has dismissed Napleton's eighth cause of action.  (Doc. 321.)  Therefore, no response is required.  To the extent that a response is required, AoA denies the allegations set forth in Paragraph 200.

201.  In so issuing subpoenas with these illegitimate goals, Audi has improperly perverted the process as a tactical weapon in an effort to coerce its desired improper result.

**ANSWER:**  The Court has dismissed Napleton's eighth cause of action.  (Doc. 321.)  Therefore, no response is required.  To the extent that a response is required, AoA denies the allegations set forth in Paragraph 201.

202.    Audi's ill-intent is made clear by the fact that Napleton, the primary non-party in the transaction between Napleton and Wyoming Valley, was not subpoenaed until weeks after Napleton moved to intervene in this action.

**ANSWER:**  The Court has dismissed Napleton's eighth cause of action.  (Doc. 321.)  Therefore, no response is required.  To the extent that a response is required, AoA denies the allegations set forth in Paragraph 202.

203.   Audi has abused the normal process of this Court to serve its illegal goals.

**ANSWER:**  The Court has dismissed Napleton's eighth cause of action.  (Doc. 321.)  Therefore, no response is required.  To the extent that a response is required, AoA denies the allegations set forth in Paragraph 203.

204.   Audi's misuse of the legal process as described herein has resulted in harm to Napleton.

**ANSWER:**  The Court has dismissed Napleton's eighth cause of action.  (Doc. 321.)  Therefore, no response is required.  To the extent that a response is required, AoA denies the allegations set forth in Paragraph 204.

205.   Accordingly, Audi should be prevented and enjoined from any further abuse of process.

**ANSWER:**  The Court has dismissed Napleton's eighth cause of action.  (Doc. 321.)  Therefore, no response is required.  To the extent that a response is required, AoA denies the allegations set forth in Paragraph 205.

206.   Napleton is entitled to recover damages from Audi as a result of its abuse of process in amount to be proven and determined at trial.

**ANSWER:**  The Court has dismissed Napleton's eighth cause of action.  (Doc. 321.)  Therefore, no response is required.  To the extent that a response is required, AoA denies the allegations set forth in Paragraph 206.

## **Jury Trial Demand**

207.   Pursuant to Fed. R. Civ. P. 38, Napleton demands a trial by jury on all causes of action so triable.

**ANSWER:**  The allegations in Paragraph 207 state a legal conclusion to which no answer is required.   To the extent a response is required, AoA denies the allegations in Paragraph 207.

## AUDI OF AMERICA'S AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
### (STANDING)

The Napleton Entities' claims are barred, in whole or in part, because Napleton has not suffered a legally cognizable injury under the Dealer Act and/or Article III of the United States Constitution.

### SECOND AFFIRMATIVE DEFENSE
### (PRIVILEGE)

AoA's actions were privileged and taken to protect its own business interests as part of fair and reasonable competition and business; therefore, the Napleton Entities' claims are barred.

### THIRD AFFIRMATIVE DEFENSE
### (JUSTIFICATION)

AoA's actions were justified; therefore, the Napleton Entities' claims are barred.

## FOURTH AFFIRMATIVE DEFENSE
### (EXERCISE OF AN ABSOLUTE RIGHT)

Audi sought to enforce its own rights through its conduct; therefore, the Napleton Entities' claims are barred.

## FIFTH AFFIRMATIVE DEFENSE
### (ESTOPPEL)

The Napleton Entities' claims are barred by the doctrine of estoppel.

## SIXTH AFFIRMATIVE DEFENSE
### (UNCLEAN HANDS)

The Napleton Entities' claims are barred by the doctrine of unclean hands.

## SEVENTH AFFIRMATIVE DEFENSE
### (*IN PARI DELICTO*)

The Napleton Entities' claims are barred, in whole or in part, by the doctrine of *in pari delicto*.

## EIGHTH AFFIRMATIVE DEFENSE
### (ACTS OR OMISSIONS OF NAPLETON)

The Napleton Entities' own conduct, individually and collectively, is the sole or a proximate cause of damages sustained, if any, and as such the Napleton Entities' claims are barred, in whole or in part, due to their own individual and collective conduct.

## NINETH AFFIRMATIVE DEFENSE
### (FAILURE TO MITIGATE DAMAGES)

The Napleton Entities' failed to take reasonable steps to mitigate their alleged damages. Accordingly, any alleged damages are reduced or barred by the failure to mitigate.

## RESERVATION OF RIGHT TO PLEAD
## ADDITIONAL AFFIRMATIVE DEFENSES

AoA expressly reserves its right to plead any additional affirmative defenses of which it becomes aware in the course of this matter.

Dated:  December 18, 2017              Respectfully submitted,

                                  /s/ Randall Oyler
                                  Thomas B. Schmidt, III (PA 19196)
                                  Justin G. Weber (PA 89266)
                                  PEPPER HAMILTON LLP
                                  100 Market Street, Ste. 200
                                  Harrisburg, Pennsylvania 17108
                                  Ph:  717.255.1155
                                  Email:  schmidtt@pepperlaw.com

Randall L. Oyler (IL 6209675)
Owen H. Smith (IL 6307554 / NY 693627)
Brandon C. Prosansky (IL 6293582)
BARACK FERRAZZANO
  KIRSCHBAUM & NAGELBERG LLP
200 West Madison, Ste. 3900
Chicago, Illinois 60606
Ph: 312.984.3100
Email:  randall.oyler@bfkn.com
Email:  owen.smith@bfkn.com
Email:  brandon.prosansky@bfkn.com
        *Admitted Pro Hac Vice*

*Attorneys for Audi of America, Inc., an organizational unit of Volkswagen Group of America, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that, on December 18, 2017, he caused the foregoing to be served on all counsel of record via ECF.


<u>/s/ Randall Oyler</u>