# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AUDI OF AMERICA, INC.,** | : | Civil No. 3:16-CV-2470 |
| | : | |
| Plaintiff | : | (Judge Jones) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| **BRONSBERG & HUGHES PONTIAC, INC., d/b/a WYOMING VALLEY AUDI,** | : : : | |
| | : | |
| Defendant | : | |

## MEMORANDUM OPINION

## I.  INTRODUCTION

The purpose of this Order is to address and resolve a discovery dispute relating the plaintiff's assertion that 21 documents that have been withheld from production in this case are privileged communications, subject to the attorney-client and work-product privileges. The defendants and intervenors have asked the Court to compel production of these documents, arguing that no privilege applies. Following an *in camera* review of the records, and for the reasons discussed below, the Court agrees that this limited set of documents identified on the plaintiff's privilege log are subject to these privileges, and therefore need not be disclosed.

## II. BACKGROUND

On December 13, 2016, Audi of America, Inc., ("Audi") brought this breach of contract action, alleging that Bronsberg & Hughes Pontiac, Inc., d/b/a Wyoming Valley Audi ("Wyoming Valley") breached certain terms of an Audi Dealer Agreement into which the parties entered on January 1, 1997, when it entered into an Asset and Real Estate Purchase Agreement (the "Purchase Agreement") with the Napleton Group ("Napleton"). Audi alleged that the Purchase Agreement, which was signed on July 11, 2016, included the sale of Wyoming Valley's Audi assets in violation of Audi's own right of first refusal and its right to refuse to consent to the transaction on reasonable grounds. (Doc. 1.)

This dispute was cast into sharp relief for the parties in September of 2016, when the plaintiff became aware of the material terms of this asset purchase agreement, and issued a letter which, as we have previously noted: "is difficult to read . . . as doing anything less than threatening formal legal action and making specific legal demands, which Wyoming Valley and Napleton had a shared interest in addressing." *Audi of Am., Inc. v. Bronsberg & Hughes Pontiac, Inc.,* 255 F. Supp. 3d 561, 567 (M.D. Pa. 2017). In fact, it is undisputed that this correspondence set the stage for the instant litigation.

It is against this backdrop that we have conducted our *in camera* review of the 21 documents withheld by Audi on attorney-client privilege grounds. This

review discloses that these emails and attachments were all prepared on or after September 15, 2016, during the time frame when we have previously found that the adversarial positions of the parties had sufficiently crystallized to justify invoking the attorney-client privilege. The documents and attachments reflect communications by, between, and among the plaintiff's attorneys, both outside counsel and in-house legal staff, and their clients. The focus of the communications is the developing of an appropriate legal response to the asset purchase agreement. The communications, therefore, include a candid evaluation of legal options, risks, and rewards, the drafting of pleadings and correspondence, draftsmanship plainly undertaken with an eye towards impending litigation, and the marshalling of facts and information in support of potential avenues of litigation.

Because the Court finds that the attorney-client and work product privileges extend to such correspondence and communications, this assertion of the privilege will be sustained.

## II. DISCUSSION

### A. The Attorney-Client and Work Product Privileges

The plaintiff relies upon the attorney-client privilege and the work-product doctrine to justify its decision to withhold these 21 documents, consisting of emails

and attachments that would otherwise be responsive to the defendants' discovery requests.

The legal tenets which govern this privilege analysis are familiar ones. The United States Court of Appeals for the Third Circuit has summarized the purposes of, and distinctions between, the attorney-client privilege and the work-product doctrine, and the importance of limiting recognition of evidentiary privileges when necessary to achieve their purposes, as follows:

> Though they operate to protect information from discovery, the work-product doctrine and the attorney-client privilege serve different purposes. The purpose behind the attorney-client privilege is " 'to encourage clients to make full disclosure of facts to counsel so that he may properly, competently, and ethically carry out his representation. The ultimate aim is to promote the proper administration of justice.' " *In re Impounded*, 241 F.3d 308, 316 (3d Cir. 2001) (quoting *In re Grand Jury Proceedings*, 604 F.2d 798, 802 (3d Cir. 1979)). The work-product doctrine, by contrast, "promotes the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation. Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients." *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991) (citations omitted).

