## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

AUDI OF AMERICA, INC., an organizational unit of VOLKSWAGEN GROUP OF AMERICA, INC.
    Plaintiff/Counterclaim-Defendant,

v.

BRONSBERG & HUGHES PONTIAC, INC., d/b/a WYOMING VALLEY AUDI,
    Defendant/Counterclaim-Plaintiff,

and

NORTH AMERICAN AUTOMOTIVE SERVICES, INC.; NAPLETON WYOMING VALLEY IMPORTS, LLC; MILLENNIUM HOLDINGS, IV; NAPLETON INVESTMENT PARTNERS, LP; and EFN WYOMING VALLEY PROPERTIES, LLC,
    Intervenor-Defendants/Counterclaim-Plaintiffs.

Case No. 3:16-cv-02470

Judge John E. Jones III

## MEMORANDUM OF LAW IN OPPOSITION TO COUNTERCLAIM-DEFENDANT VOLKSWAGEN GROUP OF AMERICA, INC.'S MOTION FOR SUMMARY JUDGMENT AGAINST INTERVENORS' COUNTERCLAIMS

**ARENT FOX LLP**
1675 Broadway
New York, NY 10019-5874
Phone: 212.484.3900
Fax: 212.484.3990

**METTE, EVANS & WOODSIDE**
3401 North Front Street
Harrisburg, PA 17110-0950
Phone: 717.232.5000
Fax: 717.236.1816

# TABLE OF CONTENTS

Page

Preliminary Statement ................................................................................................................... 1

Factual Background ....................................................................................................................... 3

    1.   ██████████████████████████████████ .................................................. 3

    2.   ██████████████████████████████████ ....................................................... 4

    3.   ██████████████████████████████████ ........................................................ 8

    4.   ██████████████████████████████████ ....................................... 12

    5.   ██████████████████████████████████ .......................................... 15

    6.   ██████████████████████████████████ ................................................ 16

    7.   ██████████████████████████████████ .................................................... 19

    8.   ██████████████████████████████████ .......................................... 20

    9.   ██████████████████████████████████ ................................................................ 22

Argument ..................................................................................................................................... 22

I.     VWGoA asserts that it will win its affirmative motion for summary judgment, and that, in so doing, all of Napleton's counterclaims should be dismissed. It won't and they shouldn't. .......................................................................................................................... 24

    A.   ██████████████████████████████████ .............................................. 24

        1.   ██████████████████████████████████ ....................................... 24

        2.   ██████████████████████████████████ ....................................................... 29

    B.   The Relocation Agreement is subject to the Pennsylvania Dealer Act, and regardless, Wyoming Valley met its terms. ............................................................. 32

**Table of Contents**
**(continued)**

Page

C.    The Pennsylvania Dealer Act still applies even if VWGoA's ROFR were
      somehow still "live." ........................................................................................... 34

II.    All of Intervenors' tortious interference claims fall under Restatement § 766 or tortious
       interference with prospective contract, both of which are recognized by Pennsylvania
       law. ................................................................................................................................... 35

III.   Whether VWGoA's actions were "justified" is a question for the jury. ......................... 41

A.    VWGoA has acted in bad faith, through inappropriate means, to pursue
      punishment of Napleton outside of its "legally protected interests." ................... 42

B.    All of VWGoA's "ROFR" cases are where a ROFR was actually exercised; this
      ROFR has not been. ............................................................................................. 44

C.    The Pennsylvania Dealer Act sets the "rules of the game," and VWGoA did not
      play by them. ...................................................................................................... 45

D.    Whether VWGoA asserts in "good faith" that it was "fraudulently induced" is a
      two-part, factual inquiry for the jury. ................................................................. 49

IV.   Intervenors make out claims for damage under its tortious interference causes of action.
      ........................................................................................................................................ 51

A.    VWGoA has deprived Intervenors of the benefit of the bargain under the original
      APA, resulting in millions of dollars of damage to Napleton. ............................. 51

B.    VWGoA has caused the delay in (and seeks to fully prevent) Wyoming Valley
      moving its Audi franchise to the Relocation Property, interfering with the Audi
      Lease. ................................................................................................................. 52

C.    ███████████████████████████████████████████████████████ .
      ........................................................................................................................ 53

V.    VWGoA cannot avoid the statutory proscriptions of the Pennsylvania Dealer Act. ....... 53

A.    VWGoA has never exercised its Audi ROFR and claims to still be evaluating
      whether to approve Napleton. .............................................................................. 54

B.    ██████████████████████████████████████████████████ .... 55

C.    Napleton never withdrew its request for approval, and VWGoA's statutory clock
      ran out before Wyoming Valley's withdrawal. ..................................................... 55

Conclusion ........................................................................................................................... 58

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alston v. Forsyth,*
   379 Fed. Appx. 126 (3d Cir. 2010) ..................................................................52

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) .........................................................................................23

*Celotex v. Catrett,*
   477 U.S. 317 (1986) .........................................................................................23

*Clark Distribution Sys., Inc. v. ALG Direct, Inc.,*
   12 F. Supp. 3d 702 (M.D. Pa. 2014), *order vacated in part on reconsideration*
   (May 29, 2014) .................................................................................................41

*Cloverleaf Dev., Inc. v. Horizon Fin. F.A.,*
   500 A.2d 163 (Pa. Super. Ct. 1985) .................................................................43

*Consolidation Coal Co. v. Dist. 5, United Mine Workers of Am.,*
   485 A.2d 1118 (Pa. Super Ct.1984) .................................................................37

*Coolspring Stone Supply, Inc. v. Am. States Life Ins. Co.,*
   10 F.3d 144 (3d Cir. 1993) ...............................................................................24

*Crivelli v. Gen. Motors. Corp.,*
   215 F.3d 386 (3d Cir. 1993) ..................................................................... *passim*

*In re Cybridge Corp.,*
   312 B.R. 262 (D.N.J. 2004) ..............................................................................27

*Darius Int'l., Inc. v. Young,*
   Civ. No. 05-6184, 2008 WL 1820945 (E.D. Pa. Apr. 23, 2008) .....................42

*DePace v. Jefferson Health Sys., Inc.,*
   No. Civ. A. 04-1886, 2004 WL 2850067 (E.D. Pa. Dec. 7, 2004) ..................42

*Diamond Triumph Auto Glass, Inc. v. Satellite Glass Corp.,*
   441 F. Supp. 2d 695 (M.D. Pa. 2006) ..............................................................23

*Dunkin Donuts Franchising LLC v. Claudia III, LLC,*
   No. CIV 14-2293, 2014 WL 12618097 (E.D. Pa. Dec. 5, 2014) .....................40

*Dunkin' Donuts v. Shree Dev. Donut LLC,*
   152 F. Supp. 2d 675 (E.D. Pa. 2001) ...............................................................23

