# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AUDI OF AMERICA, INC.,<br>An Organizational Unit of Volkswagen Group<br>of America, Inc.,<br>A New Jersey Corporation, | ) <br>) <br>) <br>) <br>) |
| Plaintiff/Counter-Defendant, | ) Case No.  3:16-cv-02470 |
| | ) |
| v. | ) Judge John E.  Jones III |
| | ) |
| BRONSBERG & HUGHES PONTIAC, INC.,<br>d/b/a WYOMING VALLEY AUDI,<br>A Pennsylvania Corporation, | ) <br>) <br>) |
| | ) |
| Defendant/Counter-<br>Plaintiff, | ) <br>) |
| | ) |
| -and- | ) |
| | ) |
| NORTH AMERICAN AUTOMOTIVE<br>SERVICES, INC.,<br>an Illinois Corporation;  *et al.,* | ) <br>) <br>) |
| | ) |
| Defendants/Counter-<br>Plaintiffs. | ) <br>) |

## AUDI OF AMERICA, INC.'S REPLY IN
## SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
## <u>REGARDING NAPLETON'S COUNTERCLAIMS</u>

# **TABLE OF CONTENTS**

INTRODUCTION...........................................................................................................1

ARGUMENT ..................................................................................................................4

A. THE COURT SHOULD ENTER JUDGMENT AS A MATTER OF LAW ON
NAPLETON'S COUNTERCLAIMS THAT ARE BASED ON AOA'S REQUEST
FOR A GOOD FAITH APPORTIONMENT OF THE APA (COUNTS III AND IV). ........4

    1.   Napleton's Tortious Interference Claims Based on AoA's Request for
a Good Faith Apportionment of the APA Fail as a Matter of Law
Because the Undisputed Facts Demonstrate that AoA's Actions Were
Justified.................................................................................................4

        a.   The Undisputed Facts Establish that AoA Has a Legitimate
Business Interest in Enforcing Its ROFR. ....................................7

        b.   The Facts Alleged by Napleton Are Insufficient to Overcome
AoA's Legitimate Business Interest. ...........................................10

        c.   Napleton's "Facts" Regarding AoA's Request for a Good Faith
Apportionment of the APA Are Not Sufficient to Defeat
Summary Judgment Because They Are Based on Rank
Speculation and Conjecture.........................................................11

        d.   AoA Did Not Violate the "Rules of the Game." ......................17

    2.   Napleton's Tortious Interference Claims Based on AoA's Request for
a Good Faith Apportionment of the APA (Counts III and IV) Fail as
a Matter of Law Because the Undisputed Facts Demonstrate that
AoA's Non-Litigation Conduct Caused No Actual Interference or
Legal Damages...................................................................................19

B. THE COURT SHOULD ENTER JUDGMENT AS A MATTER OF LAW ON
NAPLETON'S COUNTERCLAIMS THAT ARE BASED ON AOA'S RESCISSION
OF THE RELOCATION AGREEMENT (COUNTS V AND VI). ...................................23

    1.   Napleton's Tortious Interference Claims Based on AoA's Rescission
of the Relocation Agreement Fail as a Matter of Law Because the
Undisputed Facts Demonstrate that AoA's Actions Were Justified. ...........24

        a.   The Undisputed Facts Establish that AoA Had a Legitimate
Contractual Right to Rescind the Relocation Agreement. .......................25

        b.   The Facts Alleged by Napleton Are Insufficient to Overcome
AoA's Legitimate Right to Rescind the Relocation Agreement. .............27

c. Napleton's Speculative "Facts" Regarding AoA's Rescission of the Relocation Agreement Are Not Sufficient to Defeat Summary Judgment Because They are Based on Rank Speculation and Conjecture. ................................................. 28

2. Napleton's Tortious Interference Claims Regarding AoA's Rescission of the Relocation Agreement (Counts V and VI) Fail as a Matter of Law Because the Undisputed Facts Demonstrate that AoA's Rescission of the Relocation Agreement Caused No Actual Interference or Legal Damages. ...................................... 31

C. NAPLETON'S TORTIOUS INTERFERENCE CLAIMS FAIL AS A MATTER OF LAW BECAUSE THEY ARE NOT COGNIZABLE UNDER PENNSYLVANIA LAW. ...................................................................................................... 34

CONCLUSION ............................................................................. 37

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acumed LLC v. Advanced Surgical Servs., Inc.,*
    561 F.3d 199 (3d Cir. 2009) ................................................................. 4

*Alternative Sys. Concepts, Inc. v. Synopsys, Inc.,*
    374 F.3d 23 (1st Cir. 2004) ................................................................. 22

*Argus Inc. v. Eastman Kodak Co.,*
    801 F.2d 38 (2d Cir. 1986) ................................................................. 12

*Atl. Refining co. v. Wyoming Nat. Bank of Wilkes-Barre,*
    51 A.2d 719 (Pa. 1947) ....................................................................... 18

*Bishop v. GNC Franchising LLC,*
    403 F. Supp. 2d 411 (W.D. Pa. 2005), *aff'd,* 248 F. App'x 298 (3d Cir. 2007).......... 8

*Blair v. Scott Specialty Gases,*
    283 F.3d 595 (3d Cir. 2002) ................................................................. 11

*Borough of Lansdale v. PP & L Inc.,*
    2007 WL 2597559 (E.D. Pa. Sep. 4, 2007) ................................................ 12

*Boyd & Mahoney v. Chevron U.S.A.,*
    614 A.2d 1191 (Pa. Super. Ct. 1992) .................................................... 18

*BP Envtl. Servs., Inc. v. Republic Servs., Inc.,*
    946 F. Supp. 2d 402 (E.D. Pa. 2013) ..................................................... 6

*CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.,*
    357 F.3d 375 (3d Cir. 2004) ................................................................. 20

*Corrections U.S.A. v. McNany,*
    892 F. Supp. 2d 626 (M.D. Pa. 2012) ................................................ 5, 20

*Crivelli v. Gen. Motors Corp.,*
    215 F.3d 386 (3d Cir. 2000) ..........................................................passim

*E.R. Linde Construction Corp. v. Goodwin,*
    68 A.3d 346, 350 (Pa. Super. Ct. 2013) ................................................ 18

*Eigen v. Textron Lycoming Reciprocating Engine Div.*,
   2005 PA Super 141 ................................................................................... 25, 26

*Gemini Physical Therapy and Rehab., Inc. v. State Farm Mut. Automobile Ins. Co.*,
   40 F.3d 63 (3d Cir. 1994) .......................................................................... 34, 35

*Goldberg v. 401 North Wabash Venture LLC*,
   2013 WL 1816162 (N.D. Ill. April 29, 2013) ........................................... 29, 30

*Haines v. Liggett Grp., Inc.*,
   975 F.2d 81 (3d Cir. 1992) ................................................................................ 29

*Heffron v. Adamar of New Jersey, Inc.*,
   270 F. Supp. 2d 562 (D.N.J. 2003) ................................................................... 12

*Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*,
   659 A.2d 904 (N.J. Super. Ct. App. Div. 1995) .............................................. 6

*In re Delta Mills, Inc.*,
   404 B.R. 95 (Bankr. D. Del. 2009) .............................................................. 11, 12

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*,
   337 F.3d 314 (3d Cir. 2003) .............................................................................. 22

*Law Offices of Curtis V. Trinko v. Verizon Comm'ns*,
   2006 WL 2792690 (S.D.N.Y. Sept. 27, 2006) ................................................. 12

*Macfarlan v. Ivy Hill SNF, LLC*,
   675 F.3d 266 (3d Cir. 2012) .............................................................................. 22

*Myers v. Jani-King of Philadelphia, Inc.*,
   2012 WL 6058146 (E.D. Pa. Dec. 5, 2012) ....................................................... 8

*Norfolk Southern Railway Co. v. Pittsburgh & West Virginia Railroad*,
   870 F.3d 244 (3d Cir. 2017) .............................................................................. 25