*In re Chevron Corp.*, 633 F.3d 153, 164 (3d Cir. 2011).

Rule 501 of the Federal Rules of Evidence provides, in relevant part, as follows:

> [I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Fed. R. Evid. 501. Accordingly, in diversity actions, such as the instant litigation, the law governing evidentiary privileges is supplied by the courts of the state in which the federal court sits. *See, e.g., Rhone-Poulenc Rorer v. Home Indem. Co.*, 32 F. 3d 851, 861 (3d Cir. 1994); *Maertin v. Armstrong World Indus., Inc.*, 172 F.R.D. 143, 147 (D.N.J. 1997); *McDowell Oil Serv., Inc. v. Interstate Fire & Cas. Co.*, 817 F. Supp. 538, 545 (M.D. Pa. 1993) (in diversity action, party's assertion of attorney-client privilege governed by state law); *see also Serrano v. Chesapeake Appalachia, LLC*, 298 F.R.D. 271, 280 (W.D. Pa. 2014) (observing that in diversity actions a court "must look to state law for applicable legal principles on issues of privilege.").

The attorney-client privilege is meant to facilitate "full and frank communication between attorneys and their clients." *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 231 (3d Cir. 2007). The privilege "recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn v. United States*, 449 U.S. 383, 389 (1981). The privilege "applies to any communication that satisfies the following elements: it must be '(1) a communication (2) made

between [the client and the attorney or his agents] (3) in confidence (4) for the purposes of obtaining or providing legal assistance for the client.' " *In re Teleglobe Communications Corp.*, 493 F.3d 345, 359 (3d Cir. 2007) (quoting the Restatement (Third) of the Law Governing Lawyers § 68 (2000)). Thus, the privilege reaches "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance." *Fisher v. United States*, 425 U.S. 391, 403 (1976); *see also In re Ford Motor Co.*, 110 F.3d 954, 965 n.9 (3d Cir. 1997) (communication made by client and an attorney are privileged if made "for the purpose of securing legal advice."); *United States v. Amerada Hess Corp.*, 619 F.2d 980, 986 (3d Cir. 1980).

The privilege applies both to information that the client provides to the lawyer for purposes of obtaining legal advice, as well as to the advice the attorney furnishes to the client. To this end, the Supreme Court has explained that "the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn*, 449 U.S. at 390.

The work-product privilege, in turn, is a creature of federal law, *see* Fed. R. Civ. P. 26(b)(3)(A), and "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *In re*

6

*Cendant Corp. Sec. Litig.*, 343 F.3d 658, 661-62 (3d Cir. 2003). At the Third Circuit has explained:

> The purpose of the work-product doctrine differs from that of the attorney-client privilege . . . . [T]he attorney-client privilege promotes the attorney-client relationship, and, indirectly the functioning of our legal system, by protecting the confidentiality of communications between clients and their attorneys. In contrast, the work-product doctrine promotes the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation. Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used again their clients.

*Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1427-28 (3d Cir. 1991). Furthermore,

> The doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

*United States v. Nobles*, 422 U.S. 225, 238-39 (1975) (footnote omitted).

With these animating principles, Rule 26(b)(3) shields from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent." Fed. R. Civ. P. 26(b)(3)(A). The rule also establishes two categories of protected work product: fact work product and opinion work product. "Fact work product is discoverable

only upon a showing [of] 'substantial need' and by demonstrating that one cannot otherwise obtain the 'substantial equivalent' of such materials without 'undue hardship.'" *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 381 (E.D. Pa. 2006) (quoting Fed. R. Civ. P. 26(b)(3)). Opinion work product, "which consists of 'mental impressions, conclusions, opinions, or legal theories of an attorney,' is afforded almost absolute protection" and it "is discoverable 'only upon a showing of rare and exceptional circumstances.'" *Linerboard*, 237 F.R.D. at 381 (quoting *Cendant*, 343 F.3d at 663).