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Fid. & Deposit Co. of Maryland v. First Nat'l Cmty. Bancorp*,
   No. 3:12-CV-01784, 2013 WL 12107470 (M.D. Pa. Dec. 27, 2013) .....................................3

*Gemini Physical Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   40 F.3d 63 (3d Cir. 1994)..............................................................................................40

*Gen. Dynamics Corp. v. United States*,
   47 Fed. Cl. 514 (2000) ...................................................................................................3

*Geofreeze Corp. v. C. Hannah Const. Co.*,
   588 F. Supp. 1341 (E.D. Pa. 1984) ...............................................................................43

*Glenn v. Point Park College*,
   441 Pa. 474 (1971) ........................................................................................................36

*Habbyshaw v. Commonwealth*,
   683 A.2d 1281 (Pa. Commw. Ct. 1996) .........................................................................29

*Hall v. Clifton Precision, a Div. of Litton Sys., Inc.*,
   150 F.R.D. 525 (E.D. Pa. 1993).....................................................................................15

*Huang v. BP Amoco Corp.*,
   271 F.3d 560 (3d Cir. 2001)...........................................................................................50

*Lehman Bros. Holdings, Inc. v. Gateway Funding Diversified Mortg. Servs. L.P.*,
   989 F. Supp. 2d 411 (E.D. Pa. 2013) .............................................................................30

*Lehman Brothers Holdings, Inc. v. Gateway Funding Diversified Mortgage
   Services L.P.*,
   785 F.3d 96 (3d Cir. 2015)........................................................................................30, 31

*Leopold Graphics, Inc. v. CIT Grp./Equip. Fin., Inc.*,
   No. CIV. A. 01-CV-6028, 2002 WL 1397449 (E.D. Pa. Jun. 26, 2002)..........................40

*Monteiro v. City of Elizabeth*,
   436 F.3d 397 (3d Cir. 2006)......................................................................................47, 50

*N.L.R.B. v. Omnitest Inspection Services, Inc.*,
   937 F.2d 112 (3d Cir. 1991)...........................................................................................29

*Pilot Air Freight Corp. v. Sandair, Inc.*,
   118 F. Supp. 2d 557 (E.D. Pa. 2000) .............................................................................23

*Riehl v. Travelers Ins. Co.*,
   772 F.2d 19 (3d Cir. 1985).............................................................................................23

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Rosado v. Ford Motor Co.*,
   337 F.3d 291 (3d Cir. 2003)...........................................................................................45, 54

*Safa v. City of Philadelphia*,
   No. CIV. 13-5007, 2014 WL 2011487 (E.D. Pa. May 16, 2014) ...........................................40

*Schulman v. J.P. Morgan Inv. Mgmt. Inc.*,
   35 F.3d 799 (3d Cir. 1994)..................................................................................................42

*St. Luke's Hosp. of Bethlehem, Inc. v. O'Leary*,
   Civ. A. No. 94-3724, 1994 WL 672629 (E.D. Pa. Nov. 29, 1994)..........................................37

*In re Sugar Indus. Antitrust Litig.*,
   579 F.2d 13 (3d Cir. 1978)....................................................................................................3

*Tincher v. Omega Flex, Inc.*,
   104 A.3d 328 (Pa. 2014) ....................................................................................................51

*Toy v. Metro. Life Ins. Co.*,
   928 A.2d 186 (Pa. 2007)......................................................................................................50

*United States v. Sperry Corp.*,
   493 U.S. 52 (1989)..............................................................................................................27

*Waterfront Renaissance Assoc. v. City of Philadelphia*,
   No. CIV. A. 07-1045, 2008 WL 862705 (E.D. Pa. Mar. 31, 2008) ........................................41

*We, Inc. v. City of Philadelphia*,
   174 F.3d 322 (3d Cir. 1999)..................................................................................................28

*Windsor Securities, Inc. v. Hartford Life Insurance Co.*,
   986 F.2d 655 (3d Cir. 1993). (*See* Br. .) ....................................................................38, 39, 40

*Yonadi v. C.I.R.*,
   21 F.3d 1292 (3d Cir. 1994)..................................................................................................31

**Statutes**

Pennsylvania Dealer Act.................................................................................................. *passim*

**Other Authorities**

FED. R. CIV. P. 56(c) ............................................................................................................22

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

Restatement (Second) of Torts § 766 .................................................................................... 35, 38

Restatement (Second) of Torts § 766A .............................................................................. *passim*

Restatement Second of Torts § 773 ........................................................................................ 43

Restatement (Second) Of Torts § 901 ..................................................................................... 51

## Preliminary Statement

In its motion for summary judgment against Intervenors' counterclaims, VWGoA has misled this Court in no less than <u>six</u> ways, purposefully misstating the law, misconstruing facts, and ignoring anything that interferes with its warped narrative. In brief, VWGoA:

- Ignores both disputed and undisputed facts that tell a very different story of VWGoA's knowledge of and involvement in the Relocation Property construction.



- Misstates the Third Circuit's opinion in *Crivelli v. Gen. Motors. Corp.*, 215 F.3d 386 (3d Cir. 1993). VWGoA quotes *Crivelli* as stating: "the Act [**does**] not limit a motor vehicle manufacturer's exercise of its contractual right of first refusal." (ECF No. 387 at 7 ("Br.")). VWGoA's deliberate choice to change the true quote from "the Act <u>did</u> not limit" to "the Act [**does**] not limit" is significant. In *Crivelli*, the Third Circuit interpreted a <u>pre-1996</u> version of the Pennsylvania Dealer Act, before § 818.16 was added. The Third Circuit used § 818.16 to highlight that though the <u>old version</u> did not regulate contractual rights of first refusal, the <u>new version</u> does: "§ 818.16 [...] defines the circumstances under which a manufacturer <u>may now</u> exercise a right of first refusal." *Id.* at 393 (emphasis added). VWGoA's purposeful misquoting of this case to create a contrary rule of law is offensive and unethical;

- Misleads this Court as to what Restatement (Second) of Torts § 766A says and to what it applies. Section 766A applies only to claims where a <u>plaintiff</u> alleges that his <u>own</u> performance has been hindered or

prevented. Intervenors have never claimed that their performance has been hindered. Intervenors' performance involves only tendering payment and/or collect rent. It's third parties like Wyoming Valley that cannot fully perform their promises to Intervenors (by delivering assets or by taking occupancy and paying rent of the Relocation Property). This falls squarely under Pennsylvania-adopted § 766;



-  ; and

- Ignores state law that constrains VWGoA's actions regarding its ability to exercise its ROFR and its ability to refuse Wyoming Valley its relocation.

When the law is set forth honestly and correctly, and a review of the full record of facts is undertaken, it is clear that Intervenors' claims are not at all ripe for summary judgment. A jury must decide whether VWGoA has tortiously interfered with Intervenors' contracts and prospective relations, and whether VWGoA violated

the Pennsylvania Dealer Act in so doing. VWGoA's motion should be denied.

## Factual Background



---

[1] Intervenors have sued the legal entity "Volkswagen Group of America, Inc." Audi of America, Inc. and Volkswagen of America, Inc. are assumed names that can be disregarded as a matter of law. "A division of a corporation is not a separate entity, but is the corporation itself." *In re Sugar Indus. Antitrust Litig.*, 579 F.2d 13 (3d Cir. 1978). *Accord Fid. & Deposit Co. of Maryland v. First Nat'l Cmty. Bancorp*, No. 3:12-CV-01784, 2013 WL 12107470, at *1 (M.D. Pa. Dec. 27, 2013) ("To the contrary, Pennsylvania courts have held that 'a division of a corporation is not a separate legal entity capable of being sued.'") (citations omitted); *Gen. Dynamics Corp. v. United States*, 47 Fed. Cl. 514, 525 (2000) ("The fact that 'Electric Boat Division' is appended to the designation 'General Dynamics Corporation' is legally inconsequential because an unincorporated division does not have a legal status independent of the corporation.").

[2] "AF" refers to Wyoming Valley and Napleton's Joint Statement of Additional Facts in Opposition to VWGoA's Motions for Summary Judgment, which is part of the parties' joint, counter 56.1 statement, filed by Wyoming Valley on behalf of all defendants simultaneously herewith.







































## Argument

Summary judgment is only proper when there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party moving for summary judgment bears the burden of

establishing that no such issue of fact exists. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). When determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue of fact exists when a trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof. *Celotex*, 477 U.S. at 322-26.

Where a factual issue is disputed, the issue cannot be determined by summary judgment, but should rather be given to a fact finder to decide. *See Dunkin' Donuts v. Shree Dev. Donut LLC*, 152 F. Supp. 2d 675, 678-79 (E.D. Pa. 2001) (genuine issue of material fact precluded summary judgment on franchisee's claim for tortious interference with contractual and business relationships where defendants sought to purchase two franchisees in the Pittsburgh area and needed plaintiffs' approval); *Diamond Triumph Auto Glass, Inc. v. Satellite Glass Corp.*, 441 F. Supp. 2d 695, 716-17 (M.D. Pa. 2006) (fact issues precluded summary judgment on claim alleging tortious interference); *Pilot Air Freight Corp. v. Sandair, Inc.*, 118 F. Supp. 2d 557 (E.D. Pa. 2000) (same).

Furthermore, "issues of knowledge and intent are particularly inappropriate for resolution by summary judgment, since such issues must often be resolved on the basis of inferences drawn from the conduct of the parties." *Riehl v. Travelers Ins.*

23

*Co.*, 772 F.2d 19, 23 (3d Cir. 1985); *see also Coolspring Stone Supply, Inc. v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993).

**I.    VWGoA asserts that it will win its affirmative motion for summary judgment, and that, in so doing, all of Napleton's counterclaims should be dismissed. It won't and they shouldn't.**

VWGoA begins its motion against Napleton's counterclaims by making the bald assertion that it should win its affirmative summary judgment motion, and if it does, that will entirely wipe out Napleton's counterclaims. VWGoA will not be successful ███████████████████████████████████████ ████████████████████████████. Nor would VWGoA's success eliminate Napleton's statutory counterclaims and those counterclaims are premised upon VWGoA's tortious interference with the Relocation Property.



VWGoA is finally coming to grips with the basic premise that it has no actionable ROFR if no one is buying the Audi franchise. It now seems to think that ███████████████ is a pair of magic shoes it can click together three times to wish away its problem. "Voila!" it cries, "we have fabricated out of whole cloth an argument that Napleton <u>is</u> buying the Audi franchise!" But VWGoA wants this Court to pay no attention to the most salient fact behind the curtain: ███████████████

First,





████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

      ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████

If Wyoming Valley Audi and VW are <u>never</u> sold, ████████████████ ████████████████████████████ Wyoming Valley remains VWGoA's dealer partner. If Wyoming Valley Audi and VW are sold to a new buyer, then <u>that</u> buyer becomes VWGoA's dealer partner (or so becomes VWGoA's nominee, should VWGoA choose to ROFR <u>that</u> separate deal). ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████





None of VWGoA's cited cases (in its affirmative motion papers, ECF No. 391)
warrant a different result. *N.L.R.B. v. Omnitest Inspection Services, Inc.*, 937 F.2d
112 (3d Cir. 1991), cited on page 22 of VWGoA's affirmative claims brief, is
inapposite. *N.L.R.B.* addressed whether one company was the "alter ego" of another
company, and so found only after it was determined that the two companies shared
"substantially identical management, business purpose, operation, equipment,
customers and supervision, as well as ownership." *Id.* at 119-120 (citations and
internal quotations omitted). ███████████████████████

████████████████████████████████████████

███████████████████████

VWGoA cites to *Habbyshaw v. Commonwealth*, 683 A.2d 1281, 1283 (Pa.
Commw. Ct. 1996), for the idea that a "party other than the title holder can have a
property interest in a vehicle by virtue of a possessory interest." (ECF No. 391 at
22.) This is a strange choice, as the case discusses the very technical definitions of
ownership under the Pennsylvania motor vehicle law, and comes to the non-
controversial conclusion that a husband and wife who both use a car are "owners"
of the car, even if only one of them pays for it. Since the Wyoming Valley Audi
franchise is not a car, and Ed Napleton and Charles Phillips are not married to each

29

other, this case is inapposite.

Next, on page 23 of its affirmative motion brief, cites a string of cases in an attempt to establish that ███████████████████████████████████████ ███████████████████████████████████████████. VWGoA cites to *Lehman Brothers Holdings, Inc. v. Gateway Funding Diversified Mortgage Services L.P.*, 785 F.3d 96, 103 (3d Cir. 2015), for the proposition that "contractual profit sharing entitlements—not ownership of shares—determine equitable ownership of a newly formed entity." The circumstances of *Lehman Brothers* make it clear, however, that it has nothing to do with the case before this Court. *Lehman Brothers* addresses whether a new company that bought all of an old company's assets and maintained the old company's operations and employees was liable for the old company's debts and liabilities as a "*de facto* merger" under Pennsylvania law. *Id.* at 102-03. One of the prongs the court addressed is "continuity of ownership," which in *Lehman Brothers* was proven by demonstrating that each and every shareholder of the old company received an employment agreement with profit sharing benefits with the new company. *See Lehman Bros. Holdings, Inc. v. Gateway Funding Diversified Mortg. Servs. L.P.*, 989 F. Supp. 2d 411, 434-35 (E.D. Pa. 2013). Because the old shareholders did before, and did now again, have a right to share in the profits of the new company <u>as it continued to do business</u>, continuity of ownership was established. *Id.* at 435-36.

30

 *Lehman Brothers* does not apply.

VWGoA next completely fabricates the holding of *Yonadi v. C.I.R.*, 21 F.3d 1292 (3d Cir. 1994). VWGoA states that *Yonadi* holds that "an economic interest in one-third of the proceeds from the sale of corporate assets created ownership interest, rather than right to 'a payment of money contingent as to time and amount.'" (ECF No. 391 at 23.) But this holding is nowhere to be found. In *Yonadi*, Third Circuit decided whether the split of <u>property</u> in a marital estate did, as the lower court had erroneously held, grant "not an actual division of the marital property, but rather a 'payment of money contingent as to time and amount.'" *Id*. at 1296. The Third Circuit found this violated the common sense reading of what happens in a divorce: "A common sense reading of this language and the entire judgment leads to the conclusion that the judgment contemplated an actual division of marital property upon the divorce. The term 'interest' in the judgment meant 'ownership interest.'" *Id*. Thus, far from some pithy determination that economic interest <u>equals</u> ownership

interest, the Third Circuit made the noncontroversial decision that a split of marital property is just that: a split of <u>ownership</u> in the marital estate.

VWGoA has woven together disparate, inapposite cases to create a false patchwork quilt of the law. ███████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████ VWGoA's two summary judgment motions fall apart.

**B.      The Relocation Agreement is subject to the Pennsylvania Dealer Act, and regardless, Wyoming Valley met its terms.**

VWGoA argues that Wyoming Valley cannot satisfy two conditions for relocation, and therefore, VWGoA was never going to have to authorize the relocation of the Audi franchise anyway. (Br. at 6.) VWGoA's argument presupposes that it can contractually enforce those conditions. It cannot.

Under the Pennsylvania Dealer Act, 63 P.S. § 818.12(b)(4), VWGoA is prohibited from: "Unreasonably withhold[ing] consent to the relocation of an existing new vehicle dealer." Further, the manufacturer must respond in writing to a request to relocate within the 60- or 75-day timeframe under 63 P.S. § 818.12(b)(5), or else the request is deemed approved. The consent contemplated by state law is a straight "yes" or "no"—the only time that conditions are allowed to be applied on the consent is when the relocation is to a "dualed" facility, which is not the case

32

here.[7] *See* 63 P.S. § 818.12(b)(4) & (a)(6).



In any event, Wyoming Valley also met both of the conditions in the Relocation Agreement that VWGoA falsely claims Wyoming Valley can never meet. The first—that Wyoming Valley maintain beneficial ownership—certainly has been met for the reasons articulated above ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The second "condition"—that Wyoming Valley "secure the entire Relocation Property" (Br. at 7)—has been invented for this motion practice. The Relocation Agreement requires Wyoming Valley to secure "the real property" located at the "New Dealership Premises" by "purchase, option, lease or otherwise." (Relocation Agreement § 2(a).) Wyoming Valley has undisputedly done so. (AF ¶¶ 88, 97.) Nowhere does the contract reference or require that "the entire real property" be secured.

———————————

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Moreover, the paragraph establishing the requirement to secure the real property also states: "Dealer shall complete construction of a corporate identity-compliant Exclusive Audi facility (the 'Facility') on the property located at the New Dealership Premises." (Relocation Agreement § 2.) The context of the paragraph and the document as a whole lead one sensibly to believe that Wyoming Valley only needs to secure that property necessary to build and operate an exclusive Audi facility. To the extent that VWGoA implies that a different reading is susceptible from the plain text of the agreement (where the word "entire" is nowhere to be found), the ambiguity of what was intended should be resolved by the jury (and against Audi, as the drafter).

### C. The Pennsylvania Dealer Act still applies even if VWGoA's ROFR were somehow still "live."

████████████████████████████████████

██, VWGoA's ROFR is still subject to state law, as discussed in greater detail below. VWGoA cannot unreasonably withhold consent to approve Napleton, and only the actual <u>exercise</u> of a ROFR gives VWGoA protection from this requirement (and it has not exercised the Audi ROFR)—*see Crivelli v. Gen. Motors. Corp.*, 215 F.3d 386, 396 (3d Cir. 2000).

VWGoA's ROFR is further constrained by the Pennsylvania Dealer Act. As described above, *Crivelli*, 215 F.3d at 392-94, does not say what VWGoA says it does. VWGoA claims it says "the Act [does] not limit a motor vehicle

34

manufacturer's exercise of its contractual right of first refusal." (Br. at 7.) But VWGoA's deliberate choice to change the actual quote from "the Act <u>did</u> not limit" to "the Act [**does**] not limit" is flat out unethical. The Third Circuit was interpreting a <u>pre-1996</u> version of the Pennsylvania Dealer Act, before § 818.16 was added. The appellant in *Crivelli* had argued that another section, § 818.9, prohibited the manufacturer from exercising its ROFR. The Third Circuit disagreed, and used the new § 818.16 to highlight that the <u>old version</u> did not regulate contractual rights of first refusal, but the <u>new version</u> does: "§ 818.16…defines the circumstances under which a manufacturer <u>may now</u> exercise a right of first refusal." *Id*. at 393 (emphasis added). VWGoA's purposeful misquoting of this case to create a contrary rule of law is malpractice at best, and malevolence at worst.

Even in a situation where VWGoA's ROFR were still "active" and tied to the pending transaction (it's not), VWGoA's exercise of that ROFR must comply with state law, including the timing requirements thereunder.

**II.     All of Intervenors' tortious interference claims fall under Restatement § 766 or tortious interference with prospective contract, both of which are recognized by Pennsylvania law.**

VWGoA offers one of the most tortured explanations imaginable of the difference between § 766 and § 766A of the Restatement (Second) of Torts, in an apparently purposeful attempt to mislead this Court. Thankfully, the Official Comment to § 766A makes the difference crystal clear:

35

> This Section is concerned only with the actor's intentional interference with the **plaintiff's performance of his own contract**, either by preventing that performance or making it more expensive or burdensome. It is to be contrasted with § 766, which states the rule for the actor's intentional interference with a third person's performance of his existing contract with the plaintiff.

Restatement (Second) of Torts § 766A at Comment (a) (emphasis added).

Intervenors bring four tortious interference claims—the Third through Sixth Causes of Action in their Counterclaims. None of these allege that Intervenors' own performance was made more difficult or could not be performed.

The Third Cause of Action is about the APA, and alleges that VWGoA interfered with Wyoming Valley's performance thereunder. Indeed, the contract has had to be amended twice to deal with VWGoA's interference—once to remove Audi, then a second time to remove Audi (again) and Volkswagen, and to recognize that Mazda and Kia may never be purchased because of VWGoA's wrongdoing. The Fourth Cause of Action is about interference with Napleton's prospective contractual relations[8] with other manufacturers—VWGoA's interference has delayed the other manufacturers' approval of Napleton as a dealer, or in Mazda's case, removed them

---

[8] While Pennsylvania has not explicitly adopted the Restatement's "formulation" of this tort under § 766B, it is undisputed that Pennsylvania acknowledges that tort. *Glenn v. Point Park College*, 441 Pa. 474, 478 (1971) ("We see no reason whatever why an intentional interference with a prospective business relationship which results in economic loss is not as actionable as where the relation is presently existing….").

from the running altogether. The Fifth Cause of Action concerns VWGoA's interference with the APA and the MIPA, when it threatened to forever block Wyoming Valley's relocation to its brand new building unless Wyoming Valley unwound its dealings with Napleton. The Sixth Cause of Action is about how that same interference has prevented Wyoming Valley from occupying the Relocation Property and paying rent to Napleton under the Audi Lease. Napleton is ready, willing, and able to perform under all of these contracts—by paying money for assets, signing forms, or collecting rent, as the individual case may be. Napleton's performance has not been hindered in the slightest.

Despite the fact that all of these claims fall squarely within the rubric of § 766—they all claim that VWGoA's interference has prevented a third-party from fully and timely performing[9] or consummating a contract with Napleton—VWGoA nonetheless bends over backward trying to fit these square-peg claims into its round-hole theories.

---

[9] An interruption in performance is sufficient to make out a claim under § 766; it is not required that the relationship between plaintiff and third party be forever severed. *See Consolidation Coal Co. v. Dist. 5, United Mine Workers of Am.*, 485 A.2d 1118, 1127 (Pa. Super Ct.1984) ("appellant will not be required to establish that the appellees' alleged interference led to a complete severance of the contractual relationship"); *St. Luke's Hosp. of Bethlehem, Inc. v. O'Leary*, Civ. A. No. 94-3724, 1994 WL 672629, at *7 (E.D. Pa. Nov. 29, 1994) ("Under Pennsylvania law, a plaintiff alleging tortious interference with an existing contract need not establish that the contractual relationship was totally lost.").

VWGoA spends a full page of text that purports to analyze *Windsor Securities, Inc. v. Hartford Life Insurance Co.*, 986 F.2d 655 (3d Cir. 1993). (*See* Br. at 12-13.) The undersigned has no idea what case VWGoA was in fact analyzing, because *Windsor* bears no resemblance to the one described. In *Windsor*, an investment advisor invested in a mutual fund run by The Hartford Life Insurance Company on behalf of its client. The advisor and the client both brought claims against Hartford when Hartford attempted to limit mutual fund timing activity it had observed by enacting new trading restrictions and requirements on the investment advisor's trading activity on behalf of its client. The investment advisor, Windsor (or the "broker" as VWGoA calls it), brought a tortious interference claim against Hartford for interfering with the investment advisor's contract with its client—because it had interfered with Windsor's ability to trade on its client's behalf. The client, Arader (or the "sub-account holder" as VWGoA calls him), brought a breach of contract claim against Hartford for breaching his investment contract with the mutual fund, which originally had no such trading restrictions.

Windsor claimed that Hartford had made it impossible for <u>Windsor</u> (the plaintiff) to perform under its own contracts, because it no longer could trade as its client wanted it to. The Third Circuit then analyzed whether § 766 or § 766A applied:

> Both § 766 and § 766A involve interference with an existing contract. Section 766 "states the rule for the actor's intentional interference with a third person's performance of his existing contract with the plaintiff."

38

> Restatement (Second) of Torts § 766A cmt. a. Section 766A, by contrast, states the rule where an actor intentionally interferes with "**plaintiff's performance of his own contract**, either by preventing that performance or making it more expensive or burdensome." *Id.* Thus, **the sections focus on different targets of interfering conduct**. Section 766 addresses disruptions caused by an act directed not at the plaintiff, but at a third person: the defendant causes the promisor to breach its contract with the plaintiff. **Section 766A addresses disruptions caused by an act directed at the plaintiff: the defendant prevents or impedes the plaintiff's own performance**."

*Id.* at 660 (emphases added). Because Windsor claimed that his own performance had been impeded, § 766A applied to his claims—but Pennsylvania law does not recognize § 766A. Thus, this analysis in *Windsor* turned not on the loose concept of "hindrance" vs. "inducement," but rather, on **who** was being hindered or induced.[10] If it is a third-party, § 766 applies. If it is the plaintiff, § 766A.

VWGoA's analysis and analogy on page 13 of their brief makes no sense. It was the "broker" brought the tortious interference claim, while the "sub-account holder" brought the breach of contract claim (which survived)—not vice versa. Napleton does not claim that "an 'outsider'…insisted on certain improper conditions in a separate contract," "the imposition of which burdened Napleton's own arrangements with that same third party." (Br. at 13.) Rather, Napleton claims that

---

[10] Ultimately, *Windsor*'s outcome did not turn upon § 766A at all: "We need not decide, however, whether the Pennsylvania Supreme Court would embrace or reject § 766A. For even if Pennsylvania would adopt § 766A, we believe Hartford cannot be held liable under that section for the reasons expressed below." *Id.* at 663.

VWGoA interfered with Wyoming Valley's performance under its contracts with Napleton, which has resulted in Wyoming Valley's inability to: (i) sell to Napleton its Audi or Volkswagen franchises, (ii) sell to Napleton its Mazda franchise, and (iii) take occupancy and pay rent and other expenses at the Relocation Property. This is hardly "note-for-note what the sub-account holder plaintiff in *Windsor* argued," both because the "sub-account holder plaintiff" had a breach of contract claim, *see Windsor Securities*, 986 F.2d at 667, and because it's completely distinguishable.

None of Audi's other cases on § 766A hold any differently. *See Gemini Physical Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.,* 40 F.3d 63 (3d Cir. 1994) ("Not only are the targets of the two sections different, but section 766A is much more difficult to apply and conducive to disputes." (emphasis added); *Safa v. City of Philadelphia*, No. CIV. 13-5007, 2014 WL 2011487, at *6 (E.D. Pa. May 16, 2014) ("Pennsylvania has not recognized a cause of action against a defendant that has prevented or impeded a plaintiff's own performance") (emphasis added); *Dunkin Donuts Franchising LLC v. Claudia III, LLC*, No. CIV 14-2293, 2014 WL 12618097, at *1 (E.D. Pa. Dec. 5, 2014) (Pennsylvania does not recognize tortious interference claims "based on actions taken against a party to a contract that purportedly interfered with the party's own ability to perform the contract.") (emphasis added); *Leopold Graphics, Inc. v. CIT Grp./Equip. Fin., Inc.*, No. CIV. A. 01-CV-6028, 2002 WL 1397449, at *3 (E.D. Pa. Jun. 26, 2002) ("Plaintiff alleges

that Defendants directed tortious activity only at it, rather than at any third party with which it had a contract."); *Waterfront Renaissance Assoc. v. City of Philadelphia*, No. CIV. A. 07-1045, 2008 WL 862705, at *9 (E.D. Pa. Mar. 31, 2008) (Pennsylvania courts do not recognize Section 766B(b), "which contemplates a cause of action for conduct directed toward the plaintiff, rather than a third party."); *Clark Distribution Sys., Inc. v. ALG Direct, Inc.*, 12 F. Supp. 3d 702, 725 (M.D. Pa. 2014), *order vacated in part on reconsideration* (May 29, 2014) ("all of CDS's (allegedly tortious) actions were directed to ALG, rather than any third party.").

Simply put, § 766A does not apply. Intervenors claim not that their own performance has been hindered, but rather that Wyoming Valley, among others, has been unable to timely and completely perform under its various agreements with Napleton, as a direct result of VWGoA's interference. VWGoA's motion for summary judgment should be denied.

## III.   Whether VWGoA's actions were "justified" is a question for the jury.

VWGoA makes four key errors in asserting that this Court can rule, as a matter of law, that VWGoA was "justified" to interfere: (1) it misstates the law as to when conduct can be deemed "justified," and then understates the number and amount of tortious interference activities for which there is record evidence; (2) it forgets that it has not actually exercised its ROFR, and cases that protect the <u>exercise</u> of a ROFR are thus inapposite; (3) it ignores the Pennsylvania Dealer Act, which constrains

41

VWGoA's ability to act and prescribes the "rules of the game"; and (4) it leaps to conclusions as to whether it has asserted in "good faith" that it was "fraudulently induced" as a matter of law.

### A. VWGoA has acted in bad faith, through inappropriate means, to pursue punishment of Napleton outside of its "legally protected interests."

VWGoA claims that it is entitled to "enforce its valid contractual rights," and that this creates a "*per se*" justification. (Br. at 18.) This argument is incorrect for two reasons.

First, VWGoA must act in good faith and by appropriate means when allegedly pursuing its contractual remedies; it cannot cloak bad faith conduct in a facially-valid justification. VWGoA's own cases say as much.[11] *See Schulman v. J.P. Morgan Inv. Mgmt. Inc.*, 35 F.3d 799, 810 (3d Cir. 1994) ("The Restatement gives an actor this defense only if it has a legally protected interest and, in good faith, asserts the interest or threatens to protect it by appropriate means.") (emphases added); *Darius Int'l., Inc. v. Young*, Civ. No. 05-6184, 2008 WL 1820945, at *48 (E.D. Pa. Apr. 23, 2008) (party not liable for tortious interference if "the allegedly interfering party has a legally protected interest and asserts that interest in good

---

[11] One case cited by VWGoA has nothing to do with the present issue—it is about a situation where the defendant has a contract with the plaintiff and it acts pursuant to that contract, which is not the case here. *DePace v. Jefferson Health Sys., Inc.*, No. Civ. A. 04-1886, 2004 WL 2850067, at *3 (E.D. Pa. Dec. 7, 2004).

faith") (emphasis added); *Cloverleaf Dev., Inc. v. Horizon Fin. F.A.*, 500 A.2d 163, 168 (Pa. Super. Ct. 1985) ("What is or is not privileged conduct… is not susceptible of precise definition."); *Geofreeze Corp. v. C. Hannah Const. Co.*, 588 F. Supp. 1341, 1345 (E.D. Pa. 1984) ("This rule 'is of narrow scope and protects the actor only when (1) he has a legally protected interest, and (2) <u>in good faith</u> asserts or threatens to protect it, and (3) the threat is to protect it <u>by appropriate means</u>.'" (quoting Restatement Second of Torts § 773, Comment (a))) (emphases added).

Second, Intervenors have alleged, and the record evidence shows, that VWGoA did not act in good faith or by appropriate means. ██████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████ Given this evidence, a jury could find that VWGoA has acted (i) outside its protected interests, (ii) in bad faith, (iii) through improper means, and to (iv)

43

punish Napleton.

Even if VWGoA's conduct related to its own franchises were somehow justified (it is not), that does not explain why VWGoA seemed to want to do everything that it could to stop the <u>entire</u> transaction from going forward, such as

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████ VWGoA's efforts have gone above and far beyond protecting its Audi and Volkswagen franchises, and have been squarely aimed at <u>punishing Napleton</u>. The evidence is replete in the record and now it is time for the jury to decide what VWGoA's true motives were.

**B.    All of VWGoA's "ROFR" cases are where a ROFR was actually exercised; this ROFR has not been.**

VWGoA claims that any actions it takes in defense of its ROFR are valid under the law and should be protected. But all of the case examples that VWGoA cites in its brief regarding a ROFR are where the ROFR was <u>exercised</u>; none are a scenario where, as here, a manufacturer attempted to hold open a ROFR for 17 months and counting. *See Crivelli*, 215 F.3d at 396 ("as a matter of law, the <u>exercise</u>

44

of a right of first refusal by GM did not constitute an improper action within Pennsylvania's tort of intentional interference with a contractual relationship") (emphasis added); *Rosado v. Ford Motor Co.*, 337 F.3d 291, 296 (3d Cir. 2003) (finding that timely notice of the <u>exercise</u> of a right of first refusal did not give rise to a tortious interference claim). But VWGoA has not exercised its ROFR for the Audi franchise, even as of this day. Even *Rosado* recognized that the failure to comply with the Pennsylvania Dealer Act may give rise to a tortious interference claim: "Here, the tortious interference claim obviously depends on whether the defendant acted in violation of the Vehicles Act." *Rosado*, 337 F.3d at 296. In that case, because Ford had given timely notice and followed all appropriate procedures, the claim was dismissed.

VWGoA cannot fall back on the litany of cases protecting a manufacturers' <u>exercise</u> of its ROFR, because VWGoA has not so exercised. Its summary judgment motion should be denied.

### C. The Pennsylvania Dealer Act sets the "rules of the game," and VWGoA did not play by them.

Absent from VWGoA's justification argument is any mention or reference to the Pennsylvania Dealer Act, which sets out the "rules of the game" by which both sides must play. Under 63 P.S. § 818.12(b)(3), VWGoA cannot "unreasonably withhold consent to the sale, transfer, or exchange of the franchise to a qualified buyer… who meets the manufacturer's… reasonable requirements for appointment

45

as a dealer." Under 63 P.S. § 818.12(b)(4), VWGoA cannot "unreasonably withhold consent to the relocation of an existing new vehicle dealer." And under 63 P.S. § 818.16 & § 818.12(b)(5), any rejection of a pending deal or exercise of a ROFR must occur within 60 or 75 days, as the case may be, of receipt "of a written request on the forms" required by the manufacturer. "In no event shall the total time period for approval [or ROFR] exceed 75 days from the date of the receipt of the initial forms." *Id*. § 818.12(b)(5).

The record demonstrates that VWGoA has not abided by any of these rules of the game—*i.e.*, the law. ███████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████ Well more than 75 days have passed since the "initial forms" were submitted, and yet VWGoA continues to toy with the parties, and refuses to make a decision, with no legal basis to do so.

VWGoA's failure to abide by any of these rules of the game further supports Napleton's claim that VWGoA did not act in good faith to protect a legitimate business interest. Nor does VWGoA's stated business interest—████████████ ███████████████████—alter or modify VWGoA's obligations under the

46

Dealer Act.

First, whether VWGoA was truly motivated by ████████████████

is an issue for the jury to parse. That concept appears in no contemporaneous

documents, and in fact, it did not appear in this litigation until ████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████ Whether VWGoA was actually motivated by ████████████████

████████████████████████████████████████████████████████████

████ is one of motive, which only the jury can determine. *Monteiro v. City of*

*Elizabeth*, 436 F.3d 397, 405 (3d Cir. 2006) (affirming denial of summary judgment,

holding: "Motive is a question of fact that must be decided by the jury, which has

the opportunity to hear the explanations of both parties in the courtroom and observe

their demeanor.").

Moreover, VWGoA's stated rationale is not a "legitimate business reason,"

but rather another example of VWGoA punishing Napleton for asserting its legal

rights in the TDI Diesel case. ████████████████████████████████



**D.     Whether VWGoA asserts in "good faith" that it was "fraudulently induced" is a two-part, factual inquiry for the jury.**

VWGoA asserts that this Court can determine, as a matter of law, that it asserted in "good faith" that it was "fraudulently induced." (Br. at 23.) There is no basis for VWGoA's bold assertion.

First, as discussed above, VWGoA was constrained by Pennsylvania law from revoking consent to a relocation to which it had already consented. Second, the record evidence described in detail in the Factual Background above shows that VWGoA: ███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████



Third, even if VWGoA truly did believe ███████████████████████

████████████████████████████, that does not justify the tortious

interference contained <u>within</u> the Rescission Letter. Going beyond simply revoking

the relocation approval, VWGoA conditioned the restoration of that status upon

Wyoming Valley's kicking Napleton to the curb. VWGoA's conduct was not about

undoing <u>its</u> relocation agreement—it was admittedly about undoing <u>all</u> of <u>Napleton's</u>

agreements with Wyoming Valley.

Fourth and finally, whether VWGoA acted in "good faith," and whether it was

"fraudulently induced," are both fact-intensive inquiries properly left to the jury. *See*

*Monteiro*, 436 F.3d at 405 ("Motive is a question of fact that must be decided by the

jury"); *Huang v. BP Amoco Corp.*, 271 F.3d 560, 565 (3d Cir. 2001) (reversing entry

of summary judgment, holding, "Under Pennsylvania law, whether a party has made

a good-faith effort is a question of fact."); *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186,

208 (Pa. 2007) (reversing entry of summary judgment on fraudulent inducement

claim, because "justifiable reliance is typically a question of fact for the fact-finder

to decide, and requires a consideration of the parties, their relationship, and the circumstances surrounding their transaction.") (citation omitted).

**IV.     Intervenors make out claims for damage under its tortious interference causes of action.**

    **A.     VWGoA has deprived Intervenors of the benefit of the bargain under the original APA, resulting in millions of dollars of damage to Napleton.**

On September 28, 2016, VWGoA committed tortious interference with the APA by telling Wyoming Valley that it had breached its dealer agreement (which can result in termination), and that if Wyoming Valley wasn't capable of providing a good-faith breakdown, it must withdraw the entire APA. VWGoA attempted to kill the entire deal and threatened Wyoming Valley's franchise to do it. In response, the parties acquiesced to VWGoA's tortious interference by enacting the First Addendum, which withdrew the Audi franchise from the deal. But the First Addendum was only entered <u>because</u> VWGoA's tortious interference threatened the rest of the deal. Napleton had originally bargained for and expected to receive all seven of Wyoming Valley's franchises. These are "expectation damages" that are fully recognized and recoverable under Pennsylvania law. RESTATEMENT (SECOND) OF TORTS § 901, Comment (a) (1979) ("the law of torts attempts primarily to put an injured person in a position as nearly as possible equivalent to his position prior to the tort."); *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 404 (Pa. 2014) (citing RESTATEMENT (SECOND) OF TORTS § 901) (1979).

51

████████████████████████████████████████

████████████████████████ Accordingly, Intervenors have made out a *prima facie* case for damages that should be presented to the jury.

VWGoA was well aware of this theory of damages and its underpinnings when making this motion for summary judgment, but chose not to address it. VWGoA should not get the benefit of new arguments against this theory for the first time on reply.[12]

### B.   VWGoA has caused the delay in (and seeks to fully prevent) Wyoming Valley moving its Audi franchise to the Relocation Property, interfering with the Audi Lease.

VWGoA's wrongful rescission of its relocation approval violated state law, and was done not to protect any valid interests, but instead to punish Napleton and to encourage Wyoming Valley to unwind all of its agreements with Napleton. This has had the effect of preventing Wyoming Valley Audi from taking occupancy of the brand new dealership premises awaiting it at the Relocation Property. As a consequence, Wyoming Valley has not been paying any rent or other amounts due under the Audi facility triple-net lease.

Intervenors have thus made out a *prima facie* claim for damages (lost rent,

---

[12] *Alston v. Forsyth*, 379 Fed. Appx. 126, 129 (3d Cir. 2010) (vacating grant of summary judgment based on arguments in reply brief, holding, "There is cause for concern where a movant presents new arguments or evidence for the first time in a summary judgment reply brief, particularly if the District Court intends to rely upon that new information in granting summary judgment to the movant.").

taxes, insurance and maintenance) under the Audi lease with which VWGoA tortiously interfered, and that claim should be presented to the jury.



## V.    VWGoA cannot avoid the statutory proscriptions of the Pennsylvania Dealer Act.

VWGoA's argument against Intervenors' statutory counterclaims spans some thirteen pages, but in effect only repeats the same three arguments: (1) VWGoA was acting to exercise its ROFR, which is protected; (2) ███████████████████ ██████████████████████████; and (3) Wyoming Valley withdrew its request for approval before time expired under the statute. None of these arguments hold water.

A.   **VWGoA has never exercised its Audi ROFR and claims to still be evaluating whether to approve Napleton.**

VWGoA claims that it was "acting to exercise its ROFR," and therefore its failure to consent to the transaction cannot be unreasonable. *See Rosado*, 337 F.3d at 295. There's only two problems with this argument.

First, VWGoA has <u>never</u> exercised its Audi ROFR, unlike the *Rosado* and *Crivelli* cases to which it cites. When a manufacturer chooses to <u>exercise</u> a ROFR, and does so timely, that exercise shields it from liability under its failure to consent to a qualified buyer. But VWGoA has not exercised here, and so is not entitled to those protections. *See Rosado*, 337 F.3d at 295 ("The statute does, however, require the manufacturer to give timely notice and to reimburse a prospective purchaser with reasonable expenses incurred from negotiating the original agreement with the owner. Obviously, a prospective purchaser would have standing for violation of those statutory provisions....").

Second, ███████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

---

13 ████████████████████████████████████████████



**C.    Napleton never withdrew its request for approval, and VWGoA's statutory clock ran out before Wyoming Valley's withdrawal.**

VWGoA claims that its 75-day clock stopped running when "Wyoming Valley formally withdrew its request for AoA's consent." (Br. at 46.) This is wrong for three reasons.

First, Napleton contends that its application on the "initial forms" was sent on October 4, 2016. This means that the 75-day clock expired on December 19, 2016— one day prior to the First Addendum, and prior to Wyoming Valley's "withdrawal" letter. While VWGoA contends the parties agreed to a different timeframe at the time, the statute governs when the clock starts and stops. The parties are unable to alter it. *See* 63 P.S. § 818.12(b)(5) ("In no event shall the total time period for approval exceed 75 days from the date of the receipt of the initial forms.").

Second, VWGoA cannot pin the timing on one party's forms and another party's withdrawal. Wyoming Valley's request for consent occurred when it sent in the APA on September 15, 2017. Wyoming Valley's "withdrawal" of that consent occurred some 96 days later, on December 20, 2016. So if we are to judge the time period on Wyoming Valley's communications, VWGoA certainly blew it.

If instead we are to judge the time period on Napleton's communications (*i.e.*, the "applicant" under the statute), Napleton submitted a request to become an Audi dealer on October 4, 2016, and VWGoA admittedly never responded in writing to that request. Napleton never sent a withdrawal letter. VWGoA cannot start the clock on Napleton's actions and stop the clock on Wyoming Valley's. *See* 63 P.S. § 818.12(b)(5) ("The failure to respond within the time period set forth in this paragraph shall be deemed to be approval of the request, and the manufacturer or distributor shall execute and deliver a franchise to the <u>applicant</u> within 30 days of

the expiration of this time period.") (emphasis added).

Third, VWGoA cannot have it both ways: "Wyoming Valley and Napleton purported to withdraw the Audi franchise from their transaction <u>before</u> AoA's time to decide whether to exercise its ROFR expired." (Br. at 48.) Yes, meaning that VWGoA's ROFR was deactivated and returned to hibernation to await another deal. And if VWGoA had simply accepted that, we would have all been spared a lot of headaches. But it did not. According to VWGoA, its ROFR is still a live, exercisable right. ███████████████████████████████████████████████

███████████████████. Under VWGoA's view, its time to evaluate Mr. Napleton and whether to exercise its ROFR have long since elapsed, and if the deal is still live, Mr. Napleton should be delivered the Audi franchise by operation of statute.

Indeed, should this Court find that Wyoming Valley Audi is still somehow up for sale to Napleton and subject to VWGoA's right of first refusal, VWGoA has admitted all the facts necessary in this briefing to support a finding that the Audi franchise <u>must be delivered to Napleton</u>. *Compare* Br. at 46 ("AoA therefore never responded in writing to Wyoming Valley's request, never rejected Wyoming Valley's request…"); *with* 63 P.S. § 818.12(b)(5) ("The failure to respond within the time period set forth in this paragraph shall be deemed to be approval of the request, and the manufacturer or distributor shall execute and deliver a franchise to the applicant within 30 days of the expiration of this time period.").

In fact, with no more potential Audi TDI class hanging over its head, maybe VWGoA will decide to approve Napleton, in the end. He is ███████████████████ a "qualified buyer." ███████████

## Conclusion

VWGoA claims it is entitled to summary judgment on numerous issues of disputed fact, on the basis of state law that it misstated to this Court, and on the basis of theories of the case that are almost brand new. The sheer volume of paper alone (competing 50+ page briefs and over 100 exhibits) should be enough to persuade any court that Intervenors' Counterclaims are not ripe for summary judgment, and are inherently factual claims ready for jury trial.

A clear and fulsome recitation of the facts has demonstrated that Intervenors do have evidence of VWGoA's improper motive and conduct, and that the record is rife with inferences that the jury is entitled to draw regarding VWGoA's conduct. When examined fairly and honestly, the law is on Intervenors' side, and no twisting of the Restatement or of *Crivelli* can create a rule of law where none exists.

For these reasons, VWGoA's motion should be denied in its entirety.

Dated: February 16, 2018                Respectfully submitted,


By: _/s/ Michael P. McMahan_____
Russell P. McRory (*pro hac vice*)
James M. Westerlind (*pro hac vice*)
Michael P. McMahan (*pro hac vice*)
**ARENT FOX LLP**
1675 Broadway
New York, NY 10019-5874
Phone: 212.484.3900
Fax: 212.484.3990
Email: russell.mcrory@arentfox.com
Email: james.westerlind@arentfox.com
Email: michael.mcmahan@arentfox.com

Kathryn L. Simpson, Esq.
**METTE, EVANS & WOODSIDE**
3401 North Front Street
Harrisburg, PA 17110-0950
Phone: 717.232.5000
Fax: 717.236.1816
Email: ksimpson@mette.com

*Attorneys for Intervenors*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief consists of 14,848 words, based upon the word count feature on the word processing system used to prepare the brief, exclusive of caption, title, Table of Contents, Table of Authorities, Appendix, and Signature Block.

/s/     *Michael P. McMahan*

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2018 I caused the foregoing document to be sent to all counsel of record via the Court's ECF system.

/s/     *Michael P. McMahan*
Michael P. McMahan (*pro hac vice*)
**ARENT FOX LLP**
1675 Broadway
New York, NY  10019-5874
Phone:  212.484.3900
Fax:  212.484.3990
Email:  michael.mcmahan@arentfox.com
*Attorneys for Intervenors*