*Paccar Inc. v. Elliot Wilson Capitol Trucks LLC*,
   923 F. Supp. 2d 745 (D. Md. 2013) .................................................................... 9

*Phillips v. Selig*,
   959 A.2d 420 (Pa. Super. Ct. 2008) ............................................................... 5, 6

*Rosado v. Ford Motor Co.*,
   337 F. 3d 291 (3d Cir. 2003) .............................................................................. 8

*Saldana v. Kmart Corp.*,
  260 F.3d 228 (3d Cir. 2001) ............................................................................ 11

*Varner v. Bryan*,
  440 S.E.2d 295 (N.C. App. 1994) ..................................................................... 6

*Volvo Grp. N.A., LLC v. Truck Enterprises, Inc.*,
  Dkt. No. 7:16-cv-00025, 2017 WL 1483431 (W.D. Va. Mar. 31, 2017) ........... 19, 18

*Windsor Sec., Inc. v. Hartford Life Ins. Co.*,
  986 F.2d 655 (3d Cir. 1993) ............................................................................. 34

*Witmer v. Exxon Corp.*,
  495 Pa. 540 (1981) ........................................................................................... 8

## STATUTES

63 P.S. § 818.16 ............................................................................................... 7, 15, 17

## OTHER AUTHORITIES

Local Rule 7.8 ................................................................................................... 2

Restatement (Second) of Torts § 766A ............................................................ 3, 34

Restatement (Second) of Torts § 773 ............................................................... 5

**INTRODUCTION**

Audi of America, Inc. ("AoA") apparently hit a nerve with its Motion for Summary Judgment on the Ed Napleton Auto Group's ("Napleton's") Counterclaims because in response, Napleton has filed an invective-filled brief that, on the one hand, argues inferences that find no support in the record and creates facts entirely out of whole cloth while, on the other hand, accuses AoA of allegedly misleading the Court.  However, after wading through all the misstatements, mischaracterizations and outright fabrications in Napleton's brief, it becomes clear that Napleton has not raised a single triable issue of fact regarding its counterclaims and that AoA is entitled to judgment as a matter of law.

*First*, the Court should grant summary judgment on Napleton's tortious interference claims regarding AoA's request for a good faith apportionment of the APA (Counts III and IV).  AoA has established that its conduct was justified because it has a legitimate business interest in enforcing its ROFR and, therefore, any allegations by Napleton that AoA also was motivated by ill will toward Napleton are insufficient to overcome AoA's justification.  Likewise, AoA has established that its request for a good faith apportionment did not cause any actual interference or legal damages.  In response, Napleton attempts to argue that the First Addendum was created in response to AoA's request for an apportionment and, thereby, any damages attributable to the purported

removal of the Audi Assets from the APA were caused by AoA's request for an apportionment. However, Napleton has admitted previously that Wyoming Valley and Napleton entered into the First Addendum as a response to AoA's filing of this lawsuit, not in response to the request several months earlier for an apportionment. The undisputed facts demonstrate that, among other causes, Wyoming Valley and Napleton did not plan to close the APA until after this Court entered its TRO and ultimately could not close the APA until January 2018 because Subaru had not yet approved the transaction. Napleton does not otherwise dispute that AoA's request for an apportionment did not cause any delay in the performance of the APA. Consequently, the Court should grant AoA judgment as a matter of law on Counts III and IV of Napleton's counterclaim.

_Second_, the Court should grant summary judgment on Napleton's tortious interference claims regarding AoA's rescission of the Relocation Agreement (Counts V and VI). As with AoA's enforcement of its ROFR, AoA has established that its conduct was justified because it had an absolute right to rescind the Relocation Agreement based on its discovery that Wyoming Valley had fraudulently induced AoA to approve the Relocation Agreement. Likewise, Napleton has offered no record evidence that AoA's rescission of the Relocation Agreement caused any interference with regard to the MIPA, the Transfer of the Relocation Property, or the New Audi Lease at the Relocation

2

Property.  The undisputed facts establish that Wyoming Valley could not meet the applicable conditions in the Relocation Agreement even if AoA had not rescinded that agreement.

*Third*, AoA is entitled to judgment as a matter of law because all of Napleton's tortious interference claims are not cognizable under Pennsylvania law.  Pennsylvania has not adopted Restatement (Second) of Torts § 766A, which creates a tortious interference cause of action in situations where the tortious conduct is directed to the plaintiff, as opposed to being directed toward a third party.  Because Napleton has throughout this case claimed that AoA's alleged tortious conduct was aimed at punishing Napleton, Napleton cannot now change course to argue that its theory of tortious interference is based on conduct directed to Wyoming Valley.  Because this brings Napleton's tortious interference claims directly into § 766A, Napleton cannot maintain those claims.[1]

---

[1] In light of the Court's ruling granting Wyoming Valley's motion for summary judgment, AoA does not address in this brief Napleton's arguments regarding AoA's affirmative claims.  Further, based on the parties' stipulation dismissing Napleton's statutory claims, AoA does not address Napleton's arguments regarding those claims.

## ARGUMENT

**A.**   **THE COURT SHOULD ENTER JUDGMENT AS A MATTER OF LAW ON NAPLETON'S COUNTERCLAIMS THAT ARE BASED ON AoA'S REQUEST FOR A GOOD FAITH APPORTIONMENT OF THE APA (COUNTS III AND IV).**

> **1.**   **NAPLETON'S TORTIOUS INTERFERENCE CLAIMS BASED ON AoA'S REQUEST FOR A GOOD FAITH APPORTIONMENT OF THE APA FAIL AS A MATTER OF LAW BECAUSE THE UNDISPUTED FACTS DEMONSTRATE THAT AoA'S ACTIONS WERE JUSTIFIED.**

The Court should grant judgment as a matter of law in AoA's favor on Napleton's tortious interference claims based on AoA's request for a good faith apportionment of the APA (Counts III and IV). AoA's conduct in requesting the apportionment was justified and Napleton has failed to carry its burden to establish a disputed question of fact that could overcome AoA's justification.

As AoA established in its opening brief, the party claiming tortious interference bears the burden to establish that the defendant lacked justification to act in the manner it did. *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212, 214 (3d Cir. 2009). Thus, to maintain its tortious interference claims in Counts III and IV, Napleton bears the burden of establishing that AoA lacked justification to demand a good faith apportionment of the APA.

In determining whether a defendant's actions were justified, Pennsylvania follows Section 766 of the Restatement (Second) of Torts, imposing liability only for "*improper* conduct by the alleged tortfeasor." *Crivelli v. Gen. Motors Corp.*, 215 F.3d 386, 394 (3d Cir. 2000) (emphasis added) (citations omitted). The bar for what constitutes

"improper" conduct is high.  A party does *not* act improperly by "asserting in good faith a legally protected interest of his own or threatening in good faith to protect the interest by appropriate means … if the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction." Restatement (Second) of Torts § 773.   Rather, there must be an *absence* of any "legitimate business interest" behind the challenged conduct, and the conduct must run afoul of "the rules of the game which society has adopted." *Phillips v. Selig*, 959 A.2d 420, 435–36 (Pa. Super. Ct. 2008) (internal quotations omitted); *Corrections U.S.A. v. McNany*, 892 F. Supp. 2d 626, 644–45 (M.D. Pa. 2012) ("Even if Defendants' conduct was specifically intended to harm [Plaintiff], we find that their actions were proper under the circumstances because they fall within the rules of the game. … Each of the actions at issue were committed for the purpose of protecting Defendants' legitimate rights or interests that happened to conflict with those of [Plaintiff].") (internal citations and quotations omitted).

For this reason, where the undisputed facts establish that the defendant acted to protect a legitimate interest, a plaintiff cannot avoid summary judgment simply by claiming that the defendant also acted in part out of "malice" or "personal animus" toward it.  *Selig*, 959 A.2d at 436 (affirming summary judgment against tortious interference claimants and rejecting their argument that otherwise legal conduct "may nevertheless be improper for purposes of a tortious interference claim if they can

prove that it was undertaken with a motive of personal animus"). As the *Selig* court held:

> Moreover, Appellants cannot reasonably contend that the Umpire Appellees acted solely 'for a reason not reasonably related to the protection of a legitimate business interest of the actor.' … Whatever personal animus Hirschbeck and Brinkman may have had for Phillips, as umpires they had a clear and legitimate business interest in selecting the union of their choice to serve as their exclusive bargaining agent.

959 A.2d at 436; *see also Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*, 659 A.2d 904, 933 (N.J. Super. Ct. App. Div. 1995) (applying New Jersey law regarding justification and holding that defendant's conduct was justified because defendant had a legitimate business reason for soliciting plaintiff's customers, in spite of evidence that defendant harbored ill will toward plaintiff and had threatened plaintiff); *BP Envtl. Servs., Inc. v. Republic Servs., Inc.*, 946 F. Supp. 2d 402, 412 (E.D. Pa. 2013) (granting summary judgment because defendant's "competitive actions were taken, at least in part, to protect its own legal interests, and therefore were within the bounds of proper business conduct") (internal citations omitted); *Varner v. Bryan*, 440 S.E.2d 295, 298 (N.C. App. 1994) (affirming grant of summary judgment on a tortious-interference claim because even if "plaintiff was terminated by defendants for personal or political reasons as his evidence tends to show," "such termination was neither a wrongful act nor one in excess of defendants' authority"); *Crivelli*, 215 F.3d at 388 (finding a ROFR

exercise proper where the manufacturer stated its subjective assessment that a "superior candidate" existed).[2]

Accordingly, where there is undisputed factual evidence establishing that the defendant acted to protect a legitimate business interest, the plaintiff cannot carry its burden to establish a material dispute of fact by simply alleging that the defendant also bears ill will toward it. Indeed, no other rule would make sense. Under Napleton's view, if a party even slightly disliked a contractual partner, it could be prevented from protecting its legitimate contractual interest. Applying this standard, AoA's conduct was justified as a matter of law because: (1) the undisputed facts establish that AoA has a legitimate business interest in enforcing its ROFR; and (2) therefore, Napleton's allegations of bad motive – even if they had a shred of support (which they do not) – are insufficient as a matter of law to overcome AoA's legitimate interest.

### a. The Undisputed Facts Establish that AoA Has a Legitimate Business Interest in Enforcing Its ROFR.

The undisputed facts establish that AoA had a legitimate business interest in enforcing its ROFR. The parties do not dispute that AoA has a ROFR under the Dealer Agreement and the Act. (Doc. 186 ¶¶ 42–43.) The parties also do not dispute

---

[2] Napleton makes the unfounded, and frankly offensive, accusation in its introduction that AoA has attempted to mislead this Court regarding the analysis in *Crivelli*. But Napleton, as per its usual *modus operandi*, completely ignores that AoA's use of the quote is entirely accurate in the context of this case. Although Napleton points out that *Crivelli* was comparing an earlier version of the Act to the current version, 63 P.S. § 818.16, the restrictions that were implemented through Section 16 of the Act have no bearing on the issues in AoA's motion for summary judgment. Consequently, the quotation was not inaccurate or misleading.

that AoA does not want to be in business with Napleton. And the cases are clear that this is a legitimate protectable motive. Indeed, the manufacturer's right to select its business partners is the very purpose of enacting a ROFR. The Third Circuit has held that a franchisor's ROFR is a wholly discretionary right, subject neither to the implied duty of good faith and fair dealing[3] nor to the Pennsylvania Board of Vehicles Act provision prohibiting "[u]nreasonably withhold[ing] consent to the sale, transfer or exchange of the franchise." *Crivelli*, 215 F.3d at 390 (quoting 63 P.S. Ann. § 818.12(b)(3)). A manufacturer thus is not "required … to justify its decision to the jury to enforce its contractual right of first refusal" in defending against a tortious interference claim. *Id.* at 394, 396; *see also Rosado v. Ford Motor Co.*, 337 F. 3d 291, 296 (3d Cir. 2003).

Napleton attempts to distinguish this precedent on the conclusory ground that the manufacturers had exercised their ROFR rights in these cases, whereas AoA has been prevented from exercising its ROFR. But that is a distinction without difference. The point of these cases is that a ROFR is wholly discretionary, whether the manufacturer is exercising it or is attempting to exercise it. Moreover, Napleton

---

[3] In the franchise context, this heightened contractual duty only applies to a franchisor's decision to terminate a franchise. *See, e.g., Witmer v. Exxon Corp.*, 495 Pa. 540, 549 (1981); *Bishop v. GNC Franchising LLC*, 403 F. Supp. 2d 411, 418–19 (W.D. Pa. 2005), *aff'd*, 248 F. App'x 298 (3d Cir. 2007); *Myers v. Jani-King of Philadelphia, Inc.*, Dkt. No. 2:09-cv-01738, 2012 WL 6058146, at *7 (E.D. Pa. Dec. 5, 2012).

should not benefit because it and Wyoming Valley took actions that interfered with AoA's ability to exercise its ROFR.

Likewise, it is undisputed that AoA preferred not to be in business with Napleton because Napleton presented a significant litigation risk. Again, the cases are clear that this is a proper business motive. A manufacturer-franchisor legitimately may seek to avoid "a business relationship with a franchisee who it believes may not represent it in the manner it desires, may not expend sufficient effort to promote its products, [or] may not have the loyalty to it and its business that it believes necessary to be an integral part of its operation." *Crivelli*, 215 F.3d at 391. The decision in *Paccar Inc. v. Elliot Wilson Capitol Trucks LLC*, 923 F. Supp. 2d 745 (D. Md. 2013), is illustrative. In that case, the court held on summary judgment that a manufacturer's refusal to consent to a proposed transfer was reasonable where the proposed franchisee had sued it in the past:

> the nature of this litigation, and the distrust that it represents, is a reasonable, sufficient bases for denial of transfer of the franchise . . . . Absent evidence that this dispute and resultant litigation was manufactured and/or frivolous, it would be manifestly unreasonable to require a manufacturer to enter into a franchise agreement with a party with which it has ongoing business disputes, including matters of business integrity. [The manufacturer] was well within its right to deny a transfer to an entity with which it was already engaged in a lawsuit. . . .

*Id.* at 764. Accordingly, the undisputed facts establish that AoA had a legitimate, and therefore justified, business reason for enforcing its ROFR.

9

### b.   The Facts Alleged by Napleton Are Insufficient to Overcome AoA's Legitimate Business Interest.

In light of the undisputed facts establishing AoA's legitimate business interest in enforcing its ROFR, the purported "facts" alleged by Napleton are insufficient as a matter of law to overcome AoA's legitimate business interest.  Napleton offers a plethora of purported "facts" that it claims demonstrate that AoA is enforcing its ROFR rights to punish Napleton for its conduct in the prior TDI emissions litigation. Napleton argues that the following "facts" are indicative of AoA's bad motive with regard to the exercise of its ROFR:   (1) AoA was "motivated by Napleton's TDI lawsuit and subsequent opt out"; (2) AoA "wanted Wyoming Valley to withdraw the entire APA"; (3) AoA "tried to get Porsche to exercise its ROFR"; and (4) AoA "tried to find a buyer for the entire deal."   (Napleton Response Brief ("Resp.") at 43.) Setting aside that the vast majority of Napleton's allegations are either not supported by the evidence it cites or constitute rank speculation based on inferences that cannot reasonably be drawn from the cited evidence, all of Napleton's alleged facts boil down to a simple proposition—AoA is enforcing its ROFR because it does not want to do business with Napleton.  Napleton's counterclaims confirm that this is Napleton's primary argument regarding AoA's alleged motive:

- "Audi has engaged in this unlawful behavior in order to punish Napleton for, among other things, its affiliates' efforts to protect their legal rights in the unrelated diesel defeat device scandal (the 'TDI Scandal')."   (Doc. 219 ¶ 14.)

10

- "… Any action by Audi in this Court after the First Addendum served no purpose other than to punish Napleton and undermine its contractual and prospective business rights." (*Id.* at ¶ 39.)

But these are the very types of ill motive allegations that (even if true which they are not) are insufficient to defeat summary judgment in the face of the undisputed facts establishing AoA's legitimate business interest in enforcing its ROFR. As such, all of Napleton's allegations regarding AoA's bad motive are immaterial and the Court should disregard them.

### c.   Napleton's "Facts" Regarding AoA's Request for a Good Faith Apportionment of the APA Are Not Sufficient to Defeat Summary Judgment Because They Are Based on Rank Speculation and Conjecture.

In any event, the "facts" on which Napleton relies cannot create a material dispute of fact because they are based on rank speculation and conjecture. On summary judgment, "[t]he non-moving party must 'go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate '*specific facts* showing that there is a *genuine issue* for trial." *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)) (emphasis added); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (same); *In re Delta Mills, Inc.*, 404 B.R. 95, 105 (Bankr. D. Del. 2009) ("[T]he non-moving party . . . cannot simply reassert factually unsupported allegations contained in its pleadings") (internal quotations omitted). Accordingly, "mere conjecture or speculation by the party resisting summary judgment does not provide a

11

basis upon which to deny the motion[.]" *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 42 (2d Cir. 1986) (internal quotations omitted).  Likewise, "the non-moving party cannot rely on . . . conclusory allegations, or mere suspicions …" *Borough of Lansdale v. PP & L Inc.*, Dkt. No. 2:02-cv-8012, 2007 WL 2597559, at *2 (E.D. Pa. Sep. 4, 2007) (citing *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989)).  Instead, the party opposing summary judgment "'must offer some <u>*hard evidence*</u>' in support of its factual assertions." *Law Offices of Curtis V. Trinko v. Verizon Comm'ns*, Dkt. No. 00-cv-1910 SHS, 2006 WL 2792690, at *4 (S.D.N.Y. Sept. 27, 2006) (quoting *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998)) (emphasis added); *accord Heffron v. Adamar of New Jersey, Inc.*, 270 F. Supp. 2d 562, 575 (D.N.J. 2003) ("[P]laintiff must point to *concrete evidence* in the record which supports each essential element of a claim on which he will bear the burden of proof at trial.") (internal quotations omitted) (emphasis added); *Delta Mills*, 404 B.R. at 105 ("Such evidence cannot be conjectural or problematic; it must have substance …") (internal quotations omitted).

Here, the facts on which Napleton relies simply fail to satisfy these threshold requirements for avoiding summary judgment because they are based on speculation, conjecture and/or represent mischaracterizations of the record.  By way of example, Napleton argues that AoA has just invented its concern about the possibility of further TDI litigation as a *post hoc* explanation for its decision to enforce its ROFR. The argument is exceedingly weak.  It is obvious and reasonable that AoA would be concerned about Napleton filing a TDI class action lawsuit on behalf of Audi dealers.

He had already done so on behalf of Volkswagen dealers and had paid for the right to do so in the APA.

Indeed, Napleton's claim that AoA only "recently invented" this basis is contradicted by the record evidence. AoA's witnesses have testified about the reason for AoA's actions with respect to the APA and AoA's ROFR. Two AoA witnesses who were deposed in June 2017—*before* the preliminary injunction hearing— specifically testified under oath that AoA's decision to consider and pursue its ROFR stemmed from litigation risk presented by Napleton and that such risk was identified immediately following AoA's receipt of the APA. Jun Watanabe, AoA's Director of Network Operations, testified that AoA's pursuit of its ROFR was based on perceived "legal risk." (Doc. 481, Ex. 18 at 118–20.) And Mike Brairton, AoA's Area Director for the sales territory that includes Wyoming Valley, testified that, within days of AoA receiving the APA, he learned that AoA would be pursuing its ROFR because, among other things, "Mr. Napleton was involved in adverse litigation against our parent company and the Volkswagen brand." (*See* Michael Brairton Dep. Tr. at 208:7–208:18 (June 22, 2017), attached hereto as **Exhibit 1**.)

*Thereafter*, the testimony remained consistent. In early December 2017, Jeff Tolerico, to whom Mr. Brairton reports, testified that "the only thing that was brought to my attention" after receiving the APA "was [Napleton's] participation in the TDI issue." (Jeffrey Tolerico Dep. Tr. at 221:2–221:10 (Dec. 1, 2017), attached hereto as **Exhibit 2**.) *Then*, tying all of this testimony together, Paul Ritsema, AoA's

in-house counsel, testified in January 2018 that, only a few days after AoA received the APA, he attended a conference call with various AoA employees, including Mr. Watanabe, Mr. Brairton, and Mr. Tolerico, during which he "pointed out to the group," among other things, "that Mr. Napleton was the lead Plaintiff on the Volkswagen dealer TDI class action …." (Doc. 481, Ex. 19 at 34–35.)  Mr. Ritsema further testified that Napleton "was leading the charge [in the Volkswagen dealer class action] and that the APA would give him the right if he acquired an Audi dealership to lead a similar charge against Audi of America on behalf of Audi's nearly 300 dealers." (*Id.*)  Mr. Ritsema explained that "I felt I had a duty to inform my client" of this risk.  (*Id.*)

Wyoming Valley and Napleton, in Paragraph 41 of their "Joint Statement of Additional Facts," attempt to cloud this clear and consistent evidence by claiming that AoA's witnesses testified in inconsistent ways and, therefore, that AoA's business reason for its actions must be untrue.  But the testimony they point to simply does not establish any inconsistency among the Audi witnesses.  Indeed, when reviewed in its entirety, the deposition testimony from AoA's witnesses is completely consistent. Moreover, looking at each individual piece of testimony that Wyoming Valley and Napleton attempt to rely on to create so-called inconsistencies, the testimony cannot be read in the manner they assert.

*First*, they cite the testimony of Allison James (who reports directly to Mr. Watanabe) in response to a question *not* regarding AoA's decision to pursue its

14

ROFR, but about whether Napleton's prior TDI litigation would be "an issue as to whether Audi would or would not *approve Napleton as the buyer* under [the] APA," a matter subject to a different legal standard than the exercise of a ROFR. *Compare* 63 P.S.. § 818.12(b)(3) *with* 63 P.S.. § 818.16. Ms. James did not state "no," as Wyoming Valley and Napleton would have this Court believe; rather, she stated that at the time of her deposition "I don't recall." (Doc. 481, Ex. 21 at 158.) It is wholly irrelevant to AoA's efforts to enforce its ROFR that Ms. James did not recall whether AoA had ever determined that Napleton's prior TDI litigation would have influenced AoA's decision regarding approval of Napleton as the buyer under the APA.

*Second*, Wyoming Valley and Napleton cite to testimony of Jeff Tolerico in response to a question again not regarding AoA's decision to pursue its ROFR, but rather about whether Napleton's TDI litigation was "a consideration in connection with his application to become the dealer principal for the Wyoming Valley Audi store" – an application that had not even been submitted yet at the time about which Mr. Tolerico was being questioned. (Doc. 481, Ex. 31 at 180.) Mr. Tolerico stated that "it wasn't" to his personal knowledge. However, Mr. Tolerico then separately testified over the course of several pages of deposition testimony that, with respect to the time AoA decided to pursue its ROFR, AoA and he both were aware of, and concerned about, Napleton's Volkswagen TDI litigation. (*Id.* at 180, 182.) That testimony is wholly consistent with the testimony about how Napleton's TDI litigation impacted AoA's decision to explore its ROFR.

*Third*, and perhaps most far afield, Wyoming Valley and Napleton cite to testimony of an AoA employee named Anita Salomon, who testified that she could not recall why, in an October 4 internal document *she received from someone else*, the provision of the APA under which Napleton would obtain Wyoming Valley's TDI litigation rights was highlighted as a "Section to Note" or an "Interesting Clause." (Doc. 481, Ex. 22 at 152–55.)   The fact that AoA was highlighting this section for particular attention in early October 2016 is *consistent with* AoA's testimony that the TDI issue was a significant concern at the time.   But the fact that Ms. Salomon could not recall why, more than a year later, someone else had chosen to highlight the provision in a document provided to her is not a material fact that in any way contravenes AoA's evidence on this matter.   A deposition is not a memory test and, in any event, Ms. Salomon could only speculate as to why a colleague highlighted language in a document.

The bottom line, therefore, is this:   Wyoming Valley and Napleton's only response to AoA's business justification, which is unassailable on any objective basis, is that all of AoA's witnesses are lying.   But there are no material facts that support this bald assertion, and no jury could reasonably infer as much.[4]

---

[4] Wyoming Valley and Napleton also suggest that AoA must be making up its good faith and legitimate business reason because AoA did not provide that reason in any interrogatory answer prior to January 16, 2018.   However, the reason for this is not what they would have the Court believe.   Rather, it is because they did not ask the interrogatory question prior to this time.

The other facts on which Napleton is relying to defeat summary judgment are no less conjectural. The Court should disregard Napleton's speculation and unsupported inferences.

### d. AoA Did Not Violate the "Rules of the Game."

Napleton also argues that AoA's conduct was not justified because AoA allegedly did not abide by the "rules of the game." As an initial matter, Napleton has only submitted its *ipse dixit* that the Act, rather than common law norms, establishes the rules of the game (or that it somehow replaces common law norms in this situation). In any event, the undisputed facts show that it is Napleton and Wyoming Valley that violated the "rules of the game," while AoA took actions in accordance with the "rules of the game" with an expectation that Napleton and Wyoming Valley would act in good faith. Even when considering the Act establishing the "rules of the game," AoA's right to enforce its ROFR is enshrined in the Act. Section 16 of the Act expressly allows a manufacturer to enact a ROFR in its dealer agreement, and sets forth certain requirements that must be met if the manufacturer exercises the ROFR. 63 P.S. § 818.16. None of the requirements in Section 16, however, mandate that a manufacturer may not request a breakdown of the price when the dealer proposes to sell its dealership as part of a package transaction with other assets not specific to the manufacturer's brand. Indeed, as AoA has explained in its previous briefing on summary judgment, the "rules of the game" clearly establish that AoA's ROFR cannot be defeated by including the Audi Assets in a package transaction as Napleton and

Wyoming Valley deliberately did. *See Boyd & Mahoney v. Chevron U.S.A.*, 614 A.2d 1191, 1194 (Pa. Super. Ct. 1992) ("Common sense and the applicable case law of this jurisdiction require us to hold that a right of first refusal as to the conveyance of the property cannot be defeated by including that property in a multi-property or multi-asset transaction."); *see also* E.R. *Linde Construction Corp. v. Goodwin*, 68 A.3d 346, 350 (Pa. Super. Ct. 2013) (noting that a long line of precedent establishes that "a right of first refusal cannot be nullified simply by packaging the property for sale with another asset") (internal quotations omitted).[5]  And, AoA could not exercise on the entire package. *See Atl. Refining co. v. Wyoming Nat. Bank of Wilkes-Barre*, 51 A.2d 719, 722 (Pa. 1947) ("In no legally permissible view may Atlantic's preemptive contract right to purchase a portion of the property in controversy (i.e., 'the demised premises') be thought to extend to anything other than the property actually subject to the option in the lease.").  Yet, that is exactly what Napleton and Wyoming Valley sought to do. Consequently, AoA was playing by the "rules of the game" when it requested a breakdown so that it could determine whether to exercise its ROFR. *See Volvo Grp. N.A., LLC v. Truck Enterprises, Inc.*, Dkt. No. 7:16-cv-00025, 2017 WL 1483431, at *8 (W.D. Va. Mar. 31, 2017).

---

[5]  Courts reviewing ROFR matters in the motor vehicle franchise context outside of Pennsylvania have reached similar conclusions.  For instance, in *Volvo*, 2017 WL 1483431, at *8, the Court held that Volvo had a right of first refusal that it could exercise with regard to Volvo dealership assets even though those assets were included in package transaction.

Napleton again argues, however, that the AoA violated the time limits in § 12(b)(5) of the Act by not exercising its ROFR.  AoA has addressed the fallacy in this argument in its other briefing on summary judgment and directs the Court to that briefing for a full discussion of the issue.  (AoA's Resp. to Napleton Motion for Summary Judgment at 16–22.)  In short, Napleton and Wyoming Valley purported to withdraw the Audi franchise from the APA before the deadline by which AoA was to exercise its ROFR.  Napleton cannot argue that the First Addendum was effective to remove the Audi franchise from the APA and at the same time argue that AoA violated Section 12(b)(5) by not exercising its ROFR in a timely fashion.  And, in any event, under Napleton's view, the deadline for AoA to exercise its ROFR would have expired on December 19, 2016, *after* AoA had filed this lawsuit seeking to enforce the ROFR.

Accordingly, AoA did not violate the "rules of the game."  The Court should grant AoA judgment as a matter of law on Napleton's Counterclaims Counts III and IV.

> **2.    NAPLETON'S TORTIOUS INTERFERENCE CLAIMS BASED ON AOA'S REQUEST FOR A GOOD FAITH APPORTIONMENT OF THE APA (COUNTS III AND IV) FAIL AS A MATTER OF LAW BECAUSE THE UNDISPUTED FACTS DEMONSTRATE THAT AOA'S NON-LITIGATION CONDUCT CAUSED NO ACTUAL INTERFERENCE OR LEGAL DAMAGES.**

AoA established in its opening brief that, to prove that AoA actually interfered with any of Napleton's contracts, Napleton must establish that AoA's conduct *caused*

the alleged nonperformance that forms the basis of the tortious interference claims. *CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 385-88 (3d Cir. 2004) (reversing jury verdict on tortious interference claim on several grounds, including "most important[ly]" the lack of evidence that the relevant conduct caused the damages alleged); *McNany*, 892 F. Supp. 2d at 644 (granting summary judgment on tortious interference claim where the evidence failed to demonstrate causation).

In its response, Napleton attempts to overcome the lack of causation by referring primarily to AoA's litigation conduct.  But this Court already has ruled pursuant to the *Noerr-Pennington* doctrine that Napleton cannot rely on AoA's litigation conduct.

In its opening brief, AoA established that the undisputed facts demonstrate that AoA's non-litigation conduct -- requesting a good faith apportionment of the APA -- did not cause any delays of or failure to close the APA.  (Br. at 29-33.)  As AoA has explained, any delays in the closing of the APA have been attributable either to this Court's TRO, which prohibited the closing of the transaction, or conduct among Wyoming Valley, Napleton, and the other manufacturers whose brands are affected by the APA.  (*Id.* at 46–48.)  Napleton's response does not challenge this.

Napleton raises only one argument regarding its alleged damages from not being able to close the APA—that Wyoming Valley and Napleton entered into the First Addendum, purportedly removing the Audi dealership from the APA in response to AoA's request for a breakdown, not as a response to AoA's filing of this

lawsuit and request for a TRO.  Of course, Napleton includes this argument in an attempt to bring the First Addendum out of the scope of conduct that is protected by the *Noerr-Pennington* doctrine and claim the purported removal of the Audi dealership as an actionable effect of AoA's request for a breakdown.  But, as AoA pointed out in its Statement of Facts in support of its motion for summary judgment, Napleton's counsel wrote to the Court on May 23, 2017 that:

> After Audi commenced this action, Napleton and Wyoming Valley discussed their response to the suit.  Part of that response was drafting the First Addendum to the APA . . . .

(Doc. 393, AoA's SOF ("SOF") ¶ 98.)   And Napleton used this assertion in attempting to protect documents about the First Addendum from disclosure.  (Doc. 179.)   Despite conceding the content of this letter, Napleton now argues without citation to any record evidence that, on the contrary, the First Addendum was a "response to Audi's entire course of conduct throughout the approval process." (Napleton Resp. to AoA SOF ¶ 98.)   Napleton does not, however, argue that its counsel misstated the facts in the May 23, 2017 letter.  (*See id.*)  Napleton should be judicially estopped from changing its position on this issue in an attempt to end run the Court's ruling regarding the *Noerr-Pennington* doctrine.  *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 271–74 (3d Cir. 2012) (affirming that judicial estoppel precluded recovery where plaintiff took two inconsistent positions); *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 324–25 (3d Cir. 2003) (affirming order dismissing complaint on judicial estoppel grounds, based on debtor's

failure to list his claims in disclosure statement); *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 33–36 (1st Cir. 2004) (affirming application of judicial estoppel where a party's argument on summary judgment asserted a theory it had previously represented it was not pursuing) (citations omitted).

In summary, Wyoming Valley and Napleton did not originally contemplate that the APA would close before January 2017 – which was after this Court entered the TRO prohibiting Wyoming Valley from closing the APA. (SOF ¶ 25.) Further, by the end of 2016, only two of seven manufacturers—Porsche and Subaru—had approved the transaction. (*Id.* ¶ 26.) AoA also documented the undisputed facts demonstrating that during the period of this Court's TRO and preliminary injunction, and up until the date on which Napleton voluntarily relinquished any interest in owning the Audi dealership, Napleton's separate dispute with BMW also contributed to any delay in closing the APA. (*See* SOF ¶¶ 86-88.) None of these events are attributable to AoA's request for a breakdown.

Consequently, AoA's demand in September 2016 for a breakdown of the APA did not as a matter of law interfere with or delay the closing of the APA.

Moreover, Napleton's newly minted explanation for the First Addendum simply makes no sense. If the First Addendum were in fact a response to AoA's September 28, 2016 request for a breakdown, why did Wyoming Valley and Napleton not draft or execute the First Addendum until December 19, 2016 – after they had provided a purported apportionment (that Wyoming Valley later admitted was not a

good faith, bona fide apportionment) and after AoA had filed suit requesting a TRO, and immediately before the scheduled argument on AoA's TRO motion?  (SOF ¶ 99.)

Additionally, to the extent Napleton is attempting to argue that AoA's request for a breakdown somehow delayed the closing of the APA, it was within Wyoming Valley's power at all times to end any such delays by complying with its contractual obligation to provide a breakdown (something that should have been done initially without need of any request).  Consequently, any delay attributed to the First Addendum must be charged against Wyoming Valley, not AoA.

Napleton raises no other argument in response to AoA's argument that its request for a good faith apportionment of the APA did not cause any delays in the closing of the APA.  Accordingly, Napleton has conceded any other bases it might have asserted.

Because there is no dispute that AoA's request for a good faith apportionment of the APA did not cause Wyoming Valley and Napleton to enter into the First Addendum, the Court should hold as a matter of law that AoA's request for a breakdown did not cause the First Addendum, any alleged damages arising from the removal of the Audi franchise from the APA, or any damages arising from any delay in the closing of the APA.  The Court should grant AoA summary judgment on Napleton's Counterclaim Counts III and IV.

**B.     THE COURT SHOULD ENTER JUDGMENT AS A MATTER OF LAW ON NAPLETON'S COUNTERCLAIMS THAT ARE BASED**

**ON AoA'S RESCISSION OF THE RELOCATION AGREEMENT (COUNTS V AND VI).**

1.   **NAPLETON'S TORTIOUS INTERFERENCE CLAIMS BASED ON AoA'S RESCISSION OF THE RELOCATION AGREEMENT FAIL AS A MATTER OF LAW BECAUSE THE UNDISPUTED FACTS DEMONSTRATE THAT AoA'S ACTIONS WERE JUSTIFIED.**

The Court should grant judgment as a matter of law in AoA's favor on Napleton's tortious interference claims in Counts V and VI because Napleton has failed to meet its burden to establish that there is a disputed question of fact that AoA's actions in rescinding the Relocation Agreement were not justified.

As discussed above, Napleton bears the burden to establish that AoA lacked justification to rescind the Relocation Agreement. *See* Section A.1., *supra.* In the face of AoA's legitimate business interest, Napleton cannot avoid summary judgment simply by arguing that AoA also had a bad motive for rescinding the Relocation Agreement. Applying that standard to AoA's rescission of the Relocation Agreement, AoA's conduct was justified as a matter of law because: (1) the undisputed facts establish that AoA had a legitimate right to terminate the Relocation Agreement upon learning that Wyoming Valley had fraudulently induced AoA to approve the Relocation Agreement; and (2) therefore, all of Napleton's allegations of bad motive are insufficient as a matter of law to overcome AoA's legitimate interest.

### a. The Undisputed Facts Establish that AoA Had a Legitimate Contractual Right to Rescind the Relocation Agreement.

As with the facts establishing AoA's legitimate business interest in enforcing its ROFR, the facts establishing that Wyoming Valley fraudulently induced AoA to approve the Relocation Agreement are undisputed. The elements of fraud in the inducement are (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *Eigen v. Textron Lycoming Reciprocating Engine Div.*, 2005 PA Super 141, ¶ 18 (holding that litigant had fraudulently induced settlement agreement by failing to produce relevant insurance policy during discovery); *see also Norfolk Southern Railway Co. v. Pittsburgh & West Virginia Railroad*, 870 F.3d 244, 255 (3d Cir. 2017) (stating elements of fraud in the inducement). Under Pennsylvania law, "[f]raudulent misrepresentation may be accomplished 'by concealment of that which should have been disclosed, which deceives or is intended to deceive another to act upon it to his detriment.'" *Norfolk Southern Railway*, 870 F.3d at 255–56. One of the remedies available to a victim of fraud in the inducement is to rescind the contract. *Eigen*, 874 A.2d at 1184.

Here, it is undisputed that Wyoming Valley fraudulently induced AoA to approve the Relocation Agreement and that AoA rescinded on this basis, among

others.  Although Wyoming Valley and Napleton executed the APA on July 11, 2016, Wyoming Valley did not disclose the APA to AoA until September 14, 2016, two days after AoA executed the Relocation Agreement.  (SOF ¶¶ 47–49.)  In emails Napleton sent to Wyoming Valley after executing the APA, Napleton encouraged Wyoming Valley not to disclose the existence of the APA to AoA until after AoA approved the Relocation Agreement.  (*Id.* ¶¶ 40–49.)  Accordingly, Wyoming Valley and Napleton withheld the existence of the APA from AoA with the express intent of inducing AoA to approve the Relocation Agreement, which AoA did in reliance on its belief that Wyoming Valley had provided all relevant information necessary to the review of the relocation request.

Accordingly, AoA had the absolute right to rescind the Relocation Agreement as a remedy for Wyoming Valley's fraudulent inducement.

In an attempt to excuse its and Wyoming Valley's fraudulent conduct, Napleton now argues that AoA was aware that Wyoming Valley was planning to sell all of its dealerships even before the APA was executed.  (Doc. 481 ¶ 24.)  Not surprisingly, in quoting from the deposition of Mr. Brairton, on which Napleton relies heavily for this argument, Napleton intentionally omitted the portion of Mr. Brairton's testimony where he testified:

Q.  You said you had a second conversation in the first quarter of 2016?

A.  Yes.

Q.  When was that?

A.  It was at the same time -- either the day before or the day after -- of the day when I was actually walked through some of the site.

And at that point we were beginning to talk about formal approval of the relocation. We already engaged in the design process, and Steve said to me, "We really need your approval going on this" and I said, "Okay, Steve. Well, one reservation I've got to ask you about is, where are you at with regard to this financial transaction, and are you okay with the financing?  Have you got the money to do this deal, and are you going to be okay?"

Steve said, "The deal with that other guy that I talked to you about in December is absolutely off.  I have no interest to sell the store.  I have no deal in the works.  Everything is worked out with my partners.  My partners are committed to staying in the business and to completing this project."

(Ex. 1, Brairton excerpt, at 102:11-103:10.)  Accordingly, whatever Mr. Ubaldini may have said to Mr. Brairton before the first quarter of 2016, it is undisputed that Mr. Ubaldini told Mr. Brairton that any potential sale was no longer being planned.  There is no dispute that AoA believed that Wyoming Valley was not attempting to sell its dealerships during the period that AoA was considering the request to relocate. Napleton's arguments about prior conversations are immaterial and cannot defeat AoA's right to rescind the Relocation Agreement.

> **b.    The Facts Alleged by Napleton Are Insufficient to Overcome AoA's Legitimate Right to Rescind the Relocation Agreement.**

In light of the undisputed facts establishing AoA's legitimate right to rescind the Relocation Agreement, the "facts" alleged by Napleton in an effort to prove a bad motive are insufficient as a matter of law to overcome AoA's legitimate business

interest.  Napleton again attempts to drown the Court in alleged "facts" that it claims demonstrate that AoA acted with a bad motive in rescinding the Relocation Agreement.  Specifically, Napleton argues that AoA:  (1) waited to rescind the Relocation Agreement until the point at which Wyoming Valley was almost ready to move into the new facility; and (2) demanded that Wyoming Valley unwind all of its transactions with Napleton in order to regain approval to relocate.  Again, Napleton argues that these facts indicate that AoA rescinded the Relocation Agreement to punish Napleton – in other words, because AoA harbored ill will against Napleton.

Again, the "facts" Napleton asserts in support of its bad motive argument can be reduced simply to the argument that AoA rescinded the Relocation Agreement to punish Napleton and to avoid having to do business with Napleton.  As discussed above, these are the very types of ill motive allegations that are insufficient to defeat summary judgment in the face of the undisputed facts establishing AoA's legitimate right to rescind the Relocation Agreement.  As such, all of Napleton's allegations regarding AoA's bad motive are immaterial and the Court should disregard them.

### c.   Napleton's Speculative "Facts" Regarding AoA's Rescission of the Relocation Agreement Are Not Sufficient to Defeat Summary Judgment Because They are Based on Rank Speculation and Conjecture.

Like the "facts" Napleton asserted regarding AoA's request for a good faith breakdown of the APA, Napleton's facts supporting the alleged bad motive of AoA in rescinding the Relocation Agreement are equally speculative and rely on unsupported

inference and conjecture.   As such, the Court should disregard those facts as insufficient to create a material dispute of fact.

By way of example, Napleton attempts to craft an argument that AoA waited to rescind the Relocation Agreement until Wyoming Valley was nearly ready to move into the new facility at the Relocation Property to gain leverage over AoA.   However, Napleton bases this argument, not on actual facts in the record, but on unsupported and improper inferences it seeks to draw from undisclosed privileged attorney/client communications between AoA and its counsel.   Napleton's attempt to draw the inference from AoA's privileged communications with its counsel is entirely improper.

At the outset, communications between a client and its counsel are privileged and inadmissible at trial.   *Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 90 (3d Cir. 1992). Further, courts have rejected the attempt to draw an inference from the simple fact that attorney/client communications occurred as improper speculation.   *See, e.g.*, *Goldberg v. 401 North Wabash Venture LLC*, 2013 WL 1816162, at *6–7 (N.D. Ill. April 29, 2013) (excluding any reference to defendants' undisclosed privileged communications with counsel that plaintiff sought to introduce for the purpose of drawing an inference that the defendants had knowledge of their allegedly fraudulent conduct).   In *Goldberg*, the Court wrote:

> Defendants in this case have invoked privilege to protect communications with their attorneys.   Plaintiff's attempt to circumvent the protections afforded by the attorney-client privilege is based on pure

speculation and not grounded in evidence.  Such speculation has no basis in the facts or evidence of this case; indeed, any inference that might arise would be akin to "soup . . . made by boiling the shadow of a pigeon that had starved to death." . . . Frail inferences of this type will be kept from the jury, for "jurors should not be allowed to dine upon such insubstantial fare."

*Id.* at *6 (internal citations omitted).

Here, Napleton attempts to draw from the redacted privileged emails between AoA and its counsel facts that are directly refuted by the actual evidence in the record. Namely, Napleton wants to refer to the undisclosed and redacted privileged emails and argue that those emails must contain the lawyers' concoction of the rescission letter as a strategy to gain the utmost leverage over Wyoming Valley and Napleton. (Doc. 484 at 12-14.)  The serious and troubling problem with this line of argument is that Napleton is arguing this improper inference because there is no fact in the record that could support Napleton's version of the story.  Indeed, the actual facts adduced during discovery demonstrate that AoA's decision to rescind the Relocation Agreement was based on information it had obtained through litigation discovery evidencing Wyoming Valley's and Napleton's fraudulent inducement of the Relocation Agreement, as well as the realization that Napleton ultimately would own the Relocation Property and be the landlord for any dealership located there – an outcome that violated the conditions of the Relocation Agreement and was unacceptable to AoA.

Of course, another potential benefit for Napleton of this disingenuous argument is that it might force AoA to waive the privilege as to the communications in order to rebut the inference Napleton is peddling – a result Napleton has otherwise been unable to achieve in this case.  For a party that has easily thrown around allegations that counsel is unethical, Napleton should examine its own glass house before throwing stones.  The Court should reject this thinly veiled attempt to invade AoA's attorney/client privilege and ignore Napleton's arguments regarding this issue.

Accordingly, Napleton's reliance on undisclosed redacted attorney/client privileged communications do not support an inference regarding AoA's decision to rescind the Relocation Agreement and cannot create a dispute of material fact sufficient to prevent summary judgment.

> **2.** **NAPLETON'S TORTIOUS INTERFERENCE CLAIMS REGARDING AOA'S RESCISSION OF THE RELOCATION AGREEMENT (COUNTS V AND VI) FAIL AS A MATTER OF LAW BECAUSE THE UNDISPUTED FACTS DEMONSTRATE THAT AOA'S RESCISSION OF THE RELOCATION AGREEMENT CAUSED NO ACTUAL INTERFERENCE OR LEGAL DAMAGES.**

AoA also has established that Napleton has adduced no facts supporting an argument that AoA's rescission of the Relocation Agreement interfered with the MIPA, the transfer of the Relocation Property, or the new Audi Lease at the Relocation Property.  In response, Napleton sensibly abandons any argument based on the performance of the MIPA, focusing solely on allegations that the rescission of the Relocation Agreement prevented Wyoming Valley from moving the Audi

dealership to the Relocation Property and paying rent under the Audi Lease for the Relocation Property.

AoA has established, however, that because of the Second Addendum, Wyoming Valley could not have satisfied the conditions precedent to AoA's performance under the Relocation Agreement and, therefore, could not have relocated to the Relocation Property even if AoA had not rescinded its approval of the Relocation Agreement.  Under the Relocation Agreement, AoA has no obligation to provide Wyoming Valley with approval to relocate its Audi dealership to the Relocation Property unless and until "all of the . . . conditions" set forth in Section A of the agreement "have been fully and completely satisfied, as determined by AoA in its sole and absolute discretion."  (SOF ¶ 39.)  Because of the Second Addendum, there are at least two such conditions that Wyoming Valley will never be able to satisfy.

The Relocation Agreement sets as the first condition precedent that "there shall be no change in [Wyoming Valley]'s … beneficial shareholders without AoA's prior written consent."  (SOF ¶ 36.)  For the reasons explained in AoA's motion for summary judgment in support of its affirmative claims and as confirmed in this Court's ruling on that Motion, the Second Addendum transfers beneficial ownership interests in the Audi dealership to Napleton, in contravention of the condition precedent to AoA's obligations to approve the relocation.  (*See* AoA Affir. MSJ, at 20–

25 (citing authorities); Doc. 479, Order, at 25.)[6]  Indeed, this Court found that "the Second Addendum proposes to transfer to Napleton an ownership interest in the Wyoming Valley Audi dealership through certain aspects of control and financial interests in sale proceeds . . . ."  (Doc. 479 at 25.)

In addition, the Relocation Agreement sets as a second condition precedent that Wyoming Valley has "secured, through purchase, option, lease or otherwise," the entire Relocation Property.   (SOF ¶ 37.)   But Napleton has conceded that the new Audi lease does not secure the entire Relocation Property; only a portion of it.   (*Id.* ¶ 146.) Under the Second Addendum, Wyoming Valley is required to perform this new Audi lease, meaning it cannot satisfy this condition precedent. (*Id.* ¶ 163.)  Even at the time AoA rescinded the Relocation Agreement, Wyoming Valley did not have control over the Relocation Property because Wyoming Valley already had sold the Relocation Property to Napleton.

Accordingly, regardless of whether AoA rescinded the Relocation Agreement, Wyoming Valley could not have satisfied the conditions precedent to relocation and would not have paid any rent to Napleton under the terms of the Audi Lease.  The Court should grant AoA judgment as a matter of law on Napleton's Counterclaim Counts V and VI.

---

[6] This also constitutes a breach of Wyoming Valley's Dealer Agreement and a violation of this Court's Order of June 29, 2018. AoA reserves all of its rights with respect to the breach and violation.

33

## C.   NAPLETON'S TORTIOUS INTERFERENCE CLAIMS FAIL AS A MATTER OF LAW BECAUSE THEY ARE NOT COGNIZABLE UNDER PENNSYLVANIA LAW.

In its opening brief, AoA established that Napleton's tortious interference claims (Counts III – VI) fail as a matter of law because Pennsylvania has not recognized Restatement (Second) of Torts § 766A.  (Br. at 10-15.)  Section 766A provides:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him.

(Restatement (Second) of Torts § 766A.)  The Third Circuit has predicted that the Pennsylvania Supreme Court would not adopt § 766A.  *Gemini Physical Therapy and Rehab., Inc. v. State Farm Mut. Automobile Ins. Co.*, 40 F.3d 63, 66 (3d Cir. 1994) ("Thus, we are not persuaded that the Pennsylvania Supreme Court would adopt section 766A").[7]

Napleton argues in response that § 766A does not apply to its claims because § 766A only applies where the tortious conduct is directed at the plaintiff – here Napleton.  This marks a stark departure for Napleton in the way it characterizes and pleads its tortious interference claims.  From the

---

[7] Although Napleton argues that the court did not rest its decision in *Windsor Sec., Inc. v. Hartford Life Ins. Co.*, 986 F.2d 655, 660 (3d Cir. 1993) on § 766A, there can be no question that the Third Circuit predicted Pennsylvania law on this topic in *Gemini*.

outset, Napleton has claimed that AoA "weaponized" its ROFR to punish Napleton for its conduct in the emissions litigation.  The following represent only a few of the express statements from Napleton's counterclaims that directly contradict the position Napleton currently is taking:

- "Upon information and belief, Audi's actions are an attempt to make an example out of Napleton to create a chilling effect in the dealership community.  Audi is aware that large groups like Napleton grow through acquisitions, and through its wrongful conduct in this instance, it has attempted to harm the reputation of Napleton and cause would-be sellers to avoid deals with Napleton that include VW Group brands." (Doc. 219 ¶ 46.)

- "Audi has exerted unlawful leverage through abuse of process in this action to not only deprive Napleton of an Audi dealership, but to put the entire transaction at risk and to harm Napleton's reputation and jeopardize Napleton's standing in the dealers community." (*Id.* at ¶ 47.)

- "Audi's actions are clearly revenge for the Napleton affiliates' assertion of their legal rights in connection with the TDI Scandal." (*Id.* at ¶ 97.)

- "Audi has and continues to intentionally and unlawfully interfere with Napleton's APA, as amended for the Proposed Transaction even after the subject Audi franchise was withdrawn from the APA." (*Id.* ¶ 126.)

- "Audi's actions, as more particularly described herein, including but not limited to its efforts to unwind the deal and its abuse of process within this action, were undertaken with the willful intent to harm Napleton." (*Id.* ¶ 141.)

Moreover, Napleton's claims regarding the Relocation Property (Counts V and VI) relate solely to Napleton's alleged losses for not being able to recover its investment in constructing the Audi facility at the Relocation

Property, all of which was completed after Napleton purchased the Relocation Property from Wyoming Valley and accepted sole responsibility for the construction of the facility. (*See* Doc. 219 ¶ 63; SOF ¶¶ 116-24; 143-45; and Doc. 481 ¶ 69.) Indeed, in Count VI Napleton alleges: "In essence, Audi has admitted that it is intentionally interfering with existing and prospective leases between the Relocation Property Owner and certain dealerships." (Doc. 219 ¶ 167.) To be clear, the owner of the Relocation Property is Napleton, not Wyoming Valley. (*See* Doc. 219 ¶¶ 62-63.) Napleton cannot claim that interference with leases at the Relocation Property is aimed at Wyoming Valley.

Finally, and perhaps most tellingly, Napleton adopts as its own this Court's description of Napleton's counterclaims: "The gravamen of Napleton's entire counter complaint is that AoA engaged in a course of conduct to interfere with its business relationship with Wyoming Valley due to animus against Napleton for refusing to take part in a previous settlement. Each claim is underpinned by the theory of Napleton's entire counter complaint that AoA acted to thwart all business relationships with Napleton due to an improper motivation." (Br. at 20–21; Doc. 321 at 17.)

The Court should reject Napleton's newly minted description of its counterclaims and grant AoA judgment as a matter of law on Counts III – VI because they are not cognizable under Pennsylvania law.

## CONCLUSION

For the foregoing reasons and those stated in AoA' opening Memorandum of Law, this Court should grant summary judgment to AoA on each of Napleton's tortious interference counterclaims (Counts III through VI).  The Court also should grant AoA such other and further relief as the Court determines to be just and equitable.

Dated:  March 9, 2018                    Respectfully submitted,

                                         **AUDI OF AMERICA, INC**.
                                         An Organizational Unit of
                                         Volkswagen Group of America, Inc.


                                         By:  /s/Owen H. Smith
                                                  One of Its Attorneys


                                         Thomas B. Schmidt, III (PA 19196)
                                         Justin G. Weber (PA 89266)
                                         PEPPER HAMILTON LLP
                                         100 Market Street, Ste. 200
                                         Harrisburg, Pennsylvania 17108
                                         Ph:  717.255.1155
                                         Email:  schmidtt@pepperlaw.com
                                         Email:  weberjg@pepperlaw.com

                                         Owen H. Smith (IL 6307554 / NY 693627)
                                         Brandon C. Prosansky (IL 6293582)
                                         BARACK   FERRAZZANO   KIRSCHBAUM   &
                                         NAGELBERG LLP
                                         200 West Madison, Ste. 3900
                                         Chicago, Illinois 60606
                                         Ph: 312.984.3100
                                         Email:  owen.smith@bfkn.com
                                         Email:  brandon.prosansky@bfkn.com

*Admitted Pro Hac Vice*

*Attorneys for Audi of America, Inc.,*
*An Organizational Unit of Volkswagen Group of*
*America, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Owen H. Smith, an attorney, certify that on March 9, 2018, a true and correct copy of the foregoing was filed and served through the Court's Electronic Case Filing (ECF) system upon all counsel of record.

/s/ Owen H. Smith         

## <u>CERTIFICATION PURSUANT TO LOCAL RULE 7.8</u>

I hereby certify, pursuant to Local Rule 7.8, that the actual number of words in Plaintiff Audi of America, Inc.'s Brief in Support of its Motion for Summary Judgment on Wyoming Valley's Counterclaims, excluding table of contents, table of authorities, cover page, signature block, and certificate of service, is 9,782 words.

/s/ Owen H. Smith