While recognizing the value served by these privileges, courts must also be mindful that the privileges obstruct the truth-finding process and should, therefore, be "applied only where necessary to achieve its purpose." *Wachtel*, 482 F.3d at 231; *see also Westinghouse Elec. Corp.*, 951 F.2d at 1423. Therefore, because the purpose of the privileges is to protect and promote the "dissemination of sound legal advice," it applies only to communication conveying advice that is legal in nature, as opposed to where the lawyer is providing non-legal, business advice. *Wachtel*, 482 F.3d at 231; *see also Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 152 F.R.D. 132, 137 (N.D. Ill. 1993) (stating that the privilege is inapplicable where the legal advice is incidental to business advice); *Hardy v. New York News, Inc.*, 114 F.R.D. 633, 643 (S.D.N.Y. 1987) ("The attorney-client privilege is

triggered only by a client's request for legal, as contrasted with business advice[.]").

With these principles in mind we turn to an assessment of the privilege claims made in this case.

### B. The Disputed Documents in this Case are Privileged.

As we have previously found, in late September 2016, Volkswagen, BMW, Audi and other manufacturers sent formal letters to Wyoming Valley, copying their counsel, declaring that the submission of the Purchase Agreement without apportionment of the purchase price – something that lies at the heart of the instant lawsuit – constituted a "material breach of the Volkswagen Dealer Agreement and a violation of Pennsylvania law." (Doc. 173, Ex. D.) In its letter, Volkswagen stated that it was preserving "any and all of its contractual and statutory rights, relating to the APA and otherwise to the proposed transaction between Wyoming Valley and the Napleton Auto Group." (*Id.*) Audi sent a substantially identical letter the following day, also copying its outside counsel. (Doc. 173, Ex. E.)

We have held that: "the manufacturers' [September 2016] challenges to the Purchase Agreement, which explicitly referred to alleged violations of law and material breaches of contracts, made litigation reasonably foreseeable . . . ."*Audi of Am., Inc. v. Bronsberg & Hughes Pontiac, Inc.*, 255 F. Supp. 3d 561, 570 (M.D. Pa. 2017). Drawing upon this conclusion, a conclusion which no party to this

9

litigation has seriously disputed, we have little difficulty in concluding that the 21 emails now at issue are privileged from disclosure. Our *in camera* review of these documents reveals that they were directly related to the dispute regarding this asset purchase agreement which blossomed into the instant litigation. This review further discloses that these emails and attachments were all prepared on or after September 15, 2016, during the time frame when we have previously found that the adversarial positions of the parties had sufficiently crystallized to justify invoking the attorney-client privilege. The documents were prepared, and exchanged, with the common understanding that this controversy may grow into litigation, and bear all of the earmarks of documents prepared in contemplation of litigation. Many of the documents are thus labeled privileged, and some of the documents expressly relate to the drafting of pleadings. Further, the documents and attachments reflect communications by, between, and among the plaintiff's attorneys, both outside counsel and in-house legal staff, and their clients concerning this on-going dispute, and impending litigation. The focus of the communications is the developing of an appropriate legal response to the asset purchase agreement, a response that all participants seem to acknowledge may include potential litigation. The communications, therefore, include a candid evaluation of legal options, as well as litigative risks and rewards; discuss the drafting of pleadings and correspondence, draftsmanship plainly undertaken with

an eye towards impending litigation; and the marshalling of facts and information in support of potential avenues of litigation.

Given the nature and content of these communications, we find that they are clearly privileged and the plaintiff has carried its burden of proof establishing all of the elements of these privileges. Finding that these documents fall within the ambit of the attorney-client and work product privileges, we conclude that they are appropriately sheltered from disclosure by these longstanding legal privileges. Accordingly, the request for disclosure of these documents will be denied.

An appropriate ORDER follows.

## IV. **ORDER**

Accordingly, the Court having found that the 21 documents set forth on Audi's privilege log are subject either to the attorney-client or work-product privilege, the defendants-intervenors' request to compel further production of these documents is DENIED.

So ordered this 16th day of January, 2018.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge